N



**Appellate Division**
**Supreme Court of the State of New York**
**Second Judicial Department**
**45 Monroe Place**
**Brooklyn, N.Y. 11201**
**(718) 875-1300**

RANDALL T. ENG
PRESIDING JUSTICE

APRILANNE AGOSTINO
CLERK OF THE COURT

MEL E. HARRIS
KAREN HOCHBERG TOMMER
MARIA T. FASULO
DEPUTY CLERKS

DARRELL M. JOSEPH
KENNETH BAND
ASSOCIATE DEPUTY CLERKS

September 15, 2015

Re: *Denker-Youngs v Denker-Youngs*
Appellate Division Docket No.: 2015-08125

Brian Denker-Youngs
25 Boerum Street, Apt. 18E
Brooklyn, NY 11206

Dear Sir:

As a result of your March 13, 2015, filing of a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York, under case no. 1-15-41069-cec, the above-referenced appeal is stayed pursuant to 11 USC Section 362, until the bankruptcy case is closed, or the Bankruptcy Court issues an order modifying the stay to allow this Court to proceed with the appeal. Furthermore, your pending motion for a stay and other relief, brought on by order to show cause dated September 1, 2015, and returnable September 10, 2015, must be held in abeyance until this Court is authorized to proceed. The parties are requested to keep the Court informed regarding the status of the bankruptcy matter.

Very truly yours,

Darrell M. Joseph
ASSOCIATE DEPUTY CLERK

cc:    Simonetti & Associates

NOTE: On the return date all motions and proceedings are deemed submitted. Oral argument is not permitted (22 NYCRR 670.5[b]).

**Supreme Court of the State of New York**
**Appellate Division: Second Judicial Department**

Edward John Denker-Youngs

*Plaintiff-Respondent,*

vs

Brian H Denker-Youngs,

*Defendant-Appellant.*

**ORDER TO SHOW CAUSE**

Appellate Division Docket No.:

2015-8125

Upon the annexed affidavit of *Brian H Denker-Youngs* dated *8/26/15* ▮▮▮▮ and the papers annexed thereto,

LET *the Plaintiff-Respondent* _____ SHOW CAUSE BEFORE THIS COURT, at the courthouse thereof, located at 45 Monroe Place, Brooklyn, New York, 11201, on the *10th* day of *September* , 20*15* , at 9:30 o'clock in the forenoon of that date or as soon thereafter as counsel may be heard, why an order should not be made and entered:

1. Staying the 12/11/14 + 6/23/15 orders of the Lower court

2. Directing the Lower court provide a copy of trial transcript at no charge to appellant

3. Granting such other and further relief as to the court may seem just and equitable.

**SUFFICIENT CAUSE THEREFOR APPEARING,** it is

**ORDERED** that pending the hearing and determination of this motion ~~the courts 6/11/14 + 6/23/15~~ ~~restricting appellant the defendant to the marital residence if remaining business as usual marital assets to all incumbent individual to the marital residence~~ are stayed; and it is further.

**ORDERED** that service of a copy of this order to show cause and the papers upon which it was made upon *counsel for the Plaintiff-Respondent* _____ by

personal delivery pursuant to CPLR 2103(b)(1) or

office delivery pursuant to CPLR 2103(b)(3) or

overnight delivery service pursuant to CPLR 2103(b)(6)

on or before *September 2* , 20*15* , shall be deemed sufficient service thereof.

Dated: Brooklyn, New York
*September 1* , 20*15*

*[signature]*

Hon. Sylvia O. Hinds-Radix
Associate Justice
Appellate Division 2nd Dept.

FEE PAID

# SUPREME COURT OF THE STATE OF NEW YORK
## I.A.S. PART 30 SUFFOLK COUNTY

PRESENT:
HON. DAVID T. REILLY, J.S.C.

INDEX NO.: 14-16968

_____x

EDWARD JOHN DENKER-YOUNGS,

            Plaintiff,

      -against-

BRIAN H. DENKER-YOUNGS,

            Defendant.

_____x

**PLAINTIFF'S ATTORNEY:**
Simonetti & Associates
144 Woodbury Road
Woodbury, NY 11797
(516) 248-5600

**DEFENDANT'S ATTORNEY:**
Law Offices of Anthony A. Capetola
Two Hillside Avenue, Building C
Williston Park, NY 11596
(516) 746-2300

      Defendant, Brian H. Denker-Youngs (hereinafter "BDY") moved by Order to Show Cause with papers in support for the following relief:

    a.    Awarding BDY exclusive use and occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington and its contents;

    b.    Directing the plaintiff, Edward John Denker-Youngs (hereinafter "EDY") his *pro-rata* share of the carrying charges of the marital residence including but not limited to the mortgage(s), property taxes and homeowner's insurance;

    c.    Awarding BDY exclusive use and enjoyment of the Mercedes automobile and the Volkswagen Eos;

    d.    Directing EDY to pay the lease, insurance and repairs on the Mercedes;

    e.    Directing EDY to provide an accounting of the Home Equity Line of Credit;

    f.    Directing EDY to provide an accounting of his income from the date of marriage until present;

    g.    Directing EDY to provide an accounting of his Chase Sapphire Credit Card charges from date of marriage until the present time;

h.   Directing EDY to provide an accounting of medical reimbursement checks he received on BDY's behalf from date of marriage until the present time;

i.   Directing EDY to pay interim counsel fees on behalf of BDY in the sum of $10,000.00.

Plaintiff, EDY, opposed defendant's motion and moved by Cross Order to Show Cause with supporting papers for the following relief:[1]

1.   Directing the sale of the marital residence located at 33 Pennington Drive, Huntington, NY;

2.   Granting EDY exclusive use and occupancy of the residence;

3.   Directing BDY to cease any and all lease agreement(s) with third parties and to remove all tenants from the cottage located at 33 Pennington Drive, Huntington, New York;

4.   Directing BDY to pay 50% of all expenses associated with the marital residence and to bring all expenses current;

5.   Directing BDY to remove all security cameras from the marital residence;

6.   Granting EDY exclusive use and enjoyment of the Volkswagen EOS;

7.   Directing BDY to be responsible for all expenses associated with the Mercedes;

8.   Directing BDY to be responsible for all his medical expenses;

9.   Modify the refrain from Order of Protection to a Stay Away Order of Protection;

10.  Granting EDY interim attorney fees in the amount of $20,000.00.

On the date EDY's Cross Order to Show Cause was presented, December 11, 2014, the Court directed during the pendency of this action:

I.   BDY shall have exclusive use and enjoyment of the Mercedes and be responsible for all of its expenses;

_____

[1] The Court signed this Order to Show Cause and received papers in opposition to same and has considered the application although no motion sequence number has been assigned to same. Defendant received sufficient notice of the application, opposed same and the issues contained in the papers were made part of the hearing.

II.   EDY shall have exclusive use and enjoyment of the Volkswagen EOS and be responsible for all of its expenses;

III.   EDY shall maintain health insurance for BDY;

IV.   Awarded EDY temporary exclusive use and occupancy of the martial residence pending the hearing and determination of this matter and required to pay all costs associated with the marital residence;

V.   Directed all rental income from the cottage be paid to EDY;

VI.   Awarded BDY exclusive use and occupancy of the Brooklyn apartment pending the hearing and determination of this matter and he is required to pay all costs associated with the Brooklyn apartment;

VII.   Both parties are restrained from publishing to the public any personal information or financial information of the other party;

VIII.   Ordered and directed any health insurance checks that is reimbursement for medical expenses paid by a party be given to that paying party.

Defendant opposed plaintiff's Cross Order to Show Cause.

Thereafter the matter was referred to a hearing. The hearing primarily focused on the issue of exclusive use and occupancy of the marital residence. Exclusive occupancy of a marital residence by one party *pendente lite* is warranted only when needed to protect the persons or property; or when the non-movant spouse has voluntarily established an alternate residence and that spouse's return to the martial residence would cause domestic strife. *Kenner v. Kenner*, 13 AD3d 52 (1st Dept. 2004).

There is ample evidence in the record both parties feel threatened by the other. Although BDY is smaller in stature than EDY, BDY slammed the door on one occasion causing physical injury to EDY's person. BDY also stated:

It is imperative that I continue to reside in the marital residence which is centrally located to my health care providers. It is very stressful for each time the Plaintiff returns to the martial residence. That stress and anxiety could have deadly consequences for me given the fact that I have an aneurysm.

(Affidavit of BDY in support of Order to Show Cause p. 4).

Each party has moved for exclusive use and occupancy and seemingly acknowledge they

cannot live together during the pendency of this action. The police have been called to the marital residence on numerous occasions. Each party has filed Family Offense Petitions with the Suffolk County Family Court and obtained orders of protection against each other. During the hearing, a warrant squad from the New York City Police Department appeared outside the courtroom to arrest EDY based on a complaint filed by BDY. *See generally, Preston v. Preston*, 147 AD2d 464 (2nd Dept. 1989).

The cottage which is a separate structure at the marital residence was rented to tenants by the parties during their rather short marriage. The Town of Huntington has posted a sign on the cottage stating that it is not habitable. It cannot be used to provide separate living arrangements for the parties at the marital residence.

During the time that BDY remained at the marital residence, when the Court asked EDY to stay away from said residence in hopes their attorneys could negotiate a resolution to this matter, BDY took it upon himself to place EDY's clothes and possessions into garbage bags and remove them to another location at the marital residence. He also changed the security system codes without providing notice or the codes to EDY.

BDY's claim that EDY voluntarily established an alternate residence was not supported by the evidence, including plaintiff's personal belongings which were placed in bags by defendant at the marital residence. After the commencement of this action EDY spent considerable time at his mother's home in Huntington. EDY wanted to give BDY some time and space, but testified it was not his intention to establish another residence. The facts in this case are distinguished from those in *Block v. Block*, 245 AD2d 153 (1st Dept. 1997). In Block, the husband admitted he vacated the marital residence shortly after signing a one-year sublease for an apartment. Given BDY's alleged ill health and the emotional impact he was still experiencing at the hearing and at earlier appearances before this Court, the Court finds EDY made a fair, humane gesture to alleviate stress but never gave up his rights to occupy the marital residence. The fact his mother has a home in the same town and he stayed there for periods of time after the action was commenced, does not establish an alternate residence. Additionally, the period involved is a mere two months before the parties appeared in Court at which time EDY was asked to stay away from the marital home. This Court would like to encourage litigants to be respectful and humane to each other, and not be focused on actions for mere litigation advantage.

At the hearing, it was established EDY's family resides in Huntington and BDY's family resides in Brooklyn, where he has a small studio apartment across the street from his father's home. It was also established that some of his treating physicians had their offices in Huntington, while a majority of BDY's doctors have offices elsewhere. With great respect to the medical community on Long Island, there remains in New York City, some of the best medical facilities and doctors in the world.

BDY's employer also has offices in Rockville Centre and New York City which he may access; he also can work from his apartment when not required to meet with clients. BDY is a rabbi

Page 4 of 7

but there is no evidence he has an established congregation centered anywhere, including the Town of Huntington. He also has a business renting chuppah equipment.[2] BDY made himself available to officiate at weddings as a rabbi and also, when needed, to provide the chuppah. While he developed opportunities in the Huntington area, his skills can be used anywhere and the equipment stored anywhere.

On December 11, 2014, BDY allowed his attorney to represent to this Court:

> ...And due to the stroke that he [BDY] suffered on September 26, 2014 he can't lift his leg and get into a tub, so the house in Huntington has been made handicapped telling me, accessible so that he can get into the tub by not having to lift his leg.

(December 11, 2014 transcript, pp. 9 - 10).

The evidence shows the bathroom in the Huntington home was not made handicapped accessible; EDY's grandmother's shower chair was placed in the existing shower stall. While this decision did not turn on this misrepresentation, the Court does find BDY lacked true and fair candor with regard to his health, medical providers and need for assistance.

The Court finds EDY should be granted exclusive use and occupancy of the martial residence pending this litigation. Any perceived inequity can be resolved by a speedy trial and at the next conference, the parties shall enter into a final discovery schedule and establish trial dates.

