Plaintiff,

**AFFIDAVIT**

-against-

BRIAN H. DENKER-YOUNGS,

<u>Assigned Justice</u>:
Hon. David T. Reilly

Defendant.

-------------------------------------------------------------------x

STATE OF NEW YORK)
)ss.:
COUNTY OF SUFFOLK)

BRIAN H. DENKER-YOUNGS, being duly sworn, deposes and says:

1.    I am the Defendant in the above-captioned action and submit this affidavit in support of my motion for an order:

(a)    Awarding the Defendant exclusive use, occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington, New York and its contents;

(b)    Directing the Plaintiff to pay his pro-rata share of the mortgage, homeowner's insurance, property taxes, heating oil, electric, landscaping, and repairs on the marital residence and to immediately pay and bring current any and all arrears that may exist with respect to any of the foregoing charges and expenses, retroactive to the date of this application;

(c)    Awarding the Defendant exclusive use and enjoyment of the 2014 Mercedes GLK automobile that he operates and the 2012 Volkswagen Eos automobile;

1



(d)    Directing the Plaintiff to pay the lease payments, car insurance and repairs on the Mercedes automobile, retroactive to the date of this application;

(e)    Directing the Plaintiff to immediately provide an accounting of $125,000.00 used from the Home Equity Line of Credit from the date the line of credit was opened until the present time;

(f)    Directing the Plaintiff to immediately provide an accounting of what the Plaintiff did with his income from the date of marriage until the present time;

(g)    Directing the Plaintiff to immediately provide an accounting of the payments made on his Chase Sapphire Credit Card from the date of marriage until the present time;

(h)    Directing the Plaintiff to immediately provide an accounting of the medical insurance checks he received on the Defendant's behalf from the date of marriage until the present time;

(i)    Directing the Plaintiff to pay interim counsel fees on behalf of the Defendant in the sum of $10,000.00, without prejudice to future applications for additional awards, if warranted;

(j)    Awarding the Defendant such other and further relief as to this Court may seem just and proper.

### ACTION FOR DIVORCE

2.    The Plaintiff commenced this action for divorce on August 27, 2014. A copy of the Summons with Notice is annexed hereto as **Exhibit "A"**. I was served with a copy of the Summons with Notice and subsequently appeared by counsel. A copy of the Notice of Appearance is attached as **Exhibit "B"**.

BACKGROUND

3.    The Plaintiff and I began our relationship in or about June 2010

and we were married on July 30, 2011, only a few days after New York State legalized

same sex marriage in New York.   We do not have any children together.

4.    Our marriage has been irreparably damaged due to the Plaintiff's

fraudulent misrepresentation of his religious beliefs, his misuse of marital income and

assets, and his lack of compassion during my recent major medical procedures,

amongst other things.

## EXCLUSIVE OCCUPANCY

5.    It is respectfully requested that I be awarded exclusive use,

occupancy and possession of the marital residence, located at 33 Pennington Drive,

Huntington, New York and its contents due to the Plaintiff's voluntary relocation, the

history of physical violence and the emotional distress the Plaintiff has inflictede upon

me.

6.    I am in poor health.  I have had five (5) major operations over a

period of two (2) years. In January 2013, I underwent a posterior inter-body lumbar

fusion at Huntington Hospital.  During my six (6) week recovery, the Plaintiff spent his

time after work with his mother instead of caring for me or keeping me company during

my difficult recovery.   I was left alone each day from 6:45 a.m. until 9:00 p.m.

7.    On or about March 2, 2013, complications from my spinal surgery

left me temporarily paralyzed.   While I cried in bed out of fear and pain, the Plaintiff

thoughtlessly lay next to me in bed and masturbated rather than providing me emotional

support.  I was so hurt and enraged by the Plaintiff's grossly inappropriate behavior that

8. I had additional 9 ½ spine surgery in May 2013. In or around July 2014, while I was receiving treatment at the St. Francis Emergency Room, the Plaintiff became enraged and he violently grabbed my arm that had I.V. lines causing me to suffer, physical pain, fear and embarrassment.

9. In August 2013, I needed another surgery to repair a hernia and abdominal disfigurement. In July 2014, I had to have my gallbladder removed.

10. In September 2014, I suffered a stroke caused by stress and incredibly high blood pressure. While I was hospitalized, the doctors discovered that I have an aneurysm which may require additional surgery. I was advised by my doctor to decrease my stress, anxiety, and blood pressure. A sample of my medical records is attached as **Exhibit "C"**. I do not want to overwhelm the Court with my voluminous medical records, but I can certainly provide the Court with additional documentation of my fragile health, if necessary.

11. The Plaintiff has virtually moved into his mother's four (4) bedroom house (for which he is the trustee) located at 316 West Neck Road, Huntington, New York. The Plaintiff has only slept at the marital residence sporadically since he filed for divorce.

12. It is imperative that I continue to reside in the marital residence which is centrally located to my health care providers. It is very stressful for each time the Plaintiff returns to the marital residence. That stress and anxiety could have deadly consequences for me given the fact that I have an aneurysm.

13. Based on the fact that the Plaintiff has established an alternate

4

residence and the fact that a return to the marital residence causes me to suffer fear

and anxiety which could aggravate my aneurysm, it is respectfully requested that I be

awarded exclusive use, occupancy and possession of the marital residence, located at

33 Pennington Drive, Huntington, New York and its contents.

### *PENDENTE LITE* SUPPORT

14.    The Plaintiff is employed as a History teacher for the Oyster Bay-East Norwich School District.  His annual gross salary is $123,641.00.  A copy of his pay stub is attached as **Exhibit "D"**.

15.    The Plaintiff also worked as a summer camp counselor for eighteen (18) years until he suddenly decided to stop working summers beginning in the year 2011, which significantly reduced our household income and placed greater financial stress upon me while I recovered from major surgery.  In the summer of 2013, I returned to work, with 42 staples still in my stomach so I could help provide financially for our family.  The Plaintiff refused to work that entire summer.

16.    This past summer, the Plaintiff returned to working at summer camp but he had to do so at a reduced salary.  The Plaintiff earned $3,500.00 from summer camp this year compared to $8,000.00 in previous years.  A copy of his pay stub is attached as **Exhibit "D"**.

17.    I recently discovered that the Plaintiff is paid $13.37 per hour by New York State for being a personal aide and assistant to his brother, Danny, who has Down's syndrome.  The Plaintiff has never disclosed to me exactly how much money he earns from being a personal aide or that he was even being compensated as such, but I estimate it is approximately $130.00 per week or $6,760.00 annually.  A copy of one of

| | |
|---|---|
| Past due bill for gas | $ 145 |
| Verizon (2 months) | $ 215 |
| Student loan (September) | $ 60 |
| Student loan (October) | $ 90 |
| Credit cards | $1,516 |
| Business liability insurance | $ 209 |
| Total: | $5,191 |

34. I had to borrow $1,200.00 from my Aunt as I did not have enough money to pay all of these bills. A copy of the check from my Aunt is attached as **Exhibit "I"**. I cannot afford to pay the mortgage, property taxes, or the heating oil and all the carrying charges without contribution from the Plaintiff. I cannot continue to borrow money from my Aunt each month in order to pay for my basic living expenses.

35. It is requested that the Plaintiff be directed to pay his pro-rata share of the mortgage, homeowner's insurance, property taxes, heating oil, electric, landscaping, and repairs, cell phone, cable and car leases, and to immediately pay and bring current any and all arrears that may exist with respect to any of the foregoing charges and expenses, retroactive to the date of the divorce action.

## DEFENDANT'S AUTOMOBILE

36. I drive a 2014 Mercedes automobile which is leased in my name and the Plaintiff's name. It is my only source of transportation. The Plaintiff drives the Volkswagen automobile which also leased in both of our names. It is respectfully requested that I be awarded exclusive use and enjoyment of the 2014 Mercedes automobile. I have no objections to the Plaintiff having the exclusive use and enjoyment of the Volkswagen, however, the Mercedes has to go in to the shop to be repaired and I will be left without an automobile since the Plaintiff relocated the Suburban and the Volkswagen to his mother's house, giving him access to three (3) vehicles. I am

requesting that the Plaintiff give me the Volkswagen or the remainder of the time the Mercedes being repaired so that I am not left without transportation.

37. Since the inception of the leases, the Plaintiff has paid the Mercedes lease in the sum of $559.00 per month and I have paid the Volkswagen lease in the sum of $440.00 per month.

38. It is requested that the Plaintiff be directed to continue to pay the lease, car insurance and repairs associated with the 2014 Mercedes automobile. I will continue to pay the lease on the 2012 Volkswagen.

## THE NEED FOR AN ACCOUNTING

39. The Plaintiff was primarily responsible for managing our finances throughout our relationship. Despite the fact that our combined income exceeded $220,000.00 annually, on several occasions, our joint bank account was overdrawn and I am currently on the brink of bankruptcy due to the Plaintiff's mismanagement of our income.

40. It has recently come to my attention that while my salary was used to pay the marital bills, the Plaintiff's salary was deposited into a checking account in the Bank of America that Plaintiff shares with his mother, Matje G. Youngs. Matje is controlling and manipulative. She has never accepted that fact that the Plaintiff is gay and she has publicly expressed her disapproval of our marriage on numerous occasions and has threatened revenge.

