

Brian Denker-Youngs <rabbibriand@moderndivinities.com>

# Update - Today's hearing

**LMorrison** <lfmlawyer@gmail.com>                    Mon, Mar 16, 2015 at 11:34 AM
To: Rabbi Brian <rabbibriand@moderndivinities.com>
Cc: "Jesse J. Cardenas" <Jessec@raiserkenniff.com>, Jim Ingoglia <jingoglia@raiserkenniff.com>

Okay did your attorney advise of the bankruptcy ?

Sent from my mobile

On Mar 16, 2015, at 11:28 AM, Rabbi Brian <rabbibriand@moderndivinities.com> wrote:

> Nobody showed up for the hearing except for me and Jennifer. My husband and his attorney did
> not show up and the judge granted an adjournment for the hearing on exclusive occupancy &
> possession for next Monday.
>
> Best
>
> ## Rabbi B
>
> **BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
> t: 347.644.9482    e:rabbibriand@moderndivinities.com
> **Modern Divinities, Corp.**
> *Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events
> Unlimited*
> www.moderndivinities.com



### Modern Divinities, Corp.

Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited

www.moderndivinities.com





**Subject:** Re: Update - Today's hearing
**From:** Rabbi Brian <rabbibriand@moderndivinities.com>
**Date:** 3/16/2015 1:23 PM
**To:** LMorrison <lfmlawyer@gmail.com>
**CC:** "Jesse J. Cardenas" <Jessec@raiserkenniff.com>, Jim Ingoglia <jingoglia@raiserkenniff.com>

Hi Mr Morrison

No, i dont believe it was made known to the court.  When I inquired as to  confirm receipt of your mail i forwarded, she said she needed to speak with you.

This all is beyond mind boggling and overwhelming at this point for me. I am beyond exhausted emotionally and mentally not to mention heartbroken and discouraged. Months and many sleepless nights and thousands of pages of evidence so clearly outlining that my husband has committed disingenuous acts, gotten away with things that would otherwise be deemed criminal, has a long-standing history of what I've now learnt has a term 'equity skimming', a type of mortgage fraud all easily guided and advised by a close family friend / church go-er of his and his mother's (the guy who wrote that book - A Better Way) means nothing and doesn't matter because my husband filed something called a petition for divorce when I call him to the carpet... And it gave him a get outta jail free card.

Sorry if I'm beating the self-pity drum this afternoon but really kind of sucks being me right now.

Jennifer Schenker is from anthony Capetola's office.  Her email is jschenker@capetolalaw.com

If there anything else on my end beyond taking care of the citibank please let me know.


**Best**

**Rabbi B**

**BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
t: 347.644.9482   e:rabbibriand@moderndivinities.com
**Modern Divinities, Corp.**
*Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*
www.moderndivinities.com

**Subject:** Re: statement of financial affairs
**From:** Lawrence Morrison <lfmlawyer@gmail.com>
**Date:** 3/30/2015 9:54 AM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>
**CC:** "marcoscb@m-t-law.com" <marcoscb@m-t-law.com>

Thanks on the question of the research you would sent last week -those issues relate only to the Supreme Court matrimonial not bankruptcy

Sent from my mobile device

On Mar 29, 2015, at 6:47 PM, Rabbi Dr. Brian H. Denker-Youngs, D.D.
<rabbibriand@moderndivinities.com> wrote:

> 2012 tax for filing of the $44,222 separate property claim on the house for down payment. I paid the tax on the early withdrawal as well not John. Don't know if this can be protected or added to the exemptions or locked in but it has been put into my motion papers in the supreme court as a separate property claim.
>
> Please be aware the Brooklyn apartment is an HPD Mitchella-Housing Co-Op there is no value in it -it was estimated that i have maybe $1200 in equity i'd get back hence (unlike these divorce attorneys), financially while the overhead is significantly lower, it hold no water as it is not an asset of mine - should be treated like a rental   Long Island attorneys i guess do not know what Mitchela-Lama housing program was.
>
> I didn't know what format you needed these but please see attached my statements of financial affairs - i left it in word in case there was something i needed to change
>
>
>
> My sincere best,
>
>
> **BRIAN H. DENKER-YOUNGS, D.D**
> Rabbi & CEO
> t: 347.644.9482
> e: rabbibriand@moderndivinities.com

**Subject:** Re: Friday
**From:** L Morrison <lfmlawyer@gmail.com>
**Date:** 4/14/2015 2:46 PM
**To:** Brian Denker-Youngs <rabbibriand@moderndivinities.com>

ok so If you want to get back into the house , you will need to use the state supreme court for that

On Tue, Apr 14, 2015 at 2:04 PM, Brian Denker-Youngs <rabbibriand@moderndivinities.com> wrote:

> Is that a must?  One of the main issues with the divorce is that he stripped the marital property of any equity expending the HELOC without my knowledge or consent and wallah $124k in debt.
>
> Ideally the goal was that i wanted the house.   Monies he's syphoned he's rolled into 403(b)s for his benefit or his mother's house (also a trust).
>
> There are accounts that he has in terms of wealth management and money markets he didnt disclose with close to (if not more than $100k).
>
> Ideally my goals - get back into my house so i can get back to work - the home office in the marital residence is my office for all 3 jobs;  debt reassignment - him owning and paying the debt that is his not mine and hopefully the house
>
> Sent from Outlook
>
>
>
>
> On Tue, Apr 14, 2015 at 10:58 AM -0700, "Lawrence Morrison" <lfmlawyer@gmail.com> wrote:
>
>
>> Okay please send me the information on the marital property so I can bring a motion to force the sale on the bankruptcy court
>> Sent from my mobile device
>>
>>
>> On Apr 14, 2015, at 1:35 PM, Brian Denker-Youngs <rabbibriand@moderndivinities.com> wrote:
>>
>>
>>> I am actually at the courthouse in Islip with the sheriff can I email you once I'm out of

Re: touch base

**Subject:** Re: touch base
**From:** Lmorrison <lfmlawyer@gmail.com>
**Date:** 7/2/2015 6:54 AM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>

Yes the motion is complete . I'm waiting for a hearing date from Chambers.
Let's get on the call on Monday please.
 Happy Fourth of July .
Best regards,
Larry Morrison
Sent from my iPhone

On Jul 2, 2015, at 3:16 AM, Rabbi Dr. Brian H. Denker-Youngs, D.D.
<rabbibriand@moderndivinities.com> wrote:

> Hi Mr Morrison - did things go ok with the motion for the subpoenas?
>
> I'm awaiting a response on next steps on the matrimonial side attached is what we've
> uncovered as to how the judge is acquainted with John's family.  Apparently in 2013, the
> Judge was up for an appointment as Town Attorney and didn't get it.  John's uncle the
> same one that suddenly was working at the bank that we have the home equity for a
> short period that was odd, is good friends with the Town Justice (same town that Judge
> Riley served as receiver of at times and was to get the appointment to Town Attorney).
>
> The uncle (who my husband has never really been close with) has not missed one court
> appearance...
>
>
> --
>
>
>

> **Modern Divinities, Corp.**
> Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited
> www.moderndivinities.com
>
> proud recipient of

**Subject:** June Operating report
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 7/14/2015 9:55 AM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>
**CC:** Stephanie Carrera <sct@scheurerlawfirm.com>

Hi Mr Morrison

Good morning! Please see via link - https://www.dropbox.com/s/pt66ycppb4b5j8t
/July2015_DenkerOperatingReport.pdf?dl=0

  Also took a hard look through one of our joint checking accounts which ive include a quick
napkin scratch accounting of.

Essentially key observations:
1. checks 1077-1150 must have been checks kept at my mother-in-law's house based on issue
dates and they are all written to either landscaper or cleaning woman; (we used the same
people as his mother) and the signature/penmanship is not John but Matjes.  There's close to
$10k in checks like this

2. It appears that he played several games with deposits of funds we are by he would both
checks to come up with a sizable deposit amount but would withdraw her funds at the same
time there after via ATM or teller. I was also able to trace that he's removed close to $14,000 in
cash, he paid bills from our joint checking account which means when he shows his statements
from Bank of America or Chase credit cards is that he paid bills his mothers bills with money
that should have been paid to my bills.

3. It appears that two of the main credit cards that seem to get a lot of traction were his city
advantage which I don't have access to in the Chase Sapphire.

I hope that this service helpful and please do let me know next steps with respect to
subpoenas, etc.

--

My sincere best,

**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO

Sapphire Credit Card - DenkerYoungs

**Subject: Chase Sapphire Credit Card - DenkerYoungs**
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 7/16/2015 3:55 AM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>, Stephanie Carrera
<sct@scheurerlawfirm.com>, "tcs@schererlawfirm.com" <tcs@schererlawfirm.com>

Hi Mr Morrison

These are the credit card statements that the majority of home equity line of credit (Beth page federal) that the credit line was sent to pay,  To date only Equifax has removed it from my credit file as an account take over for fraud the other two TransUnion and Expedia still remain reporting it as my debt.   What is your recommendation or how do i handle?

Based on my calculations:

$46, 231.36 was paid to this credit card between the months of May 2012 - October 2014 from our joint checking account with Chase
$5,161.93 of credit were issued back or reversed on the statements (money paid out and not returned)
$100.836.80 was paid over to them via Beth Page Federal Credit Union

totaling: $152,230.99   (way more than what i even owe in debts)

I am in receipt of a letter from Chase Executive Offices' Harriet Thatched stating that she will not be able to file a claim nor discuss these with me as she does not have authorization from their customer as I "am neither an account owner or authorized user" for the credit card account ending in x9039 which is this credit card

-- https://doc-04-98-apps-viewer.googleusercontent.com/viewer/secure
/pdf/rek47jrd5u1tr1onrcvimarrm9aulseq/tdgrqolmmpfjhe5m0g9hirjcb6odkj56/1437022950000
/gmail/02282935760205954308/ACFrOgAhU7yuAxUOALaLphuH3bZ9OqoO25-
AdmalZbmzyoBObA4FSkZWE8-
D_ieaWsRf3F3JYcZmnpS_1Cmch9e5dyj_8uZ39xGmLG0Cah2p9w9--M_iRhSjkyfxOpA=?print=true&
nonce=eao6r4reg6tr8&user=02282935760205954308&
hash=6p0ain0pbpio2qmqtjm7g52lu4ie6jpp

https://mail.google.com/mail/u/0/#search/jschenker%40capetolalaw.com
/14a98379b48a3c17?projector=1

My sincere best,

10/2/2015 5:33 AM

ecordings

**Subject:** audio Recordings
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 8/9/2015 7:56 PM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>

Hi Mr. Morrison -

Not sure if I ever sent these to you but wanted to provide this incase it was helpful in the deposition or positioning with the Trustee and the Court.  Both recordings I am involved as part of the conversation.  The first i say on the audio that i recorded the discussion.   Please do excuse me a head of time on the first recording, i was still a bit in shock at the time i made the call so I do get a bit loud with him.

