Brian H. Denker-Youngs, Debtor-in-Possession
25 Boerum Street Apt 18E
Brooklyn, NY 11206
Tel. 917.373.5019

RECEIVED
2015 NOV 19 P 3:40
CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

In re:

BRIAN H. DENKER-YOUNGS — Chapter 7

Debtor — Case Number 15-41069

-------------------------------------------------------------X

**DEBTOR'S BRIEF**
**IN RE: ALLEGATIONS PURSUANT TO DEBTORS CURRENT FINANCIAL STATE OF AFFAIRS**

Brian H. Denker-Youngs, debtor in the above captioned petition submits the attached brief in re: allegations pursuant to the state of affairs of debtor's finances and allegations made thereof against non-debtor spouse Edward J. Denker-Youngs, and estranged mother-in-law Matje G. Youngs.

Upon debtor's submission of the attached summation, debtor prays the honorable court take the same into consideration in determining the appropriateness of debtors' initial 2004 Application submitted before the court [ECF doc 71: Motion for 2004 Examination].

Date: November 19, 2015

Respectfully Submitted:

Brian H. Denker-Youngs
25 Boeum Street #18E
Brooklyn, NY 11206



November 19`, 2015

Richard J McCord, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Attorneys for the Chapter 7 Trustee for the Estate
of Brian H. Denker-Youngs
90 Merrick AvenueEast Meadow, New York 11554

**VIA EMAIL**

**RE: Cause for action against Edward J. Denker-Youngs & Matje G. Youngs aka the Living Trust of Matje G Youngs for fraudulent transfers, withholdings and conversion of debtor's funds**

Dear Trustee McCord:

In follow-up to the adjournment of the 341-meeting of creditors, and your subsequent request for documentation regarding and supporting the claims and allegations I have made against my estranged spouse Edward John Denker-Youngs and my estranged mother-in-law Matje G. Youngs aka the Living Trust of Matje G Youngs, I herein formally submit the following exhibits and references to which in fact upon information and belief there should in fact exists assets to administer that have fraudulently been transferred, withheld and converter by my estranged husband and mother-in-law without my knowledge and/or consent.

I would like to memorialize Mr. Morrison's August 6, 2015 correspondence [doc , responding to Ms. Loftin's communication, he reinforces that matters involving Edward to which the foundation of a 2004 Application is absolutely appropriate and necessary are in fact independent of the marriage itself, thus has been you undersigns' position all along as well to the extent that such evidence has surfaced indicating Edward has a history of potentially unlawful economic and fraudulent related acts going back as far as 2003 and 2006 prior to even meeting him.

Specific to your undersigned and the state of financial affairs of the bankruptcy estate:

I. DEFERMENT AND WITHHOLDING SIZABLE SUMS OF EARNED *MARITAL* INCOME BY EDWARD JOHN DENKER-YOUNGS – attached in **section I** are Edwards 2011 and 2013 W-2 statements for which display new and sizable deferments totaling almost $37,000 of marital income earned for the 2013 calendar year for which was withheld and concealed without consent or knowledge of the debtor to which are funds that should have and should be counted toward debts your undersigned is responsible for and incurred as a result of the marriage. 2012 W-2 has not been turned over by Edward nor disclosed despite such discovery demands made, thus the potential of an additional $37,000 for the 2012 year may very well also exist and would total $74,000 of funds to be administered to creditors for such debts. Ironically, as displayed later on despite sizable "deferments" of earned marital income, unbeknownst to the debtor, non-debtor spouse Edward takes a $20,000 loan against his retirement to which he paid himself back throughout the year, again deferring $20,000 of what should be marital income.

II. DEBTORS LIABILITY AND ASSIGNMENT OF DEBT FOR CHASE SAPPHIRE CREDIT CARD ending in x9039 – attached in **section II** is a letter from the Executive Offices of Chase dateD January 12, 2015 from Ms. Harriet Thatched to which clearly states:

> *"We can't provide you with information about the Chase Sapphire account ending in x9039, because we haven't received authorization from the account holder permitting us to discuss the account with you. You are not listed as an account owner or authorized user on this account."*

25 BOERUM STREET #18E, BROOKLYN NY 11206
t: 917.373.5019 e: bhdenker@gmail.com







As such, included thereafter in **section III** are the following checks written to Chase Sapphire from the Bethpage Federal Credit Union Home Equity Line of Credit without the debtor's knowledge or consent by Edward totaling **$81,019.06** to the Sapphire credit. Noting, that there are concurrent and at times additional payments made by e-payment, bill pay and teller and branch checks by Edward to the same credit card from the joint checking account to which only the debtor's income was regularly and consistently on direct deposit funding the Chase checking account. See dispute claims submitted to Chase to which is reference in Harriet Thatched's letter to the debtor.