During the pendency of this action, it is:

**ORDERED**, defendant's application for exclusive use and occupancy of the marital residence is denied; and it is further

**ORDERED**, plaintiff's application for exclusive use and occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington, New York is granted; and it is further

**ORDERED**, plaintiff shall advance all carrying charges of the marital residence, including but not limited to, the mortgage(s), property taxes and homeowner's insurance subject to re-allocation after trial; and it is further

**ORDERED**, defendant shall have exclusive use and enjoyment of the Mercedes automobile; and it is further

**ORDERED**, defendant shall pay all expenses related to the Mercedes automobile; and it is

---

[2] A chuppah is a canopy used for a bride and groom to stand under during a Jewish wedding ceremony.

further

**ORDERED**, plaintiff shall provide authorizations to defendant to allow him full and complete information from the date of marriage until the present, as it relates to the following:

    a.    Home Equity Line of Credit;

    b.    The parties health insurer(s); and it is further

**ORDERED**, plaintiff shall provide authorizations to defendant to allow him full and complete information concerning plaintiff's Chase Sapphire Credit Card from the date of marriage until date of commencement of this action; and it is further

**ORDERED**, plaintiff's application directing the sale of the marital residence located at 33 Pennington Drive, Huntington, NY is denied; and it is further

**ORDERED**, plaintiff's application directing defendant to cease entering into any lease agreement(s) with third parties is seemingly moot, but for clarity is granted; and it is further

**ORDERED**, plaintiff's application to remove all tenants from the cottage located at 33 Pennington Drive, Huntington, New York is denied as the matter is moot; and it is further

**ORDERED**, plaintiff's application for defendant to pay 50% of all expenses associated with the marital residence and to bring all expenses current is denied, but with leave to make such application at trial; and it is further

**ORDERED**, plaintiff's application to have defendant remove all security cameras from the marital residence is deemed moot, but defendant is directed to cease and desist from using any security cameras at the marital residence; and it is further

**ORDERED**, plaintiff is granted exclusive used and enjoyment of the Volkswagen EOS; and it is further

**ORDERED**, plaintiff shall pay all expenses related to the Volkswagen EOS; and it is further

**ORDERED**, the parties shall each be responsible to pay their own unreimbursed or out-of-network medical expenses; and it is further

**ORDERED**, plaintiff shall continue to maintain the existing health insurance for the defendant; and it is further

**ORDERED**, defendant is awarded exclusive use and occupancy of the Brooklyn apartment; and it is further

**ORDERED**, both parties are directed to refrain from publishing to the public any personal information or financial information of the other party; and it is further

**ORDERED**, any health insurance checks that are reimbursement for medical expenses paid by one party shall be given to that paying party; and it is further

**ORDERED**, plaintiff's application to modify the existing order of protection is denied without prejudice. Plaintiff now enjoys exclusive use and occupancy of the marital residence which prevents defendant from entering onto the subject premises without further order of this Court. If this protection is insufficient or is ineffectual, plaintiff may renew his application; and it is further

**ORDERED**, any further relief requested by either party, not specifically granted, is denied.

This constitutes the Decision & Order of this Court.

Dated:  **Central Islip, New York**
         **June 23, 2015**

ENTER:

DAVID T. REILLY, J.S.C.

**SUPREME COURT STATE OF NEW YORK**
**APPELATTE DIVISION: SECOND DEPARTMENT**
------------------------------------------------------------------X

EDWARD JOHN DENKER-YOUNGS,                    Index No.: 16968/2014

                  **Plaintiff-Respondent**

                **-against-**                        **APPELLANTS**
                                       **AFFIDAVIT**

        **BRIAN H. DENKER-YOUNGS,** *Pro Se*

                **Defendant-Appellant**

------------------------------------------------------------------X

        **I, BRIAN H. DENKER-YOUNGS,** being duly sworn, and deposed and says the following

under the penalty of perjury:

1.   I am the Defendant in the above-entitled within action appearing herein *Pro Se,* and submits this

    Order to Show Cause for an appeal of a *Pen dente lite* judgement entered July 31, 2015 as a

    matter of law pursuant to CPLR 5701(a)(2), whereby generally speaking **all judgements are**

    **appealable** if it arises out of a motion made on notice and it grants or continues a provisional

    remedy and affects a substantial right of the affected party.

2.   I am fully familiar with all of the facts and circumstances surrounding the instant notice to

    appeal a *Pen dente lite* Order of the lower Supreme court entered July 31, 2015 and attached

    hereto labeled *Exhibit A,* nearly nine (9) months after my initial Order to Show Cause of

    November 6, 2014 was first filed with the lower court, attached hereto labeled *Exhibit B.*

3.   I am also a debtor-in-possession, having been compelled into filing a voluntary petition for

    Chapter 11 Bankruptcy on March 13, 2015 with the United States Bankruptcy Court, Eastern

    District in Kings County Case No. 15-41069 attached hereto and labeled *Exhibit C* as a direct

    result of gregarious and fraudulent conduct by the Plaintiff as is exhibited and attested to in my

November 6, 2014 Order to Show cause and within Defendants Affidavit in Opposition dated February 25, 2015 attached hereto labeled *exhibit D.*

4. Your deponent requests that the honorable court excuse my failure to provide the trial transcript on the basis of a financial hardship. Upon inquiring with the court reporter, your deponent had been quoted a cost of nearly Twenty-Six Hundred Dollars ($2600) for the transcripts. Your deponent regretfully does not have nor can afford to purchase the same.

THEREFORE, your Deponent respectfully requests that all representations and conveyances made and referenced herein be accepted as my affidavit of absolute truth and fact, and what would be conveyed within the trial transcript as fact.

## THE NEED FOR THIS APPEAL AND THE APPELLATE COURTS'S INTERVENTION PURUSANT TO § 670.17

5. Your appellant respectfully requests that the Justices of this Honorable court provide slight latitude to your appellant appearing *PRO Se* and having endured nearly a year of abuse and watching lies succeed and the truth and your appellant buried, sanctioned intentionally and irreversible impacted and harmed by the course of the events henceforth.

6. Your appellant began to really wonder why despite life's instilled teachings and my conduct of the same that one is to always tell the truth and especially in court; one is to not lie and to always respect the court and law; as to why your appellant has suffered so greatly under the jurisdiction of the lower court. Your appellant has discovered what he believes to have been an unjust bias against him by the assigned lower court.

7. Affixed hereto as exhibit A and your deponent respectfully requests approval to redact and remove the contents of this exhibit for purposes of confidentiality and privacy. There exists are

a series of documents which raise question to concern of the potential of an existence of a bias or impropriety by the lower courts which stem from the respondents' uncle Arthur Van Nostrand, who has been in attendance for each and every court proceeding.

8.  Van Nostrand as showcased has both personal and professional ties to the local political community, landscape and politicians including various Justices within the District Court including that of Republican part member and Northport, NY local Justice Paul Sensar, personal friend of Van Nostrand and campaign supporter for candidate David T Reilly as is showcased by the web referenced search result listing the Uncle as a member of Judge David T. Reilly's LinkedIn election to the Supreme Court profile and group.t

9.  Your deponent respectfully requests a review of the facts, findings, evidence and applicable case law in the entire proceeding here in for determination of any potential existence or avoidance of impropriety going forward and upon such motion for the court herein to transfer on request for dissolution to the appellate court 2nd department in attempts to avoid any possible infringements of Professional Rules of Conduct: Part 100.

10. And thereafter upon such review, affirming appropriate venues and oversight to positively move the action herein in a forward direction with clear and judicial resolve.

## BACKGROUND

11. This is a matrimonial action that was commenced by the respondent upon filing a Summons with Notice for Divorce on August 27, 2014.

12. Both parties were married in Lake Ronkonkoma, New York on July 30, 2011, subsequent to the enactment of the New York State Legislation permitting same sex marriage in New York in a religious ceremony in accordance with rites and rituals of the Jewfish faith.

13. A preliminary conference was held on November 6, 2014 and By Order to Show Cause dated November 6, 2014, *your* deponent moved, *inter alia,* for exclusive use and occupancy of the marital residence. Among several grounds proffered included my poor health, which includes five (5) major operations over the last two (2) years inclusive of two spinal surgeries that left the Appellant temporarily paralyzed, a stroke and the fact that the Respondent had effectively moved into his mother's residence nearby where the Respondent is also trustee, caretaker of the property and has established as an address of record for himself dating back years.

14. In addition, your deponent had conducted his employment and business activities from his home office located in the marital residence. A copy of the Order to Show Cause and supporting Affidavit, without exhibits, is annexed hereto as *Exhibit "E".*

15. The Respondent opposed the motion by filing his own motion seeking, *inter alia,* exclusive use and occupancy. However, the Respondent's request for exclusive use and occupancy was not filed *ex parte* December 11, 2014, five *weeks after appellant's motion for such relief was made.* Thus, it is obvious that the Respondent's request for exclusive use and occupancy was nothing but a manufactured "afterthought" made in retaliation and as a counter move to and is further evidenced by Respondent's prolonged and intentional delays in going to trial and torturous conduct throughout .

16. On December 11, 2014, the Lower Court called the case as an add-on to a status conference after several adjournments by the Respondent originally scheduled for November 13, 2014 said transcript is attached as Exhibit F. Following some colloquy, the Lower Court issued a temporary order that it chose to classify "not even *pen dente relief*" and was issued based upon a short return date for trial of the matter within 30-days. Your deponent on record called out to the court, the Respondents representations as being false and untrue as is illustrated in the "so ordered transcript' attached hereto as *Exhibit G.*

7

17. Based on Respondents representations to the Lower Court that day, to which were absent any evidence, testimony or physical acts of violence contained in respondents' complaint against the appellate, the court issued relief off the bench ordering that the Respondent would have exclusive use and occupancy of the marital residence and gave the Appellant forty-eight (48) hours to vacate the premises. This temporary relief was continued and was to stay in place until the determination of the Appellant's Order to Show Cause and Respondent's Order to Show Cause. *However, exclusive use and occupancy may properly be awarded without a hearing upon a sufficient showing of abuse that is supported by uncontroverted medical evidence. Preston v. Preston, 147 A.D.2d 464, 537 N.Y.S.2d 824 (2d Dep't 1989), see also Fakiris v. Fakiris, 177 A.D.2d 540, 575 N.Y.S.2d 924 (2d Dep't 1991); Harrilal v. Harrilal, 128 A.D.2d 502, 512 N.Y.S.2d 433 (2d Dep't 1987); King v. King, 109 A.D.2d 779, 486 N.Y.S.2d 291 (2d Dep't 1985)* no such medical evidence exhibiting abuse was presented by the respondent.

18. In compliance with the Order, the Appellant was compelled to vacate the marital residence despite the grievous prejudice that your deponent was suffered and expected to continue to suffer as a result and such order of the court absent a hearing for nearly five months is a direct violation of your appellant's right to due process. The general rule is that exclusive possession, pendente lite should not be granted without a hearing. *Formato v. Formato 173 A.D.2d 274, 569 N.Y.S.2d 665 (1st Dept. 1991).*

19. On December 15, 2014, at a subsequent conference, the Lower Court scheduled a hearing as to who should be awarded exclusive use and occupancy, "if anyone" and calendared for January 28, 2015; none the less, resulting from delays caused by the respondent including and not limited to non-appearance by neither respondent nor respondents' counsel on March 16, 2015 whereas your appellant and counsel did appear and ready to begin trial. New Trial dates again were intentionally put forward extraneous amounts of time by the respondent pushed out to

April 30, 2015. A litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process. *See A.B. v. Y.Z., 184 N.J. 599, 604 (2005); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003). Due process guarantees expressed in the Fourteenth Amendment to the United States Constitution requires assurance of fundamental fairness during legal proceedings. U.S. Const. amend. XIV, § 1. This includes the opportunity to be heard and requires "procedural safeguards including the right to cross-examine adverse witnesses and the right to call witnesses . . . ." Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005).*

20. As a result of a delays and a non-appearance by the respondent, trial did not begin until April 30, 2015 and conclude until May 30, 2015. Such intentioned delays not only has caused your appellant significant financial loss and that of his business LongIslandChuppah.com but has also violated your appellants right to due process.

21. Over the course of the several months between December 2014 and May 2015 acts bordering illegal and certainly unethical misconduct exhibited by the Respondent had taken placed and easily surmised by the attached two motions labeled *Exhibited H and I* respectively and are clear and contemptuous conduct on the part of the respondent and consistent with Respondent's total disregard for the honorable court or Appellant's wellbeing, rather sought to continue to victimize and be torturous.

22. Despite appellant's April 23, 2015 Order to Show Cause, being signed by Judge Bivona and served upon the Respondent, your Deponent represents that of the calendared motions on the docket, the court on April 30, 2015 chose to only address that one Order to Show Cause to which your deponent under duress and through coercion urged by counsel Jennifer Schenker, of the courts insistence that Motion #4 be withdrawn or there would be the risk of requiring your deponent to proceed solely as Pro Se thereafter for the remainder of the within action. It is

important to note that Ms. Schenker in fact by phone assisted your deponent in completing the Order to Show Cause before having appeared before Judge Bivona to which directed the case be turned over to the Suffolk County District Attorney's Office for investigation.

23. As trial proceeding forward on May 28, 2015 and noted on record, the responded by way of cross by Ms. Schenker, admitted in open court to lying to the Honorable court and misrepresenting material fact for the specific purpose of "ousting" your deponent from the marital home.