41. The Plaintiff also maintains checking and savings accounts at the Bank of America, Citibank, Bethpage Federal Credit Union, and offshore accounts in the Netherlands, possibly Canada and other private wealth and money market accounts.

Plaintiff, he retaliated by commencing this divorce action.

## COUNSEL FEES

53.    It should be noted that the Plaintiff obtained a temporary order of protection against me based on false allegations that I harassed him, and because of that I was forced to incur additional counsel fees defending against his petition. A copy of the Temporary Order of Protection dated September 5, 2014 is attached as **Exhibit "M"**.

54.    I paid a retainer fee of $5,000.00 to my divorce attorney and $2,300.00 to Barry Lites, Esq., the attorney, who with eight (8) hours' notice, agreed to represent me with respect to the Temporary Order of Protection. I paid my legal fees by credit card as I had no other resources.

55.    The Plaintiff is the monied spouse and should be obligated to pay my counsel fees due to the disparity in our incomes and his conduct of marital waste. Copies of my Retainer Agreement and Statement of Client's Rights and Responsibilities are annexed hereto as **Exhibit "N"**.

56.    My attorney has advised me that she has already expended several hours in conferences with your deponent and in preparation of the within motion papers. My attorney estimates that she will expend at least another (4) hours in preparing a reply to Plaintiff's Affidavit in Opposition to this motion. Court conferences, discovery, and depositions will most likely be necessary. I respectfully request that the Plaintiff be directed to pay counsel fees in the sum of $10,000.00, with leave to request additional counsel fees, if warranted.



57.    For the reasons set forth herein, this motion should be granted in all respects.

58.    No prior application for the relief sought herein has been made to this or any other court.


**WHEREFORE**, your deponent respectfully requests that this Court grant, in all respects, the relief sought herein, together with such other and further relief as to this Court may seem just, proper and equitable under the circumstances.

BRIAN H. DENKER-YOUNGS

Sworn to before me this
5th day of November, 2014.

Notary Public

DEBORAH A. NICASTRO
Notary Public, State of New York
No. 01NI5082473
Qualified in Suffolk County
Commission Expires July 28, 20__

14

At an IAS Term Part 30 of the
Supreme Court of the State of New
York, held in and for the County of
Suffolk at the Court House thereof,
located at 400 Carleton Avenue,
Central Islip, New York, on the ____
day of February, 2015.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

---

EDWARD JOHN DENKER-YOUNGS,

                Plaintiff,

-against-

BRIAN H. DENKER-YOUNGS,

              Defendant.

---

Index No. 2014/16968

**<u>CROSS ORDER TO SHOW
CAUSE</u>**

Hon. David T. Reilly

<u>NOTICE</u>

**<u>THE PURPOSE OF THIS HEARING IS TO PUNISH YOU
FOR CONTEMPT OF COURT.  SUCH PUNISHMENT MAY
CONSIST OF A FINE OR IMPRISONMENT OR BOTH,
ACCORDING TO THE LAW</u>**

**<u>WARNING</u>**

**<u>YOUR FAILURE TO APPEAR IN COURT MAY RESULT
IN YOUR IMMEDIATE ARREST AND IMPRISONMENT
FOR CONTEMPT OF COURT</u>**

**UPON** reading and filing the annexed affidavit of **BRIAN H. DENKER-YOUNGS**, the

Defendant herein, duly sworn to on February 23, 2015; the affirmation of **ANTHONY A.**

**CAPETOLA, ESQ.**, dated February 23, 2015; the exhibits annexed hereto and made a part hereof;

and upon all the papers and proceedings heretofore had herein;



**LET Plaintiff, EDWARD JOHN DENKER-YOUNGS, SHOW CAUSE** before this Court,

Part 30, before the Honorable David T. Reilly, to be held at the Courthouse thereof located at 400

Carleton Avenue, Central Islip, New York, on the _____ day of _____, 2015, at 9:30

o'clock in the forenoon or as soon thereafter as counsel may be heard,

**WHY**, an Order should not be made and entered in favor of the Defendant against the

Plaintiff as follows:

(1)     Pursuant to Domestic Relations Law §245 and Judiciary Law §750, §751, §753 and

§774, adjudging Plaintiff, Edward John Denker-Youngs, to be held in contempt of Court for his

willful and deliberate failure to comply with the December 18, 2014 "So Ordered" transcript as

Plaintiff has failed to provide all healthcare insurance reimbursement checks on behalf of the

Defendant to the Defendant directly; and

(2)     Pursuant to Domestic Relations Law §245 and Judiciary Law §750, §751, §753 and

§774, punishing the Plaintiff for said contempt in a manner this Court deems fit and appropriate,

including the imposition of a fine in favor of the Defendant, together with an award of costs,

expenses and attorneys' fees to the Defendant, and the imposition of an indefinite term of

incarceration, for such Contempt of Court; and

(3)     Upon finding the Plaintiff in contempt of Court, issuing a warrant of commitment

for the purposes of securing the Plaintiff's incarceration for his failure to comply with the December

18, 2014 "So Ordered" transcript; and

(4)     An Order directing the Plaintiff to be one hundred (100%) percent responsible for any

and all penalties, late fees and legal fees associated with Plaintiff's failure to forward all healthcare

insurance reimbursement checks for the Defendant directly to the Defendant and/or for Plaintiff's

failure to provide all healthcare insurance reimbursement checks to the Defendant in a timely fashion; and

(5)    An Order directing the Plaintiff to the pay the sum of $19,381.79 to the Defendant as and for Plaintiff's failure to provide the Defendant certain healthcare reimbursement checks from the parties' health insurance provider; and

(6)    Pursuant to DRL § 237 and DRL § 238, awarding the Defendant at least $10,000.00 in enforcement counsel fees to be paid by Plaintiff herein, with leave to apply for additional counsel fees; and

(7)    Dismissing, in its entirety, the Plaintiff's Order to Show Cause dated February 2, 2015; and

(8)    Granting Defendant such other, further and different relief as to this Court may seem just, proper and equitable.

**SUFFICIENT CAUSE APPEARING THEREFOR,**

**LET,** service of a copy of this Order to Show Cause, together with the papers upon which it is based, upon Plaintiff, by his attorneys, Simonetti & Associates, with offices located at 144 Woodbury Road, Woodbury, New York 11797, pursuant to CPLR _____, on or before the ___ day of _____, 2015, be deemed good and sufficient service thereof.

**ENTER:**

_____
**J.S.C.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X
EDWARD JOHN DENKER-YOUNGS,                        Index No.: 16968/2014

                            Plaintiff,        **AFFIDAVIT IN OPPOSITION
                                              AND IN FURTHER SUPPORT
                                              OF DEFENDANT'S CROSS
     -against-                                     MOTION**


BRIAN H. DENKER-YOUNGS,

                           **Defendant.**
-----------------------------------------------------------------X

STATE OF NEW YORK    )
                         ) ss:
COUNTY OF NASSAU    )

      **BRIAN H. DENKER-YOUNGS,** being duly sworn deposes and says the following under the penalty of perjury:

      1.     I am the Defendant in the above-entitled matrimonial action. As such, I am fully familiar with all of the facts and circumstances surrounding the instant matter.

      2.     Your Deponent submits this application in Opposition to Plaintiff's Order to Show Cause dated February 2, 2015 and in further support of my Cross Motion seeking Plaintiff's Contempt for failure to comply with the December 18, 2014 "So Ordered" transcript.

      3.     Plaintiff's Affidavit is saturated with lies and misrepresentations as he will do anything in his power to undermine your Deponent to this Honorable Court, including creating fictional events in order to have your Deponent ousted from my home. We are dealing with a devious and manipulative individual who will go to any lengths to hurt your Deponent. This is a



man who cut electrical wires in our home; has physically shoved me and threatened my life in the event I refused to settle our divorce on his terms.

4.      Plaintiff is cognizant of the fact that I am in poor health and that I have previously underwent five (5) major operations over a period of two (2) years and have also suffered a stroke on September 26, 2014, due to stress from this divorce and from learning that Plaintiff has been depleting marital funds and stealing from me throughout the course of our marriage. Notwithstanding same, Plaintiff has filed one frivolous application after another in order to break me down both emotionally and financially.    Plaintiff's abhorrent behavior should not be condoned and there must be consequences for his actions.

### PLAINTIFF'S CONTEMPT

5.      On December 11, 2014, this Honorable Court issued an Order off the bench; whereby the Court Ordered and directed that any insurance checks that are due to either party be sent and if it comes to the other party, they are to send it to their attorney and they will send it to their rightful owner.    Annexed hereto as **"Exhibit A"**, is a copy of the "So Ordered" transcript dated December 18, 2014.    Notwithstanding this Court's Order, the Plaintiff has retained and pocketed almost $20,000.00 in reimbursed medical payments from our health insurance carrier. Upon receipt and notification from our health insurance carrier, my attorneys forwarded correspondence to Plaintiff's counsel informing them that their client had failed to provide the following checks to your Deponent: (1) a check in the sum of $12,267.59, that was issued on November 19, 2014; (2) a check in the sum of $2,200.00, that was issued on December 3, 2014; and (3) a check in the sum of $140.00 that was issued on January 21, 2015.    Annexed hereto as **"Exhibit B"**, is correspondence to Plaintiff's counsel dated February 9, 2015 with respect to same.    Your Deponent received correspondence from The Empire Plan which sets forth when the

three (3) checks were issued. Annexed hereto as **"Exhibit C"**, is correspondence from The Empire Plan dated January 28, 2015 and January 21, 2015, with respect to same. This Court should be aware that the reimbursement checks are forwarded to the marital residence and are issued directly to Edward Denker Youngs. Of course Plaintiff's counsel forwarded correspondence, almost two (2) weeks later, attempting to shift blame on me for her client's deplorable actions. Annexed hereto as **"Exhibit D"**, is correspondence from Plaintiff's counsel dated February 18, 2015. Notwithstanding the aforementioned, as the result of Plaintiff's contemptuous and underhanded behavior, your Deponent currently owes approximately $19,381.79 in medical arrears.