**Recordings**
August 25, 2014 after leaving the attorney's office and confront him via phone.   The accompanying email attached he sent right after this call and bcc'd me
https://www.dropbox.com/s/mxkh8ayzr6xgw2z/Voice%20002.m4a?dl=0g
--

Recording approx 9/21/2014 - Brian & John have informal meeting between Jack Captree from Shelter Rock Church Syosset, NY
*audio gets better at about 4mins - i speak about deceived on religion, the finances etc. assign that he took care of the finances, how he handled the finances.*
https://www.dropbox.com/s/vb4mpv4owl6h09q/Voice%20003.m4a?dl=0

My sincere best,

**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO
t: 347.644.9482
e: rabbibriand@moderndivinities.com

**Subject:** examples of theft and debt assignment
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 8/9/2015 8:08 PM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>

Mr. Morrison -

Attached is some supporting documentation with respect to John's assignment of debt onto me and unauthorized use/dets

page 1-2     Letter from Executive Office of Chase stating I am neither an account owner or authorized user of a credit card ending in 9039
page 3       My claim for fraud to Discover (they reversed and are still holding me accountable) for a $4000 balance transfer from a Chase                card ending in 9039
page 4-6     My Chase Slate credit card with overdraft charges that came from our joint checking, the 2 for $1250 are the mortgage
                withdraws each month.  He would belatedly make the deposit into our account so that the overdraft to pay the mortgage those                months he then sent thousands to his credit cards.
page 7-9     Bank of America credit for example see charges 1/7/2013 -- I was operated January 7 had spine surgery - these weren't charges i
                made
pages 10-17 Bethpage checks written to Chase Sapphire credit card
page 18-19   to date the only credit reporting agency that has removed the HELOC
page 20-22   my other Bank of America credit card - John used to buy counter-tops for the house when we moved in
page 23-29   checks that had my name or sent and i never saw - evidenced by the fact of how they are endorsed on the back
page 30-40   Medical insurance reimbursement checks (just some of the many) cashed and doctors never paid

My sincere best,

**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO
t: 347.644.9482
e: rabbibriand@moderndivinities.com

**Subject:** Possible oversight
**From:** Rabbi Brian <rabbibriand@moderndivinities.com>
**Date:** 8/12/2015 4:58 PM
**To:** Marcos Coto-Batres <marcoscb@m-t-law.com>, L Morrison <lfmlawyer@gmail.com>

Hi it just dawned on me today and i dont remember if i listed it (total oversight).  I had taken a loan in December against my 401k for legal expenses for around $15k which is paid back and deducted directly between my employer & vanguard.

The monies upon receipt got paid to my credit card and then Capetola and Raiser & Kneiff fees charged.

If not listed it was out of sight/out of mind by accident.  Anything i need to do?

Also curious were you able to determine anything with respect to John filing as a creditor? I didn't see a claim however I would dispute anything he thinks he has a claim for against me, the dirty crook.


**Best**

**Rabbi B**

**BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
t: 347.644.9482    e:rabbibriand@moderndivinities.com
**Modern Divinities, Corp.**
*Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*
www.moderndivinities.com

**Subject:** Exhibit A
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 8/13/2015 8:47 AM
**To:** "marcoscb@m-t-law.com" <marcoscb@m-t-law.com>, Lawrence
<lawrenceconti@gmail.com>, Terry Scheurer <tcs@scheurerlawfirm.com>

Hi guys -

I noticed in John's bankruptcy attorney's letter to the Judge Craig she was pointing out that
there perhaps was not specific document requests for John to furnish. Just in case, i took the
liberty of gathering what I know he has not and would not likely turn in but all are kinda telling
(quite a bit actually as none of them i would even have access to).

Hope this helps.   The subpena accounts are integrated but the ones i gave you originally are
the key ones however obviously a lot here what do you think ?


--




My sincere best,


**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO
t: 347.644.9482
e: rabbibriand@moderndivinities.com



For your file or case if needed

**Subject:** For your file or case if needed
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 8/29/2015 6:54 PM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>

Hi Mr Morrison

I wanted to provide you copies in case relevant or needed for my bankruptcy file.  My complaint for divorce (reinforces allegations of financial conduct) and the appeal (also reinforces) to which I am filing via OSC with 2nd appellate on Monday.

Hope you had a great week and weekend.
--



My sincere best,


**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO
t: 347.644.9482
e: rabbibriand@moderndivinities.com



## Modern Divinities, Corp.
**Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited**
www.moderndivinities.com

proud recipient of

**Subject:** Fwd: FW: Send data from MFP07519696 09/17/2015 11:42
**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D." <rabbibriand@moderndivinities.com>
**Date:** 9/27/2015 3:27 PM
**To:** "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>

Hi Mr Morrison

Wanted to discuss the attached for when you might have sometime this week. This is what the
Suffolk County judge signed and placed on the docket as an adhoc conference the same day
John's attorney filed for the relief to lift the stay in the bankruptcy case to which all was the day
before we were to appear on my complaint to annul the marriage on fraud and economic
domestic abuse...

-------- Forwarded Message --------
**Subject:** FW: Send data from MFP07519696 09/17/2015 11:42
   **Date:** Thu, 17 Sep 2015 15:43:59 +0000
   **From:** Terence Scheurer <tcs@scheurerlawfirm.com>
      **To:** lsimonetti@lousimenetti.com <lsimonetti@lousimenetti.com>,
         rabbibriand@moderndivinities.com <rabbibriand@moderndivinities.com>
      **CC:** Stephanie Carrera <sct@scheurerlawfirm.com>

Please see attached.

Very truly yours,

Terence C. Scheurer, Esq.
Terence Christian Scheurer, P.C.
One Old Country Road, Suite 125
Carle Place, New York 11514
(516) 535.1500
(516) 535.1111 fax
tcs@scheurerlawfirm.com

─Attachments:

   DOC091715-09172015114246.pdf                                    77.3 KB

**Subject:** Re: IMPORTANT - that court not grant John relief and lift stay
**From:** lfmlawyer@gmail.com
**Date:** 10/1/2015 3:48 PM
**To:** Rabbi Dr Brian Denker-Youngs <rabbibriand@moderndivinities.com>


Sent from my iPhone

On Oct 1, 2015, at 3:34 PM, Rabbi Dr Brian Denker-Youngs
<rabbibriand@moderndivinities.com> wrote:


Mr Morrison

As you are aware discovery has not occurred in the matrimonial as my husband has not
turned over any documentation which is why we filed for a 2004 application to which
hearings have yet to take place.

Further, upon reviewing the recently released redacted transcript of your apperance
before Judge Craig, I have questions to which is not what I understood the preceding were
assisting to protect and help with. This is also to the extent that there are deaths from day
one that still are not included in my schedule such as a home equity. I am going to mr.
Curtain hateful copy of the order to show cause signed in Kings County to which also will
illustrate the fact that my husband petition and motion if anything best is also perjured.

Further as you are aware, there is an appeal being held in advance at the appellate court
which would prevent any final dissolution of marriage being issued and further I did
request that to be brought before the judge for permission for the appellate court to
proceed.

It is very clear me what is transpiring in Suffolk County and what has been the case with
my other attorneys. And while I am beginning to think that I'm crazy print on paper
doesn't lie and I would hate to think that such a question might arise in the petition
herein, including the facts that any potential debts to be discharged  in a divorce decree
amd what cancels itself out except in certain circumstances release to which I have filed
and still have debt.


-------- Original Message --------
**From:** lfmlawyer@gmail.com
**Sent:** Thursday, October 1, 2015 09:16 AM

Re: IMPORTANT - that court not grant John relief and lift stay

To: Rabbi Brian <rabbibriand@moderndivinities.com>
Subject: Re: IMPORTANT - that court not grant John relief and lift stay
CC: Marcos Coto-Batres <marcoscb@m-t-law.com>

Hi Rabbi.
Hope all is well, Since the bankruptcy court does not address matrimonial issues there is
no legal basis to object to stay relief.
I know we had discussed this but feel free to call me if you'd like to discuss this further.
Thank you,
Larry Morrison

Sent from my iPhone

On Sep 30, 2015, at 8:50 PM, Rabbi Brian <rabbibriand@moderndivinities.com> wrote:

> Hi guys
>
> I'm sorry to bother you I know you're busy hopefully you got a copy of the motion I
> sent today but it's very important that the court not lift the stay because I believe
> despite not even starting or having done discovery or appraisals they are going to be
> entering a judgment in the folder something somehow to finalize the divorce without
> any of the proper procedures again this is being driven all by the judge Who knows
> my husbands family.
>
> I'm researching and trying to work to grasp the concept of a petition for writ of and
> to file a petition for a writ of certorari with the appellate court to hopefully stay
> Suffolk until Judge Landicino can hear parties on Nov 5 on the Order to Consolidate
> that I motioned for in Kings County.
>
>
> Best
>
> Rabbi B
>
> BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO
> t: 347.644.9482    e:rabbibriand@moderndivinities.com
> Modern Divinities, Corp.
> Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events
> Unlimited
> www.moderndivinities.com

**Subject:** Re: In re: Denker Denker-Youngs
**From:** lfmlawyer@gmail.com
**Date:** 10/1/2015 9:54 PM
**To:** rabbibriand@moderndivinities.com
**CC:** Marcos Coto-Batres <marcosCB@m-t-law.com>, Jerald Tenenbaum <jerald@m-t-law.com>

Im sorry Rabbi Brian buy again I don't understand this email . The bankruptcy was filed to give you a fresh start and that is what we are trying to do.
The concept was is and is to address the debts that you incurred as a result of what you told us was your husbands fraud.
It was never designed to address your matrimonial issues which you had counsel to deal with .
Let's discuss further tomorrow at our meeting .
Best regards ,
Larry Morrison

Sent from my iPhone

On Oct 1, 2015, at 7:50 PM, Rabbi Dr. Brian H. Denker-Youngs, D.D.
<rabbibriand@moderndivinities.com> wrote:

> Mr. Morrison,
>
> It was sent as a courtesy as obviously by letter of my own estranged spouse's attorney's mouth "an appeal and motion has been stayed and held in abeyance" thus the motion and petition I found on docket filed by my estranged spouse's attorney seeking relief is not only a lie but intentional i believe to further victimize me, get away with having done what he has done and put me into debt together along with removing all the equity in our home that my retirement went into purchasing for me to wind up with even less than i started.
>
> I thought as encouraged that given where i am financially, bankruptcy was the only choice, and that it afforded me a fresh start, without worry and focus on my healthy while safe guarding a portion of my home.  A Mitchell Lama Co-op is worth $1,500 and while my permanent address i hardly consider  that my asset as a fresh start to which it appears upon reading of the transcript that was released, that is what im getting? The schedules as i've informed you previously are absent the home equity line of credit, etc.
>
> Someone is not being up front and honest with me at all - nor forth coming. Again, I am the victim here and at the very moment speechless.... but i suppose im getting an eye-opening lesson on what the legal profession really is truly all about, not the truth and justice i was raised believing it was.

THIRD DISTRICT COURT OF SUFFOLK COUNTY
STATE OF NEW YORK
-----------------------------------------------------------------x
BRIAN H. DENKER-YOUNGS

                Plaintiff,

      -against-

EDWARD J. DENKER-YOUNGS a/k/a
E J YOUNGS a/k/a JOHN YOUNGS and
KEN BELL & ASSOCIATES,

                Defendants.
-----------------------------------------------------------------x

Index No.: SC-132-15/HU

**AFFIRMATION IN
OPPOSITION TO
PLAINTIFF'S MOTION
FOR SUMMARY
JUDGMENT**

**LOUIS F. SIMONETTI, JR.**, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the truth of the following under the penalties of perjury:

1.     That I am the principal of Simonetti & Associates, attorneys for Defendant, EDWARD J. DENKER-YOUNGS a/k/a E J YOUNGS a/k/a JOHN YOUNGS (hereinafter "Youngs") and as such I am familiar with the facts and circumstances of this action based upon a review of the file maintained by my office.