*Of special note also included after disputes were filed and upon further review, Equifax removed the home equity line of credit deeming it fraud and an account take over. It however is still reporting on the other credit reporting agency however, such monies as repeatedly attested to were drawn upon without knowledge or consent while debtor's estranged spouse was banking away a cushy nest egg.

- October 10, 2013, check #: 283 in the amount of Seven Thousand Five Hundred Forty Dollars and Thirty Four cents ($7,540.34).
- On October 15, 2013, check #: 9001 in the amount of Eleven Thousand Seven Hundred Dollars ($11,700).
- On October 28, 2013, check #: 9002 in the amount of Sixteen Thousand One Hundred and Eighteen Dollars ($16,118).
- On November 17, 2013, check #:9005 in the amount of Sixteen Thousand One Hundred Seventeen Dollars and Seventy-Two Cents ($16,117.72).
- On December 5, 2013, check #:9006 in the amount of Ten Thousand Two Hundred Dollars ($10,200.).
- On January 13, 2014, check #: 9007 in the amount of Ten Thousand Nine Hundred Twenty-Five Dollars ($10,925.00).
- On February 14, 2014, check #: 9008 in the amount of Five Thousand Nine Hundred Eighteen Dollars ($5,918.00).
- On March 18, 2014, check #: 9009 in the amount of Two Thousand Five Hundred Dollars ($2,500.00).

In reviewing the join Chase checking account absent a true audit to which has been requested and circumvented several times.

25 BOERUM STREET #18E, BROOKLYN NY 11206
t: 917.373.5019 e: bhdenker@gmail.com







Summary of Financial Affairs

| Month/Year | Payment | Month/Year | Payment | | |
|---|---|---|---|---|---|
| December-12 | $4,615.22 | June-13 | $819.00 | April-13 | $229.99 |
| January-13 | $12,779.00 | March-13 | $125.00 | August-13 | $306.59 |
| January-13 | $8,302.52 | April-13 | $500.00 | | |
| February-13 | $3,400.00 | April-13 | $2,000.00 | | |
| July-13 | $594.20 | June-13 | $125.00 | | |
| June-13 | $417.00 | July-13 | $406.04 | | |
| July-13 | $406.59 | August-13 | $200.00 | | |
| September-13 | $224.23 | June-14 | $4,000.00 | August-14 | $600.00 |
| March-14 | $186.73 | June-14 | $2,003.25 | August-14 | $325.00 |
| April-14 | $100.00 | July-14 | $1,866.00 | | |
| May-14 | $1,000.00 | August-14 | $700.00 | | |

Further in **section V**, is debtors Discover credit card statement from January 2013 and supporting reports of fraud to Discover of an unauthorized January 2, 2013 balance transfer of **$4,000** from a Chase Sapphire Credit card ending in x9039 to the debtors' Discover account (to which had no balance prior to that point).

III. DEBT ASSIGNMENT WAS AN ACT OF INTENTIONAL FRAUD UPON THE DEBTOR– your undersigned after much work to piece together account statements has discovered that such acts were strategically planned and pre-meditated with the intention to cause financial strain to the debtor while alleviating burdens of day-to-day living for Edward and his mother and such carrying charges of the 316 W Neck Road, Huntington NY 11743 property.