24. Respondent on record testified in fact that despite filing an *ex parte motion*, and was evidenced clearly in entry logs form online home security system, respondent despite being granted exclusive use on December 11, 2014 had not returned to the marital residence until sometime two weeks later and therein confirming there had been no dire urgency that would warrant such an ex parte motion.

25. Respondent confirmed to the court on record after being presented and entered into evidence his cell phone call logs subsequent to the family court's granting as a "refrain from" Order for Protection; respondent testified that indeed there had been no physical violence by the appellant nor did he fear for his life. There was no refute that subsequent to that order, respondent sought and made requests through text messages to see the appellant, engaged in intimate sexual relations thereafter and acknowledged sending more than eight hundred text messages and expending nearly nine-hours of talk time with your deponent between September 2, 2014 and November 6, 2014.

26. Testifying to some occurrence by which the Respondent claims a door was slammed on him injuring his foot, your deponent testified as having no knowledge of what the respondent had been referring to and when asked by counsel to your deponent, respondent was unable to furnish any police reports of such an incident.

27. Rather your deponent testified to an incident of November 24, 2014, pointing out to the court the Respondents cross-motion filed with the court December 11, 2014 was signed and notarized with the same date of November 24, 2014 and the contents contained thereof describing events which took place that night and within days thereafter. In fact, alarm system reports for the marital home showed the same "police" referred to being called in the respondents November 24, 2014 affidavit had not occurred until after 9pm and alerted by the house alarm being tripped. When asked of the respondent when he signed such affidavit if it was light (indicating day time) or dark (indicating night time), he was unable to verify for the court, suggesting the contents of such affidavits had been pre-meditated and planned with the intent of being torturous to the appellant.

28. The appellant was out of town and returned home to the marital residence on November 25, 2014 and evidenced by Suffolk County Police reports filed and attached herein as exhibit J, to find cut phone wires, alarm wires to the home, locked doors to which the Respondent is listed as the suspected offender by Suffolk PD.

29. Respondent also offered testimony which immediately called out to his misrepresentation regarding an alternate residence of 316 West Neck Road, Huntington NY where his mother resides with respondent's brother as being "too small" for all three (3) of them; respondent corrected counsel on record as to the property not being .5 acres in size but rather even larger in size of .68 acres described as a four-bedroom, three-bath farm ranch.

30. Testimony was offered by respondent's mother as to size and respondent's ability to reside in the residence which was minutes away and had been where respondent claims he voluntarily stayed after filing the action for divorce, that she enjoys the company of out of town and overseas friends and family on occasion utilizing an extra two spare bedrooms that were

unoccupied on a second floor and where in fact the respondent had and would be welcome if needed to reside there.

31. Respondents position to the court is that he has "no where else to go"; however from the end of August upon commencing the action within and thru December 11's appearance, such was mute and never conveyed as a problem or issue; Respondent wasn't residing at the marital home thus he obviously does in fact have "some where" to go.

32. During trial proceedings, Respondent through Respondent's counsel attempted to enter into evidence on two separate occasions documents pertaining to a lease of a cottage on the parties' property as well as a password membership driven blog that is maintained by your deponent. Your deponent's attempt to convey these documents as being fakes, received assistance from the court whereby for the record and respondent's counsel stated that your deponent was meaning to say the documents being referenced were not "true and accurate", in fact the court granted your deponent permission to step down to secure what he would confirm as being true and accurate copies, and thereafter when offered to respondents' counsel by the court for entry into evidence, respondent's counsel declined.

33. Despite erroneous conveyances by Respondent's counsel in the attached *Exhibit K* regarding Respondent having no knowledge of your deponents separate and personal checking account information for a Citibank account held with my eighty-two year old aunt, a Citibank investigation and NYPD Police investigation discovered otherwise and as outlined in the Order and subject of this appeal, on May 6, 2015 NYPD Detectives traveled to Suffolk County Supreme Court where the Responded was in fact taken into custody and arraigned in the Kings County Criminal court on criminal charges for acts in direct contempt of Judge Reilly's December 11, 2014 Order Directing the Respondent to be 100% responsible for all carrying

charges on the marital home. Attached hereto as *Exhibit L* are copies of the arrest record and charges against the Respondent.

34. Respondent further admitted on record to misrepresenting that he had no knowledge or participation in having rented a cottage on property of the grounds but in fact is engaged in a District Court Criminal proceeding (The People of the State of New York vs. John Denker Youngs) brought by the Town of Huntington, NY for town ordinance violations. Your appellant had received a summons during April 2015 but upon review with Mr. Turner, Asst Attorney for the Town and his review, the town issued an AOCD for your deponent but is currently still pursuing their case against the respondent.

35. Whereas your deponent could continue on for the honorable court with even more and more examples of injustices, perjuries and misconducts by the respondent for nearly a year now, your deponent continues to suffer damages, being thrown out of his own home as a retaliatory vindictive act and pursuit by the respondent. As a result of financial loss suffered by your deponent on a business venture begun last July 2014 for renting of religious portal canopies referred to as "Chuppahs" and sized anywhere from 6'x6'x6 to 10'x10'x10' and stored at the marital residence to which your deponent cannot store such in a one room studio in Brooklyn, your deponent's business has suffered a loss of business nearing Thirty-Thousand Dollars ($30,000) just in rentals via quotes received online at LongIslandChuppah.com and affixed hereto as *Exhibit M.*

36. The resulting loss of potential business and earnings coupled with the expenses of the legal fees and financial burdens, against respondent as the moneyed spouse with a true estimated income nearing $140,000 against the appellants reported gross income of approx., $84,000, appellate will become more vulnerable to needing to file an application soon for an award of maintenance and support to reach an already less than balanced status quo which has been reduced to living

and working in one-room vs. the 4-bedroom marital home or respondents secondary option of accommodations at 316 W Neck Rd, being also a 4-bedroom home.

37. LongIslandChuppah.com is a dba of Modern Divinities Corp, a New York State S-Corp with a legal address of 33 Pennington Drive, Huntington, NY 11743 who's distributors for floral décor and fabric décor are all within a 5-10minute drive from the marital home vs. sometimes in traffic on the Long Island Expressway is a two-hour drive each way. The business stands to suffer such great loss and is required to carry insurance in excess of $2million dollars and to which your deponent was almost instantly put out of business without access to easily service and ensure the business could deliver on rental agreements for on-time delivery at local Long Island venues to setup, breakdown and return company assets due to respondents unnecessary and vindictive ousting of the appellant from his own home.

## AS AND FOR MODIFYING THE LOWER COURTS' PEN DENTE LITE ORDER

38. Your deponent makes reference to Puroura v. Puroura, 123 A.D.2d 678, 507 N.Y.S.2d 49 (2d Dep't 1986) – where pen dente lite award was modified upward upon unique facts and circumstances of case, including fact that prolonged discovery and probable dispute over finances and respectfully asks that the Order of the lower court be modified:

## AS AND FOR DENYING PLAINTIFF'S APPLICATION FOR EXCLUSIVE USE AND OCCUPANCY OF THE MARITAL HOME AND GRANTING DEFENDANTS APPLICATION FOR EXCLUSIVE USE AND OCCUPANCY

*NY DRL §234 states that exclusive use and occupancy can only be granted on motion and not ex parte, yet respondents motion granted by the lower court had not*

been given over to your deponent or counsel until December 24, 2014 nearly two weeks after it having been filed and granted.

In Taub v. Taub, 33 A.D.3d 612, 822 N.Y.S.2d 154 (2d Dep't 2006) -- where the wife's only allegation of actual violence was alleged threats made by husband which were uncorroborated and where husband failed to voluntarily vacate the marital residence, wife failed to meet the burden necessary for an order of exclusive use and occupancy.

Annexstein v. Annexstein, 202 A.D.2d 1062, 609 N.Y.S.2d 132 (4th Dep't 1994) -- Under the appropriate circumstances, a court may award exclusive possession of the marital residence pendent lite where one spouse has caused domestic strife and has voluntarily established an alternative residence.

39. Respondent gave testimony that he voluntarily left the marital resident and resided at 316 W Neck Road, located in the same town only minutes away. Attached here labeled *Exhibit N* is evidenced proof that this is not only an available but an active alternate residence the Respondent has used and referenced as his home for years prior to the commencement of this action. Further, an applicant for exclusive use and occupancy has the burden of establishing that upon a court issuing an application for exclusive use and occupancy, there still exists a balance of convenience. During trial, testimony was given by your appellant and further addressed in the court's order with respect to the inconvenience of commuting and time to/from doctors and the courts' perspective of having access to quite advance capable medical facilities in New York City. Such not only illustrates respondents failure to address such burden but given appellant's medical history, reestablishing treatment plans and "starting over" with physicians who have not been involved with the several complex health ailments could in an emergency prove dire to the appellant's health and well-being.

40. On September 26, 2014, your appellant after several weeks of being monitored by his cardiologist (St. Francis Hospital – Port Washington, NY) and primary care physician (Huntington, NY) for severe high blood pressure, collapsed in the marital home and suffered a stroke with blood pressure spikes up to 180/110. Appellant was removed by advanced life

support response team to Huntington Hospital E.R. and suffers no permanent damage due to the quick and local access to treating physicians who administered a drug referred to as "TPA" which can only be administered within a short window in order to prevent permanent and lasting damages from a stroke.

41. Of particular and confusing references contained within the lower court's decision of June 23, 2015 referencing your appellants' testimony regarding my health and said needs as having lacked "true & fair candor". Attached hetero labeled *Exhibit O.*

42. Respondent and respondents' counsel presented MapQuest approximations to the court of distances by mileage between appellant's Williamsburg, Brooklyn studio apartment and various Nassau and Suffolk doctors, hospitals and medical facilities appellant is under the care of in comparison to those distances from the marital home (relatively within 1-2miles of being equal in distance). Notwithstanding respondent fails to address the element of "travel time" and road conditions well known of the Brooklyn-Queens and Long Island Expressway, the parties unrefuted established the Brooklyn apartment as appellants separate property, despite representations respondent had made and illustrated on the attached STAR program submission and on a sudden day-of closing re-submitted mortgage application he made with Chase Home mortgage the day parties closed on their home. Both attached hereto as *Exhibit P.*

43. Worth mentioning that respondents' own counsel made a request to the court as to a delayed start time for the next morning's return as she was anticipating delays and the same upon needing to drop her child off in the Long Island City, Queens and then travel to the Supreme Court in Islip. Upon such request all acquiesced; ironically respondents' counsel negates to apply the same logic presented to the court onto her own travel time abilities Long Island City and Williamsburg are within 3-4 miles (10mins) to one another.

44. Trial testimony offered by your appellant also put forward the offer of also allowing respondent exclusive use of the Brooklyn apartment during the pendency of the action thereby giving even more of an equal balance of convenience between parties, with respondent also having access and the option as needed for Huntington area accommodations at 316 W Neck Road, Huntington, NY.

## AS AND FOR THE AWARD OF COUNSEL FEES AND DIRECTING THE RESPONDNET TO PROVIDE OFFICIAL FINANCIAL ACCOUNTINGS

45. Contained within the November 6, 2014 Order to show cause asked the court to direct the plaintiff to various accountings needed as a result of plaintiffs' gregarious and intentional financial misconduct. Pursuant to *NYCRR § 202.16(k)(7)*, §237(1)(a), and (1)(B) and §238, Decisions Relating to Counsel, Appraisal/Accounting Fees: A decision of the court addressing applications for pendent lite counsel, appraisal and/or accounting fees must specifically address, in writing or on the record, the facts it considered and the reasons for its decision. In your appellants reply papers, it was brought to court's attention that the respondent perjured himself on his submitted Statement of Net Worth and attached a listing by account numbers of what was omitted along with copies of various duplicate images from check deposits steaming from what appears to be dividends from private wealth management accounts obtained via our joint Chase checking along with copies of a few count at Bank of America statements of only two of the respondents with that institution. As is illustrated while respondent engaged in transferring debts to your appellant and/or allowing checks to present with non-sufficient funds, he enjoyed regular balances in excess of Thousands.

46. Respondent must have forgotten that as a public employee, his annual salary is public record. Attached hereto labeled exhibit Q is the respondents salaries for the past several years along with paycheck stubs from February 2014 (prior to the commencement of the within action) and October 2014 (after commencement of the within action) and a "schedule to salary" request initiated by the respondent the day he filed for divorce which advanced his salary I believe even greater from post graduate courses we paid for that he took during the time of our marriage but appears to have banked the salary hike for a special day such as August 27, 2014..

47. Some important aspects to point out are the various deductions and adjustments yet within the same take-home range on both pay stubs as well as a reduction in health insurance premiums whereas in February 2012, respondent was having $228.56 a paycheck deducted and thereafter in October 2014 (after your appellant) had suffered a stroke, respondent now only pays $171.42 some $50 less a pay period. As this honorable court will note this was in fact from Ms. Schenker's note to Ms. Alibertis of June 22, 2015 referencing an "attorney's only" conference with the lower court which took place just days prior on June 18, 2015 and some five days prior to the lower courts order, such was informed to the lower courts as well, but reinforced in the secondary communication of the exhibit, despite the courts direction to the respondent on Nov 6, 2014 and Dec 11, 2014 ordering that he maintain medical and health insurance, the respondent apparently could care less to adhere to such orders of the court.