6.      Plaintiff's counsel previously forwarded three (3) checks to my prior attorney on December 11, 2014; however, none of the above referenced checks were included. Moreover, after retaining the December 3, 2014 reimbursement check in the sum of $2,200.00 for almost three (3) months, Plaintiff has finally forwarded same to my attorneys. Annexed hereto as **"Exhibit E"**, is a copy of the medical payment from The Empire Plan dated December 3, 2014. It is quite clear that the Plaintiff maliciously held the check for almost three (3) months as same was only recently forwarded on February 18, 2015. Please see "Exhibit D".

7.      The Plaintiff has been pocketing your Deponent's reimbursed medical payments for quite some time and has failed to pay an array of your Deponent's medical expenses, which was previously pointed out in my initial Order to Show Cause. Plaintiff has inappropriately cashed and retained the following health care reimbursement checks: $33.00 on January 20, 2013; $64.50 on February 6, 2013; $200.00 on February 26, 2013; $450.00 on March 13, 2013; $275.00 on April 2, 2013; $1,175.00 on April 25, 2013; $375.00 on May 8, 2013; $64.00 on September 5, 2013; $833.00 February 4, 2014; $833.00 on February 7, 2014; $833.00 on July 20,

2014; $275.00 on June 4, 2014, $1,328.80 on August 8, 2014; and $234.60 on September 2, 2014, for a combined total of $6,974.20 removed by Plaintiff. Annexed hereto as **"Exhibit F"**, are copies of checks deposited by the Plaintifft. As such, as of even date herewith, the Plaintiff has failed to forward approximately $19,381.79 in reimbursed medical payments from our health insurance carrier.

8.    Due to Plaintiff's contemptuous and fraudulent behavior in pocketing medical reimbursement checks, (which needs to be paid to your Deponent's doctors), your Deponent is now being sued for $15,860.07, by North Shore LIJ Medical Group. Annexed hereto as **"Exhibit G"**, is correspondence from the Law Office of Jeffrey G. Lerman, P.C., attorneys for North Shore LIJ Medical Group, dated January 28, 2015, with respect to same.

9.    As evidenced by the checks deposited, the reimbursed medical payments go directly to the Plaintiff. Please see "Exhibit F". Moreover, the Plaintiff is either cashing my medical checks or holding on to them for months at a time; thereby preventing your Deponent from paying my medical expenses. As the result of such despicable behavior, the Plaintiff is causing your Deponent to incur insurmountable debts. Moreover, your Deponent is respectfully requesting that Court review the issuance dates on the checks and the dates in which the Plaintiff endorsed the checks; which is attached as "Exhibit F'. As clearly displayed, the $2,200.00 check from the insurance company was issued on December 3, 2014. Notwithstanding the fact that we were in Court on four (4) separate occasions subsequent to the issuance of the check, (on December 11, 2014; December 15, 2014, January 22, 2015 and February 2, 2015), Plaintiff maliciously failed to provide the aforementioned check to my attorneys and only recently forwarded same on February 18, 2015.

10.    Plaintiff's attempt to manipulate your Deponent and this Court is quite transparent. As the result of Plaintiff's vile behavior, your Deponent is facing a lawsuit and has accumulated almost $20,000.00 in medical arrears, which are owed to different doctors and medical groups. As the result of Plaintiff's contemptuous behavior, your Deponent receives telephone calls from debt collectors on a daily basis and I have been placed in a precarious position with several of my health care providers who your Deponent is required to see, (due to constant health issues), on a consistent basis. As such, the Plaintiff must be held in contempt to the fullest extent of the law and should be responsible to reimburse your Deponent for all healthcare reimbursements he retained in the sum of $19,381.79. Moreover, the Plaintiff should also be held responsible to pay all legal fees, penalties and late payments associated with his failure to provide your Deponent my healthcare reimbursement checks.

## PLAINTIFF MUST BE ORDERED TO PAY DEFENDANT'S COUNSEL FEES

11.    There is no question that the Plaintiff is undeniably in contempt of this Court's Order. As the direct result of Plaintiff's abhorrent actions, your Deponent was compelled to file the instant application. As such, your Deponent is entitled to attorneys' fees to litigate the instant application. Annexed hereto as **"Exhibit H"**, is a copy of your Deponent's Updated Statement of Net Worth. Annexed hereto as **"Exhibit I"**, is a copy of my retainer agreement with my attorneys. Annexed hereto as **"Exhibit J"**, is an itemized bill, which displays that your Deponent has incurred an additional $4,200.00 in legal fees in order to bring this instant application and to oppose Plaintiff's frivolous application, which will be further addressed hereinbelow. Moreover, your Deponent expects to incur additional legal fees to litigate this matter. As such, your Deponent respectfully requests that the Plaintiff is held in Contempt of Court via fines and to the fullest extent of the law for his willful violation of this Court's Order.

## PLAINTIFF'S FRIVOLOUS APPLICATION MUST BE DENIED IN ITS ENTIRETY

12.     It is quite clear that Plaintiff filed the instant application for contempt and other ancillary relief merely to harass your Deponent and to force me to incur unnecessary counsel fees. The Plaintiff's counsel noticed my attorneys on January 21, 2015 that they were filing an Order to Show Cause seeking temporary restraining orders without even picking up the phone or forwarding a single letter to address the issues within their motion. Annexed hereto as **"Exhibit K"**, is correspondence dated January 21, 2015 from Plaintiff's counsel with respect to their "emergency" application. The fact that Plaintiff and Plaintiff's attorneys would file such a frivolous application, seeking contempt (which is unjustified), amongst other ancillary relief, without discussing the matters at issue with my attorneys in advance, clearly displays bad faith and provides sound and substantial reasoning as to why their instant application should be denied its entirety.

13.     As this Honorable Court is aware, the majority of the issues addressed within Plaintiff's application were resolved at our last court appearance on February 2, 2015. First and foremost, the Optimum Cable boxes were left at the marital residence in the upstairs guest room when your Deponent was forced from my home on December 11, 2014, based upon blatantly false allegations concocted by Plaintiff. By way of background, on or about December 1, 2014, your Deponent was compelled to order Verizon Fios and install three (3) television boxes and internet service at the marital residence as Plaintiff maliciously placed restrictions on our household Optimum account and refused, (on several occasions), to allow Optimum technicians to service our home when the internet was down. Plaintiff's refusal to permit service had a detrimental impact on my business as I worked from my home office at the marital residence. Despite representations that were made by Plaintiff and Plaintiff's counsel at our December 11,

2014 court appearance, they were fully aware of the need to install Verizon at the marital residence as my prior attorneys' paralegal spoke directly with Plaintiff's counsel's office. Annexed hereto as **"Exhibit L"**, is an email dated November 13, 2014 with respect to same. Moreover, your Deponent placed Verizon in my own name in order to absolve Plaintiff of any financially responsibility with respect to same. Annexed hereto as **"Exhibit M"**, is a statement from Verizon addressed to your Deponent. However, as this Court is aware, your Deponent was directed to vacate the marital residence within forty-eight (48) hours of December 11, 2014. When taking a closer look at "Exhibit M", it clearly states that your Deponent's new Verizon service would be ready on December 24, 2014, notwithstanding the fact that I called to cancel Verizon (which I ordered primarily for business purposes), on or about December 14, 2014. As such, upon information and belief, Plaintiff impersonated your Deponent on December 23, 2014, rescinded my cancellation and ordered new services through Verizon. As the result of Plaintiff's deplorable actions, your Deponent incurred an additional $366.70 in charges from Verizon. Moreover, during the installation of the Verizon boxes, the Verizon serviceman placed the Optimum Cable boxes in the upstairs guest room, where they remained.

14.     Your Deponent is not in possession of the Optimum Cable boxes and Plaintiff is completely aware of the aforementioned. This is just another ploy by Plaintiff in an attempt to defame my character and skew my credibility. Your Deponent does not have one single doubt that the Optimum Cable boxes will miraculously appear upon the conclusion of this matter.

15.     Plaintiff's allegations that your Deponent has published personal and public information about him is blatantly false. Your Deponent is a Rabbi and a revered business/motivational speaker who publishes frequently on many social media sites. Since the issuance of the December 11, 2014 directive, your Deponent has never mentioned Plaintiff's

name or published any of Plaintiff's financial information on the internet. My Facebook posts predominantly mentions matters pertaining to religion and marriage. Since our last Court appearance on February 2, 2015, your Deponent posted only one topic on Facebook pertaining to a Josh Groban song, in an effort to avoid any further baseless accusations by the Plaintiff of content posted either by your Deponent or through automated content publishing technologies. Annexed hereto as **"Exhibit N"**, is my Facebook timeline from the issuance of the Order until even date herewith. As such, Plaintiff's argument holds absolutely no merit and his application seeking your Deponent's contempt is unwarranted.