2.     This affirmation is submitted in opposition to the motion of plaintiff, which seeks an order dismissing the counterclaim of Defendant KEN BELL & ASSOCIATES, granting Plaintiff summary judgment, and referring this matter to the Suffolk County District Attorney's Office.

3.     It is respectfully submitted that Plaintiff's motion is without basis in either law or fact and must be summarily denied.

A.     <u>Plaintiff's motion is facially defective</u>

4.     As this Court is well aware, CPLR §3212 (b) requires that a motion for summary judgment shall include, "a copy of the pleadings." Absent from the movant's papers is a copy of his

1



small claims complaint, or the counterclaim of Defendant Ken Bell & Associates. As such, the Plaintiff's application is defective and must be denied in its entirety.

B.    <u>Plaintiff has failed to meet his burden which would entitle him to summary judgment</u>

8.    Not only is Plaintiff's motion defective on its face, but it fails on its merits as well. As this Court is well aware, it is axiomatic that "To obtain summary judgment it is necessary that the movant establish his cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in his favor, and he must do so by tender of evidentiary proof in admissible form." <u>Zuckerman v. City of New York</u>, 49 N.Y.2d 557, 562 (1980). It is respectfully submitted that Plaintiff has failed to state a cause of action and has further failed tender any such proof and thus, cannot meet this burden.

9.    Other than his own self-serving affidavit, the "proof" submitted by the Plaintiff herein consists almost exclusively of unsworn statements contained in unauthenticated emails and correspondence, all which are inadmissible hearsay. Accordingly, Plaintiff has failed to tender any evidentiary proof in admissible form in support of his claim.

10.    Additionally, Plaintiff fails to demonstrate that he has sustained any damages as a result of Defendant Youngs' alleged conduct. The basis for Plaintiff's claim of damages in the amount of $4,700.00 is, as stated in his affidavit, "a direct result of extra and additional legal expenses incurred (unnecessarily) resulting from Defendant (2)'s *(Ken Bell & Associates)* performance having breached the implied covenant of good faith and fair dealings to with your deponent *can only surmise* was with the participation and direction of Defendant (1) *(Youngs)*. See Denker-Youngs Aff. ¶ 21 *(emphasis added)*. As such, Plaintiff's entire claim for damages against Defendant Youngs is, by his <u>own admission</u>, based solely on assumption and conjecture. Plaintiff proffers not one iota of documentary proof in this regard. Same is simply insufficient to meet the

2

burden necessary which would entitle Plaintiff to judgment as a matter of law, let alone to state a cause of action to begin with.

11.    Accordingly, by failing to attach sworn or certified records or documents to which Plaintiff refers to in his affidavit, the Plaintiff has failed to meet his burden of proof or production as a movant for summary judgment. Mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are certified or sworn to.

12.    As Plaintiff has failed to meet his burden of proof in his request for Summary Judgment, Plaintiff's motion must be denied in its' entirety.

C.    There is no legal basis for Plaintiff's request to refer this matter to the District Attorney's Office

13.    In his application, Plaintiff asks that this Court issue an "Order of Transfer on referral" to the Suffolk County District Attorney's Office for "further investigation" and "authorizing" the District Attorney to "proceed with prosecuting any offender(s)."

14.    Plaintiff states no legal basis for this relief, and it is respectfully submitted that there is no provision in the law that would provide for same. As such, this aspect of his application must be denied.

D.    This action is subject to an automatic stay pursuant to 11 USC §362(1)(a)

15.    Upon information and belief, the Plaintiff filed a Voluntary Chapter 11 Bankruptcy petition on or about March 13, 2015 in the United States District Court for the Eastern District of New York. A copy of the Plaintiff's petition is annexed hereto as Exhibit "A."

16.    Pursuant to 11 USC §362(1)(a), the filing of such a petition operates as a stay against the commencement or continuation of any proceeding against the debtor. In the instant matter, Defendant Ken Bell & Associates has filed a counterclaim against the Plaintiff seeking monetary damages. Accordingly, this matter should be stayed pursuant to the applicable provisions of the

Bankruptcy Code.

WHEREFORE, it is respectfully requested that the Plaintiff's motion denied in its entirety and that this Court grant such other and further relief it deems just and proper.

Dated:  Woodbury, New York
        June 23, 2015

Louis F. Simonetti, Jr.

4

SUPREME COURT, STATE OF NEW YORK
APPELLATE DIVISION, SECOND DEPARTMENT
------------------------------------------------------------X
EDWARD JOHN DENKER YOUNGS,

                                App. Div. Docket No. 16968/2014

                     Respondent,        **AFFIDAVIT IN OPPOSITION**

   -against-

BRIAN H. DENKER YOUNGS,

                     Appellant.
------------------------------------------------------------X
STATE OF NEW YORK    )
                          ss.:
COUNTY OF SUFFOLK   )

     **EDWARD JOHN DENKER YOUNGS,** being duly sworn, deposes and says:

     1. I am the Plaintiff in the above-captioned matter, and as such I am fully familiar with the facts and circumstances herein.

     2.     First and foremost, I would like to point that Appellant's position that he was forced to file for bankruptcy as a result of your Deponent's "gregarious and fraudulent conduct" is preposterous and simply untrue. In fact, it is beyond me how someone who earned $120,000.00 annually and wherein, I have been paying all the expenses in connection with the marital residence. Annexed herein as **Exhibit "A"** is Defendant's Statement of Net Worth indicating his income. Also annexed herein as **Exhibit "B"** is Justice Reilly's Order directing that I pay all the expenses in connection with the marital residence.

     3.     Appellant has exhausted this matter to no end, with absolutely no light at the end of the tunnel. He has litigated the issue of "exclusive use and occupancy " in excess of four (4) times, with the same result each time. There is absolutely no basis in law or in fact to amend the order issued by the Honorable Justice Reilly, who has dealt with this case with the utmost

1



professionalism and neutrality. Appellant has stated time and time again throughout his affidavit that he has endured a year of abuse and watched lies, while enduring irreversible impact and harm (page 5). This is quite comical, when the only person who has tried to abuse the system and caused financial and emotional harm to their spouse is the Appellant. In fact, he states that he has always been taught to "respect the court and law," yet, his own writings, which are publicly posted on Facebook and a blog, indicate that no one can control him, not even the legal system. (**Exhibit "C"** herein). There was never any bias against the Appellant and in fact, my uncle, Arthur Van Nostrand, has no affiliation with Justice Reilly whatsoever. The Appellant has not shown that any such affiliation exists, except for the mere fact that both Justice Reilly and my uncle may possibly reside in Northport, New York. I must state that they possibly may reside in Northport, New York, as I really do not have any personal knowledge as to where Justice Reilly resides. In addition, Appellant is trying to draw a connection between Paul Sensar and my uncle, as well as Justice Reilly - this is quite ludicrous and farfetched. Appellant has failed to show the existence of any impropriety or any bias on behalf of Justice Reilly. He simply does not like that he received an unfavorable decision after a hearing and now is trying to relitigate the same issues over and over again.

4.      This action was in fact commenced by your Deponent by Summons with Notice. The Appellant was represented by the Law Offices of DeRosi & Stern, LLP at that time. This matter was then scheduled for a Preliminary Conference before Justice Reilly on November 6, 2014. At that time, his new attorneys, Natasha Meyers, Esq., presented an Order to Show Cause for pendente lite relief. The respective attorneys discussed the temporary relief that was requested and presented their positions. The Court directed that both sides try to work out a living plan for both parties until the next return date. The Appellant is absolutely incorrect when

he states that the Respondent had "effectively moved into his mother's residence nearby where the Respondent is also trustee caretaker to the property and has established as an address of record for himself dating back years." First, Your Deponent never relocated or established a new residence at my mother's house. This has been discussed time and time again. My mother resides with my disabled brother who has severe Down's Syndrome. My mother testified at the hearing wherein she verified that I NEVER lived with her during my marriage. Secondly, I provide aiding services to my brother, wherein I am compensated for my services. During the hearing my mother presented a contract that she has signed which specifically stated that none of the aides can reside with my brother while they are providing services. Lastly, I continue to provide services to my brother because there are certain tasks that he feels more comfortable with me performing, then the other aides. In addition, my mother testified that I am not a trustee and caretaker for her property. After my father passed away, their home was left in trust to my mother. The home is left in trust to me, when my mother passes away. However, my mother is still alive, and as such, I am not a trustee. In addition, I am not a caretaker for her home- I am not really sure where he gets that from. Lastly, I have never established my mother's address as my residential address. I have had my mail sent to her house because the Appellant invades my privacy but this is in no way indicative that I reside there.

5.      The Appellant has tried to persuade this Court that he needs to reside in the marital residence because that is the location of his work. This could not be further from the truth and a complete manipulation of the facts. Appellant's main office is located in Rockville Center, and Manhattan (specifically on Broad Street). These locations are extremely close to his Brooklyn apartment as opposed to our home in Huntington. Secondly, during the hearing the Appellant specifically testified that he needs a telephone line and a desk to work out of the

3

house. He could do this from anywhere. In fact, during our marriage he worked from his Brooklyn apartment at least 3-4 days a week because it was more convenient for him and secondly, because he would not be disturbed during the night when he was conducting his conference calls.

6.      As previously stated, the attorneys and the Court agreed that the Appellant's motion will be held in abeyance until we returned to Court on the following appearance. In the meantime, the parties were to work out a resolution of the issue of exclusive use and occupancy. At that time, a possible alternative was that one party would reside in the house, and the other would reside in a cottage that existed in the back of the residence. However, it later came to fruition, that the Appellant herein illegally rented the cottage to tenants. He solely executed a lease in his name (under an LLC that he created. Annexed herein as **Exhibit "D"** is said lease agreement. In addition, he was collecting and solely keeping for his own benefit, the rental income. Subsequently, the tenants found out that the cottage was illegal. They threatened a lawsuit against the Appellant and the broker who rented them the cottage. They immediately vacated the property and the Town of Huntington came in to investigate. The deemed the property uninhabitable and posted a sign on the door. Annexed herein as **Exhibit "E"** is said sign. We are currently in litigation regarding this issue and the fact that we are now required to obtain all the necessary C of O's and permits. The Appellant has not contributed to a single dime towards these necessary documents.

7.      Since there was no possible solution to the issue of exclusive use and occupancy and since in the meantime, the Appellant took it upon himself to file for an Order of Protection predicated on false allegations on December 1, 2014, I deemed it necessary to file my own application. The next appearance was scheduled by the respective attorneys and the court for

December 11, 2014. At this appearance, my attorneys filed on my behalf a cross motion in opposition to Defendant's Order to Show Cause and my own request for *pendente lite* relief, namely exclusive use and occupancy. The Appellant clearly has his facts wrong when he states that "following some colloquy, the Lower Court issued a temporary order." The Supreme Court issued a decision as a result of oral arguments placed on the records by the respective attorneys. Attached herein as **Exhibit "F"** is the transcript from said appearance, which was subsequently So Ordered by Justice Reilly. On this very day, the Appellant chose to fire his attorney on the record, in open Court.

8.    The Court's consideration was not solely based on the volatile relationship between the parties, but Plaintiff's substantial separate property claim in the house, Plaintiff's inability to reside elsewhere, the fact that Defendant has a home in Brooklyn which is his separate property and various other factors. Defendant denies any acts of violence, yet he himself filed for an Order of Protection on December 2, 2014, in the midst of the Court's directive to attempt a settlement. Annexed herein as **Exhibit "G"** is his petition for an Order of Protection.