For example **section VI** (and several instances of the same exists) – During December 2012 – February 2013, while adding an additional amount of debts onto debtor's shoulders exceeding more than $10,000 (all while he lay recuperating from spinal surgery), Edward had made sizable payments and intentionally timed out transactions such that:

- *Eight Hundred Forty Dollars Thirty Five cents ($840.35) to a Citibank Credit Card in the name E J Youngs to which is an account shared with Matje G Youngs*
- *In December 2012, total payments of Twenty Seven Thousand Nine Hundred Seventy Nine Dollars ($27,979) to a Citibank Credit Card in the name E John Youngs also shared with Matje G Youngs*
- *On December 27, 2012, a deposit appearing to total $3,400 was made to the joint Chase checking account but Edward actually took cash back in the amount of $2,500 thereby only depositing $900 to the account.*
- *Thereafter, on January 1, 2013 Edward wrote a check to cash for $100*
- *On January 2, 2013, the Chase Home Mortgage automatic payment hit the account with non-sufficient funds forcing an overdraft of $1200 onto debtor's separate Chase Slate credit card to which was the account backup (such occurrences also seen in March 2013 and September 2014).*





B. Denker-Youngs



- *As indicated above, on January 2, 2013, Edward transferred $4,000 of debt to debtor's Discover credit card. An ATM slips confirms while Edward was conducting such transfers, in fact there was more than enough money in the parties Bethpage Federal Credit Union joint checking account to pay such a bill (over $4k in the account).*
- *On January 3, 2013, Edward deposits and contributes $1,000 of marital income to the joint account while the same day deposits affixing "for deposit only" signing both his and debtor's name endorsing a Bethpage Federal Credit Union check in the amount of $3,000 moving parties' money from one account to another*
- *On January 6, 2013 then sent a Six Thousand Six Hundred Twenty Dollars and Sixty-Four cent ($6,620.64) payment to his GM Mastercard account in the name E John Denker Youngs*
- *On Februarys 10, 2013, Edward deposits a "MG Trust" check in the amount of $10,000 to his Bank of America account while,*
- *On February 2013, took a loan and deposited $20,000 from his pension into the parties joint Chase checking account to which he has been paying himself back ever since, contributing to the marital house hold "on loan" to himself.*

Such maneuvering of funds seems to exist throughout and upon a down and dirty napkin scratch accounting in the absence of Edward's refusal to comply w/ discovery demands requesting that he turn over and provide any account statements, bank statements, credit card statements, etc. your undersigned has devised the auditing matrix attached in **section VII** to which in total displays between the months of May 2012 and September 2014:

| | |
|---|---|
| Cash withdrawals totaling | **$15, 712.39** |
| Credit card payments to Edward's cards totaling | **$55, 370.64** |

Upon review of such payments, it is clearly displayed that there were several consistent and frequent "overpayments" to such Chase Saaphire credit card to which such overages of my money never should have been paid to such card when Edward had left such balances outstanding on my accounts.

IV. CHECK FRAUD DISCOVERED in party's joint Chase checking account. As illustrated in **section VIII**, Edward's signature affidavits' and just a couple of checks that did not make sense to your deponent. Your challenges checks #1077-1150, it is clear that the penmanship on majority of these checks all appearing consecutively are very much a mirror of Matje's handwriting to which she did not have consent to issue checks by the debtor on the account and were paid over to cover her housekeeper and grounds/landscaper and to which add up to nearly **$10,000**.

25 BOERUM STREET #18E, BROOKLYN NY 11206
t: 917.373.5019 e: bhdenker@gmail.com








In the non-debtor spouses's cross-order affidavit to the Suffolk County Supreme Court, Edward states "Dora was paid from the rental income monies" henceforth, it is quite clear these checks were paid over to expenses having nothing to do nor benefit the debtor, but earned by the debtor none-the-less and contributed to a lack of available funds to pay debtor's obligations.

V. DEBTS ON BANK OF AMERICA CREDIT CARDS – included in **section VIII,** again while the Visa Signature credit card had no prior balance, Edward "John Youngs" made a purchase for **$4,982.32** on 1/30/2013 to Direct Buy Merchandise, all while on debtor's Norwegian Credit Card are charges on dates 1/7/2013, 5/16/2013 for which **section IX** operative notes show clearly, debtor was hospitalized having undergone hours and hours of surgery thus, impossible that he made such purchases. Edward and mother sought a window of opportunity to further add stress and strain to a suffering patient first needing to learn to walk again for their own selfish needs and wants.

VI. OF MARITAL INCOME EDWARD DID BRING HOME, not all was even used for marital expenses, rather as displayed (without a proper forensic audit or statements with images) an estimated **$217,000** had been converted by Edward never seeing the likes of the marital household and its' financial obligations.