48. Customarily as one would think premiums would rise not lower unless there was a proactive decrease in coverage. Such would be in direct violation of automatic orders issued on August 27, 2014 and certainly deplorable conduct to intentionally inflict financial burdens / harm onto your appellant knowing the state of health. Further, it appears public record shows the respondent's salary decreased from 2013 to 2014. As a unionized and contract public employee, that almost appears impossible that one's salary should decrease vs. increase unless

being intentionally manipulated. Such conduct would be disgraceful especially with a spouse at home who had undergone five (5) major operations and to add for official record, your appellant with 42-staples in the stomach still went to work every day at least two jobs.

49. Your appellant reinforces the need to direct the respondent for such accountings as reinforced over and over by lies, intentional half-truths and continued economic acts of fraud, by presenting the following examples of such borderline criminal-like manipulation of funds and economic infidelities and abuse toward the appellant. Attached and labeled *Exhibit R* shows:

50. The attached deposit slip shows where respondent would have us believe from a separate bank statement he deposited Thirty-Four Hundred Dollars ($3400), however in fact he asked as is evidenced and what appears frequent and common practice of his, he deposited Nine-Hundred Dollars and took back Twenty-Five Hundred Dollars ($2500). *thereafter,*

51. On January 2, 2013 the Defendant contacted my Discover credit card as me and transferred Four Thousand Dollars ($4000) of debt from Defendant's Chase Sapphire credit card. Please take note of the letter from the executive office of Chase regarding Chase Sapphire Credit Card.

52. Just days earlier, transacting sizable payments to his credit cards in amounts of Eight Hundred Forty Dollars Thirty Five cents ($840.35) to a Citibank Credit Card in the name E J Youngs, Twenty Seven Thousand Nine Hundred Seventy Nine Dollars ($27,979) to a Citibank Credit Card in the name E John Youngs and Six Thousand Six Hundred Twenty Dollars and Sixty-Four cents ($6,620.64) to a GM Mastercard account in the name E John Denker Youngs.

53. That same month, respondent delayed making a deposit to our joint Chase checking account once the home mortgage hit resulting in a $1200 overdraft to your appellants separate Chase slate card.

54. Thereafter a month later in February, the respondent made a Ten Thousand Dollar ($10,000) deposit form a private wealth management account not disclosed *on his Statement of Net Worth or reported that year on his taxes to his separate Bank of America checking account.*

55. Further labeled exhibit S are all of the checks respondent wrote from a joint home equity line of credit as is reference in my original Order to Show cause to the same Chase Sapphire where your appellant is of the impression such was to subsidize without my knowledge or consent major renovations on 316 W Neck Road for respondents mother as well as their every day-to-day since respondent has it appears comingled his monies and income with that of his mother, withholding, preventing and restricting access to such marital earnings.

56. Respondent must be directed to account what he has done with his income as there is a perceived approximate $217,000 between 2012 and 2014 estimated that the respondent withheld commingling with and converting thereof with his mother.

## AS AND FOR ADDITIONAL VIOLATIONS AND CONTEMPTS OF THE COURT

57. While respondent erroneously claimed a $190k separate property claim from the sale of his prior house and negated to establish and checks or evidence to support the claim, he misrepresented my ability to ascertain a mortgage at the time. Attached here to labeled *exhibit T* are a series of mortgage loan application that the respondent apparently between April 2012 and October 2012 had continually rerun.

58. Mortgage loan applications contain net worth statements. Such depicts that the total **joint net worth** during April 2012 of both parties was $690,292. Upon the respondents secretive re-filing of a new mortgage loan app removing your deponent as co-application on October 12, 2012 which respondent also to the financial institution on a secure financial document indicating he

was living and renting 25 Boerum Street, Brooklyn NY 11206 (the Brooklyn apartment) had an individual net worth of $175,879. That would beg to question what happened to a total of $514,413 since your appellant is in bankruptcy and the respondent claims being in the red on his statement of net worth. Respondent must be forced to account for where that all went.

59. I am without any reason as to why within a few weeks the respondent had your appellant, a joint owner removed from the mortgage loan application attached hereto labeled *exhibit U* are documents supporting ownership, an initial insurance declaration issued in both names and subsequent insurance declarations and applications with your appellant omitted (without knowledge thereof at that time) and an email and supporting correspondence to the New York State Department of Financial Services which indicates such change on December 30, 2014 having had only first added the appellate (who had apparently not been a part of such policy expressively) to the policy.. Thereby, the respondent had violated the automatic orders once again.


60. As is evidenced with the various exhibits and statements herein, the respondents tale he represented to the family court of September 2, 2014 that your appellant is going a bit looney from pharmaceuticals for his surgeries is laughable given the amount of bizarre, questionable and mounting list of financial entanglements and questions the respondent must be held accountable for providing satisfactory answers to, and not just your appellant but to the United States Bankruptcy Courts, given the above, your appellant should in no way be bankrupt but is. Your respondent asks that the court find respondents' order of protection of September 2, 2014 frivolous and dismissing it altogether as to remove any such stigma tied to your appellant.

**61.** In response to respondents intolerable disrespect for the court, unethical conduct and known to be erroneous and fraudulent representations by respondents counsel on court's direction and instruction and having had direct impacting, lasting and irreversible financial, emotional, and medical impact on your appellant, your appellant requests the court issue an immediate order and judgment against the respondent for reimbursement of the total sum of legal expenses to date which as a result of respondents financial misconduct, infidelity, willful contempt, perjury, "victimize the victim" vendetta against your deponent, are beyond astronomical and ridiculous totaling in excess of One Hundred Twenty-Six Thousands One Hundred Seven Dollars ($126,107.20). Legal bills and invoices attached hereto as exhibit V attached. *Ref. Giesler v. Giesler, 731 S.W.2d 33, 35 (Mo. Ct. App. 1987); Hein v. Hein, 717 A.2d 1053, 1056 (Pa. Super. Ct. 1998); Marriage of Lai, 152 Ill. App. 3d 11, 625 N.E.2d 330 (1993); White v. White, 509 So. 2d 205 (Miss. 1997); Marriage of Williams, 421 N.W.2d 160 (Iowa Ct. App. 1988); Marriage of Quay, 18 Cal. App. 4th 961, 22 Cal. Rptr. 2d 537 (1993); Dougherty v. Leavell, 582 N.E.2d 442 (Ind. Ct. App. 1991); Zatzkis v. Zatzkis, 632 So. 2d 302 (La. Ct. App. 1993); Gravenstine v. Gravenstine, 58 Md. App. 158, 472 A.2d 1001 (1984); Bowman v. Bowman, 493 N.W.2d 141 (Minn. Ct. App. 1992); Jensen v. Jensen, 409 N.W.2d 60 (Minn. Ct. App. 1987); Keingarsky v. Keingarsky, 145 A.D.2d 537, 536 N.Y.S.2d 92 (1988); Long v. Long, 957 S.W.2d 825 (Tenn. Ct. App. 1997).*

WHEREFORE, it is respectfully requested that the motion be granted in all respects, together with such other and further relief as to the Court may seem just and proper.

YOURS.

_____8\25_____ , 2015
Dated:

DEFENDANT, Brian M. Denker-Youngs, *Pro Se*
25 BOERUM STREET APT 8E
BROOKLYN, NY 11206
tel: 917.373.5019
e: bsdenker@gmail.com

## APPLICABLE CASE LAW REFERENCES

1. *Preston v. Preston, 147 A.D.2d 464, 537 N.Y.S.2d 824 (2d Dep't 1989),*

2. *Fakiris v. Fakiris, 177 A.D.2d 540, 575 N.Y.S.2d 924 (2d Dep't 1991)*

3. *Harrilal v. Harrilal, 128 A.D.2d 502, 512 N.Y.S.2d 433 (2d Dep't 1987);*

4. *King v. King, 109 A.D.2d 779, 486 N.Y.S.2d 291 (2d Dep't 1985)*

5. *Formato v. Formato 173 A.D.2d 274, 569 N.Y.S.2d 665 (1st Dept. 1991).*

6. *H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003)*

7. *A.B. v. Y.Z., 184 N.J. 599, 604 (2005)*

8. *U.S. Const. amend. XIV, § 1.*

9. *Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005).*

10. *Puroura v. Puroura, 123 A.D.2d 678, 507 N.Y.S.2d 49 (2d Dep't 1986)*

11. *New York Domestic Relations Law §234*

12. *Taub v. Taub, 33 A.D.3d 612, 822 N.Y.S.2d 154 (2d Dep't 2006)*

13. *Annexstein v. Annexstein, 202 A.D.2d 1062, 609 N.Y.S.2d 132 (4th Dep't 1994*

14. *NYCRR § 202.16(k)(7), §237(1)(a), and (1)(B) and §238,*

15. *Ref. Giesler v. Giesler, 731 S.W.2d 33, 35 (Mo. Ct. App. 1987);*

16. *Hein v. Hein, 717 A.2d 1053, 1056 (Pa. Super. Ct. 1998);*

17. *Marriage of Lai, 152 Ill. App. 3d 11, 625 N.E.2d 330 (1993);*

18. *White v. White, 509 So. 2d 205 (Miss. 1997);*

19. *Marriage of Williams, 421 N.W.2d 160 (Iowa Ct. App. 1988);*

20. *Marriage of Quay, 18 Cal. App. 4th 961, 22 Cal. Rptr. 2d 537 (1993);*

21. *Dougherty v. Leavell, 582 N.E.2d 442 (Ind. Ct. App. 1991);*

22. *Zatzkis v. Zatzkis, 632 So. 2d 302 (La. Ct. App. 1993);*

23. *Gravenstine v. Gravenstine, 58 Md. App. 158, 472 A.2d 1001 (1984);*

**P**

At a Term Part 30 of the Supreme Court, State
of New York, held in and for the County of SUFFOLK
at the Courthouse located at 400 Carleton Avenue,
Central Islip, NY 11772 on the 16th day of
September, 2015

# HON. DAVID T. REILLY

PRESENT _____
                    J.S.C.

MOTION/CROSS/OSC
FEE PAID ☒
Judith A. Pascale
Suffolk County Clerk

----------------------------------------X

EDWARD JOHN DENKER -YOUNGS

                          Plaintiff,              Index No. 016968/2014

        -against-

                                          ORDER TO SHOW CAUSE
                                          TO BE RELIEVED AS COUNSEL
                                          TRO REQUESTED

                                          (Hon. David T. Reilly)

BRIAN H. DENKER-YOUNGS

                          Defendant.

----------------------------------------X

UPON READING AND FILING the annexed Affirmation of TERENCE CHRISTIAN

SCHEURER, ESQ., dated the 16TH day of September, 2015, and upon all prior papers and proceedings

heretofore had herein;

LET the Defendant, BRIAN H. DENKER-YOUNGS, show cause before this Court at a Term, Part ____

thereof, before the Honorable David T. Reilly to be held at the Courthouse located at 400 Carleton Avenue

NY, on the _19th_ day of ~~September~~ OCTOBER, 2015 at 9:30 a.m., or as soon thereafter as counsel may be heard,

WHY an order should not be made and entered herein as follows:

              a)      Relieving TERENCE CHRISTIAN SCHEURER, P.C. as attorneys for Defendant,

              BRIAN H. DENKER-YOUNGS;

              b)      Pursuant to CPLR §2201, staying all proceedings in this matter for a period of at

least thirty (30) days after service of a copy of any order to be entered in connection with this application;

and;

      c)   ~~Fixing the legal fees due and owing to TERENCE CHRISTIAN~~

~~SCHEURER, P.C. in regard to the above entitled action, and impressing a charging lien in~~

~~the amount of $3,612.50;~~

      d)   Pursuant to DRL Sections 237 and 238, granting a money

judgment against the Defendant in favor of TERENCE CHRISTIAN SCHEURER, P.C.,

for the amount and balance due and owing to that Law Firm, and entering said judgment

in the Suffolk County Clerk's Office if said judgment is not satisfied within 15 days of the

granting of said money judgment;

      e)   Granting such other and further relief as the Court deems just

and proper; and it is further;

ORDERED, that TERENCE CHRISTIAN SCHEURER, P.C., is hereby relieved as attorneys for the

Defendant, BRIAN DENKER-YOUNGS; and it is further;

*the matter case will be conferenced on OCT 19 2015 at 9:30 AM. All parties to appear.*

ORDERED that, ~~pending the hearing and/or determination of the within application,~~
~~PLAINTIFF, its agents, servants and/or attorney are enjoined and restrained from taking any action~~
~~with respect to this matter except to oppose this motion;~~ and it is further;

ORDERED that pursuant to CPLR §2201, staying all proceedings in this matter for a period of at

least thirty (30) days after service of a copy of any order to be entered in connection with this

application; and

SUFFICIENT CAUSE appearing therefor, it is;

ORDERED that service of a copy of this Order together with the papers upon which it was based, upon the Defendant, BRIAN H. DENKER-YOUNGS, 25 Boerum Street, Brooklyn, NY by personal delivery and overnight mail/RRR, and the attorney for Plaintiff, Louis F. Simonetti, Esq., 144 Woodbury Road, Woodbury, NY 11797, by over-night mail/ RRR, on or before _Sept 25, 2015_, be deemed good and sufficient service.