16.    Moreover, the issue pertaining to your Deponent and the Plaintiff obtaining our own automobile insurance policies is moot. However, just so the Court is aware, your Deponent contacted Geico and several other insurance companies and I was quoted close to double the amount of our monthly insurance premium based upon providing factual information regarding my "current address", which is temporarily in Brooklyn, pending the exclusive use and occupancy hearing on March 16, 2015. The matter was resolved on February 2, 2015, where my attorney and Plaintiff's counsel contacted Geico to obtain separate automobile insurance policies at a similar rate by keeping my address at the marital residence. Therefore, both your Deponent and Plaintiff have individual automobile insurance policies.

17.    Notwithstanding the aforementioned, Plaintiff's counsel could have resolved this issue merely by contacting my attorney; however, they instead chose to file an unnecessary application which sought "emergency" relief. Additionally, this Court should also be aware that prior to the Plaintiff and your Deponent obtaining our own automobile insurance policies, your Deponent made the January 2015 payment for both your Deponent's and Plaintiff's automobile

insurance, as well as paying the umbrella insurance as Plaintiff previously refused to pay for same in accordance with the Order. Annexed hereto as **"Exhibit O"**, is proof of payment.

18.    With respect to the monthly Mercedes Financial Services statements, the bills are finally readdressed and are being forwarded to my P.O. Box. This Honorable Court should be aware that your Deponent made the February 2015 payment and my next payment is due on March 7, 2015. Annexed hereto as **"Exhibit P"**, is the March 2015 lease statement. Your Deponent previously requested that the Plaintiff forward all statements pertaining to the Mercedes to your Deponent directly; however, he refused to cooperate, communicate or even respond to emails or requests. In fact, the Plaintiff intentionally waited almost two (2) months to forward my mail, (which was delivered to the marital residence), to my attorney's office; thereby causing your Deponent to be late with other personal expenses. Annexed hereto as **"Exhibit Q"**, is correspondence from Plaintiff's counsel dated February 11, 2015 with respect to my mail and the key to my Brooklyn apartment. The Plaintiff also committed a Federal offense by opening mail solely in my name and by going through my mail without my consent. Moreover, your Deponent paid the sum of $234.39 for Plaintiff's automobile insurance and for the umbrella insurance on our home and vehicles, which Plaintiff is responsible to pay. Please see "Exhibit O". Further indicative of Plaintiff's deceitful and manipulative nature is that Plaintiff has, once again, lied to this Honorable Court by claiming that he paid my automobile insurance. Your Deponent paid the automobile insurance for both of us; as displayed in "Exhibit O". As such, Plaintiff's statements must be taken with a pound of salt.

19.    Further indicative of Plaintiff's propensity to lie is that Plaintiff paid the LIPA bill from my Citibank account in January of 2015, subsequent to the issuance of this Court's Order. Annexed hereto as **"Exhibit R"**, is proof of payment. LIPA was never paid from your

Deponent's Citibank account and we never paid it electronically.    Therefore, Plaintiff intentionally and fraudulently utilized by personal account to pay a bill that he was ordered to pay.  Your Deponent was finally reimbursed after my attorneys' forwarded correspondence to Plaintiff's counsel with respect to same.  Annexed hereto as **"Exhibit S"**, is correspondence to Plaintiff's counsel dated January 2, 2015.  Plaintiff's act of going online and establishing an account with my credit card is proof in and of itself that Plaintiff is not be trusted.

20.    Moreover, Plaintiff is not entitled to reimbursement for the Mercedes payment made by him in December of 2014, as said payment pre-dates the December 11, 2014 Order. Please see "Exhibit K" of Plaintiff's moving papers.  Your Deponent paid several expenses that Plaintiff is now responsible to pay which also pre-dates the Order.  In the event that Plaintiff wishes to pre-date the Order, I also paid expenses such as the oil and electric bill for November and December of 2014, that Plaintiff is now responsible to pay.  As such, the December 7, 2014 payment made by the Plaintiff for our Mercedes should not be taken into consideration as it was paid prior to the issuance of this Court's Order.

21.    The only Mercedes payment that is in contention is for January of 2015, in the sum of $559.32.  After deducting Plaintiff's automobile insurance and the umbrella insurance, in the amount of $234.39 and $366.70 in Verizon charges caused by the Plaintiff when your Deponent already vacated the marital residence.  In fact, Plaintiff actually owes your Deponent $41.77, not including the additional $19,381.79 in medical reimbursements owed by Plaintiff to your Deponent as detailed hereinabove.

22.    With respect to the alarm system, it was already agreed between counsel and Ordered by the Court that the Plaintiff would transfer the alarm system into his name and that Plaintiff is responsible for any costs associated with the transfer.  Annexed hereto as **"Exhibit**

T", is a copy of the signed Order to Show Cause dated February 2, 2015. Notwithstanding the aforementioned, your Deponent previously provided the password to Plaintiff and my attorney also provided the password to Plaintiff's counsel on January 22, 2015. As such, Plaintiff's application with respect to the alarm system at the marital residence is moot as same is resolved. As indicated hereinabove, this is yet another example of a situation contentiously fabricated by the Plaintiff that could have been resolved without motion practice. Moreover, Plaintiff has failed to transfer the alarm system in his name, in direct violation of this Court's Order.

23.    As clearly displayed by the supporting documentation attached herewith, Plaintiff has lied to this Court on several instances and is doing everything in his power to torture your Deponent and defame my character to this Honorable Court. As falsely alleged by Plaintiff, your Deponent never broke into his office and removed papers. In fact, the last time I was at the marital residence was on January 3, 2015, with police escort. Annexed hereto as **"Exhibit U"**, is a copy of the Domestic Incident Report. Your Deponent had absolutely no access to Plaintiff's office, as displayed within the Domestic Incident Report, and I am not in possession of Plaintiff's teacher's certificate. Moreover, the Plaintiff conveniently failed to inform this Honorable Court that the lock to the front door to the marital residence was previously changed to a touchless lock after Plaintiff cut electrical wires to our home; thereby causing the alarm system to shut down. Since the alarm system was shut down, your Deponent was nervous of a potential break in and in order to take extra precautions for my safety, (under the advisement of police officers who came to our home), I changed the lock to the front door to a keyless lock which had the same passcode as our garage. The Plaintiff was informed of the passcode, notwithstanding that Plaintiff had abandoned the marital residence and was residing with his mother since September of 2014.

24.    Furthermore, the Plaintiff's allegations that I illegally rented the cottage and that he had no knowledge with respect to same is blatantly false. It was always common practice for us to rent the cottage during the marriage. Plaintiff was always involved in the process. Annexed hereto as **"Exhibit V"**, are emails that Plaintiff was copied on and in which real estate brokers contacted your Deponent to look at our cottage and informed your Deponent they were looking forward to "meeting John" and to seeing the cottage. In fact, in one email dated September 11, 2014, from Nicole Krakoff regarding the cottage, Ms. Krakoff specifically states that "Jon just left a voicemail", with respect to viewing the cottage. At that time, your Deponent was in California and the Plaintiff was handling meetings with potential real estate brokers. As such, Plaintiff not only knew that we were renting the cottage, he was involved in the process. Now that our prior tenant has threatened to sue your Deponent and our real estate broker, Plaintiff, once again, conveniently lies by stating that he was "not" involved in the rental dealings in an effort to avoid liability. Annexed hereto as **"Exhibit W"**, is correspondence from our prior tenant's attorney dated January 5, 2015. It is quite obvious that Plaintiff is digging his own grave with lie, after lie, after lie.

25.    Moreover, to my knowledge, there are no joint emails or accounts that we share any longer. The one and only email account we ever shared is controlled by the Plaintiff through the Optimum account, which your Deponent has no access to. In the event Plaintiff utilizes any joint email accounts, unbeknownst to your Deponent, your Deponent requests that Plaintiff closes any and all joint email accounts immediately and provide your Deponent proof of same. Additionally, this Court should also be aware that the Volkswagen key was forwarded to Plaintiff's counsel, via FedEx, on February 11, 2015, in accordance with this Court's Order. Annexed hereto as **"Exhibit X"**, is proof of same.

26.    The Plaintiff's entire application is frivolous and should have never been filed in the first place. It is quite clear that Plaintiff has blatantly lied and defied this Honorable Court, as evidenced by the supporting documentation attached herewith. The Plaintiff has clearly displayed bad faith with respect to filing the instant application and should not be awarded legal fees for his duplicitous behavior as the motion could have been resolved between attorneys. The Plaintiff's request for counsel fees will be further addressed in my attorney's affirmation. At this point, Plaintiff's motion is moot and should be denied in its entirety.

27.    No previous application has been made for the same or similar relief sought herein to this or any other Court.

**WHEREFORE,** Defendant, Brian H. Denker-Youngs, respectfully requests that the relief sought in your Deponent's Cross Motion be granted in its entirety and the relief requested in Plaintiff's application is denied in its entirety and together with such other further and different relief as this Court seems just, proper and equitable.