9.    Immediately thereafter, on December 12, 2014, the Defendant hired his third attorneys, The Law Offices of Anthony Capetola. Annexed herein as **Exhibit "H"** is the Notice of Appearance. On December 15, 2014, we were yet again scheduled to appear before Justice Reilly. The attorney's conference the case in chambers as well as on the record, wherein the attorneys for the Defendant begged the Court to reconsider the decision and reiterating everything that was placed on the record by Natasha Meyers in greater detail. The Court denied the Defendant's request. On this day, a hearing date was scheduled for January 28, 2015, with the consent and input from his attorneys.

5

10.    Defendant alleges that he was caused "grievous prejudice and his due process rights were violated as a result of a 5 month delay. I remind the Court that throughout this entire time the Defendant was represented by counsel of his choosing. As such, any adjournments or delays were caused as a result of his attorneys request, the Court's direction or consent from his attorneys. In the meantime, the Defendant then took it upon himself to file an application with the Appellate Division on December 22, 2014 requesting leave to appeal the Court's determination and requesting a stay of the determination. The Appellate Division denied the Appellant's request. Annexed herein as **Exhibit "I"** is said application.

11.    Defendant is correct when stating that there were several adjournments. This was by no means caused solely by myself or my attorneys. There were instances when the Court had other trials or hearings scheduled at the same time, or either of our counsel were unable to proceed. Defendant was well aware of this. Again, each of these adjournments were with the consent or procured by his attorneys. It is quite ironic how the Defendant alleges that the delay in commencing and concluding the hearing, resulted in financial loss to him and his business LongIslandChuppah.com, when he testified during the hearing that he sold his chuppah equipment well before the hearing commenced.

12.    I am not really sure what the Defendant is referring to in para. 21 of his Affidavit. First, I would like to point out to the Court that his exhibits in my copy of the motion papers are not lettered. However, I am not quite clear how he can assume I engaged in any "illegal and unethical misconduct" when I had no contact with the Defendant and I was residing in the house. The pictures that Defendant is attaching are when the Defendant was also in the house and he took it upon himself to change the locks, install cameras, unhook the alarm system and place various lighting fixtures outside the home, thus engaging in self-help and preventing my re-entry

into the house.

13.     With regard to Defendant's para. 22, wherein he addresses an Order to Show

Cause that he filed pro se, despite the fact that he was represented by counsel at that time. It is

my understanding that during the hearing, this was discussed with his attorneys and he consented

to withdraw the application. Justice Bivona simply signed the Order to Show Cause. No

Temporary relief was granted and he did not turn any case over to the Suffolk County District

Attorney's Office for investigation. Annexed herein as **Exhibit "J"** is the signed page from

Defendant's Order to Show Cause.

14.     I honestly have no idea what the Defendant is talking about in para. 23 of his

Affidavit. At no point did I admit to lying in open Court or misrepresent any material facts to

oust the Defendant. In addition, I never filed an ex parte motion during the entire litigation. I

have always been represented by counsel who at all times has provided notice to the adversary

when they intended on filing a motion. The Defendant is misrepresenting the truth and fails to

provide the whole picture when making this statement that it took me two weeks to enter the

home after the court order As previously discussed the Defendant was seeking another

emergency court appearance and then a stay at the appellate division. In addition, I did not go

into the house until I had a So Ordered copy that I could provide to the police and they could

escort me into the house. The Defendant went back to the house several times after he was

advised to relocate to his Brooklyn apartment claiming that he forgot his personal belongings.

Furthermore, the Defendant had changed the alarm code and all the locks in the house, which

prevented me from entering the home until such time as I was able to get a locksmith and change

the locks. In fact, Defendant installed a digital lock and refused to provide the code. In addition,

he changed all the alarm codes and disassembled the alarm system. Annexed herein as **Exhibit**

**"K"** are pictures of the locks and the disassembled alarm system. These pictures were also posted on the Defendant's Facebook page.

15. Again, I did not state any of the allegations contained in para. 25 of the Defendant's affidavit. Defendant and I did in fact have contact between September and November, as we were still residing together.

16. First of all, police reports were not admitted into evidence as they are hearsay. Secondly, the Defendant did in fact slam the door on my foot causing me a contusion. Annexed herein as **Exhibit "L"** are the medical records as well as the police report. In addition, on another occasion the Defendant crashed his Mercedes into the garage door as he was leaving the house in a rage (after we had engaged in an argument). He admitted to the accident in his initial affidavit, however claimed that it was a mistake.

17. Defendant's para. 27 makes no sense. It is unclear to me how my affidavit could be "premeditated and planned with intent to be torturous to him." I simply could not remember if it was night or day, as there have been so many incidents that have occurred in the last couple of months.

18. With regard to para. 28 and 29 of the Defendant's affidavit, once again each of these allegations are irrelevant to his request for a stay and reversing Justice Reilly's decision. The Defendant was never granted exclusive use and occupancy as of November 25th. Secondly, the Defendant has proven with his own testimony that he did in fact changed the locks on the door installing digital locks, disassembling the alarm wires and installing video cameras, thus exercising self-help. In addition, the size of my mother's home is irrelevant. That is my mother's home, not mine. I have no right to reside there, when I have my own home. Secondly, the Appellant has his own home in Brooklyn. My mother never stated that I was welcome to

reside with her. In fact, she said just the opposite! She indicated that her life was set, my brother has his life and they cannot be disrupted by me coming and going. Furthermore, she indicated that she constantly has family and friends from overseas. Lastly, it is very important to my mother that I continue providing aiding services to my brother as I am the only aid who can provide certain services such as shaving him, or bathing him. He does not feeling comfortable with any other nurse to perform these duties. As previously stated I cannot reside with my brother and continue providing aiding services. Annexed herein as **Exhibit "X"** is the Contract from South Shore which specifically states an aid cannot reside with my brother. Para 31 in Defendant's affidavit is false. I never resided with my mother during my marriage, let alone from August to December, as the Appellant claims.

19.    Justice Reilly permitted my attorney to deem the Appellant a hostile witness for his refusal to answer questions and consent to documents going into evidence, including documents with his own signature on them. Appellant alleges in para. 32 that my attorneys tried to enter into evidence "fake" documents. My attorney tried to enter documents, such as the lease, that specifically contained his signature on them. However, refused to acknowledge that these documents were true and accurate and contained his signature on them. He wasted not only our time, but the Court's time, by pretending he was searching for the "true" version.

20.    With regard to para. 33, Appellant misrepresented the truth to the Kings County Police Department. I never charged anything to his account. In fact, this false arrest was over a $400.00 charge that was made on the Appellant's account. I believe that the Appellant had the charges on automatic pay and were charged to his account. However, when I foiled this charge, it was deemed not criminal. Annexed herein as **Exhibit "M"** is proof of same. The charges were ultimately dismissed.

9

21. With regard to para. 34, I am engaged in criminal proceedings regarding the cottage because I am an owner of the property located at 33 Pennington Drive, Huntington New York. I am unsure what the Appellant is stating with regarding to receiving an ACOD from the town regarding violations on our property.

22.    The Appellant had testified that he sold his chuppah equipment. Therefore, how he suffered a loss of $30,000.00 is beyond me. Secondly, the Appellant has many family members who could store his equipment, if they even exist to date. He has previously stayed with his aunt in Great Neck, New York, when he underwent surgery. In addition, his mother, father, siblings, cousins and aunts and uncles, all live by him in Brooklyn New York. In fact, his mother and father live across his coop complex.

23.    Again, I am unclear as to what the Appellant is saying in para. 36. I do not have an income of $140,000.00. My income is approximately $120,000.00 and so was the Appellant's in the beginning of the case. I have been paying every expense associated with the marital residence, while the Respondent gets away with paying for his coop and vehicle only. Yet, he cries poverty. No one told him to pay 4 different attorneys and litigate the same issue over and over again. This is a three year marriage with no children. There is no basis for maintenance and support, when the Appellant makes a good income of over $90,000.00 and has barely any expenses.

24.    With regard to his chuppah and rabbi business, again, the Appellant testified that he sold all the equipment. These issues were discussed at length during the trial. Furthermore, this is not the Appellant's primary business. His primary business is his employment with Frost and Sullivan where he averages a salary of approximately $90,000.00 annually.

25.    With regard to para. 39, Appellant's Exhibit "N" does not indicate that 316 West

10

Neck Road was my residence at any point. Clearly the Appellant is going through my mail and invading my privacy which is the primary reason why I had some of mail forwarded to my mother's house. This issue was discussed at length at the hearing and my mother testified that at no point was I residing with her. In addition, I work at the Oyster Bay School District. I do not have an alternate residence. The Appellant on the other hand, not only has an alternate residence which I have no claims to but testified that he does not see his doctors on a regular basis. Annexed herein as **Exhibit "N"** is a list of doctors that was provided by his attorneys during the hearing as a reference. His main primary care physician was located in New York City, until the Appellant changed primary care physicians less than a year prior. Furthermore, the majority of his surgeries and physicians when he was seeing them, were located in Nassau County, which was a closer distance to his Brooklyn apartment versus our Huntington home. In addition, the Appellant's job is located in New York City, minutes away from his Brooklyn apartment.

26.     Clearly the Appellant was moved to the closest hospital since he was desperate need of medical care. That does not mean that Huntington hospital was his treating hospital, as it was not. In fact North Shore LIJ was. However, the same could be said about a hospital near Williamsburg. If the Appellant was in desperate need of hospital care, then he would be taken to the nearest hospital.

27.     Again I do not know what the Appellant is trying to say in para. 42 and nor can I reference an Exhibit P in my motion papers, as it does not exist. I can only say that his doctors are closer to his Brooklyn apartment, then the Huntington home by mileage. My counsel does not have to apply any kind of logic with regard to their personal life and the Appellant's travel time. The reality is, the Appellant has a home in Brooklyn which he owned before the marriage and lived in during the course of our marriage at least 3-4 times a week. He had no problem

11

travelling back and forth then, and should have no problem doing so now. He has significant ties to Brooklyn, as his entire family resides there. He has no ties to Huntington. It is quite humorous that the Appellant alleges that he "offered" me his Brooklyn apartment, when he solely owns this house and secondly, I have never had anything to do with Brooklyn, except for the brief time in between the sale of my prior home in Huntington and the purchase of our new home in Huntington.

28.     Para. 45 has no relevance to his request for a stay and modifying the prior order. All I can say that the Appellant has been so blinded by this fictitious story he has created in his head that he cannot see straight. I never withheld money or stole money from anyone. All our bills were being paid and they continue to be paid. So I cannot understand what the Appellant is trying to accomplish. With regard to the medical insurance issue that he is raising, his prior attorney indicated that I somehow reduced my medical coverage or changed policies. This could not be further from the truth. Annexed herein as **Exhibit "O"** is my attorneys response to his attorneys assertions and the proof. The Appellant states it right, I am union employee and I do not control my salary. So if my salary decreased, which it did not, was no fault of my own.

29.     Paras 50-56 are again a mere attempt by the Appellant to portray me in a completely false light, and portraying himself as the victim. Unfortunately, discovery has not been commenced in this matter because the Appellant has been fixated on the issue of exclusive use and occupancy. In addition, he then proceeded to fraudulently file for Bankruptcy, thus staying all equitable distribution in our matter, including discovery. So even if we wanted to proceed with the exchange of documents we cannot do so. The Appellant references several checks and deposits and withdrawals, without seeing the transactions and the context in which they were made, I have no idea what he purpose of them was. However, throughout our short

12

marriage we charged all our expenses on my Chase Sapphire card so that we can accumulate points. The same applied with all his medical bills, which were charged on my Chase card and then any reimbursement checks would be paid to the balance. This was an agreement we had. WE renovated our entire house. All the expenses in connection with the house, were charged on my credit cards. The Appellant is blind to all of these charges, as he only sees what he wants.