VII. WITHHOLDING OF MEDICAL INSURANCE REIMBURSEMENT CHECKS and OTHER PAYMENTS not belonging to Edward – **Section X** provides medical reimbursement checks meant to be forwarded to doctors, sometimes held month's by Edward specific to debtors health treatment and other various payments / checks meant for the debtor, withheld without disclosing months, misappropriating the funds for Edward's own purposes causing debtor even more financial obligations and handicapping his ability to cover. Such an example as this June 8, 2013 deposit to which referencing the dates on the checks, they were months old

VIII. **Section XI** exhibits ATM record receipts, wealth management checks, listings of accounts and account #'s, retirement and 403(b) portfolios all with sizeable funds to which are within the timeframe of the parties marriage henceforth transacted with marital funds and locked away and withheld from paying any of debtor's involuntary debts assigned by Edward and mother.

While Edward will lay claim to monies going toward renovations, the only such renovations being paid at times was that of 316 W Neck Road, Huntington NY 11743 to which during the winter of 2012 (December timeframe), the entire interior house was painted smack in the middle of Christmas and us trying to get walls up in our new home. How ironic both requiring sizable purchases of paint.










Thereafter, during the summer of 2013, several nursery charges for landscaping again of 316 W Neck Road, Huntington NY. We did not begin such work on Pennington until November 2013 but when taking both the Chase Sapphire credit card statement and Citibank Credit Card etc you will discover Edward made purchases simply splitting them across several cards to appear to be smaller purchases when in fact they were sizable and substantial. I never was asked, nor would I consent to lending my mother-in-law money nor pay for her renovations of her home when we had our own bills to pay and she chose to give her money away each month tiding to the Church rather than pay for her own household expenses. Included in **Section XII** are the details of charges Edward fails to provide to support "credit card summary charts"

Based simply upon the above referenced examples and statements, duplicates et al. an estimated $430,000+ was and should have been accessible and available paid onto debtor's obligations, instead was selfishlessly converted, removed, withheld, and misappropriated by Edward J. Denker-Youngs and Matje G Youngs to their own benefit without consent of the main financial contributor to the marital home (clearly being displayed here) and henceforth, both Edward and Matje should be enjoined and ordered to account for and thereinafter return such funds to rightfully pay to the debtor's creditors.

Further in **Section XIII** is debtor's affidavit and complaint to annul the marriage on grounds of fraud in Kings County together with such tort action and claim against Edward J. Denker-Youngs and Matje G. Youngs, aka the Living Trust of Matje G Greivers.

**Section XIV**– is a copy of a tort claim for intentional infliction and fraud against my mother-in-law and estranged husband in Kings County

**Section XV** is the complaint filed with the Suffolk County District Attorney's Office on November 4, 2014 against Edward J Denker-Youngs and Matje G. Youngs together with my allegations to which the entire marriage was a fraud I now believe for the intentional purchase to launder and embezzle funds and pass off his bad debt from his own 2003 and 2006 act of mortgage fraud onto your undersigned.

Without having a proper accounting, it is nearly impossible to determine to the extent Edward and Matje have converted, deferred, syphoned and used my income for their benefit to which should have been paying my bills, especially since as indicated in the attached email and letter from regarding rental income of $1400 from the Cottage Edward was getting between April 2013 – July 2014 for which only adds to my disbelief of current financial circumstances. No way should such exists based merely on the amount of money that was accessible, no excuse bill should not have been paid.

**Section XVI** – is a current motion before the Suffolk County Supreme Court to which as indicated Equifax after research both in March 2015 and May 2015 deemed the Bethpage Federal Credit Union Home Equity Line of Credit (HELOC) fraud classifying the matter as an "account take-over" by Edward thus they removed the same from my credit file. Henceforth, that would presently put Edward in a position of owing my estate $123,737 of funds thereof, as the credit union has a lien against property I own for his debt. Hence, a secondary reason to which this property must not be sold until such matters are investigated further.










**Section XVII** – is an order to show cause containing emergency relief filed by non-debtor spouses' attorney after having filed motions as referenced above including reallocation of debt, dismissing senseless motions, et al. Not having been noticed prior to submitting the Order to Show Cause to the court, relief was granted restraining and enjoining debtor. Henceforth, your deponent believes given the circumstances and allegations involving non-debtor spouse Edward and fraudulent conduct and evidence, such Order interferes with this bankruptcy case and debtors ability to administrate and work today a solution herein.