GRANTED

SEP 18 2015

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

ENTER:

J.S.C.

**HON. DAVID T. REILLY**

Certified pursuant to Section 130-1.1a
of the Rules of the Chief Administrator

Terence C. Scheurer, Esq.
Attorney for Defendant, BRIAN H. DENKER-YOUNGS

Re: INQUIRY, Notice of Appeal Status

**Subject:** Re: INQUIRY: Notice of Appeal Status
**From:** Terence Scheurer <tcs@scheurerlawfirm.com>
**Date:** 8/22/2015 10:44 PM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>
**CC:** Stephanie Carrera <sct@scheurerlawfirm.com>

Brian,

As you are aware we have discussed at length whether or not to appeal Judge Reilly's temporary decision as it relates to exclusive use and occupancy. You agreed with my assessment that appealing said decision is NOT the course to take. Indeed, besides being economically unwise, an appeal of a temporary ruling could take many, many months (possibly longer). I explained to you that the prudent course of action is to seek a "speedy trial" date to resolve all issues. Again, YOU agreed with my advice.

During our last court appearance, both sides discussed exchanging discovery within 2 weeks and also setting up a possible 4-way to discuss settlement. This was agreed to even though the court believes that litigation is "stayed" while your case continues in bankruptcy court; John's attorney advised the court that he hired separate counsel to "lift" the stay in bankruptcy court. We are back in court on October 8th at 2pm to discuss the status of the case and to hopefully pick Trial dates. Again, this is the fastest, smartest and most economical way to move this case forward.

As to your request to file a separate complaint or counterclaim for an annulment, I'm not sure that is the way to go. If an annulment is granted than the court will declare your marriage a "nullity" which means your marriage never occurred. It also means you would not be entitled to any of John's retirement plans (pension, etc.) as you are not entitled to equitable distribution. Rather, your only argument would be a partition action for your home (and have the court determine what portion of the proceeds the parties are entitled to). Although your marriage is "short-term" and you will only receive a small portion of all of his retirement plans, I don't think you would want to forgo this money.

Lastly, as we discussed in court, I strongly advise you not to "post" anything further about this case on Facebook, emails or any blogging sites (whether created by you or not). The court was not happy with what John's attorney showed it regarding a posting by you; your posting addressed conversations and strategy that were discussed in private between you and your attorney (revealing attorney / client privilege such as possibly filing a motion to recuse the judge, etc.), the status of your case and also stating where the Judge lived. Such a posting does not shed a positive light on you. I understand that you deny that it was a posting but rather an email from you that someone "hacked into"; either way it does not help your case. I also suggest that you do not give any interviews to magazines, shows or blogs as it will only distract from the real issue in this case - - - - which is that your husband is a fraudster and a thief. I am happy to report that I was able to convince the court to move past the "postings" and focus on the real issues in the case but I need you to stop publishing any further postings. Why give your husband any ammunition against you when YOU are the victim in this case ? Why give him the opportunity to allege that you violated the Judge's order not to publish information about this case ? As to the people who accompany you to court (family, friends and advocates) please note that when you discuss with them

**Subject:** Re: Thursday's conference and Discovery
**From:** Terence Scheurer <tcs@scheurerlawfirm.com>
**Date:** 8/23/2015 10:13 PM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>
**CC:** Stephanie Carrera <sct@scheurerlawfirm.com>

Brian,

I must again "set the record straight" as to your mischaracterization as to what occurred in court this past week. You did not "miss" being called into chambers as it was an attorney conference only; neither you nor John were invited back to meet with myself, the court attorney and opposing counsel. Such a meeting is standard protocol and no court reporter was present. Indeed, when I came out of the conference I immediately reported to you what occurred and we discussed our strategy moving forward; my previous email to you memorialized what occurred in court.

I understand that you felt "burned" by prior counsel and I respect your frustration. However, it is imperative that moving forward you and I are "on the same page" and my hope is that I won't have to "correct" your emails in the future as to what occurred in and out of court.

As far as meeting with your bankruptcy attorney that sounds fine; I will provide you with good dates tomorrow. If we cannot meet in person, I suggest a telephone conference would also be helpful.

Good luck with your meeting with officer Mangi tomorrow.

Terence

Terence C. Scheurer, Esq.
TERENCE CHRISTIAN SCHEURER, P.C.
One Old Country Road
Suite 125
Carle Place, NY 11514
516.535.1500
516.535.1111 (fax)
tcs@scheurerlawfirm.com

---

**From:** Rabbi Dr. Brian H. Denker-Youngs, D.D. <rabbibriand@moderndivinities.com>
**Sent:** Sunday, August 23, 2015 12:55 AM
**To:** Terence Scheurer
**Cc:** Stephanie Carrera
**Subject:** Thursday's conference and Discovery

Dear Terry,

I wanted to follow up with you regarding the court conference on Thursday. I'm sorry that somehow I must have missed being called in. Per my prior instructions in-law and on-record, I wanted to grab from you the

:EME COURT OF THE STATE OF NEW YORK
NTY OF KINGS

.............................................

N H. DENKER-YOUNGS

              Plaintiff  *Pro Se*

-against-

ARD JOHN DENKER-YOUNGS, aka
ARD J DENKER-YOUNGS, aka E J YOUNGS,

             Defendant

.............................................

Docket No: 54013/15

ORDER TO SHOW CAUSE



Upon the review of Plaintiff's Order to Show cause, the verified affidavit in support of

laintiff *pro se*, **BRIAN H. DENKER-YOUNGS** and supporting exhibits attached thereto,

aring before this court in the County of Kings, on this 25ᵗʰ day of SEPTEMEBER, 2015, finding

:ient cause thereof, it is so ORDERED:

Defendant EDWARD J. DENKER-YOUNGS show cause before this Court at 360 ADAMS .

EET, BROOKLYN New York, on the ___5ᵗʰ___ day of __November,__ 2015 at

:30 o'clock in the morning ~~or afternoon~~ of that day, or as soon thereafter as the parties

~~ge heard,~~ why an order should not be made:

1. Appointing counsel for the Plaintiff pursuant to Judiciary law § 35(8)

2. Issuing an Order of Consolidation, consolidating Suffolk County Supreme Court Index No.
   169698/2014 into the within action establishing Kings County as the just and property
   venue for trial by jury in determining final judgement for dissolving the Denker-Youngs
   marriage and granting Plaintiff ancillary relief of an annulment.

3. Finding Maria Aliberitis, Esq and the firm of Simonetti & Associates in contempt of court
   and disqualifying the firm from representing the Defendant in the within action given their

*No Interim*
*Relief granted*

willful misrepresentation, misconduct and contributing behavior to concealing alleged acts of fraud in further extending litigations, driving up legal expenses and victimizing the Plaintiff.

4. Issuing an Order of Commitment and Arrest of the Defendant, Edward John Denker-Youngs to face charges and such allegation of unlawful acts to which Defendant be deemed answerable to a jury of his peers in a court of law within Kings County New York for such acts against the victim Brian Denker-Youngs and this honorable court.

5. Freezing all accounts and assets placing judicial liens until such time as an appropriate accounting and judgement is rendered hereon in on all accounts and assets thereof Edward J Denker-Youngs aka Edward Youngs, et al. and Matje G Youngs also known as the Matje G Youngs trust.

6. Directing that any and all barriers to entry be undone and with immediate effect your deponent be provided access to enter the marital home, all service providers and utilities as and such assets to which he may commence and restart services to the community in the capacity as a Rabbi to which was based and operated out of the marital home in Huntington, NY as well as his business services of www.longislandchuppah.com.

7. Compelling the Defendant to deliver upon this court no later than ten (10) days from the date of this order for on an assigned/approved forensic accounting all certified true and accurate statements and images for all required and requested financial accounts and institutions subject to discovery.

8. Any and all other relief that this honorable court deems just and proper.

2

it is **FURTHER ORDERED**, until such time as parties may be heard before this court in the

y of Kings, that all matters and appearances including that pending in the County of Suffolk

No. 169698/2014 are stayed;

d it is **further ORDERED**, that the Defendant by reason of his misconduct and disobedience and,

ct and refusal to comply with said order be and hereby is committed and directed to be

soned in the Kings County jail of the City of New York in which he shall be found there to

n charged with contempt until parties may be heard;

LANDICINO

d it is **further ORDERED**, that the Sheriff of the City or County of upon delivery of a copy of

rder certified by the Clerk of the Court, shall on receipt thereof, and without further process, take

body of Defendant **EDWARD JOHN DENKER-YOUNGS** and deliver such to the

missioner of Corrections of the City of New York, to be detained in close custody until parties

be heard before this honorable court and he shall otherwise be discharged by law.

d it is **further ORDERED** that any and all institutions and accounts thereof in possession of

f of the Defendant Edward J Denker-Youngs aka Edward Youngs, et al. and Matje G Youngs also

Matje G Youngs trust are hereby to be held and be frozen by Order of this court

d it is further **ORDERED** that that service with police assistance of County or Sherriff's office a

of this order together with the papers upon which it is granted upon **EDWARD J. DENKER-**

NGS on or before the _____ day of SEPTEMBER, 2015,

d it it **further ORDERED** a copy of this order together with the papers upon which it is granted

ed with the senior Clerk of the Court, County of Suffolk by personal service on or before the

day of September 2015,

Denied

No 202.7
notice Denied

3

It is further **ORDERED** a copy of the orders herein to be delivered upon Simonetti & Associates ~~this Order and the papers upon which it is granted Personally~~

sted at 144 Woodbury Road, Woodbury NY, counsel for the Defendant on or before

_30+h_ day of September 2015 by _Personal delivery_ be deemed sufficient

vice.

and it is further Ordered that all applicable automatic
ays, pursuant to the Uniform Civil Rules for the Supreme Court 202.16-e(c)
will remain in effect.

ed: September 25 2015.

ENTER

SUPREME COURT JUSTICE
HON. CARL J LANDICINO

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------X
BRIAN H. DENKER-YOUNGS    *Pro Se*

INDEX NO.: 54013/2015

Plaintiff,

-against-

EDWARD J. DENKER-YOUNGS, aka
EDWARD JOHN DENKER-YOUNGS
aka JOHN YOUNGS, aka E J YOUNGS ,
aka JOHN J DENKER-YOUNGS, aka
EDWARD JOHN YOUNGS,
aka E JOHN YOUNGS

**AFFIDAVIT IN SUPPORT**
*ex parte*
ORDER TO SHOW CAUSE

Defendant.
-----------------------------------------------------------X

**STATE OF NEW YORK      )**
                                          **) SS.:**
**COUNTY OF NEW YORK   )**

I, <u>BRIAN H. DENKER-YOUNGS</u>, Plaintiff in the above captioned matter appearing this 24th

day of September, 2015, herein *Pro Se* submits this affidavit in support of an *ex parte* Order of this

honorable court to which your deponent affirms the following to be true under penalty of perjury, and

herein states:

## <u>AS AND FOR THE URGENCY OF MATTERS</u>

1.        As suspected and now confirmed, upon appearance on September 22, 2015 before the

honorable court, Defendant and Defendant's counsel not only disgraced the honorable court in

and by appearing with a fabricated story with respect to a stay in affect issued by the Suffolk

County Supreme Court, but further did so with a plan to which Defendant's counsel together

with your deponent's former counsel Terence Christian Scheurer, Esq., worked in collusion to

scheme this honorable court, your deponent our Federal Government via filing of a motion to

which contained false misrepresentations with the United Stated Bankruptcy Court Eastern

District of New York, seeking relief by lifting the a Federal Stay imposed by your deponents Chapter 11 bankruptcy filing on March 13, 2015.

2.    On September 22, 2015 your deponent was left a FedEx envelope containing an Order to Show Cause signed by the Honorable Justice David T Reilly of the Suffolk County Supreme Court to which your deponent's former counsel had filed is attached hereto labeled *exhibit A.*

3.    Of specific reference the air bill to which is also attached indicates a delivery date of September 23, 2015, subsequent to our last appearance before this honorable court yet, Defendant and Defendant's counsel on September 22, 2015 upon appearance made representations to the honorable court that there had been a "stay in effect" as issued by the Suffolk County Supreme Court, to which is evidenced in the attached as being a false statement

4.    The context to which Mr. Scheurer Esq alleges grounds for the filing of this Order to Show Cause is fabricated and incorrect as indicated in the attached communications affixed hereto and labeled *exhibit B.* As a result of this Order to Show Cause the proceedings before the Suffolk County Supreme Court have now been compromised as in order to receive an opportunity for a proper defense, such sensitive information divulged would automatically position your deponent in a negative light and thus leaves your deponent in a precarious position obviously to which was the intent by filing the same.