BRIAN H. DENKER-YOUNGS

Sworn to before me on this
23RD day of February, 2015.

Notary Public

JENNIFER L. SCHENKER
Notary Public, State of New York
No. 02SC6216788
Qualified in Suffolk County
Commission Expires Jan. 25, 2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X

EDWARD JOHN DENKER-YOUNGS,

                              **Plaintiff,**             **Index No.:  016968/2014**

             -against -                        **AFFIDAVIT IN**
                                                            **OPPOSITION AND IN**
                                                              **FURTHER SUPPORT**

BRIAN H. DENKER-YOUNGS,

                             **Defendant,**
-------------------------------------------------------------------X

STATE OF NEW YORK  )
COUNTY OF NASSAU    ) ss.:

**BRIAN H. DENKER-YOUNGS**, being duly sworn, deposes and says:

    1.     I am the Defendant in the above-entitled action, and I am personally and fully familiar with all of the facts and circumstances hereinafter set forth.

    2.     I am submitting this application in Opposition to Plaintiff's Cross Order to Show Cause submitted on December 11, 2014, which was not signed by this Court, and in further support of your Deponent's Order to Show Cause dated November 6, 2014.

    3.     The Plaintiff's Affidavit to this Honorable Court is rife with sordid accusations and downright lies.  I was appalled that Plaintiff and his attorneys could submit such an application, under oath, that is saturated with pure fiction.  Plaintiff is nothing more than an outright fraud and he married your Deponent under false pretenses.  Plaintiff, starts off this Affidavit by lying to this Honorable Court in stating that he made his "religious beliefs" very clear to your Deponent.  The "religious beliefs" that he made clear to your Deponent was that he would to covert to Judaism.  The aforementioned is clearly evidenced by the fact that we were married in the Jewish faith.  Annexed hereto as **"Exhibit A"**, are pictures of our wedding which



clearly displays same.  Plaintiff fraudulently perpetrated that it was his intent to convert to Judaism; however, he clearly never intended to follow through with same.

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S FALSE STATEMENTS AND ALLEGATIONS AND IN FURTHER SUPPORT OF DEFENDANT'S APPLICATION

4.     At the outset, Plaintiff blatantly lies to this Honorable Court by claiming that your Deponent resided in my Brooklyn apartment 3-4 times per week during the marriage.  On occasion, your Deponent would visit the apartment to ensure that everything was status quo and in working condition and I would sporadically stay there overnight.  Notwithstanding same, I never resided at the apartment half the week during my marriage.  Plaintiff attempts to deceive this Honorable Court by falsely claiming that your Deponent retained a separate residence during the marriage and therefore, he should have exclusive use and occupancy of the marital residence. However, same could be further from the truth.

5.     Plaintiff attempts to purport himself as a martyr by claiming that he had the September 2, 2014 Temporary Order of Protection reduced from a stay away to a refrain from because he thought I was going to "harm myself".  The aforementioned statement is beyond absurd.  In fact, the Plaintiff actually admitted to your Deponent that his attorneys told him to obtain said Order as a mere strategic tactic and that he felt horrible about his abhorrent actions in obtaining an Order of Protection under false pretenses.  Therefore, Plaintiff had the Order of Protection modified.  In the event that Plaintiff was really afraid for his life (which is why a stay away Order of Protection is granted), he would have never of agreed to modify the Order. Moreover, subsequent to Plaintiff obtaining an Order of Protection against your Deponent on fictitious grounds, the Plaintiff asked to see your Deponent on several occasions subsequent to issuance of the September 2, 2014 Order, and even indicated that I was his "priority", in text messages.  Annexed hereto as **"Exhibit B"**, are text messages from the Plaintiff to your

Deponent between September of 2014 and December of 2014. The aforementioned clearly displays that Plaintiff was not in fear for his life and that he was in fact attempting to reach out to your Deponent. Moreover, I have never slammed a door on the Plaintiff. I have no idea how Plaintiff hurt his foot. Plaintiff continues to grasp a straws in order to obtain an Order of Protection against your Deponent in his desperate attempt to get a leg up in the litigation. Such disdainful conduct needs to end! As such, Plaintiff's request for a stay away Order of Protection on his behalf against your Deponent should be denied in its entirety.

6.      Plaintiff's allegations that your Deponent continuously publishes personal and public information about him is blatantly false. Your Deponent is a Rabbi and a revered business/motivational speaker who publishes frequently on many social media sites. Since the issuance of the December 11, 2014 directive, which was "So Ordered" on December 18, 2014, your Deponent has never mentioned Plaintiff's name or published any of Plaintiff's financial information on the internet. Annexed hereto as **"Exhibit C"**, is a copy of the December 18, 2014 "So Ordered" transcript. My Facebook posts predominantly mentions matters pertaining to religion and marriage. Since our last Court appearance on February 2, 2015, your Deponent posted only one topic on Facebook pertaining to a Josh Groban song, in an effort to avoid any further baseless accusations by the Plaintiff of content posted either by your Deponent or through automated content publishing technologies. Annexed hereto as **"Exhibit D",** is my Facebook timeline since the issuance of the December 11, 2014 directive until even date herewith.

7.      The Plaintiff, once again, has lied to this Honorable Court by stating, under oath, that our home is his separate property. Plaintiff fails to provide on shred of proof that the marital residence is his separate property and merely submits a HUD1 statement from the sale of his prior residence which proves absolutely nothing with respect to where the funds came from to

3

purchase our home. Moreover, prior to purchasing the marital residence, your Deponent and Defendant were in contract to purchase another residence in Huntington, New York and were both approved for a $430,000.00 mortgage. Annexed hereto as **"Exhibit E"**, is a copy of the Uniform Residential Loan Application. As such, Plaintiff's allegation that your Deponent was unable to obtain a mortgage due to my poor credit was a downright lie.

8.    Moreover, your Deponent removed $44,425.00 from my Vanguard 401 (k) to place towards the down payment of the first residence we were going to purchase on or about April of 2012. Annexed hereto as **"Exhibit F"**, is a copy of the Vanguard 401(k) statement, which shows that a removal of $44,425.00 was approved. Your Deponent utilized $31,000.00 to place towards the down payment on the West Shore Road, Huntington, New York property; however, the deal fell through and your Deponent was refunded the down payment. Annexed hereto as **"Exhibit G"**, is a copy of the down payment check for $31,000.00 remitted by your Deponent and a copy of the refund check.

9.    Thereafter, on or about October of 2012, we closed on the marital residence located at 33 Pennington Drive, Huntington, New York for $455,000.00 and obtained a mortgage against the home for the sum of $364,000.00 with Chase, in Plaintiff's name solely. However, the marital residence is titled in both of our names. Annexed hereto as **"Exhibit H"**, is proof of the Chase mortgage for the marital residence, executed by the Plaintiff on October 12, 2012, the date of the closing, for $364,000.00 and that the purchase price of the marital residence was $455,000.00. The only reason why the mortgage was placed in Plaintiff's name solely was because Plaintiff insisted on same. As detailed hereinabove, we were approved for a mortgage together on the first property we planned to purchase. Moreover, we utilized joint funds, as well as the $44,425.00 I removed from my Vanguard 401 (k) to purchase the marital residence. As

such, Plaintiff's separate property claim for $191,000.00, approximately, is not only a downright

lie, same is absolutely impossible as we put down only $90,000.00, (approximately), towards the

purchase price of the home. Annexed hereto as **"Exhibit I"**, are certified checks in our joint

names which were utilized towards the purchase of the marital residence.

10.    The Plaintiff and your Deponent agreed to obtain a home equity line of credit with

Bethpage Federal Credit Union in the approximate amount of $125,000.00, in both of our names;

however, your Deponent never provided the Plaintiff consent to dissipate the line of credit for his

own self-serving purposes. Between October of 2013 and March of 2014, the Plaintiff went

through approximately $124,000.00 without your Deponent's knowledge or consent by paying

his Chase Sapphire Credit debt and by paying for improvements made to his mother's residence.

Currently, only $1,200.00 is left on the line of credit. Plaintiff fraudulently dissipated equity

within the marital residence in a vindictive attempt to deplete my equity in our home. Moreover,

the Plaintiff enhanced the value of his mother's residence; a residence he stands to inherit as the

trustee of same, by using marital funds.

11.    As the co-owner of the marital residence, your Deponent had every right to adopt

a dog; however, due to Plaintiff's dislike for animals and in an effort to maintain harmony within

the marital residence, your Deponent acquiesced to Plaintiff's self-serving demand. However,

just because our home was renovated does not mean that an animal would cause destruction.

This is just another example of how the Plaintiff is doing everything in his power to hurt me and

deprive me of any type of happiness.

12.    Furthermore, Plaintiff's allegations that I am attempting to "set him up" with

respect to the tampering of our wire system is laughable. Your Deponent finds it highly doubtful

that a random person would come to our home, in the midst of our litigation, to cut wires;

thereby directly interfering with my ability to work from the marital residence. Moreover, as the direct result of such despicable actions, your Deponent was compelled to change the lock to the front door to the marital residence to a touchless lock after Plaintiff cut electrical wires to our home; which thereby caused our alarm system to shut down. Since the alarm system was shut down, your Deponent was nervous of a potential break in and in order to take extra precautions for my safety, (under the advisement of police officers who came to our home), I changed the lock to the front door to a keyless lock which had the same passcode as our garage. The Plaintiff was informed of the passcode, notwithstanding that Plaintiff had abandoned the marital residence in August of 2014.