30.    Attached herein as **Exhibit "U"** is proof of my separate property claim in excess of $160,000.00, which came from the sale of my prior home located at 99 West Shore Road, Huntington New York and went into the purchase (down payment) of 33 Pennington Drive, Huntington NY as well as renovations. I never "secretly" removed the Appellant from a mortgage. This is not even possible. I obtained a mortgage solely on my own because we got a better rate under my income and credit versus jointly. The Appellant had terrible credit which would affect what rate we would receive.

31.    There is absolutely no basis for the Appellant's request for the Appellate Division to reverse Justice Reilly's decision. He has not established a basis for doing so and each of the points he has raised in his application before this Honorable Court were litigated at length. This is his fourth attempt to change the Court's decision. Rather than concentrating his efforts on resolving this matter expeditiously and with the least financial effect on both parties, he has chosen to waste thousands of dollars on legal fees for frivolous applications. As such, such, it is respectfully requested that the Appellant's application is dismissed in its entirety.

**WHEREFORE,** it is respectfully requested that Appellant's application is dismissed in its entirety together with such other and further relief as this Court deems just and proper.

_Edward John Denker-Youngs_
EDWARD JOHN DENKER YOUNGS

Sworn to before me this
9th day of September 2015

_Michelle Bertucci_
Notary Public

MICHELLE N BERTUCCI
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01BE6060837
QUALIFIED IN SUFFOLK COUNTY
MY COMMISSION EXPIRES JUNE 25, 2018

# LAMONICA HERBST & MANISCALCO, LLP

Salvatore LaMonica
Gary F. Herbst °
Joseph S. Maniscalco
David A. Blansky
Adam P. Wofse ◊
Melanie A. FitzGerald *
Holly R. Holecek ‡
Jacqulyn S. Loftin

Rachel M. Hollywood, Esq., Of Counsel

*MOVING FORWARD. STAYING AHEAD.®*

3305 Jerusalem Avenue
Wantagh, New York 11793

Phone (516) 826-6500
Facsimile (516) 826-0222

**WWW.LHMLAWFIRM.COM**

Jordan Pilevsky ◊
Rachel P. Stoian +
Nicholas C. Rigano

Also admitted in CA   +
Also admitted in CO   °
Also admitted in CT   *
Also admitted in MA   ‡
Also admitted in NJ   ◊

August 6, 2015

*Via Electronic Filing*
Honorable Carla E. Craig, Chief Judge
U.S. Bankruptcy Court, EDNY
Conrad Duberstein Courthouse
271 Cadman Plaza East, Suite 1595
Brooklyn, NY 11201-1800

> **Re:** **Brian Denker**
> **Case No. 15-41069-CEC**
> **<u>Chapter 11</u>**

To the Honorable Chief Judge Craig:

On August 5, 2015, our firm was retained to represent Edward John Denker Youngs in the above-mentioned chapter 11 proceeding. Mr. Youngs is the estranged spouse of the debtor—Brian Denker (the "<u>Debtor</u>").

On July 24, 2015, the Debtor submitted an application seeking the entry of an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), directing the examination of, and the production of documents by, Mr. Youngs (the "<u>2004 Application</u>") [docket no. 30]. The 2004 Application was submitted by Notice of Presentment with the proposed Order to be presented to the Court on August 11, 2015 with objection due by August 4, 2015.

The Debtor never served Mr. Youngs with a copy of the 2004 Application as reflected by his failure to file an affidavit of service on the docket. The service of the 2004 Application was inadequate, and as a result Mr. Youngs was prejudiced by his inability to file a timely objection.

Further, the 2004 Application is devoid of any information pertaining to the status of the pending litigation between Mr. Youngs and the Debtor. Prior to the filing, the Debtor and Mr. Youngs were in the midst of a matrimonial action pending in the New York State Supreme Court (the "<u>Matrimonial Action</u>"). The Matrimonial Action, which was in the discovery phase, was stayed upon the Debtor's voluntary filing. Yet, upon the filing date, the Debtor filed the instant

Y

LAMONICA HERBST & MANISCALCO, LLP
ATTORNEYS A    AW

Ltr. re 2004 Application
August 6, 2015
Page 2

2004 Application demanding the production of documents by, and the examination of, Mr. Young. It is clear that the Debtor is attempting to circumvent the stayed Matrimonial Action and obtain discovery from Mr. Youngs in connection with such action. This is clearly an impermissible use of Bankruptcy Rule 2004 and the bankruptcy process in general.

Lastly, the proposed Order annexed to the 2004 Application fails to list the documents that the Debtor is seeking to obtain from Mr. Youngs. As it currently reads now, the proposed Order directs Mr. Youngs to produce documents set forth in "Exhibit A" annexed to the 2004 Application. The only exhibit annexed to the 2004 Application is the proposed Order, which does not state the documents being sought from Mr. Youngs. Therefore, the Debtor has failed to provide Mr. Youngs with notice of the scope of his investigation.

For the reasons set forth above, Mr. Youngs requests an opportunity to submit an objection to the present 2004 Application and requests an immediate hearing on the matter.

Thank you for your attention to this matter.

Respectfully submitted,

*s/ Jacqulyn S. Loftin*
Jacqulyn S. Loftin

cc:     Edward John Denker Youngs (*via electronic mail*)
        Louis F. Simonetti, Esq. (*via electronic mail*)
        Lawrence Morrison, Esq. (*via electronic mail*)

*M:\Documents\Company\Cases\Youngs, Edward\Ltr to Chambers re Bankr. R. 2004 App.doc*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

                                                 Chapter 11
BRIAN DENKER,                           Case Number 15-41069-CEC

          Debtor.
--------------------------------------------------------x

### DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Edward John Denker-Youngs, respectfully represents as follows:

      1.      I am the estranged spouse of the debtor, Brian Denker (the "Debtor"), and I currently

reside at 33 Pennington Drive, Huntington, New York.

      2.      This declaration is submitted in support of the Motion for Relief from the Automatic Stay

(the "Lift Stay Motion") filed contemporaneously herewith.

      3.      As more fully set out in the annexed Lift Stay Motion, on August 26, 2014, I commenced

a matrimonial action in New York State Supreme Court, Suffolk County (the "State Court"), captioned

Edward John Denker-Youngs v. Brian H. Denker-Youngs, Index No. 14-16968 (the "Matrimonial

Action"). As a result of the Debtor's filing, the Matrimonial Action has been stayed.

      4.      Accordingly, based on the foregoing facts, I am respectfully requesting that this Court

enter an Order vacating the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow the Matrimonial

Action to proceed so that the State Court can make final determinations in connection with the parties'

rights, including, but not limited to, the equitable distribution of property and the nature and extent of

support and maintenance to be awarded and granting such other, further and different relief as this Court

deems proper.

      5.      Pursuant to 28 U.S.C. § 1746, I hereby declare under the penalty of perjury under the

laws of the United States of America that the foregoing is true and correct.

Dated: August 14, 2015
      Huntington, New York                   *s/ Edward John Denker-Youngs*
                                         Edward John Denker-Youngs

**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel: 516.826.6500
Salvatore LaMonica, Esq.
Jacqulyn S. Loftin, Esq.
*Attorneys for Edward John Denker Youngs*

**Hearing Date: October 22, 2015 at 2:30 p.m.**
**Objections Due: October 15, 2015**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

BRIAN DENKER,

          Debtor.
-----------------------------------------------------------x

Chapter 11
Case Number 15-41069-CEC

## NOTICE OF MOTION TO VACATE THE AUTOMATIC STAY
## PURSUANT TO §362(d)(1) OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE,**   that upon the motion (the "Motion") of Edward John

Denker Youngs ("Mr. Youngs"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, will

move this Court before the Honorable Chief Judge Carla E. Craig, United States Bankruptcy

Judge, at the United States Bankruptcy Court located at 271 Cadman Plaza, East, Brooklyn, New

York, **on October 22, 2015 at 2:30 p.m.,** or as soon thereafter as counsel may be heard, seeking

the entry of an Order, substantially in the form annexed hereto as Exhibit "A", vacating the

automatic stay, under 11 U.S.C. § 362(d)(1) (the "Bankruptcy Code"), to allow the continuation

of the matrimonial proceedings pending in the New York State Supreme Court, Suffolk County

(the "State Court"), in an action captioned: Edward John Denker-Youngs v. Brian H. Denker-

Youngs, Index No. 14-16968, for the State Court to make a final determination regarding the

termination of the marriage between the Debtor and Mr. Youngs and all related issues and

granting such other, further and different relief as this Court deems proper.

**PLEASE TAKE FURTHER NOTICE,** that objections ("Objections") to the relief

requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and

## PRELIMINARY STATEMENT

1.    As more fully set forth herein, Mr. Youngs requests relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1), so that he may proceed with the Matrimonial Action, to allow the State Court to make certain determinations, including, but not limited to, the equitable distribution of property at issue in the matrimonial action and the nature and extent of support and maintenance to be awarded. Mr. Youngs respectfully submits that cause exists to grant the relief requested herein.

## FACTUAL BACKGROUND

### A.    The Chapter 11 Bankruptcy Proceeding:

2.    On March 13, 2015 (the "Filing Date"), Brian Denker (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.    The Debtor continues to manage and operate its business as debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4.    The initial meeting of creditors, pursuant to Bankruptcy Code § 341, took place on May 4, 2015.

5.    On July 24, 2015, the Debtor submitted an application seeking the entry of an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the examination of, and the production of documents by, Mr. Youngs (the "2004 Application") [docket no. 30]. The 2004 Application was submitted by Notice of Presentment with the proposed Order to be presented to the Court on August 11, 2015 with objection due by August 4, 2015.

6.    The Debtor failed to serve Mr. Youngs with a copy of the 2004 Application as reflected by his failure to file an affidavit of service on the docket. The service of the 2004

Application was inadequate, and as a result Mr. Youngs was prejudiced by his inability to file a timely objection.

7.      As a result, on August 6, 2015, Mr. Youngs, through is counsel, electronically submitted a letter to the Court requesting an opportunity to submit an objection to the 2004 Application and requested an immediate hearing on the matter.

8.      In response on August 6, 2015, the Debtor filed an affidavit of service dated August 6, 2015 in connection with the 2004 Application [docket no. 35] and the Debtor consented to an extension of the time to allow Mr. Youngs to file an objection. To date, the parties are waiting on the Court to schedule a hearing.

9.      On August 4, 2015, the Debtor filed a motion seeking the entry of an Order converting the case from Chapter 11 to one under Chapter 7 of the Bankruptcy Code. There were no objections to the relief sought and the Order Converting the Debtor's case was presented to the Court for entry on September 11, 2015.

**B.      The Matrimonial Action**

10.      On August 26, 2014, Mr. Youngs commenced the Matrimonial Action in the State Court. Mr. Youngs sought a final determination regarding the termination of the marriage between the Debtor and Mr. Youngs and all related issues in connection with the Matrimonial Action.