**Section XVIII** – is debtor's documentation / evidence to which your undersigned believes there to be a biased before the Suffolk County Supreme Court proceeding by way of a question of the potential existence of impropriety thru debtor's estranged spouses' uncle and his political ties to town/village Justice Paul Senzer and also to the extent that Martha Reilly, the wife of Justice David T. Reilly is a 6th grade mathematics teacher in Huntington, NY employed for Principal Tracl Roethel to whom your debtor's estranged spouse worked with for many years, is personally friendly and acquainted with Edward and even to the extent attended our wedding. Furthermore, should matters proceed to trial, there has been raised an issue surrounding the purchase for the Pennington Drive property to which the sales agent Anne Peters is very closely related to Justice Reilly and his parents having known Judge Reilly the good majority of his life. Henceforth, a potential material witness regarding circumstances surrounding the home purchase adds to the argument for a change of venue and recuse of Justice Reilly.

**Section XIV-** Attached is a certified transcript of an August 25, 2014 telephone call between the debtor and non-debtor spouse to which the debtor confronts Edward on hidden secret 403(b) retirement accounts discovered the non-debtor spouse had opened. Thereafter, also provided an email immediately after the call the Edward sent to "Glen Gordon" inquiring about early withdrawal however no such withdrawal has been done. Hence force, it was your deponents' understanding that through this honorable court as conveyed by Mr. Morrison, such monies would be litigated and secured back to pay debts to which these monies should have gone to in the first place.

Debtor respectfully puts forth the information, documentation attached hereto, together with the creditor matrix and comments/breakdown to which debtor maintains the belief that there exists assets to which exists through the thefts, frauds, conversion and misappropriation of marital funds and assets by the non-debtor spouse Edward J Denker-Youngs and debtor's estranged mother-in-law Matje G. Youngs.

Respectfully submitted,

Brian H. Denker-Youngs

25 BOERUM STREET #18E, BROOKLYN NY 11206
t: 917.373.5019 e: bhdenker@gmail.com

| | Debt Assignment | | | | Breakdown | | | | Notes / Supporting Attachment |
|---|---|---|---|---|---|---|---|---|---|
| CREDITOR | Reported as fraud | Personal | Marital | Who Transacted | Total Outstanding balance | Amount in dispute | Interest | Lates Fees | |
| Chase Slate | Y | | X | Edward - | $ 1,320.00 | $ 1,320.00 | | | backup credit card for joint checking account - would delay deposits for overdrafts |
| Discover | Y | | X | Edward - | $ 5,600.00 | $ 4,000.00 | $ 237.38 | | |
| Bank of America Norweigan | | | X | | $ 9,547.00 | | | | |
| Bank of America HRC | | | X | | $ 10,053.00 | $ 4,893.00 | | | |
| Best Buy | | X | | | $ 283.00 | | | | |
| Wells Fargo | | | | | $ 2,800.00 | | | | |
| Amex | | X | | | $ 567.00 | | | | |
| Citibank Simplicity | | X | | | $ 14,239.00 | | | | |
| Various Medical | | | X | | $ 15,000.00 | $ 15,000.00 | | | |
| Natasha Meyers | | X | | | $ 5,000.00 | | | | |
| Anthony Capetola | | X | | | $ 46,000.00 | $ 46,000.00 | | | Divorce attorney - extraneous due to Edwards' intentional lies and perjury; application for attorney's fees |
| Mohela | | X | | | $ 1,800.00 | | | | |
| PayPal Credit | Y | X | X | Both | $ 3,800.00 | $ 3,800.00 | | | mixture of items for house and some for business |
| Verizon | Y | | | Edward | $ 386.00 | $ 386.00 | | | |
| Bethpage Federal HELOC | Y | | X | Edward | $ 123,737.00 | $ 123,737.00 | | | in dispute, equifax removed from credit report; see credit dispute |
| JP Morgan Chase | | | X | Edward | | | | | in dispute, equifax removed from credit report; see credit dispute |
| TOTALS | | | | | $ 240,132.00 | $ 199,136.00 | | | $ 40,996.00 |