5.    Such intent is easily displayed in the attached exhibit C to which the September 19, 2015 appearance was not scheduled added to the docket at 3:32pm on September 21, 2015 to which your deponent suspected was a trick by a corrupt and dishonest Terence Schurer, Esq.

6.    Defendant through his counsel to which have yet to file a Notice of Appearance as of even date, sought relief from this honorable court requesting a "stay" to which was not entertained and thereafter requesting a "dismissal of the within action as being duplicitous to

an on-going and "year-long" litigation in Suffolk County. Ms. Aliberitis colors your deponent as being the faulted party. As exhibited, the docket for the Suffolk County Supreme action Index No. 169698/2014 and certainly having cost your deponent $126,000 in legal fees thus far and which itemized legal bills are attached hereto labeled *exhibit E* is quite the lengthy docket, yet of interesting fact, the case has yet to enter discovery as the Defendant has not made one attempt to turn over any records nor his counsel except to divert attention to the same to which your deponent respectfully requests this honorable court issue an order to compel the defendant to comply with such demands for discovery or thereafter grant such request of your deponent for the issuance of subpoenas directly to the needed and identified parties to obtain the records which are sought.

7.    Your deponent is as a permanent resident of Kings County and asserts his right to bring an action of any sorts, matrimonial included concurrently. Courts may maintain concurrent jurisdiction over claims which are purely personal in nature and can proceed simultaneously with the litigations only until the judgement of one court sets up the defense of *res judicata* in the other court. See *Princess Lida of Thurn & Taxis v Fitzgerald, 305 U.S. 456 (1939).*

8.    Your deponent wishes to clarify for the honorable court that Ms. Aliberitis' conveyance regarding my many attorneys, is merely the direct result that lies and injustice have prevailed for nearly a year in a system to which your deponent was always taught to respect and always tell the truth. Thus your deponents' attorneys are to whom your deponent must hold accountable as not doing their job well since nothing but lies and frauds have prevailed over the truth.

9.    The primary and most disturbing of Defendant and Defendant's attorney's apparent performance for this honorable court earlier his week was a likely intent to convince us that the matter herein cannot move forward, Defendant through his counsel from the law firm of

LaMonica Herbst & Maniscalo, LLP filed a motion on September 21, 2015 with the United States Bankruptcy Eastern District of New York attached hereto labeled *exhibit F* seeking relief from the Federal Stay allowing proceedings in Suffolk County Supreme Court matrimonial actions to move forward finalizing the dissolution of marriage and equitable distribution.

10.    Defendant ironically makes no mention that his estranged spouse and debtor-in-possession as having commenced the action herein alleging financial and economic fraud and Domestic Abuse nor that discovery has yet to take place thus, being far from a determination on what exactly is defined as equitable in this case given the significant amount of funds and thefts by the Defendant and his mother in the hundreds of thousands of dollars converting marital funds and laundering of monies.

11.    Defendant only filed for such relief on September 21, 2015, an ironic one day before appearing before this honorable court yet a stay has been in effect by the United States Bankruptcy Court since March 13, 2015. Your deponent can only assume that such requests was an intentional underhanded and pre-mediated attempt to force the settlement and/or bring about an immediate ruling for the dissolution of the Denker-Youngs marriage to which Defendant hopes to manipulate his way in avoiding any inquiries into Economic Domestic Abuse, fraud, and the other acts as alleged by your deponent.

12.    This honorable court must see through Defendant's smoke screen and immediately find the Defendant and Defendant's counsel in contempt of court having willingly attempted to deceive this honorable court and further abuse your deponent.

13.    Within the Defendant's signed declaration, Defendant accepted without issue the venue of Kings County for the United States Bankruptcy Courts as proper venue and as such, your deponent respectfully asks this court accept such affirmation made to a US Federal Court as the

Defendants consent and agreement, that upon consideration by this honorable court, your deponent motions for an Order to Consolidate actions for the purposes of judicial economy and justice, combining Suffolk County Supreme Index #: 169698-2014 to the within action, establishing Kings County as the proper venue hence forth with respect to matters pertaining to the severing of ties between the parties herein.

14.    To further trouble matters and reinforce the your urgency and appropriateness of Kings County as the venue of jurisdiction, your deponent of the belief that the defendant's Uncle to whom has never missed an appearance in the Suffolk County Supreme action, Arthur Van Nostrand and the Honorable Justice David T Reilly are acquainted with one another outside the bounds to which raise question to the perceived potential of impropriety. Attached and labeled *exhibit G* is documentation establishing the same.

15.    Your Deponent also submits issue and disputes the validity of Suffolk County Supreme Court Index No: 16968/14 as questionable jurisdiction over your deponent and as having violated Plaintiff's constitutional right to due never having been personally served pursuant to CPLR § 308 and further pursuant to CPLR § 302(b), the Supreme Court County of Suffolk lacked jurisdiction over your deponent.

16.    Pursuant to McKinney's Civil Practice Law and Rules §306-b the summons must be served on the defendant within 120 days of the filing by personal delivery to the defendant, or else in such manner as a court order may direct. Neither has transpired in Suffolk County thereby establishing the action a dismissible and in lacking due process.

17.    On August 27, 2014, after Plaintiff's initial inquiry to the Defendant regarding the discovery of gregarious financial conduct by the Defendant, a forewarning was communicated to the Defendant by Mario DeRossi and attached hereto as *exhibited H* along with supporting emails and communications to which confirms your deponents intention from the beginning

with respect to the allegations contained within my Complaint for Divorce which pre-dates the Suffolk County filing by the Defendant.

18.     Your deponent has always maintained and been a permanent and voting registrant herein the County of Kings having been raised in Williamsburg, Brooklyn living in a development known as Lindsay Park Corp. to which my parents are active members of the community, its leaders and the development's Michel Lama's Cooperative Board. Attached hereto labeled *exhibit I* your deponents driver's license, several years tax returns filed in Brooklyn to which I pay city taxes and attached.

19.     The Defendant has taken it upon himself to establish residency for himself in at the Michela Housing Corp. complex apparently as is exhibited and labeled *exhibit J* to which is the mortgage application for the marital home on record, having been refiled just prior to closing by the defendant having removed your deponent without consent yet, ironically indicating that he was living in Lindsay Park to which has never been farther from the truth.

## AS AND FOR THE TRUTH OF HOW THIS ALL BEGAN

20.     On August 25, 2014, subsequent to your deponent having met with Mr. DeRossi and an accountant, your deponent placed a call to the Defendant, while still in shock posing an inquiry as a "test" hoping to be incorrect about what had been discovered. A certified and true transcription of the call is attached hereto and labeled *exhibit K* along with a secondary transcript of a September 7, 2014 discussion with Jack Crabtree, Pastor of Shelter Rock Church in Syosset, New York, the Defendant's pastor for which we spoke of his filing for divorce as his "defense mode", how his mother Matje G Youngs never accepted the marriage, and that all of a sudden all this money was missing and requested of the defendant he submit to an accounting and audit to which he has yet to turn over official documents or allow a third party

to validate his defense of "he was paying bills." He certainly was paying bills, his mother's bills and a scheme conjured up by the two of them.

21.    Whereas EDWARD JOHN DENKER-YOUNGS while misleading Plaintiff as to his cooperation in a household audit, through his counsel Louis Simonetti, he filed a summons for divorce with notice with the Supreme Court State of New York, County of Suffolk Index No. 169698-2014.

22.    Your deponent's complaint and allegations contained within my complaint for annulment of the marriage are attached hereto as *exhibit L,* have been consistent and remains still allegations by which the defendant and his counsel have for a year now attempted to smoke screen and avoid being answerable to alleged fraud and criminal acts, Economic Domestic Abuse.

23.    PLAINTIFF further makes light of  the adjoining cases before the United States Bankruptcy Eastern District of New York #: 15-41069 (CEC) in Kings County, New York State Supreme Court County of Kings Index No: 511259/2015, the FAMILY COURT OF THE STATE OF NEW YORK Docket No. O-23670-15 and the prior CRIMINAL COURT of the STATE OF NEW YORK Order of Protection #: 2015-009561.

24.    The improper service in itself and by which defendants' counsel as is illustrated in a blank affidavit of service of summons, and upon your deponents' counsel having sent USPS a Notice of Appearance on September 11, 2014 by first-class mail thus making the September 11, 2014 date for service as the docket illustrates impossible given the Notice of Appearance would only have been effected in receipt by Simonetti at some point in time *after* September 11, 2014. Pursuant to CPLR § 3211(a), the Supreme Court State of New York, County of Suffolk lacks jurisdiction. Even Plaintiff's Affidavit of Service of the Verified Complaint is a notarized statement about an act yet to occur having a date of September 22, 2014 by the

notary and Ms. Fiorello indicating she performed service on September 23, 2014. One would assume a notary would not affix his stamp to a declaration of an act "yet to take place."

25.    Please also take note attached and labeled *exhibit M*, your deponents answer via counsel at the time Natasha Meyers, Esq. to which stated that I would *"neither confirm nor deny"* such allegations as your deponent was both recovering from a stroke and being diagnosed with a cerebral aneurysm as well as trying to get down to the bottom of what was going on.

26.    Further, I am within my legal right as the captioned "defendant" in Suffolk County Index No. # 169698-2014 to bring about counterclaim and proceedings against the Plaintiff and for which giving the financial hardship suffered by your deponent being forced into bankruptcy due to the gregarious criminal conduct of Edward Denker-Youngs, I cannot afford to retain counsel to represent me, must rely on being able to avail myself to the services offered through Brooklyn Law School in downtown Brooklyn and avoid additional costs and overhead or time away from work commuting extraneously to Islip, Suffolk County New York to which I am prejudiced from a fair and just proceeding.  Hereon in, your deponent does submit a request on motion to the court for an order pursuant Judiciary Law § 35(8) appointing counsel to assist your deponent hereon in or to issue an order directing the Defendant to pay a preliminary award of counsel fees to the plaintiff in the amount of Thirty Thousand ($30,000) Dollars with leave. Given the historical background of the party's engagement and Defendant's conduct, $30,000 may last approximately a month at the rate things have gone.

27.    Your deponent is providing a duplicate copy of his Bankruptcy filing and supporting schedules to which is attached hereto and labeled *exhibit N* but respectfully asks the court's permission to allow your deponent to redact the same exhibit in subsequent copies of the Order to Show Cause in compliance with an Order of Chief Justice Carla E. Craig to which is attached.

## AS AND FOR THE NEED TO HAVE FORMAL INVESTIGATIONS AND INQUIRIES

## BY PROPER LAW ENFORCEMENT AUTHORITIES

28.    Your deponent has sadly uncovered the true individuals and white collar criminals the Defendant and his mother are having lured your deponent into a marriage to commit such economic fraud and acts to launder and embezzle money, assets and credit. Their life of such conjecture did not just start with me and unless stopped, will only move on to their next victims as this has been done before. They fear nothing, defraud others, ignore and conduct themselves as if they are above the law and such conduct must cease immediately.

29.    In purchasing the marital home in Huntington, NY to which your deponent has not seen the inside of since December 11, 2014 having been issued a directive "off the bench" as a direct result of lies by the Defendant and his counsel, thereafter a prolonged delay and series of adjournments and non-appearances by the Defendant. A hearing on the matter was delayed until April 30, 2015 and did not concluded thereafter until May 30, 2015 to which despite the defendant's smoke screen lies and misrepresentations being admitted to in open court, Honorable Justice David T Reilly still extended exclusive use to the Defendant making no mention of his contempt of court or open court admission in said order. Your deponent has filed a notice of appeal having suffered thus far a loss of nearly $30,000 just from his one venture of longislandchuppah.com which was based out of the marital residence together with his services of Modern Divinities Corp. It is worth mentioning that Defendant's mother lives in a 4-bedroom 3-bathroom two-story farm ranch on .68 acres in the same town of Huntington, to which the Defendant is co-trustee and caretaker of.

30.    Attached hereto labeled *exhibit O* is a letter from Jay Silverberg, Managing Agent of Lindsay Park Housing Coop to Alexa Mercier dated September 2012 which illustrates that the sole shareholder and occupancy of the small studio apartment is Brian Denker. Hence forth, the

Defendant made willful and knowingly misrepresented information to Chase Home Mortgage, claiming residency in Brooklyn, NY.