### DEFENDANT'S REQUEST FOR EXCLUSIVE USE AND OCCUPANCY OF THE MARITAL RESIDENCE SHOULD BE GRANTED AND PLAINTIFF'S REQUEST TO PLACE THE MARITAL RESIDENCE FOR SALE SHOULD BE DENIED

13.     On November 6, 2014, your Deponent filed a motion before this Court seeking various *inter alia* relief, including, but not limited to exclusive use and occupancy of the marital residence. More than five (5) weeks later, on December 11, 2014, the Plaintiff filed an Emergency Order to Show Cause requesting temporary restraining orders, including exclusive use and occupancy of the marital residence. On that very date, this Court ordered your Deponent to vacate the marital residence within forty-eight (48) hours. Please see "Exhibit C". Unbeknownst to this Court, the Plaintiff maliciously and duplicitously obtained this *Ex Parte* Order by making absolute false representations to this Court. By way of example, Plaintiff's attorney stated on the record that my "main physicians are at North Shore LIJ" and that the bathtub in our home is "not handicapped accessible, it's nothing for that, it's just a plain

shower." Please see Pages 14 and 16 of "Exhibit C". The aforementioned statements made by Plaintiff's counsel to the Court were absolutely untrue.

14.    This Honorable Court should be aware that your Deponent's doctors are located in Long Island; the majority in Huntington, New York. As described within my moving papers, I have suffered from several ailments, including having five (5) major operations over a period of two (2) years.  In January of 2013, I underwent a posterior inter-body lumbar fusion at Huntington Hospital; in May of 2013, I was temporarily paralyzed and underwent a 9 ½ hour spinal surgery; in August of 2013, I had another surgery to repair a hernia and abnormal disfigurement; in July of 2014, I had my gall bladder removed and in September of 2014, I suffered a stroke.  Your Deponent's primary physician, neurologist, physical therapist, therapist and hypnotherapist are located in Huntington, New York.   My radiologist is located in Woodbury, New York and pain management specialist is located in Syosset, New York. Moreover, I am receiving routine care with Dr. Stanley M. Tocar, M.D., and I need immediate access to my doctors, as the result of my recent stroke and several other severe medical conditions that I suffer, including an aneurysm which needs to be monitored closely by my treating physician.   Annexed hereto as **"Exhibit J"**, is correspondence from my primary physician, Dr. Stanley W. Tocar, M.D., which specifically states that I am receiving routine care at his office located in Huntington, New York.   Further indicative of Plaintiff's shoddy credibility is the fact that he was fully aware that Dr. Tocar was my primary physician as the Plaintiff was the one who recommended Dr. Tocar in the first place.   Annexed hereto as **"Exhibit K"**, are progress notes dated January 18, 2014, (prior to the commencement of the divorce), signed by Dr. Tocar, which specifically indicates that your Deponent was referred by my husband, Edward.  As such, the aforementioned is proof, in and of itself, that Plaintiff's

counsel misrepresented to the Court that that my primary physicians are at North Shore LIJ. Please see page 14, of "Exhibit C".

15.    Furthermore, notwithstanding Plaintiff's counsel's incorrect assertions, a special shower commode chair was installed in my bathroom at the marital residence to assist me with respect to taking showers due to issues pertaining to my spinal surgeries; however, I do not have one installed at my Brooklyn apartment.    Annexed hereto as **"Exhibit L"** is a picture of Appellant's bathroom with a special shower commode at the marital residence. Please see page 16 of "Exhibit C".    As such, it is a necessity for your Deponent to utilize the bathroom at the marital residence for daily bathing as same accommodates my physical needs.    Since being compelled to vacate my home, it takes your Deponent hours to shower and I suffer severe physical pain while showering as I do not have the special shower commode installed in my Brooklyn apartment bathroom, nor the room to fit one.    As such, due to Plaintiff's misrepresentation to this Court that the bathtub in our home is "not handicapped accessible", your Deponent has endured agonizing pain when showering as the direct result of Plaintiff's lies.

16.    Your Deponent was left with no other choice but to seek a stay of the December 11, 2014 Order in the Appellate Division as your Deponent and this Honorable Court was deceived by the Plaintiff. Annexed hereto as **"Exhibit M"** is a copy the Order to Show Cause and Affirmation, without the moving exhibits.    The Plaintiff's counsel forwarded opposition papers; however, interestingly, focuses in on finances and continues to make misrepresentations to this Court with respect to your Deponent's doctors. Annexed hereto as **"Exhibit N"** is a copy of Plaintiff's opposition papers. As detailed hereinabove, your Deponent's doctors are primarily in the Huntington area.    Further proof of same is correspondence annexed hereto as "Exhibit J", is correspondence from my primary doctor, Dr. Stanley W. Tocar, M.D.    As such, Plaintiff's

counsel is misleading this Court and making false representations on behalf of their client. Although the stay was ultimately denied, due to the fact the matter is scheduled before this Court on March 16, 2015, it is quite clear that the Plaintiff manipulated this whole situation in order to obtain exclusive use and occupancy of the marital residence based upon false pretenses.

17.     Further proof that Plaintiff's application for exclusive use and occupancy of the marital residence is disingenuous is that Plaintiff filed said application more than five (5) weeks subsequent to the filing of my initial application. Moreover, this Honorable should be aware that the Plaintiff vacated the marital residence on or about August of 2014, when he commenced the matrimonial action. The Plaintiff was residing at his mother's home located at 316 West Neck Road, Huntington, New York 11743, since the commencement of the action and Plaintiff's mail was forwarded to 316 West Neck Road, Huntington, New York. Annexed hereto as **"Exhibit O"**, is further proof that Plaintiff's address is 316 West Neck Road, Huntington, New York, as Plaintiff's mail is addressed to his mother's residence.

18.     Moreover, further evidence that displays that Plaintiff's request for exclusive use and occupancy of the marital residence is a farce and merely a litigation tactic in order to gain a leg up in the litigation is that Plaintiff entered the marital residence only once between December 11, 2014 and December 19, 2014. The aforementioned is clearly displayed within the online records from the Suffolk Lock and Authority alarm company which shows that the last entry to the marital residence between December 11, 2014 and December 19, 2014, was on December 12, 2014 at 4:10 p.m. Annexed hereto as **"Exhibit P"**, is the web statement from the Suffolk Lock and Authority alarm company that services the alarm system at the marital residence. As such, the necessity for Plaintiff to re-enter the marital residence and have exclusive use and occupancy of same is a complete and utter lie.

19.   Currently, your Deponent is temporarily staying in a small studio apartment, (as I have no other place to temporarily reside), located at 25 Boerum Street, Brooklyn, New York; whereby same is an apartment owned by your Deponent prior to the marriage, which is forty-six (46) minutes away from your Deponent's Huntington residence, without traffic. Annexed hereto as **"Exhibit Q"**, is the Mapquest directions which reflects same. As such, it can take your Deponent up to two (2) hours each way to go to and from doctors' appointments.

20.   Moreover, the Temporary Order granting the Plaintiff exclusive use and occupancy of the marital residence has had a detrimental impact on your Deponent's financial situation. Your Deponent, who is a Vice President at Frost & Sullivan; a rabbi and who manages a huppah company, worked from home at the marital residence. Your Deponent's office and equipment are located in the marital residence.   Annexed hereto as **"Exhibit R"**, is correspondence from Frost & Sullivan, which specifically states that your Deponent is based out of my office in Huntington, New York. Furthermore, I currently face losing my position at Frost & Sullivan, as it is nearly impossible to work from my apartment without all of my supplies and since your Deponent has less time on my hands since I have no other choice but to travel back and forth between Huntington and Brooklyn for appointments. Annexed hereto as **"Exhibit S"**, is correspondence from Frost & Sullivan with respect to same. As such, the Plaintiff has placed your Deponent in the precarious position of possibly losing my job.

21.   Furthermore, your Deponent previously had all of my religious meetings with couples for weddings, children for bar/bat mitzvahs and other clients who needed your Deponent's services for special events, at the marital residence. The majority of my clientele is based specifically out of the Town of Huntington, and I have lost a substantial amount of business since I am no longer as accessible to my clients. Furthermore, the majority of my

huppah equipment is at the marital residence since I have no other locations to store such large items. Annexed hereto as **"Exhibit T"**, are pictures of your Deponent's office located in the marital residence, including my huppah equipment. Annexed hereto as **"Exhibit U"**, are letters from your Deponent's clients which clearly shows that the majority of my business is in Huntington, New York. It is impossible for your Deponent to operate my businesses out of a studio apartment in Brooklyn, New York and I have been losing clients each and every day since being forced from the marital residence based upon Plaintiff's lies.