11.      Prior to the Filing Date, Mr. Youngs was prepared to move forward with the Matrimonial Action and the parties were in the midst of the information gathering and discovery phase. Both Mr. Youngs and the Debtor also submitted applications seeking the exclusive use and occupancy of the marital residence located at 33 Pennington Drive, Huntington, New York

(the "Marital Residence"). Mr. Youngs also sought the State Court's approval to sell the Marital Residence.

12.     On December 11, 2014, the State Court conducted a hearing on the matter. After testimony from both sides, the State Court determined that Mr. Youngs should be granted exclusive use of occupancy.

13.     Specifically, in an Order dated June 23, 2015, the State Court ruled that Mr. Youngs shall have the exclusive use and occupancy of the Marital Residence pending the Matrimonial Action, but denied Mr. Youngs application directing the sale of the Marital Residence. The Order also held that Mr. Youngs must advance all carrying charges of the Marital Residence, including, but not limited to the mortgage(s), property taxes and homeowner's insurance subject to reallocation after trial.

14.     The Court further held that all other pending issues can be resolved by a speedy trial and at the next conference. The Order further directs the parties to enter into a final discovery schedule and establish trial dates.

15.     It is clear that State Court is the appropriate Court to address these pending issues in connection with the Matrimonial Action, and more importantly the State Court is prepared to do so immediately.

16.     Further, Mr. Youngs will be prejudiced if such requested relief is not granted. The Debtor's bankruptcy could go on for years, especially given the fact that the Debtor is now seeking to convert the case to one under chapter 7 and a Trustee will be appointed. It is quite possible that the Chapter 7 Trustee may commence avoidance actions under chapter 5 of the Bankruptcy Code, which could only prolong the process.

17.    While Mr. Youngs does not oppose the conversion, Mr. Youngs is only requesting the he able to proceed with the long-standing Matrimonial Action so that the marriage can be terminated and all related issues can be resolved. As set forth above, Mr. Youngs is required to pay all the costs in connection with the Marital Residence, yet it prohibited from selling the property. This is a costly burden on Mr. Youngs, and one that can easily be resolved if Mr. Youngs is granted relief from the automatic stay and the Matrimonial Action can proceed.

18.    Accordingly, Mr. Youngs further submits that cause exists under Bankruptcy Code § 362(d) for the relief requested herein and respectfully requests that the Court grant such relief.

## BASIS FOR THE RELIEF REQUESTED

19.    Bankruptcy Court § 362(d)(1) provides that "on request of a party in interest . . . the court shall grant relief from the stay . . . . such as by terminating, annulling, modifying, or conditioning such stay for cause . . . " 11 U.S.C. § 362(d)(1). In determining whether to lift the automatic stay and allow a creditor to continue litigation in another forum, the Court weighs certain factors.  Specifically, the Court has adopted the following twelve factors:

> (1) whether relief would result in partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are

ready for trial in another proceeding; and (12) the impact of the stay on the parties and the balance of harms.

*In re Cole*, 202 B.R. 356, 361 ft. 6 (S.D.N.Y. 1996)(*citing In re Sonnax Indus., Inc.*, 907 F.2d at 1286. Ultimately, a decision to lift the stay is within the discretion of the United States Bankruptcy Court and must be determined on a case-by-case basis. *See also In re Owen (Owen v. Owen)*, 1996 U.S. Dist. LEXIS 18042 * 2 (N.D.N.Y. 1996).

**A.        Cause Exhibits to Grant the Movant's Requested
           Relief to Lift the Automatic Stay**

20.    Cause has been found to exist in cases involving pending matrimonial actions. This is especially true because "[t]he state matrimonial court is the competent forum to adjudicate the respective responsibilities, obligations and property entitlement of the parties before it, and the Bankruptcy Court should not interfere with the court's customary process." *Id.* (*citing In re Levine*, 84 B.R. 22 (S.D.N.Y. 1988)); and *In Re Kaplan*, 18 B.R. 1018 (E.D.N.Y. 1982). In fact, it is well-recognized that a bankruptcy court should not dispose of property unless and until the State Court in pending matrimonial action make a determination as to the non-debtor spouse's interest in said property. *See e.g. Szyszko v. Szyszko*, 2001 U.S. Dist. LEXIS 9527 (E.D. Ill.)(holding that the bankruptcy court should have waited to determine of the sale of the martial residence under 11 U.S.C. §363(h) was authorized until after the state court determined the non-debtor and spouse's interest); *see also In the Matter of Palmer*, 78 B.R. 408 (E.D.N.Y. 1987) (recognizing that the adjudication of all rights, duties and entitlements as between the debtor and spouse are with the exclusive province of the state matrimonial court); *In re Persley*, 2008 Bankr. LEXIS 204 (Dist. Columbia)(granting relief from the automatic to have the superior court determined the non-debtor spouse interest in stock).

21.     In this instance, Mr. Youngs submits that cause exists to allow him to proceed with the Matrimonial Action. Specifically, New York matrimonial courts are empowered and can direct the distribution of marital property between the spouses in the final divorce decree. *See In re Cole*, 202 B.R. 356 (S.D.N.Y. 1996); *see also, e.g., In the Matter of Palmer*, 78 B.R. 402 (E.D.N.Y. 1987). Significantly, the spouses' respective rights in marital property do not vest under New York law until entry of a judgment dissolving the marriage. *Id*. Here, since the Debtor's bankruptcy intervened before the judgment of divorce was entered, the State Court was stayed from making further determinations as to the equitable distribution of martial property. Since the State Court is the forum which defines and distributes the marital property in accordance with equitable distribution statutes, it would substantially prejudice Mr. Youngs if the Court does not afford him the relief requested herein. *Id*.

22.     Finally "[t]he nature of the claim also militates in favor of relief." *Id*. Generally, bankruptcy courts defer to the state courts in matrimonial actions to promote judicial economy and out of respect for the state court's expertise in domestic relations issues. *Id*.

23.     Accordingly, Mr. Youngs respectfully requests that this Court afford the relief requested herein.

24.     For the reasons set forth herein, Mr. Youngs submits that his request be granted for an Order: (i) vacating the automatic stay, under Bankruptcy Code § 362(d)(1), to allow the continuation of the Matrimonial Action pending in the State Court to make final determinations relative to the parties' rights, including, but not limited to, the equitable distribution of property and the nature and extent of support and maintenance to be awarded; and (ii) granting the Movant such other, further, and different relief as this Court deems just and proper.

9

**WHEREFORE**, Mr. Youngs respectfully requests that the Court grant the motion for relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1) and such other, further and different relief as to the Court may deem just and proper.

Dated: September 21, 2015
      Wantagh, New York

                                **LaMONICA HERBST & MANISCALCO, LLP**
                                Attorneys for Mr. Youngs

                By:     *s/ Salvatore LaMonica*
                         Salvatore LaMonica, Esq.
                         Jacqulyn S. Loftin, Esq.
                         3305 Jerusalem Avenue, Suite 201
                         Wantagh, New York 11793
                         Ph. 516.826.6500

*M:\Documents\Company\Cases\Youngs, Edward\Motion to Lift Stay\Motion to Vacate Automatic Stay.docx*

William Curtin
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

October 1, 2015

Dear Mr. Curtin,

It has come to my attention and thereafter, confirmed that my estranged spouse and his counsel from LaMonica Herbst Maniscalco had filed for a petition for relief on September 21, 2015 to which I had discovered myself via my PACER account. Based upon their representation, it has occurred to me that there are updates by which perhaps you have not necessarily been kept informed of to which while matrimonial actions are independent of the bankruptcy, the large portions of debt to which I testified to during the meeting of creditors, I do not know how there exist as my estranged spouse conducted transactions such as involuntary wire transfers, debt assignments, intentionally delaying payments to my credit cards and last but not least stripped our entire home of its equity without my knowledge or consent disappating a $125,000 HELOC all paid over to his Chase Credit Card to which I have letter confirmation from Chase that I am neither an authorized user or account holder for yet, am held responsible to paying back a credit line that has been dissipated with a current balance of $123,000.

Further, this HELOC as I had previously communicated is absent my schedules to which I had been told would get revised. They apparently have not as of yet.

Of most importance and I wish to inform you is that my estranged spouse and his attorney have misrepresented facts to the honorable court with the attached filing for relief, as the day after my estranged spouse and I appeared in Kings County in re: Index No: 54013-2015 Brian H. Denker-Youngs v Edward J Denker-Youngs, aka Edward J Youngs, etc. which is an action for annulment on the grounds of fraud and Economic Domestic Abuse. On that appearance his attorneys were caught scheming for which two days later I filed an emergency order to show cause bringing to the attention of the Honorable Justice Carl J. Landicino to which the attached order has been signed with a return date of November 5, 2015.

As alleged in my movant papers before the 2nd Department - Appellate Court in my appeal, aside from alleging I have been denied my due process in Suffolk County as a result of my estranged spouses uncle having ties to the presiding Judge, my estranged spouse has committed mortgage fraud and there after in collusion with his mother, have worked to forge checks, strip me of all assets and equities and has at the last minute unbeknownst to me attempted to strip me of my home to which I withdrew at the time $45k toward the down payment but in the end, my spouse was without consent syphoning monies and converting nearly $217k in marital funds with his mother into various retirement trusts and 403(b) accounts he hid and other wealth management sources.





Z



By and illustrated in the attached, I turned over discovery documents to Natasha Meyers, Esq. to which to this very day is still in receipt of them back in November 2014 and to which my estranged spouse has not made any attempt to turn over any of the attached lists of accounts for which most of them he had hidden from me during the marriage and not until after I discovered what he had been doing did I find these as well. Hence the need for 2004 applications and depositions.

The matrimonial case is far from over as my estranged spouse must be held accountable and answerable for what he has done and where all the money is that I am bankrupt and he is not. As I testified to, he handled all of the finances. I am also in receipt of documentation to which I believe this is all related to. In 2003 he had begun his first act of mortgage fraud and thereafter in 2006 took a loan out for $305,000 claiming his home was a $625,000 purchase when in fact it was purchased for $300,000 and a $270,000 loan.

The $191,000 separate property claim he puts forth was a debt not a credit on a HUD statement. I am in receipt of the same true and accurate documents and further, copies of the checks to which our home was purchased with (see attached). My estranged spouse is a white collar criminal that has manipulated the system somehow to get away with what he has done and I'm left stripped of everything and then some.

I appeal to you and the Honorable Justice Craig to not grant his application for relief, rather to help me find out what he has done and not allow me to remain a victim of a criminal' acts. I realize now that my entire marriage was a fraud for my spouse to launder and embezzle money and that trusting him was a mistake, a huge mistake that has placed me in a deep financial hole all while fighting for my life and undergoing 5 operations and a stroke.

I am also attaching two emails that up until last night, I thought my prior counsel Terence Christian Schurer, Esq had been working in collusion with my estranged spouse's attorneys and the judge, but in fact the two attached emails I only realize was his attempt at trying to warn me that something was being planned. Please take notice of the words he uses quotes and capitalizes.

I was always raised to believe in our system of government and that justice always prevails, yet unfortunately my experience over the past year is that it doesn't matter if you tell the truth, it only matters how well one can lie (as has my husband every step of the way).

I do not know where to go for help as I have been just about everywhere I know as my spouse has Suffolk County Police Officers even lying and covering for him various acts of bank fraud to which I have submitted complaints via Suffolk County Internal Affairs. My entire oddessy I have logged via blogs posted to fight2liveandlive2fight.net in hopes that one day I find someone who is able to help me where "jurisdictional issues" do not get in the way of Justice.