31.    Such acts are not uncommon for the defendant as is exhibited by the attached labeled *exhibit P* which are the closing documents for Defendants initial purchase of a home located at 99 West Shore Drive, Huntington NY 11743 showcasing the purchase price as $300,000 and a mortgage of $270,000.    Further, Defendant continually refinanced the home consistently removing equity in the home and in 2003 added as second mortgagor E J Youngs, an alias used by the Defendant as is illustrated in the public records of the County of Suffolk attached and labeled *exhibit Q* and as alleged in my initial complaint for annulment citing the many fraudulent acts by the defendant.

32.    Please make special note of the accompanying documents and statement by Defendants' counsel for closing the sale of that property. Defendant was not able to close title at the time of sale as is indicated because defendant had liens and owed the bank money.

33.    Attached and labeled *exhibit R* is a Uniform Loan Application discovered within the marital home to which illustrated the Defendant filed and received a loan on the same property purchased in 2001 for $300,000 for nearly $305,000 to which Defendant again intentionally mispresents the original value and purchase price of the home as being $625,000.

34.    To further establish merit behind your deponents filing and action against the Defendant on the grounds of fraud, attached here to labeled *exhibit S* are various letters and emails in range of date between the Defendant and Defendants' relatives as well as standard worksheets of sorts in defendants handwriting to which exemplify Defendant's financial hardships prior to meeting your deponent, Defendant's mother's outward disdain to the homosexual lifestyle, an clear representation of the defendants own inner struggles with accepting himself as a homosexual, and even the most disturbing are statements in the defendant's own handwriting

like: "G-d detests homosexuals", "Be forewarned", "how to help a homosexual", "The Jews, G-d is not done with them yet", "homosexual offenders", referring to the defendant being deceived and defendant's thoughts of when to tell the truth and when not to and Defendants' mother's birthday card of 2013 to which she references a biblical passage of "John 14:16-17" to which it states "And I will pray the Father and he shall give you another Comforter, that he may abide with you forever."

35.    Your deponent to this day is not only baffled by the same but is left wondering to whether the Defendant is even gay given such hatred and disdain found within such rhetoric.

36.    In even further support to the allegation of fraud and to which reinforce allegations that both Defendant and Defendant's mother were in on a scam of your deponent, attached and labelled *exhibit T* are checks discovered within our joint Chase checking account to which contain handwriting and a signature that is not the handwriting of the defendant (as is exhibited in his notarized Signature certification for closing on our home), but rather matches closely to that of Matje G Youngs who was not ever authorized to draw funds or write checks from a checking account shared by your deponent and the Defendant.

37.    Further indicative of the same attached as *exhibit U* is a letter from Chase Executive Office referencing a Chase credit card ending in 9039 to which attached as *exhibit V* is statements from discover with a sudden balance transfer of $4,000 to your deponents credit card and acknowledgement of the same reported fraud to discover, several checks drawn upon the home equity line of credit that the Defendant has maxed out in a matter of 8 months without my knowledge or consent,  together with a letter from your deponents physician "at that time" where on January 2, 2013 was clearing your deponent for surgery on January 7; also illustrated in *exhibit W* your deponents credit card bill and January 7 transactions from Bank of America with usage at CVS, Riteaid, Burger King and a Floral shop in Farmingdale to which

the Defendants mother works within minutes, all while your deponent was under the knife having his spine cut open and drilled into. Defendant's mother never had authorization to use your deponent's credit cards.

38.    As has also been exhibited despite Defendants' documented and alleged act of mortgage fraud, he is known by more than five difference active aliases.

39.    Defendant and his attorneys represent that my credit is horrible (thanks to the Defendant's conduct) but also say I was unable to be considered for a mortgage however, your deponent as illustrated in the attached exhibit X, was a part of a loan application process for Chase Home Mortgages Loan(s) #: 1118165989 and Loan #: 1118322307 to which the Defendant from day one lies to say had bad credit and couldn't get a mortgage.

40.    Defendant is a pathological liar, and while it pains me to say that about someone I had fallen in love with, he is an outright fraud and liar intentionally committed acts to which had we not been married would be prosecuted as a crime as per the Suffolk County District Attorney Maureen McCormick to whom is quite familiar with the circumstances and has been consulted on several occasions advising that the only way in which they can engage would be at the order of a court since we are married and urged that my attorney seek such referral from the matrimonial judge. As such, your deponent requests that this honorable court take such under consideration for issuing an Order on Referral to the Office of the Kings County District Attorney to launch formal inquiries into both Edward J Denker-Youngs and Matje G Youngs aka the Matje G Youngs Trust.

41.    In April 2015 a family court order of protection violation was filed as an Order to Show cause because counsel to the defendant pulled such petitions into the supreme court. None the less Judge Bivona signed such order to show cause and as illustrated in the attached *labeled X*

Appellate Affidavit to the 2nd Department Court of Appeals, I stand by my position that I was coerced under duress to withdrawal the motion or be sanctioned by needed to proceed *Pro Se.*

42.    Defendant's counsel will portray to the honorable court that this was *only a 3 year marriage.* As consistent in my testimony, Defendant and I have been together since February 2009. Prior to 4-days before our legal solemnization in the State of New York, there was no legal recourse to which to define our relationship by law except for the mutual understanding that existed between the defendant and I; to which we had joint car insurance policies and joint bank accounts with Bethpage Federal Credit Union and had already begun establishing communal and joint property as of August 2010. Attached hereto labeled *exhibit Y is* proof of the same, and a copy of a statement from Bethpage Federal Credit Union.

43.    Defendant and his counsel continue to put focus on an alleged claim that Defendant has a sizable separate property claim in the marital home, for which he cannot substantiate. Attached labeled *exhibit Z* are copies of the checks and your deponents 401k withdrawal made and associated with the purchase of the marital home to which I have been ejected from since December 11, 2014, stripped of my right to due process for which an order off the bench was issued directing me to vacate, leave my businesses, and not have an opportunity to defend myself until April 30, 2015 some five months later.

44.    Defendant is a fraud and is also showcased not only in his lies but in back-handed collusion with his mother Matje G Youngs and Insurance agent Ken Bell of K Bell & Associates for which the attached *exhibit AA* will showcase that at the direction of Chase Mortgage representative Alexa Mercie and supported by certified and true copies of security documents for Chase, I am a co-owner and was insured at the time of closing however, Defendant in collusion with his mother's friend Ken Bell  had new declarations issued immediately after closing.

45.    Attached is *exhibit BB* to which is a response to your deponent from the New York State Department of Finance in reply to a complaint of Ken Bell where it references Bell's explanation as being that he didn't know the defendant and I were married or I was co-owner of the house however, your deponent was included in declarations for the day of closing, thereafter immediately one month later, Defendant and Bell under penalty of perjury submitted applications to the FEMA Flood  insurance program listing himself as sole owner. Another attempt by the Defendant to defraud our Federal Government.

46.    Defendant and his counsel have in every which way lied, submitted forged and not real documentation in their attempt to victimize the victim.  Defendant will insist Suffolk County as a proper venue, regardless of my ability to have ease of access to court systems of support, be able to have supportive access to lawful jurisdictions that are outside the auspices of his connected network to support and forge documents as he has done leveraging his friends with the Suffolk County Police Department, local Justices and members of the Fire Department etc. They skirt around as is exhibited in *exhibit CC* letters to/from Jennifer Schenker, Esq. to Maria Aliberitis, Esq pertaining to the pay stubs of my estranged spouse and suspected decrease in medical coverages which still go unexplained as to why the defendant's paycheck deductions have all changes since the initial filing for divorce in Suffolk County. Ms. Aliberitis presents in defense what is said to be a "screen shot" in an email instead of delivering in person certified true and accurate documentation and explanations from his employer. The defendant has over $100 less per month taken out of his paychecks toward health insurance premiums while your deponent is walking around with a cerebral aneurysm and a significant medical history, this shows the true character and kind of individual the Defendant really is.

47.    Attached exhibited and *labeled DD* are the charges and arrest record of Edward John Denker-Youngs of May 6, 2015. To which in the defendants explanation and that of his

counsel state that charges were dropped because of the transaction being a false report together are the supporting police reports and documents from Citibank which show case the banks' investigation. NYPD Officers are not going to travel to Suffolk County New York to take someone into custody unless they have evidence to support an arrest. Just because a person doesn't proceed to trial doesn't mean they didn't commit a crime. The assigned Brooklyn DA informed your deponent that they had difficulty to prove intent which is why charges needed to be dropped and that absent my ability of making a report in Suffolk County as a result of the Defendant's manipulation of friends in our police prescient jurisdiction, the Brooklyn DA's office and their hands were tied.

48.    Attached and as provided to the Family Court in my recent petition, please find examples of fraudulent payees discovered at Bethpage Federal Credit Union to which the bank manager can confirm are set to route money to/from my family's business checking into an account in that is in the defendants primary name. As also is attached to this *exhibit EE* are supported reports to internal affairs regarding the Officer Mangi who took the report being the brother of my estranged husband's friend former Detective Christopher Mangi.

49.    An individual such as myself by human nature does not pursue and seek assistance to the extent that I have based upon lies, rather pursue such with the vigor I have because a grave injustice has taken place and a criminal walks free having stolen hundreds of thousands of dollars and put me into bankruptcy to clear his debts and criminal acts of fraud.

50.    Defendant and his attorney will advise the honorable court that as a direct result of my bankruptcy, matters are stayed.  They will tell you  that Discovery was stayed attached *labeled FF* you will see that discovery demands were exchanged in October and November 2014 respectively in Suffolk County and my records delivered to my attorneys to provide

to the Defendant yet they have provided nothing in 5 months preceding my bankruptcy filing. If he had and did turn over true and accurate documents, he would incriminate himself and show that he has perjured himself and taken our system of justice and used it to abuse me further.

51.    *Attached labeled GG* various examples of Defendants accounts and proof of assets he in fact withheld of even listing on his Statement of Net Worth (which by the way also claims $190k went into renovations on the home, not the purchase) thus defendant upon realizing all the renovations were paid with checks and traceable changes his claim not to mention from $190k its now $160k.

52.    After learning of secretive 403(b) retirement trusts he was funding while dissipating without my knowledge or consent all the equity in our home, attached *exhibit HH* to which is an email from the defendant to Glenn Gordon his personal financial advisor after the initial call confronting him inquiring about an "early withdrawal." While your deponent was fighting for his life operation and operation, the Defendant and his mother were funding retirement trusts, living trusts, stripping your deponent of any and all financial independence.

53.    Attached and labeled *exhibit II* is the Trust of Matje G Youngs established just months prior to our legalized marriage for which we had already been in the stages of planning to legalize our marriage.

54.    Attached and labeled *exhibit JJ* drawn up at the same time and by the same counsel using similar terminology just mere months before legalizing our marriage, you will note your deponent listed as beneficiary #14 as Defendant's "special friend."

55.    While fighting for my life through five major operations, cancer and a stroke, to which defendant's counsel minimizes as being "plastic surgeries" or optional, I went to work with

42-staples in my stomach while the defendant stole and stole some more. I wouldn't wish on my worst enemy what I have had to preserver through and the journey and struggle I have had.  Shame on Defendants counsel for taking such struggles to attempt to minimize the pain and suffering I have endured as she defends a criminal.

56.    Attached and *labeled KK* are copies of my medical records, reports, surgical notes and pictures of the same throughout to which show while I recovered and struggled the plaintiff stole. Our home was complete by March 2013 yet the thefts all started and began through and thereafter.

57.    Defendant has tried on several occasion to evade acceptance from courts of service examples of the same for federal subpoena's in relation to my bankruptcy case are included in attached *exhibit LL* and the result of defendant's defiance to cooperate and provide any statements or documents as requested from 2010 forward including all check and images of the accounts listed in *exhibit MM.*

58.    *Exhibit NN* attached are just some examples of the defendant's manipulation of monies as referenced in my complaint for divorce to which he must be held accountable for such conduct and theft, deception, and economic financial abuse as together with he and his mother, Defendant has converted monies in sum totals north of $217,000 plus depleting a $125,000 Home Equity Line of Credit and placing your deponent into bankruptcy. Depositing and cashing funds, transferring debts, purposefully manipulating funds to pay thousand upon his credit cards and to pay minimum balances on mine and/or intentionally cause items to present with non-sufficient funds so overdrafts go onto my separate cards.

## AS AND FOR THE DISQUALIFICATION OF DEFENDANT'S COUNSEL AND FIRM

## OF SIMONETTI & ASSOCIATES

59.    Your deponent raises issue with the representation and appearance by members of the firm Simonetti & Associates inclusive of Louis Simonetti, Maria Aliberitis, Anna Weave and Timothy Fallon on grounds of continued violations of the New York State Rules of Professional Conduct as outlined herein attached hereto labeled *exhibit NN*.