22.    As evidenced in the attached exhibits, the Plaintiff obtained an Order of exclusive use and occupancy of the marital residence based upon lies and deception. The Plaintiff has turned my life upside down and is hurting your Deponent in all aspects out of pure spite. The method behind Plaintiff's madness to oust me from the marital residence is merely his desperate attempt to force the sale of the marital residence. I am not consenting to the sale of the marital residence at this time, especially since the Plaintiff has been draining equity from our home. Moreover, I have been advised by my attorneys that the sale of the residence is a triable issue of fact and cannot be determined within a motion. Moreover, as detailed hereinabove, Plaintiff's declaration that he placed $191,000.00 of separate funds towards the marital residence is a downright lie. As clearly indicated within the mortgage contract, annexed hereto as "Exhibit H", the marital residence was purchased for $455,000.00 and the loan amount was $364,000.00. Moreover, your Deponent utilized approximately $44,000.00 of separate funds from my 401(k) towards the purchase of the marital residence. Therefore, Plaintiff's $191,000.00 purported separate property claim is false.

23.    Furthermore, Plaintiff openly admits that he previously vacated the marital residence by stating that he "temporarily stayed" at his mother's home, within his moving

papers. Plaintiff's mother resides in a 4 bedroom, 3 bathroom home on a half-acre of property and there is ample space within his mother's residence for the Plaintiff, his mother and his brother to cohabit. Moreover, the Plaintiff fails to attach any proof that he will not be paid a mere $90.00 per week to assist in the care of his brother in the event that he continues to reside with his brother at his mother's residence. As such, Plaintiff's argument holds no water and, procedurally, Plaintiff is not permitted to attach any supplemental documentation to his reply papers with respect to the aforementioned issue.

24.     The extreme hardship, stress and abusive behavior I have endured by the Plaintiff has been unbearable. Despite Plaintiff's allegations regarding my state of mind, (after being subjected to several painful operations), your Deponent had all of my faculties when I was forced to watch Plaintiff sexually please himself while your Deponent endured agonizing pain in bed. When I married the Plaintiff, I truly believed in the words "in sickness and in health". It is quite apparent that Plaintiff did not take his vows seriously and instead chooses to place his selfish needs first and foremost.

25.     Moreover, as the result of Plaintiff's verbally and emotionally abusive behavior, I had been assigned an advocate from Suffolk County Coalition Against Domestic Violence. Annexed hereto as **"Exhibit V"**, is a letter from Suffolk County Coalition Against Domestic Violence dated December 10, 2014, with respect to same. I am physically not a well man and the stress of this divorce combined with being ousted from my home is detrimentally effecting my health and my career. My primary doctor has even recommended that your Deponent take a leave of absence from work, if necessary. Annexed hereto as **"Exhibit W"**, is a signed statement with respect to same from my primary doctor.

26.     As such, your Deponent implores this Honorable Court to recognize Plaintiff's fraudulent and conniving behavior in obtaining exclusive use and occupancy of the marital residence and prays that this Court grants your Deponent exclusive use and occupancy of the marital residence. Moreover, your Deponent respectfully requests that Plaintiff's application to place the marital residence for sale is denied.

## RENTAL OF THE COTTAGE LOCATED AT THE MARITAL RESIDENCE

27.     Plaintiff's allegations that he had no knowledge with respect to renting the cottage on our property is blatantly false. It was always common practice for us to rent the cottage during the marriage. Plaintiff was always involved in this process. Annexed hereto as **"Exhibit X"**, are emails that Plaintiff was copied on and in which real estate brokers contacted your Deponent to look at our cottage and informed your Deponent that they were looking forward to "meeting John" and to seeing the cottage. In fact, in one email dated September 11, 2014, from Nicole Krakoff regarding the cottage, Ms. Krakoff specifically stated that "Jon just left a voicemail", with respect to viewing the cottage. At that time, your Deponent was in California and the Plaintiff was handling meetings with potential real estate brokers. As such, Plaintiff not only knew that we were renting the cottage, he was involved in the process. Notwithstanding the aforementioned, the tenant has vacated the cottage and is threatening to sue your Deponent and our real estate broker. Annexed hereto as **"Exhibit Y"**, is correspondence from our prior tenant's attorney dated January 5, 2015. Of course Plaintiff continues to lie by stating that he was "not" involved in the rental dealings as the evidence attached indicates otherwise.

28.     Moreover, Plaintiff's statements that I informed our prior tenants to call the police is inane. I never prevented Plaintiff from entering the marital residence and I only installed cameras to protect my safety especially after Plaintiff placed your Deponent's life in jeopardy by

13

cutting wires to our home; which thereby shut down the alarm system. At that time, I was residing in the marital residence alone as Plaintiff vacated our home in August of 2014 and moved in with his mother. Your Deponent is in poor health and I have no real way of protecting myself in my home without an alarm system and cameras in place. Notwithstanding the aforementioned, the cameras have been taken down since being forced from the marital residence.

## PLAINTIFF SHOULD CONTINUE TO BE SOLELY RESPOSIBLE FOR THE MORTGAGE AND CARRYING CHARGES ASSOCIATED WITH THE MARITAL RESIDENCE

29.    In accordance with the December 18, 2014 "So Ordered" transcript, the Plaintiff was ordered to pay one hundred (100%) percent of the mortgage, real estate taxes, equity line of credit and all other expenses associated with the marital residence and Plaintiff should continue to be responsible for same during the pendency of this litigation. Plaintiff has lied through his teeth throughout this litigation and has placed your Deponent in such great debt where I am at a point where I may be forced to file for bankruptcy.

30.    First and foremost, Plaintiff intentionally failed to provide several banks accounts in his name and/or in his name and a third parties' name on his Sworn Statement of New Worth, in an attempt to secret his assets. Annexed hereto as **"Exhibit Z"**, is a copy of Plaintiff's Sworn Statement of Net Worth dated October 20, 2014. Plaintiff blatantly failed to disclose the following accounts on his net worth statement: (1) 11 Oppenheimer accounts; (2) 3 CGAA Accounts; (3) 1 Bank of America account ending in 4215; (4) 3 additional Citibank accounts; (5) 2 Sterne Agge accounts; (6) MG Trust Co., LLC account; and (7) 1 Diefendorff account. Annexed hereto as **"Exhibit AA"**, is a spreadsheet which shows a listing of all accounts in Plaintiff's name and in Plaintiff's name with a third party. The aforementioned clearly proves

that Plaintiff perjured himself on his Sworn Net Worth statement by failing to provide a listing of all accounts in his name.

31.     Plaintiff continues to lie to this Honorable Court with respect to his dissipation of our equity line of credit. The Plaintiff was utilizing our line of credit as his own personal piggy bank for his expenses. For example, in the months between December of 2012 and February of 2013, the Plaintiff put nearly $40,000.00 on his Chase Sapphire card and purchased pure nonsense. Thereafter, Plaintiff paid his credit card expenses from our line of credit. Annexed hereto as **"Exhibit BB"**, are copies of the credit card statements. Your Deponent had no idea that Plaintiff was spending extravagantly as I had just been operated on in January of 2013. Moreover, during this time, the Plaintiff withdrew approximately $21,000.00 in January of 2013, during the time of my posterior inter-body lumbar fusion, and was even fraudulently signing checks with my name without my knowledge or consent. Annexed hereto as **"Exhibit CC"**, are copies of the checks.

32.     Further indicative of Plaintiff's incredible behavior is that he transferred the sum of $4,000.00 from his Chase credit card to your Deponent's Discover card in January of 2013, during the time of my surgery, and without my knowledge or consent. Annexed hereto as **"Exhibit DD"**, is proof of same. After hours upon hours on the phone with Discover, your Deponent was finally able to have the charges reversed. However, the aforementioned clearly displays that Plaintiff was maliciously transferring his debt to your Deponent.

33.     Moreover, despite Plaintiff's assertions that he was paying "our" expenses with the line of credit, the aforementioned is a downright lie. The Plaintiff was utilizing the line of credit to pay down his credit card debt and to make improvements to his mother's residence; a residence that is in trust for Plaintiff, and in which Plaintiff stands to inherit. Annexed hereto as

**"Exhibit EE"**, are copies of checks made out by the Plaintiff from the line of credit in order for Plaintiff to pay his Chase credit card bills.

34.     To make matters worse, your Deponent does not know how long I will be able to work as I have already been informed by my employer that I am at risk of losing my job since being ousted from my home.  Moreover, your Deponent also has a 3 mm aneurysm that needs to be monitored carefully.  Please see "Exhibit S".  Annexed hereto as **"Exhibit FF"**, are my test results with respect to having an aneurysm.

35.     Moreover, notwithstanding Plaintiff's ridiculous assertions, your Deponent does not earn in excess of $119,000.00 per year.  Due to Plaintiff's deceitful behavior in having your Deponent forced from my home, your Deponent has little to no business as a Rabbi and with Modern Divinities because I currently reside in Brooklyn, New York.  Your Deponent earned $92,122.99, with Frost & Sullivan for 2014; however, I am at risk of losing my job since it is difficult to operate my portion of the business without an office.  Moreover, my earnings have been on a steady decrease due to no fault of my own.  Annexed hereto as **"Exhibit GG"**, is a copy of my 2014 W2 Statement.  Additionally, your Deponent no longer receives any rental income with respect to the cottage at the marital residence, as detailed hereinabove.

36.     The Plaintiff, on the other hand, has a steady income of at least $123,773.00 for 2014; receives additional income to care for his brother; he tutors; and despite Plaintiff's claim, has an annual opportunity to earn additional income at a summer camp.  Annexed hereto as **"Exhibit HH"**, please find proof of Plaintiff's salary.  Additionally, the Plaintiff utilized marital funds to contribute towards his retirement accounts and also utilized marital funds to "buy back" several years of work with the Oyster-Bay East Norwich school district in order to retire early.