Mr. Curtin, I don't know who to trust any longer and to be honest to the extent that the lies and corruption go, I'm scared for my safety, I'm scared for my future and don't know where to turn. I started to make the attempt at drafting a petition for a writ of certiorari to file with the appellate court 2nd department (see attached) but im not positive I am doing it correctly and frankly can't afford to hire an attorney and would need your assistance in doing so. So I am stuck at the moment with a corrupt Judge in Suffolk and victimize but our own system of government.

Please help.

Sincerely

Brian H Denker-Youngs
Debtor-in-Possession

[PDF] DAVID T. REILLY, J.S.C. - Unified Court System
https://www.nycourts.gov/courts/...Part.../Riley.pd... ▾ Judiciary of New York ▾
DAVID T. REILLY, J.S.C. ... E-Mail: SUFREILLY@nycourts.gov ... Trials: 5 days
before trial, parties may provide this Court with their Trial Memorandum of. Law.
Missing: art van nostrand

David Reilly | LinkedIn
https://www.linkedin.com/pub/david-reilly/39/5a0/505 ▾
Greater New York City Area - Candidate for Justice of the Supreme Court, 10th Judicial
District of New York.
View David Reilly's professional profile on LinkedIn. ... professionals like David Reilly
discover inside connections to recommended ... Art VanNostrand, ESEP.

David T. Reilly - Ballotpedia
ballotpedia.org/David_T._Reilly ▾ Ballotpedia ▾
Apr 9, 2015 - David T. Reilly is a justice of the Supreme Court 10th Judicial ... in the
general election on November 5, 2013, with 21.96 percent of the vote.
Missing: art van nostrand

David Gries, Vita - Cornell University
www.cs.cornell.edu/gries/vita/vitaembedded.html ▾ Cornell University ▾
ACM Programming Systems and Languages Paper Award 1977 (with S. Owicki). ...
Clarke Award for Excellence in Undergraduate Teaching; College of Arts and Science,
... Member, Steering Group, AAAS Section T on Information, Computing, and
Communication. 1999-. .... Van Nostrand Reinhold, New York, 1993, p.



Home   Profile   Connections   Jobs   Interests

Search for people, jobs, companies, and more...

CHRO Intret Circle – Join CHROs from America's largest organizations in California, July 19-21. | Read More »

### Art VanNostrand, ESEP
Recently Retired Systems Engineering Manager
Greater New York City Area | Aviation & Aerospace

NORTHROP GRUMMAN CORPORATION, Bethpage, NY
Dayton T. Brown, Inc, Dowling College
California Institute of Technology

Previous: NORTHROP GRUMMAN CORPORATION, Bethpage, NY
Dayton T. Brown, Inc, Dowling College

Send a message ▾

500+ connections

Subscribe | 1 year ago

★ Relationship   |   Contact Info

⊕ Note   |   ⊘ Reminder   |   ✦ How you met   |   ✎ Tag

⊕ Connected
   ㉈ M/2014

1 year ago

## Summary

Recently retired from a major defense contractor as a Systems Engineering Manager. Looking to keep occupied, so I am interested in any part-time and/or short-term consulting as well as adjunct teaching opportunities. I have an MS in Systems Engineering and an MBA in Banking and Finance. Please contact me with any potential opportunities.

Professional qualifications include Systems Engineering (SE), Software, and Supportability management and execution in highly technical specialties. I have effectively managed personnel in both a functional/ home/base environment as well as in a project engineering role. I have good interpersonal skills and program management skills such as EVM and risk management. I am familiar with indirect costs and allocations, capital requirements planning, and AS9100 processes. I have extensive experience with Safety and Performance Management Planning (PMP). Also, I am skilled at working with customers to determine critical indices and system requirements and specifying and designing technical system projects to meet those demanding requirements. I also have excellent communications skills and the ability to bridge the gap between customers, management, and technical personnel. I possess a unique combination of technical and management skills with good marketing and business ability to define, win, and develop projects, then bring them to completion on time and within budget. I hold multiple technical and business certificates and degrees and continually strive to increase my skill set, extend my knowledge, and share them with others. I have an MS degree in Systems Engineering and am an INCOSE Certified Expert Systems Engineering Professional (ESEP) with the DOD Acquisition Extension. I have particular experience applying SE to concept Systems Of Systems (SOS).

## Experience

### Systems Engineering Manager
NORTHROP GRUMMAN CORPORATION, Bethpage, NY
2010 – July 2014 (4 years)

• I recently retired from my position as a systems engineering section (functional) manager in the Integrated Information Aerospace Systems, Systems Engineering (ISE) Center of Excellence.
Responsibilities include the oversight, planning and coordinating and mentoring of a staff of 26 Systems Engineers (including skills finishing and career support), performance management and issues resolution, process...

---

## California Institute of Technology
Graduate Certificate, Aerospace Project Management
2011 – 2012

▸ 6 courses

## Stevens Institute of Technology
Master of Engineering (MEng), Systems Engineering
2007 – 2008

▸ 10 courses

## Dowling College
Master of Business Administration (MBA), Banking & Finance
1999 – 2001

▸ 11 courses, including...

## Long Island University, C.W. Post Campus
Bachelor of Science (BS), Math & Physics
1969 – 1973

Physics

## Oyster Bay High School
Regents Diploma, General Studies
1965 – 1969

## Additional Info

• Advice for Contacting Art

E-Mail: vannostrand.art@gmail.com

## Recommendations

Received (2) ▾

Brian, would you like to recommend Art?
Recommend Art ▸

Charlie Schiano
Sr Manager, IT Quality Assurance & Control, IT Audit

"...Art was an excellent Systems Engineer at Grumman Data Systems and I could always depend on him to get the work done. If I remember right , I hired him and it was one of the best moves I ever made. He has a steam objective engineering mind."
April 8, 2013, Charlie managed Art at Northrop Grumman Corporation

### Senior Systems Engineer
Northrop Grumman Corporation

## Ads You May Be Interested In


Apply for a Business Loan
Up to $500k. 2 Years in Business Required. Over 1 Billion Lent Worldwide

2015 Leadership Seminar
Get custom leadership training based upon your strengths and weaknesses.

Strategic Leadership MBA
Online, Accredited, Affordable. Advance Your Leadership Skills. Learn More.

## People Also Viewed

David Young
Corporate Director of Advanced Concepts–Analysis Center at Northrop Grumman Corporation

David Wilson
Systems Engineer at SAIC

Tom Guida
Engineering Manager

Michael Colasuonno
Mechanical Engineer at Northrop Grumman Aerospace Systems

Todd Reagan
Field Engineer at Lockheed Martin Corp.

Bill Lewis
Quality Research Analyst at Northrop Grumman Corporation, Northrop Grumman Aerospace Systems

Laura Reilly
Supportability Engineer at Northrop Grumman Aerospace Systems

Jay Peters
Reliability Engineer IV at Northrop Grumman Aerospace Systems

Peter Sciotto
Senior Systems Engineer – IPT/Radar

Mayur Patel
MBA Candidate at Kellogg School of Management, Systems Engineer @ Northrop Grumman

## In Common with Art




10/7/2015

7/19/2015

Art W. Van Nostrand



7/19/2015                              Art W. Van Nostrand





Art W. Van Nostrand
(Billy)

Timeline · About · Friends · Photos · More ▾

## About



RELATIONSHIP

Married

FAMILY MEMBERS

Ryan Van Nostrand
Son

Kyle Van Nostrand
Son

Diane Sniffen
Sister

John Youngs
Nephew

Michael T. Sniffen
Nephew

Sofia Van Nostrand

# Flap Over Judges Divides Allie

## GOP chair accuses Conservative leader of breaking District Court endor

**By Danny Schrafel**
dschrafel@longislandnews.com

Huntington's Republican Committee chairwoman is vowing to primary the Conservative District Court slate after accusing the party's leader of breaking a deal to support a Republican candidate this year and instead striking a cross-endorsement deal with the Democrats.

Chairwoman Toni Tepe said Monday that Conservative chair Frank Tinari "overstepped his bounds" and agreed to endorse, for the district court bench, Democrats James Matthews and Patricia Flynn, both of Northport, in exchange for Democratic backing of Conservative incumbent Paul Hensley, of Northport.

Democratic chairwoman Mary Collins said the deal also includes a future endorsement of a Conservative judicial candidate. Initially, Republicans suggested a cross-endorsement deal that would essentially ensure a Democrat, Republican Steve Hackeling and Conservative Paul Hensely would return to the bench for another six years.

"But when I spoke to the Conservatives, they were more generous – they offered two for two," Collins said, allowing Matthews and Flynn to run on a slate with Hensely. The second endorsement would come in a future race.

Tinari denied such a deal with Tepe, stating that "there's no future endorsements on the table that I'm aware of." Regardless, however, Tepe said that a Republican was due the seat.

"That seat was not his to give away, and the Republican Party is offended by the fact that he would renege on an agreement," Tepe said.

That arrangement, Tepe said, is rooted in an agreement they struck four years ago,



**Pictured in happier political times, Huntington GOP chair Toni Tepe, second from left, joins Conservative chair Frank Tinari, far right, in celebrating the election of Superintendent of Highways Peter Gunther, left, and Supreme Court Justice David Reilly, third from left, on election night 2013. The two leaders are now at odds over District Court endorsements.**

when Justice Jerry Asher was elevated from the District Court to the Supreme Court bench in 2010. Tepe said Tinari approached her and asked her to support Conservative John Andrew Kay for the Asher vacancy. She said she agreed, but with a condition.

"I agreed to do that, with a commitment from Frank Tinari that whenever Kay left the bench, that seat returns to the Republi-

can Party.

Tinari denies any such agreement was in place.

"That's not my understanding," he said.

In response to the Democratic-Conservative line, Tepe vowed to primary the Conservatives with a Republican slate including incumbent Justice Hackeling, of Lloyd Harbor, Northport Village Justice Paul Senzer and attorney Walter Long, of Dix Hills.

The Conservative chairman said he is prepared to fend off a Republican challenge.

"With the judicial races, anyone can run a primary. We're prepared to get our signatures. We're prepared to get our slate elected," he said.

Meanwhile, with Matthews, Flynn, Hensely and Hackeling all circulating Independence party petitions – Senzer and Long – a second primary seems likely as well.

While Collins intimated that the Independents are backing the Democratic-Conservative slate, the Independents weren't so firm.

Independence Party Chairman Ken Bayne explained that that since no Wilson-Pakula, or authorization given by a political party for a non-party member to run on their slate, is needed in a judicial race, the party won't weigh in until the dust settles and a primary field is set.

MELVILLE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
In re:                                            :
                                                  :    Case No. 15-41069-CEC
BRIAN DENKER,                                     :
                                                  :    (Chapter 7)
                        Debtor.                   :
                                                  :
-------------------------------------------------- x

## NOTICE OF APPOINTMENT OF TRUSTEE

To:    Richard McCord, Esq.
       90 Merrick Avenue
       East Meadow, NY 11554

       The United States Trustee hereby appoints you as interim trustee, under 11 U.S.C. §

701(a), in the above captioned case, which was filed as a chapter 11 case on March 13, 2015 and

converted to a case under chapter 7 on October 1, 2015.