60.    There also exists such filed complaints as attached hereto to which your deponent in opposition of the firm Simonetti & Associates representation of the Defendant due to continued contempt against the court with willfully making false statements and conducting themselves in such a manner to have violated several times the New York State Rules of Professional Conduct and to which your deponent has filed complaints and intents upon approval from the United States Department of Justice Bankruptcy Trustee to bring a civil action against the firm for damages in their willing participation and acts perpetrating fraud, knowingly misrepresenting items of material fact such that attached hereto and labeled *exhibit R* are two affirmations provided by Louis Simonetti to the appellate court and Third District Court respectively.

61.    To the extent Mr. Simonetti presents to the Third District court on page 3, paragraph 16 directly contradicts therefore any request or submission for relief to this honorable court and becomes a tale of manipulation by Mr. Simonetti to which the honorable court should find such conduct contemptuous to the extent Mr. Simonetti willfully intended to misrepresent and permeate and protect acts that are disingenuous.

62.    Taking note for example to his knowing and willing perjury on behalf of his client to his references that your deponent refused to pay any bills on the marital home. Of specifics, please reference attached hereto and labeled *exhibit OO* signed statements with expenses

having to do with the marital home as well as emails to the Defendant regarding marital bills and your deponents payments all to which Defendant's counsel is aware but none the less continues to lie to an Appellate court as such.

63.     Further, pursuant to Defendants consistent claim on the marital home and separate property first is absent of mention in his originally filed summons as well as his further submitted Complaint and did not appear which by procedure lays foundation to any such claim being forfeited. See McCoy v. McKoy, 120 Misc. 2d 83, 465 N.Y.S.2d 639 (1983).

64.     Additionally, another example of Defendant and Defendant's counsel's misconduct and willful intention to deceive the honorable courts of this state, further abuse your deponent and restrict my constitution rights to due process, justice and the truth to be told, referencing Defendant's Affidavit in Opposition dated November 24, 2014 page 6 paragraph 8 labeled *exhibit PP* with a separate property claim first made of $191,000 and Simonetti's September 2015 affirmation on page 3 paragraph 7 of $160,000 labeled *exhibit QQ* and Defendants' claim as creditor to your deponents' bankruptcy estate inclusive of the marital home being administered here in Kings County, NY of $160,000 again referencing the HUD from the sale of his home..

65.     Attached and labeled *exhibit RR* are the HUD statements from Defendant's sale of his home and the HUD statement from the purchase of the marital home respectively to which upon information and belief attached and labeled *exhibit OO* based upon the initial conditions for the mortgage to Brian and Edward Denker-Youngs as is highlighted the Defendant was in debt to the bank as of April 2012 for $191,000.

66.     Further attached here to referenced in Simonetti's affirmation is the submitted lease agreement your deponent is accused of signing without the Defendant's knowledge to which he has already admitted via clear and direct communication of tenants to have

misrepresented such fact which is illustrated by the very attached two emails with the Defendant pertaining to the tenant at points the cottage was rented. Again illustrating misrepresentation of admitted fact that Mr. Simonetti is aware of and chooses to fraudulently misrepresent.

67.    Your deponent does not reference this to the honorable court as a venue for appeal, rather to establish first just cause for why Simonetti & Associates must be disqualified in their representation of any fact to his court and/or matter and to further find the Defendant's credibility to be nothing less than disgusting in seeking out to harm and abuse your deponent in continuing to carry out criminal acts for which the Plaintiff seeks justice through the very venue your deponent was taught and raised to respect and to tell the truth when engaging with our system of justice always. Plaintiff also appeals to this honorable court with a sense of urgency as your deponent seeks out justice and has had the justice system instead used as a tool to punish me for such resilience.

WHEREFORE, BRIAN H. DENKER-YOUNGS respectfully requests that in light of the mentioned and statements made herein together with the exhibits attached to this *ex parte* Order to Show Cause, in the interests of judicial economy, this honorable court issue Orders:

1. Appointing counsel for the Plaintiff and/or issuing an order for an award of counsel fees as the Defendant is the monied spouse.

2. Combining Suffolk County Supreme Court Index No. 169698/2014 into the within action establishing Kings County as the just and property venue for trial by jury in determining

final judgement for dissolving the Denker-Youngs marriage and granting Plaintiff ancillary relief of an annulment.

3.  Finding Maria Aliberitis, Esq and the firm of Simonetti & Associates in contempt of court and disqualifying the firm from representing the Defendant in the within action given their willful misrepresentation, misconduct and contributing behavior to concealing alleged acts of fraud in further extending litigations, driving up legal expenses and victimizing your deponent.

4.  Issuing an Order of commitment and arrest for the Defendant, Edward John Denker-Youngs to face such charges and be tried by a jury of peers in a court of law within Kings County New York for such acts against the victim Brian Denker-Youngs and this honorable court.

5.  Freezing all accounts and assets placing judicial liens until such time as an appropriate accounting and judgement is rendered hereon in on all accounts and assets thereof Edward J Denker-Youngs aka Edward Youngs, et al. and Matje G Youngs also known as the Matje G Youngs trust.

6.  Directing that any and all barriers to entry be undone and with immediate effect your deponent be provided access to enter the marital home, all service providers and utilities as and such assets to which he may commence and restart services to the community in the capacity as a Rabbi to which was based and operated out of the marital home in Huntington, NY as well as his business services of www.longislandchuppah.com.

Q

**Subject:** Re: Double checking the list of creditors
**From:** Lawrence Morrison <lfmlawyer@gmail.com>
**Date:** 3/24/2015 11:16 AM
**To:** Rabbi Brian <rabbibriand@moderndivinities.com>, Marcos Coto-Batres <marcoscb@m-t-law.com>

Hi Brian:
We will correct that.
There are other documents that need to be prepared and my paralegal will be reaching out to you later today or tomorrow to get these accomplished.
Please send me that drop box that you sent again I don't have access to it right now as I am working remotely.
Thank you,
Larry Morrison

Sent from my mobile device


On Mar 24, 2015, at 2:01 AM, Rabbi Brian <rabbibriand@moderndivinities.com> wrote:

Dear Mr Morrison

I just wanted to check with you as I was reviewing the documents I received from the bankruptcy court and a couple of things are not listed correctly namely my legal last name is Denker - Youngs. I also noticed that Beth Page Federal Credit Union isn't listed on that by far is the largest creditor almost $124,000. Additionally there are medical providers and such. I just wanted to make sure that I did not do anything incorrectly or if I need to redo something.

Hope you had a safe trip and thank you again for everything.


Sent from Virtru for Android



**Modern Divinities, Corp.**
Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited
www.moderndivinities.com

proud recipient of

Case 1-15-41069-cec    Doc 50-3    Filed 10/05/15    Entered 10/05/15 13:02:39

eTrack Supreme: DENKER-YOUNGS, EDWARD JOHN vs. DEN...

**Subject:** Fwd: eTrack Supreme: DENKER-YOUNGS, EDWARD JOHN vs. DENKER-YOUNGS, BRIAN H. (016968/2014) Updated
**From:** Rabbi Brian <rabbibriand@moderndivinities.com>
**Date:** 9/22/2015 3:55 PM
**To:** Lawrence Morrison <lfmlawyer@gmail.com>
**CC:** Marcos Coto-Batres <marcoscb@m-t-law.com>

Hi Mr Morrison

Wanted to alert you that had a bit of a situation however thankfully I guess I rose to the occasion and it turned out OK but apparently Terry submitted in order to show cause for a judgment against me and to be allowed to withdraw from representation despite some weeks ago discovering he was in collusion and I discharging him. The judge signed an order to which I was not given a date were delivered anything from the court to appear on my own defense which they entered on the docket yesterday. On john's appearance in case county today his attorney tried to institute a stay or dismissal on the complaint and action I filed in Kings County for annulment accusing him of economic domestic abuse and fraud saying such was staged by Judge Riley's order which the judge did not buy.  then she tried to dismiss it which she wouldn't buy it without motion papers and so we are now back November 5.

 For some reason I had a feeling I was being tricked and when I looked at the pacer I swear it John submitted a motion to lift the bankruptcy stay I just claimed that that was preventing the divorce from being finalized.

Hence he didn't even disclose that there is an action as such in Kings County further I guess establishing that he's a liar and a cheat and a fraud hopefully will pursue the fact that he has to turn over documents and answer too we are all this money is. The judge did ask me and advise me to sleep considering an application to the court for counsel fees or if I wanted representation figured I would check with you on any thoughts since it's Kings County I have motioned for an IDV court and it's in front of Judge Langacino.

I also received a demand for payment or arbitration by Capitola's office for $46,000 otherwise commencing in action against me how do I respond or what do I do with that typically?


**Best**

**Rabbi B**

**BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
t: 347.644.9482    e:rabbibriand@moderndivinities.com
**Modern Divinities, Corp.**
*Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*

**Subject:** Closing Documents for 33 Pennington Dr
**From:** Rabbi Brian <rabbibriand@moderndivinities.com>
**Date:** 5/6/2015 11:51 PM
**To:** LMorrison <lfmlawyer@gmail.com>, Jennifer Schenker <jschenker@capetolalaw.com>, Jen Schiff <jschiff@capetolalaw.com>, Jim Ingoglia <jingoglia@raiserkenniff.com>, Jesse Cardenas <jessec@raiserkenniff.com>
**BCC:** driver1011@aol.com

Attached, please find a complete set of copies of closing documents for the mortgage on 33 Pennington Dr direct from Chase that i received today.

Of particular please note the 2012-2013 evidence of property insurance  (submitted for closing) vs the 2013-2014 and the removal of my name for some reason unbeknownst to me.

---

--- Attachments: ---------------------------------------------------------------

PenningtonDrive Closing Docs.pdf                                    961 KB

10/2/2015 5:36 AM

**Subject:** Re: touch base
**From:** Lmorrison <lfmlawyer@gmail.com>
**Date:** 7/2/2015 6:54 AM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>

Yes the motion is complete . I'm waiting for a hearing date from Chambers.
Let's get on the call on Monday please.
 Happy Fourth of July .
Best regards,
Larry Morrison
Sent from my iPhone

On Jul 2, 2015, at 3:16 AM, Rabbi Dr. Brian H. Denker-Youngs, D.D.
<rabbibriand@moderndivinities.com> wrote:

Hi Mr Morrison - did things go ok with the motion for the subpoenas?

I'm awaiting a response on next steps on the matrimonial side attached is what we've
uncovered as to how the judge is acquainted with John's family.  Apparently in 2013, the
Judge was up for an appointment as Town Attorney and didn't get it.  John's uncle the
same one that suddenly was working at the bank that we have the home equity for a
short period that was odd, is good friends with the Town Justice (same town that Judge
Riley served as receiver of at times and was to get the appointment to Town Attorney).

The uncle (who my husband has never really been close with) has not missed one court
appearance...

--



### Modern Divinities, Corp.
Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited
www.moderndivinities.com

proud recipient of

**Subject:** Chase Sapphire Credit Card - DenkerYoungs
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 7/16/2015 3:55 AM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>, Stephanie Carrera
<sct@scheurerlawfirm.com>, "tcs@schererlawfirm.com" <tcs@schererlawfirm.com>

Hi Mr Morrison

These are the credit card statements that the majority of home equity line of credit (Beth page federal) that the credit line was sent to pay,  To date only Equifax has removed it from my credit file as an account take over for fraud the other two TransUnion and Expedia still remain reporting it as my debt.   What is your recommendation or how do i handle?

Based on my calculations:

$46, 231.36 was paid to this credit card between the months of May 2012 - October 2014 from our joint checking account with Chase
$5,161.93 of credit were issued back or reversed on the statements (money paid out and not returned)
$100.836.80 was paid over to them via Beth Page Federal Credit Union

totaling: $152,230.99   (way more than what i even owe in debts)

I am in receipt of a letter from Chase Executive Offices' Harriet Thatched stating that she will not be able to file a claim nor discuss these with me as she does not have authorization from their customer as I "am neither an account owner or authorized user" for the credit card account ending in x9039 which is this credit card

-- https://doc-04-98-apps-viewer.googleusercontent.com/viewer/secure
/pdf/rek47jrd5u1tr1onrcvimarrm9aulseq/tdgrqolmmpfjhe5m0g9hirjcb6odkj56/1437022950000
/gmail/02282935760205954308/ACFrOgAhU7yuAxUOALaLphuH3bZ9OqoO25-
AdmalZbmzyoBObA4FSkZWE8-
D_ieaWsRf3F3JYcZmnpS_1Cmch9e5dyj_8uZ39xGmLG0Cah2p9w9--M_iRhSjkyfxOpA=?print=true&
nonce=eao6r4reg6tr8&user=02282935760205954308&
hash=6p0ain0pbpio2qmqtjm7g52lu4ie6jpp

https://mail.google.com/mail/u/0/#search/jschenker%40capetolalaw.com
/14a98379b48a3c17?projector=1



My sincere best,