Annexed hereto as **"Exhibit II"**, is a copy of Plaintiff's paycheck which shows that Plaintiff contributes towards his retirement benefits on a semi-monthly basis.

37.    In light of the foregoing, your Deponent is respectfully requesting that the Plaintiff is directed to pay one hundred (100%) percent of the expenses associated with the marital residence.

## EXCLUSIVE USE AND OCCUPANCY OF THE MARITAL VEHICLES AND THE EXPENSES ASSOCIATED WITH SAME

38.    In accordance with the December 18, 2014 "So Ordered" transcript and February 2, 2015 Order, your Deponent has exclusive use and occupancy over the Mercedes and the Plaintiff has exclusive use and occupancy over the Volkswagen.  Please see "Exhibit C". Annexed hereto as **"Exhibit JJ"**, is a copy of the February 2, 2015 Order.  Your Deponent consents to the continuance of this Order during the pendency of this action and consents to each party being responsible for the monthly lease payment, automobile insurance and other expenses associated with each parties' respective vehicle.

## PLAINTIFF'S REQUEST THAT DEFENDANT PAY ONE HUNDRED (100%) PERCENT OF HIS UNCOVERED MEDICAL EXPENSES

39.    As this Honorable Court is aware, the Plaintiff receives all reimbursement checks for your Deponent's medical expenses.  Pursuant to the Court Ordered transcript dated December 18, 2014, the Court ordered that "any insurance checks that are due to either party be sent and if it comes to the other party, they are to send it to their attorney and they will send it to their rightful owner."  Please see "Exhibit C".  Notwithstanding this Court's Order, the Plaintiff has retained and pocketed almost $20,000.00 in reimbursed medical payments from our health insurance carrier; thereby compelling your Deponent to file an application seeking Plaintiff's

contempt. Annexed hereto as **"Exhibit KK"**, is a copy of the Cross Order to Show Cause seeking Plaintiff's contempt dated February 26, 2015.

40.    Upon receipt and notification from our health insurance carrier, my attorneys forwarded correspondence to Plaintiff's counsel informing them that their client had failed to provide the following checks to your Deponent: (1) a check in the sum of $12,267.59, that was issued on November 19, 2014; (2) a check in the sum of $2,200.00, that was issued on December 3, 2014; and (3) a check in the sum of $140.00 that was issued on January 21, 2015. Annexed hereto as **"Exhibit LL"**, is correspondence to Plaintiff's counsel dated February 9, 2015 with respect to same. Your Deponent received correspondence from The Empire Plan which sets forth when the three (3) checks were issued. Annexed hereto as **"Exhibit MM"**, is correspondence from The Empire Plan dated January 28, 2015 and January 21, 2015, with respect to same. This Court should be aware that the reimbursement checks are forwarded to the marital residence and are issued directly to Edward Denker Youngs. Of course Plaintiff's counsel forwarded correspondence, almost two (2) weeks later, attempting to shift blame on me for her client's deplorable actions. Annexed hereto as **"Exhibit NN"**, is correspondence from Plaintiff's counsel dated February 18, 2015. Notwithstanding the aforementioned, as the result of Plaintiff's contemptuous and underhanded behavior, your Deponent currently owes approximately $19,381.79 in medical arrears.

41.    Plaintiff's counsel previously forwarded three (3) checks to my prior attorney on December 11, 2014; however, none of the above referenced checks were included. Moreover, after retaining the December 3, 2014 reimbursement check in the sum of $2,200.00 for almost three (3) months, Plaintiff finally forwarded same to my attorneys. Annexed hereto as **"Exhibit OO"**, is a copy of the medical payment from The Empire Plan dated December 3, 2014. It is

quite obvious that Plaintiff maliciously held the check for almost three (3) months as same was only recently forwarded on February 18, 2015.

42.     The Plaintiff has been pocketing your Deponent's reimbursed medical payments for quite some time and has failed to pay an array of your Deponent's medical expenses, which was previously pointed out in my initial Order to Show Cause. Plaintiff has inappropriately cashed and retained the following health care reimbursement checks: $33.00 on January 20, 2013; $64.50 on February 6, 2013; $200.00 on February 26, 2013; $450.00 on March 13, 2013; $275.00 on April 2, 2013; $1,175.00 on April 25, 2013; $375.00 on May 8, 2013; $64.00 on September 5, 2013; $833.00 February 4, 2014; $833.00 on February 7, 2014; $833.00 on July 20, 2014; $275.00 on June 4, 2014, $1,328.80 on August 8, 2014; and $234.60 on September 2, 2014, for a combined total of $6,974.20 removed by Plaintiff. Annexed hereto as **"Exhibit PP"**, are copies of checks deposited by the Plaintiff. As such, as of even date herewith, the Plaintiff has failed to forward approximately $19,381.79 in reimbursed medical payments from our health insurance carrier.

43.     Due to Plaintiff's contemptuous and fraudulent behavior in pocketing medical reimbursement checks, (which needs to be paid to your Deponent's doctors), your Deponent is now being sued for $15,860.07, by North Shore LIJ Medical Group. Annexed hereto as **"Exhibit QQ"**, is correspondence from the Law Office of Jeffrey G. Lerman, P.C., attorneys for North Shore LIJ Medical Group, dated January 28, 2015, with respect to same.

44.     As evidenced by the checks deposited, the reimbursed medical payments go directly to the Plaintiff. Moreover, the Plaintiff is either cashing the reimbursement checks or retaining them for months at a time; thereby preventing your Deponent from paying my medical expenses. As the result of such despicable behavior, the Plaintiff is causing your Deponent to

incur insurmountable debts. Notwithstanding the fact that we were in Court on four (4) separate occasions subsequent to the issuance of the check, (on December 11, 2014; December 15, 2014, January 22, 2015 and February 2, 2015), Plaintiff maliciously failed to provide the aforementioned check to my attorneys and only recently forwarded one check on February 18, 2015.

45.    As such, your Deponent will consent to be solely responsible for my medical expenses as long as all medical reimbursement checks are forwarded directly to your Deponent upon Plaintiff's receipt of same and that Plaintiff reimburse your Deponent the sum of $19,381.79 for medical payments retained by Plaintiff.

## REQUEST FOR COUNSEL FEES

46.    Plaintiff's request for counsel fees should be denied in its entirety as it is clear through the evidence attached herewith and within my moving papers that Plaintiff's deceitful and conniving behavior compelled your Deponent to file this application. As demonstrated hereinabove, the Plaintiff has not only displaced me from my home, (based upon false representations); Plaintiff has also dissipated the equity in our home and has stolen medical reimbursement funds that were to be utilized towards my medical expenses. As such, the Defendant has placed your Deponent in a financial bind.

47.    Your Deponent has also been forced to incur additional counsel fees for a frivolous application filed by the Plaintiff, on an "emergency" basis, which could have been avoided had Plaintiff's counsel provided my attorneys a courtesy call to discuss the issues. Moreover, the Plaintiff forced your Deponent to file a cross motion for Plaintiff's contempt as Plaintiff was in direct violation of the December 18, 2014 "So Ordered" transcript by pocketing

reimbursement checks and thereby placing your Deponent in another financial strangling situation as I am now being sued by North Shore LIJ Medical Group.

48.      As the result of Plaintiff's abhorrent and fraudulent actions, your Deponent has incurred an additional $38,567.20 in counsel fees, not including Ms. Meyers' bill and not including an additional $5,200.00 in counsel fees to respond to Plaintiff's cross motion. Annexed hereto as **"Exhibit RR"** is a copy of the history bill.  Annexed hereto as **"Exhibit SS"** is an itemized billing statement in connection with preparing this opposition and reply.  As such, your Deponent respectfully requests a legal fee award in the sum of $40,000.00.

**WHEREFORE,** it is respectfully requested that your Deponent's application is granted in its entirety and that Plaintiff's Cross Motion is dismissed, together with such other and further relief as this Court seems just, proper and equitable.

BRIAN H. DENKER-YOUNGS

Sworn to before me this
12th day of March 2015.

Notary Public

JENNIFER L. SCHENKER
Notary Public, State of New York
No. 02SC6216788
Qualified in Suffolk County
Commission Expires Jan. 25, 2018

**Subject:** Re: credit counseling
**From:** Rabbi Brian <rabbibriand@moderndivinities.com>
**Date:** 3/13/2015 5:34 PM
**To:** lfmlawyer@gmail.com,marcoscb@m-t-law.com

Dear Mr Morrison just to be on the safe side do you feel that we should include the Bethpage Federal Credit Union for the home equity given that is going to be key issue with matrimonial. if possible I'd love to be able to retain my American Express and Chase credit card but understand if I can't retain any of them.

I'm a little unclear as to what the process is from here and kind of getting after my husbands assets for the debts. Included within here are going to be debts that are medical related like North Shore Long Island Jewish and other positions that he is stolen medical reimbursements for which I'm being sued


Sent from Virtru for Android

L Morrison <lfmlawyer@gmail.com> wrote:
  please call 8666722227 and complete pre bankruptcy credit counseling

  --
  The Morrison Law Offices, PC
  87 Walker Street Floor 2
  New York, NY 10013
  Tel:212-620-0938
  Fax:646-390-5095
  Cell:347-236-2895