       You are covered by the Chapter 7 Blanket Bond, issued by the Liberty Mutual Insurance

Company, which is on file with the Office of the United States Trustee for the Eastern District of

New York, Brooklyn, New York.  *See* 11 U.S.C. 322(a) and Fed. R. Bankr. P. 2010.  In addition,

because your blanket acceptance of appointment is on file, you are required to notify the

undersigned in writing within seven days after receipt of this notice only if you reject this

appointment.  *See* Fed. R. Bankr. P. 2008 and 2010(a).

Dated:  New York, New York
        October 2, 2015.
                                    WILLIAM K. HARRINGTON
                                    UNITED STATES TRUSTEE, REGION 2

                                    By: /s/ Alicia M. Leonhard
                                        Alicia M. Leonhard (AL-9928)
                                        Assistant United States Trustee
                                        201 Varick Street, Suite 1006
                                        New York, NY 10014
                                        Phone: 212.510.0500
                                        Facsimile: 212.668.2255
                                        Email: Alicia.M.Leonhard@usdoj.gov



10/7/2015                                Richard J. McCord | LinkedIn



Be Proud of Your Logo - We will give you a Free Nike Polo with your logo to show you our embroidery | Read More »



# Richard J. McCord    3rd

Village Justice at City of Glen Cove

Greater New York City Area | Legal Services

| | |
|---|---|
| Current | City of Glen Cove, Certilman Balin Adler & Hyman, LLP |
| Previous | Glen Cove Housing Authority, City of Glen Cove |
| Education | Quinnipiac University School of Law |

**Send Richard J. InMail** ▾

1
connection

☆   📖 Contact Info         in https://www.linkedin.com/in/richardjmccord1

**Background**

 Summary

Richard J. McCord is a Partner in the Bankruptcy Group at Certilman Balin Adler & Hyman, LLP, which is Long Island's second largest law firm. He is also the Supervising Judge of the City of Glen Cove, and has recently announced his run for re-election. He has served as the Deputy Mayor of Glen Cove from 1980 until 1983 and as Chairman of the Glen Cove Housing Authority from 1985 until 1987.

📄 Experience

**Village Justice**
City of Glen Cove
January 2001 – Present (14 years 10 months) | Glen Cove, New York

Supervising Judge in charge of administrative duties for the City of Glen Cove, presiding over all phases of civil and criminal proceedings.

**Partner, Bankruptcy Group**
Certilman Balin Adler & Hyman,
January 1999 – Present (16 years


Next search result                ✕
**Richard McCord** Richard
McCord at Prudential Douglas
Elliman

Richard J. McCord is a Partner in the Bankruptcy Group. He has an in-depth understanding of bankruptcy law, gained from 30 years of experience in representing creditors, debtors in all areas of corporate and consumer bankruptcy matters.

Prior to joining the firm, he had his boutique law firm involved in many complex business negotiations and commercial litigation matters and was responsible for business bankruptcy proceedings and workouts. Since 1987, he has served as a Chapter 7 Panel trustee for the United States Bankruptcy Court, Eastern District of New York. He also served as a Chapter 13 Trustee for the United States Bankruptcy Court, Eastern District of New York from 1981 until 1992. He also is the Supervising Judge in charge of administrative duties for the City of Glen Cove, presiding over all phases of civil and criminal proceedings.

Active in his community, Mr. McCord has served as Chairman of the YMCA of Long Island Corporate Board and as Chairman of the Board of Managers of the YMCA at Glen Cove. Before serving as Justice of the City of Glen Cove, Mr. McCord was Deputy Mayor of Glen Cove from 1980 until 1983, and Chairman of the Glen Cove Housing Authority from 1985 until 1987. Mr. McCord also lectures on bankruptcy issues throughout the course of the year.

Mr. McCord earned his Juris Doctor from Quinnipiac School of Law in 1980. He received his Bachelor of Arts in 1977 from Columbia University.

**Chairman**



**How You're Connected**

● You

99+

**LinkedIn Members**

See up to 99+ people at your company who can connect you to Richard J.

**Upgrade now**

This person knows 1 or more people who can introduce you to Richard J.

Richard J.  3rd
Send Richard J. InMail

**Attention Business Owners: Fix your online listings**

You          Yext PowerListings

**Get listed on 50+ online sites and reach millions of customers**

**Learn More!**

Ad

**People Also Viewed**

Robert Rappold
--

Robert W Murray, Jr
Project Manager at Suburban
Construction Co., Inc.

Mervyn Michalow
MANAGING DIRECTOR AND HEAD
OF SALES

Martin Lee
Student at nycct

Mark Williams

Case 1-15-41069-cec    Doc 62-4    Filed 10/08/15    Entered 10/08/15 16:12:47

Glen Cove Housing Authority
1985 – 1987 (2 years) | Glen Cove, New York

**Deputy Mayor**
City of Glen Cove
1980 – 1983 (3 years) | Glen Cove, New York

 Education

**Quinnipiac University School of Law**
Juris Doctor
1976 – 1980

**Columbia University**
Bachelor of Arts
1973 – 1977

 Organizations

**Additional Organizations**
Served as Chairman of the YMCA of the Long Island Corporate Board and as Chairman of the Board of Managers of the YMCA at Glen Cove

Honors & Awards

**Additional Honors & Awards**
Recognized as "Man of the Year" by the YMCA of the City of Glen Cove

Partner at Bingham McCutchen

**Daniel Potaznick**
Day Camp Director at Western New York Impact Foundation

**Chris Kleberg**
Vice President at Borderplex

**Mark Williams**
Partner at Morgan, Lewis & Bockius LLP

**Deepa Fernandes Prabhu PMP**
Tata Fellow at MIT, System Design and Management Program

**Jerry Solar**
Managing Partner, TriTek Staffing, Inc.

**In Common with Richard J.**



1

Location

Help Center   About   Careers   Advertising   Talent Solutions   Sales Solutions   Small Business   Mobile   Language   Upgrade Your Account
LinkedIn Corporation © 2015   User Agreement   Privacy Policy   Ad Choices   Community Guidelines   Cookie Policy   Copyright Policy   Send Feedback

## Village Justice - Greater New York City Area



Articles, experts, jobs, and more: get all the professional insights you need on LinkedIn

---

### Professionals on LinkedIn

See all 109 professionals ›



**Al Naclerio**
Law Clerk at NYS Unified Court System
Greater New York City Area • Judiciary

| | |
|---|---|
| Current | Acting Village Justice at Village of Elmsford, New York |
| Past | Law Clerk at NYS Unified Court System, Acting Village Justice at Village of Sleepy Hollow, New York, Judge Advocate at United States Army... |
| Education | Fordham University School of Law, Boston College, Fordham Prep |

---



**Richard J. McCord**
Village Justice at City of Glen Cove
Greater New York City Area • Legal Services

| | |
|---|---|
| Current | Village Justice at City of Glen Cove, Partner, Bankruptcy Group at Certilman Balin Adler &amp; Hyman, LLP |
| Past | Chairman at Glen Cove Housing Authority, Deputy Mayor at City of Glen Cove |
| Education | Quinnipiac University School of Law, Columbia University |
| Summary | Richard J. McCord is a Partner in the Bankruptcy Group at Certilman Balin Adler & Hyman, LLP, which is Long Island's second largest law... |

---



**Charles E. Parisi**
Attorney at Law
Greater New York City Area • Legal Services

| | |
|---|---|
| Current | Attorney at Law at Charles E. Parisi, P.C., Village Justice at Village of Roslyn Harbor |
| Past | Partner at Parisi &amp; Leonick, LLP |
| Education | New York Law School, Villanova University |

---



**Philip Schnelwar**
–
Greater New York City Area • Law Practice

| | |
|---|---|
| Current | Criminal Defense Attorney at Law Offices of Philip Schnelwar, Village Justice at Village of Wesley Hills, NY |
| Past | Bronx County District Attorneys Office, Bureau Chief: Homicide, Supreme Court, Major Offense at Bronx County District Attorney&#39;s Office |

---



**Kevin Kiley**
Attorney/Partner at Kiley, Kiley & Kiley, PLLC
Greater New York City Area • Law Practice

| | |
|---|---|
| Current | Village Justice at Justice Court of the Village of Williston Park, Partner at Kiley, Kiley &amp; Kiley PLLC |
| Education | St. John's University School of Law, University of Pennsylvania, Holy Cross High School |

---



**Elizabeth Pessala**
Associate Village Justice at Village of Westbury
Greater New York City Area • Judiciary

| | |
|---|---|
| Current | Project Archivist at Cold Spring Harbor Laboratory, Associate Village Justice at Village of Westbury |
| Education | Long Island University, C.W. Post Campus, New York Law School, Syracuse University |



### Michael O'Toole
Senior Director of Publications, Education, and Government Relations at American Payroll Association
Greater New York City Area • Professional Training & Coaching

Linked in
t Relations at American Payroll Association; Senior Director of Today    Sign in

| Education | Syracuse University College of Law, Syracuse University |
|---|---|



### Jason Fenley
Attorney at Egan & Golden, LLP Attorneys
Greater New York City Area • Law Practice

| Current | Acting Village Justice at Incorporated Village of Brightwaters, Attorney at Egan &amp; Golden, LLP Attorneys |
|---|---|
| Past | Attorney at Manatt, Phelps &amp; Phillips, LLP, Consulting Attorney at Manatt, Phelps &amp; Phillips, LLP, Manager / Counsel at Fenley... |
| Education | Rutgers Graduate Business School, New York Law School, University of Colorado at Boulder |



### Steven S. Siegel
Principal, Law Office of Steven S. Siegel, PLLC
Greater New York City Area • Law Practice

| Current | Arbitrator at The Jansen Group, Inc., Principal at Law Office of Steven S. Siegel, PLLC, Hon. Steven S. Siegel, Village Justice at Village... |
|---|---|
| Education | University of Oxford, Maurice A. Deane School of Law at Hofstra University |
| Summary | I am Steven Siegel and I have been in practice for over 30 years, handling complex litigation of diverse types and nature. My office will... |



### Paul Senzer
Senior Partner at Paul H. Senzer, Attorney at Law
Greater New York City Area • Law Practice

| Current | Adjunct Assistant Professor at Farmingdale State University of New York, Village Justice at Village of Northport, NY, Senior Partner at... |
|---|---|
| Education | Hofstra University School of Law, University of Rhode Island |



⌄ SEE MORE ⌄



Discover news and ideas



Connect with the experts



Find your dream job

Join LinkedIn to see more **"Village Justice - Greater New York City Area"** profiles, jobs, and more    Join LinkedIn

Linked in © 2015    User Agreement    Privacy Policy    Community Guidelines    Cookie Policy    Copyright Policy    Unsubscribe

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

BRIAN H. DENKER                                Chapter 11

            Debtor                             Case Number 15-41069


-------------------------------------------------------X


## OBJECTION TO MOTION / CROSS-ORDER TO SHOW CAUSE


By Debtorr:
Brian H. Denker-Youngs, *Pro Se*
25 Boerum Street  Apt 18E
Brooklyn, NY 11206
917.373.5019
bhdenker@gmail.com

Dated: _____2015

Brian H. Denker-Youngs

Service of a copy of the within            is hereby submitted,

Dated:                                     ------------------------------------

PLEASE TAKE NOTICE:
- NOTICE OF ENTRY
  that the within is a (certified) true copy of a  duly entered in the office of the clerk of the within named
  court on              20___
- NOTICE OF SETTLEMENT
  that an order                                     of which the within is a true copy will be presented
  for settlement to the                            one of the judges of the within named Court, at
  on            ,20___  at 9:30 a.m.


Dated: _____, 2015

_____
Brian H. Denker-Youngs, *Debtor*