**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re:

BRIAN H. DENKER-YOUNGS                                    Chapter 7
      Debtor                                    Case Number 15-41069
-----------------------------------------------------X

## APPLICATION FOR ORDER / CONSENT FOR STATE COURT TO PROCEED WITH DISCOVERY – EXCHANGE OF DOCUMENTS AND NECESSARY ACCOUNTINGS / ASSET SUMMATIONS

        I, BRIAN H. DENKER-YOUNGS, am the debtor in the above captioned case before this honorable court, appearing this 24TH day of November 2015, submits this application to this honorable court in order to provide necessary guidance and/or consent to the State Supreme Court so far as too confirm that the State Supreme Court may in fact proceed with discovery and the exchange of documents and any accountings / audits / asset summations as applicable within that proceeding and is in fact _not stayed_ pursuant to 11 USC § 362.

Background

1.  Your deponent is the defendant in Suffolk County Supreme Court Index No. 16968-2014 and Plaintiff in the Kings County Supreme Court Index No. 54031-15 respectively the matrimonial actions for the dissolution / annulment of the Denker-Youngs marriage.

2.  Through former counsel Natasha Meyers, on/about November 18, 2014 your deponent completed the gathering and drop off of discovery documents requested by the non-debtor spouse and his counsel.

3. Demands of your deponent were delivered upon the Offices of Simonetti & Associates located at 144 Woodbury Road, Woodbury NY 11797 for the demand of discovery documents and statements with images to which a list of the same is attached hereto.

4. Notwithstanding that Mr. Morrison's application for your debtor's petition was filed five months later, the non-debtor spouse, his counsel and the state court, the non-debtor spouse, his counsel and presiding justice all deem it a requirement in proceeding with discovery that first there was be "stay relief" for equitable distribution.

5. Your deponent is of the belief that stay relief is in fact not required for parties to a matrimonial action to conduct such efforts toward the discovery of assets, accountings, etc. and is not barred by the automatic stay of 11 U.S.C. § 362(a)(1).

6. Further to your deponent's understanding the automatic stay imposed 11 U.S.C. § 362(a)(1) does not stay any matters against or directed toward the non-debtor spouse so far as long as it does not include any part of your deponents estate or division of final awards / assets of your debtors.

7. As this honorable court will recall, on October 22, 2015, your deponent together with Ms. Loftin appeared before this court on the non-debtors perjured application for stay relief, proclaiming "the state is ready to rule."

8. Further on oral argument, Ms. Loftin initially advocated for the same but acquiesced.

9. Your deponent submits exhibit "A" to this honorable court to which is your deponent's November 6, 2014 Order to Show Cause and Affidavit.

10. Exhibit "B" is the Order that was issued at the state level.

11. Your deponent has file an appeal at the Appellate court Second Department among which your deponent appeals the State's total disregard for a request of asking to having the non-debtor spouse submit to various accounting requests.

12. Your deponent alleges and claims that hundreds of thousands of your debtors funds and marital funds were commingled and converted to which should have made your deponents' creditors rather was fraudulently transacted by the non-debtor spouse and his mother. Henceforth the continued and persistent "stay relief" push by the non-debtor spouse so not to be answerable or have to account.

13. Rule 8005 of the Federal Rules of Bankruptcy Procedure gives this Court authority to grant stay relief pending appeals and as such your deponent in the interest of the bankruptcy estate and further in the interest that your debtor in fact believes there to be assets to which had fraudulently been transferred and should be available for payment to the credits through funds taken by the non-debtor spouse.

WHEREFORE, in the interest of moving proceedings at the state level along,  as previously discussed on 22 October 2015 with Ms. Loftin, counsel to the non-debtor spouse, your deponent respectfully requests that the honorable court issue such clarification and an Order:

1. Clarifying that consent of this honorable court to the State Supreme Court is not required to engage in Discovery phase of the matrimonial proceeding, allowing the exchange of documents the issuing of subpoenas for the non-debtor spouse Edward J Denker-Youngs and any applicable accountings, summations as applicable and on consent in the state courts.

2. Pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, equitable distribution is stayed until such time as an application for relief is made and granted or order issued from this honorable court.

Date: November 24, 2015                    /Brian H. Denker-Youngs

4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:

BRIAN H. DENKER-YOUNGS                                    Chapter 7
            Debtor                                  Case Number 15-41069

-----------------------------------------------------X

APPLICATION FOR ORDER / CONSENT FOR STATE COURT TO PROCEED WITH
DISCOVERY – EXCHANGE OF DOCUMENTS AND NECESSARY ACCOUNTINGS /
ASSET SUMMATIONS


UPON the application of the debtor, <u>BRIAN H. DENKER-YOUNGS,</u> appearing this 24th

day of <u>NOVEMBER</u>, 2015 seeking consent and/or clarification for the State Supreme Courts to

proceed with the exchange of discovery documents and respective accountings / asset

summations as applicable.

Debtors' application is granted and clarified such application need not be made as

Discovery is not barred by the automatic stay of 11 U.S.C. § 362(a)(1). Relief from stay is not

required to engage in Discovery phase of the matrimonial proceeding and therefore herein, the

Supreme Court may allow for the exchange of documents, the issuing of subpoenas by debtor to

non the non-debtor spouse Edward J Denker-Youngs and any applicable accountings,

summations as applicable and on consent in the state courts.

AND IT IS FURTHER ORDERED that Pursuant to Rule 8005 of the Federal Rules of

Bankruptcy Procedure, equitable distribution is stayed until such time as an application for relief

is made and granted or order issued from this honorable court.

Date:  November _____, 2015                    _____

                                                Honorable Chief Justice Carla E Craig


5



At an Individual Assignment Term of the Supreme Court of the State of New York held in and for the County of Suffolk at the Courthouse thereof located at 400 Carleton Avenue, Central Islip, New York on the *6* day of November, 2014.

PRESENT

Hon. **HON. DAVID T. REILLY**

_____
              Justice

-------------------------------------------------x
EDWARD JOHN DENKER-YOUNGS,

                          Plaintiff,

              -against-

BRIAN H. DENKER-YOUNGS,

                          Defendant.
-------------------------------------------------x

MOTION/CROSS/OSC
FEE PAID
Judith A. Pascale
Suffolk County Clerk

Index No.: 14-016968

**ORDER TO SHOW CAUSE**

Assigned Justice:
Hon. David T. Reilly

**UPON** reading and filing the annexed affidavit of Defendant, BRIAN H. DENKER-YOUNGS, duly sworn on the 5th day of November, 2014, the affirmation of NATASHA MEYERS, ESQ., dated the 5th day of November, 2014, and upon all the pleadings and proceedings heretofore had herein,

**LET** the plaintiff, EDWARD JOHN DENKER-YOUNGS, or his attorney show cause at an Individual Assignment Term thereof, to be held in and for the County of Suffolk, at the Courthouse located at 400 Carleton Avenue, Central Islip, New York, on the *24* day of November, 2014, at 9:30 o'clock in the forenoon of said day or as soon thereafter as counsel may be heard, why an Order should not be made and entered herein:

              (a)    Awarding the Defendant exclusive use, occupancy and possession

of the marital residence, located at 33 Pennington Drive, Huntington, New York and its contents;

(b)    Directing the Plaintiff to pay his pro-rata share of the mortgage, homeowner's insurance, property taxes, heating oil, electric, landscaping, and repairs and to immediately pay and bring current any and all arrears that may exist with respect to any of the foregoing charges and expenses, retroactive to the date of this application;

(c)    Awarding the Defendant exclusive use and enjoyment of the 2014 Mercedes GLK automobile that he operates and the 2012 Volkswagen Eos;

(d)    Directing the Plaintiff to pay the lease payments, insurance and repairs on the Mercedes automobile, retroactive to the date of this application

(e)    Directing the Plaintiff to immediately provide an accounting of $125,000.00 used from the Home Equity Line of Credit from the date the line of credit was opened until the present time;

(f)    Directing the Plaintiff to immediately provide an accounting of as to what the Plaintiff did with his income from the date of marriage until the present time;

(g)    Directing the Plaintiff to immediately provide an accounting of the payments made on his Chase Sapphire Credit Card from the date of marriage until the present time;

(h)    Directing the Plaintiff to immediately provide an accounting of the medical insurance checks he received on the Defendant's behalf from the date of marriage until the present time;

(i)    Directing the Plaintiff to pay interim counsel fees on behalf of the Defendant in the sum of $10,000.00, without prejudice to future applications for

ORDERED that service of a copy of the within together with the papers upon which it was based, be served upon the Plaintiff's counsel, via overnight mail, on or before the 13 day of November, 2014 be deemed good and sufficient service thereof.

**GRANTED**

NOV 0 6 2014

JUSTINA PASCALE
County-Wide Court

ENTER:

_____
J.S.C.

**HON. DAVID T. REILLY**

Pursuant to 22 NYCRR §130-1.1-a
Respectfully Submitted,
**THE MEYERS LAW GROUP, P.C.**

_____
By:  Natasha Meyers, Esq.
Attorney for Defendant
55 Elm Street
Huntington, New York 11743
(631) 784-7722

Affidavit        Affirmation

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
EDWARD.JOHN DENKER-YOUNGS,

                          Plaintiff,

           -against-

BRIAN H. DENKER-YOUNGS,

                         Defendant.
-------------------------------------------------------------------X

Index No.: 14-016968

**AFFIRMATION IN
SUPPORT OF
ORDER TO SHOW CAUSE
FOR PENDENTE LITE
RELIEF**

       NATASHA MEYERS, ESQ., an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms based on information provided me by my client that the following are true under penalties of perjury:

       1.     I am a member in the Meyers Law Group, P.C., counsel for the Defendant, BRIAN H. DENKER-YOUNGS, and as such, I am fully familiar with the facts and circumstances set forth herein. I make this Affirmation in Support of the Order to Show Cause submitted by the Defendant, which seeks various forms of *pendente lite* relief.

       2.     The facts and circumstances surrounding this matter are set forth in detail in the Affidavit of the Defendant, annexed hereto and made a part hereof, and the Court is respectfully referred to same.

**NOTICE PURSUANT TO §202.7 OF THE UNIFORM CIVIL RULES FOR SUPREME AND
COUNTY COURTS HAS BEEN SATISFIED**

       3.     On November 5, 2014, the Plaintiff's counsel was provided with notice of this motion Pursuant to §202.7 of the Uniform Civil Rules for Supreme and County Courts by letter via facsimile to  Plaintiff's Counsel's office (a copy of the letter to Plaintiff's counsel is annexed hereto as **Exhibit "O"**).

1

## PLAINTIFF'S REQUEST FOR EXCLUSIVE USE AND OCCUPANCY OF
## THE MARITAL RESIDENCE SHOULD BE GRANTED

4.      In this case, as is more fully set forth in the Defendant's Affidavit, the Plaintiff is in extremely poor health having undergone numerous surgeries.  Even more troubling, is the fact that the Defendant recently had a stroke and he was subsequently diagnosed with an aneurysm.   The Defendant might require additional surgery in light of the aneurysm. The Defendant was advised by his doctor to reduce his stress and his blood pressure in order to prevent another stroke.

5.      The Plaintiff has been returning to the marital residence sporadically.  When the Plaintiff returns to the marital residence, the Defendant alleges that he suffers stress, anxiety and mental anguish which increase his blood pressure and could bring on another stroke.

6.      In the interests of protecting the Defendant from suffering another stroke, it is respectfully requested Defendant's request for an Order granting the Defendant exclusive use and occupancy of the marital residence during the pendency of this litigation be granted.

7.      In addition, the Plaintiff has been staying with his mother and there is a pending Family Court action, file no.:  139662, before Referee Kerri Lechtrecker.  A copy of the Temporary Order of Protection is annexed hereto as **Exhibit "M".**

8.      It is well settled that exclusive occupancy of the marital residence may be awarded to one party, prior to trial, when there is sufficient evidence that such an award is necessary to avoid domestic strife or to protect the safety of persons or property. Rauch v. Rauch, 83 A.D.2d 847 (2d Dept., 1981); Wolfe v. Wolfe, 111 A.D.2d 809 (2d Dept., 1985); Taub v. Taub, 33 A.D.3d 612 (2d Dept., 2006).

pendency of a matter to prevent financial coercion. See, Hinden v. Hinden, 122 Misc. 2d 552, 472 N.Y.S. 2d 248 (Nassau Co. 1984).

14.    Moreover, economic equality has also been deemed to be essential during the pendency of a matter to prevent financial coercion. Hinden v. Hinden, 122 Misc. 2d 552, 472 N.Y.S. 2d 248 (Sup. Ct. 1984).

15.    As detailed in the Defendant's accompanying Affidavit, Plaintiff has always been responsible for managing the parties' finances and paying their joint bills. Since the joint checking account was closed, the Defendant has taken on the responsibility of paying the mortgage, home equity line of credit, electric, water and rent for the Brooklyn apartment but has insufficient funds to continue to do so.

16.    The Defendant had to borrow money from his aunt to pay his basic living expenses this past month. He cannot afford to maintain the marital residence without the financial contribution from the Plaintiff.

17.    Based upon the information, arguments and exhibits contained herein as set forth in the Affidavit of BRIAN H. DENKER-YOUNGS, I respectfully request that the Plaintiff be ordered to pay his pro rata share of the mortgage, real estate taxes, homeowner's insurance, heating oil and home repairs on a *pendente lite* basis.

### DEFENDANT'S REQUEST FOR EXCLUSIVE USE AND OPERATION OF THE MERCEDES AND FOR THE DEFENDANT TO PAY 100% PERCENT OF THE CAR LEASE AND INSURANCE FOR SAME SHOULD BE GRANTED

18.    In accordance with Domestic Relations Law Section 236, the Defendant is respectfully requesting that the Court award him exclusive use and operation of the 2014 Mercedes automobile that he operates.

4

such as would cause the non-monied spouse to capitulate to what is, in essence, a highly unsatisfactory resolution. 52 A.D.3d 61, 858 N.Y.S.2d 667 (2d Dep't 2008).

24.    In exercising its discretionary power to award counsel fees, a Court should review the financial circumstances of both parties together with all the circumstances of the case, which may include the relative merit of the parties' position. DeCabrera v. Cabrera-Rosete, 70 N.Y.2d 879, 518 N.E.2d 1168, 524 N.Y.S.2d 176 (1987).

25.    It is also well settled that a party who engages in obstructionist tactics may be required to pay the legal fees of the other.  Katzman v. Katzman, 284 A.D.2d 160, 725 N.Y.S.2d 849 (1st Dep't 2001); Gober v. Gober, 282 A.D.2d 392, 724 N.Y.S.2d 48 (1st Dep't 2001).

26.    Furthermore, the conduct of one spouse may, for instance, warrant the imposition upon him or her of the responsibility for the payment of such expenses, irrespective of the other spouse's needs. Zirinsky v. Zirinsky, 138 A.D.2d 43, 529 N.Y.S.2d 298 (1st Dep't 1998); Stern v. Stern, 67 A.D.2d 253, 415 N.Y.S.2d 225 (1st Dep't 1979). A party should be reimbursed where said party has been "forced to litigate what would have been an easily resolved issue but for [the other party's] less than forthright position concerning his true financial state."  Anna-Sophia L. v. Paul H., 52 A.D.3d 313, 860 N.Y.S.2d 510 (1st Dep't 2008).

27.    The Court in Miklos v. Miklos, held that it was well within the Supreme Court's discretion to include the statutory Nine Percent (9%) interest rate on counsel fees awarded. 21 A.D.3d 353, 800 N.Y.S.2d 561 (2d Dep't 2005).

28.    With respect to the Defendant's request for an award of counsel fees, I respectfully request that the Court consider the criteria set forth in Re Ott's Estate, 213

6

exercising all of his rights in this divorce action as he will not be able to hire and maintain counsel of his choosing.

31.    Therefore, it is respectfully submitted that the Defendant be awarded counsel fees in the amount of Ten Thousand Dollars ($10,000.00) so that he can continue this action with counsel of his choosing. There are issues related to marital waste, martial debt, and misuse of marital income that will require witness testimony, depositions, and discovery.

32.    In terms of qualifications, I was admitted to practice in the Second Judicial Department in December 2003, after graduating magna cum laude from Touro Law School. I am also admitted to practice law in the Federal Courts (Eastern and Southern District of New York). Since entering practice, I have practiced primarily in the field of commercial litigation, matrimonial and family law. I was an associate with Rivkin Radler LLP and then started my own private practice in the areas of matrimonial and family law in 2004.

33.    I am a member of the Nassau County Bar Association, Suffolk County Bar Association, New York State Bar Association (Family Law and Real Estate Sections), New York State Academy of Trial Lawyers, New York State Trial Lawyers Association, American Bar Association, the Suffolk County Women's Bar Association, a past Director of the Suffolk County Women's Bar Association (2006 – 2009), Suffolk County Matrimonial Bar Association, Suffolk County Women's Bar Association CLE committee member, a past coordinator of the Suffolk County Women's Bar Association CLE program, secretary and a member of the Huntington Lawyers Club and a past Trustee, lifetime member of Madison's Who's Who, and a member of the American Association of Justice and regularly attend

**WHEREFORE**, it is respectfully requested that his Honorable Court grant to the

Plaintiff all of the relief requested in the instant motion.

No previous application has been made to this court or is any other application for

the relief sought herein currently pending.

Dated:  November 5, 2014
          Huntington, New York

                              Respectfully submitted,
                              THE MEYERS LAW GROUP, PC.


                              By:    Natasha Meyers, Esq.
                                     Attorney for Defendant
                                     55 Elm Street
                                     Huntington, NY 11743
                                     (631) 784-7722

10

**AFFIDAVIT**

-against-

BRIAN H. DENKER-YOUNGS,

<u>Assigned Justice</u>:
Hon. David T. Reilly

                                    Defendant.
--------------------------------------------------------------x

STATE OF NEW YORK)
                 )ss.:
COUNTY OF SUFFOLK)

BRIAN H. DENKER-YOUNGS, being duly sworn, deposes and says:

1.    I am the Defendant in the above-captioned action and submit this affidavit in support of my motion for an order:

(a)    Awarding the Defendant exclusive use, occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington, New York and its contents;

(b)    Directing the Plaintiff to pay his pro-rata share of the mortgage, homeowner's insurance, property taxes, heating oil, electric, landscaping, and repairs on the marital residence and to immediately pay and bring current any and all arrears that may exist with respect to any of the foregoing charges and expenses, retroactive to the date of this application;

(c)    Awarding the Defendant exclusive use and enjoyment of the 2014 Mercedes GLK automobile that he operates and the 2012 Volkswagen Eos automobile;

1

(d)    Directing the Plaintiff to pay the lease payments, car insurance and repairs on the Mercedes automobile, retroactive to the date of this application;

(e)    Directing the Plaintiff to immediately provide an accounting of $125,000.00 used from the Home Equity Line of Credit from the date the line of credit was opened until the present time;

(f)    Directing the Plaintiff to immediately provide an accounting of what the Plaintiff did with his income from the date of marriage until the present time;

(g)    Directing the Plaintiff to immediately provide an accounting of the payments made on his Chase Sapphire Credit Card from the date of marriage until the present time;

(h)    Directing the Plaintiff to immediately provide an accounting of the medical insurance checks he received on the Defendant's behalf from the date of marriage until the present time;

(i)    Directing the Plaintiff to pay interim counsel fees on behalf of the Defendant in the sum of $10,000.00, without prejudice to future applications for additional awards, if warranted;

(j)    Awarding the Defendant such other and further relief as to this Court may seem just and proper.

## **ACTION FOR DIVORCE**

2.    The Plaintiff commenced this action for divorce on August 27, 2014. A copy of the Summons with Notice is annexed hereto as **Exhibit "A"**. I was served with a copy of the Summons with Notice and subsequently appeared by counsel. A copy of the Notice of Appearance is attached as **Exhibit "B"**.

2

BACKGROUND

3.    The Plaintiff and I began my relationship in approximately June 2011 and we were married on July 30, 2011, only a few days after New York State legalized same sex marriage in New York.   We do not have any children together.

4.    Our marriage has been irreparably damaged due to the Plaintiff's fraudulent misrepresentation of his religious beliefs, his misuse of marital income and assets, and his lack of compassion during my recent major medical procedures, amongst other things.

## EXCLUSIVE OCCUPANCY

5.    It is respectfully requested that I be awarded exclusive use, occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington, New York and its contents due to the Plaintiff's voluntary relocation, the history of physical violence and the emotional distress the Plaintiff has inflictede upon me.

6.    I am in poor health.  I have had five (5) major operations over a period of two (2) years. In January 2013, I underwent a posterior inter-body lumbar fusion at Huntington Hospital.  During my six (6) week recovery, the Plaintiff spent his time after work with his mother instead of caring for me or keeping me company during my difficult recovery.  I was left alone each day from 6:45 a.m. until 9:00 p.m.

7.    On or about March 2, 2013, complications from my spinal surgery left me temporarily paralyzed.   While I cried in bed out of fear and pain, the Plaintiff thoughtlessly lay next to me in bed and masturbated rather than providing me emotional support.  I was so hurt and enraged by the Plaintiff's grossly inappropriate behavior that

8.    I had additional 9 ½ spine surgery in May 2013. In or around July 2014, while I was receiving treatment at the St. Francis Emergency Room, the Plaintiff became enraged and he violently grabbed my arm that had I.V. lines causing me to suffer, physical pain, fear and embarrassment.

9.    In August 2013, I needed another surgery to repair a hernia and abdominal disfigurement. In July 2014, I had to have my gallbladder removed.

10.    In September 2014, I suffered a stroke caused by stress and incredibly high blood pressure. While I was hospitalized, the doctors discovered that I have an aneurysm which may require additional surgery. I was advised by my doctor to decrease my stress, anxiety, and blood pressure. A sample of my medical records is attached as **Exhibit "C"**. I do not want to overwhelm the Court with my voluminous medical records, but I can certainly provide the Court with additional documentation of my fragile health, if necessary.

11.    The Plaintiff has virtually moved into his mother's four (4) bedroom house (for which he is the trustee) located at 316 West Neck Road, Huntington, New York. The Plaintiff has only slept at the marital residence sporadically since he filed for divorce.

12.    It is imperative that I continue to reside in the marital residence which is centrally located to my health care providers. It is very stressful for each time the Plaintiff returns to the marital residence. That stress and anxiety could have deadly consequences for me given the fact that I have an aneurysm.

13.    Based on the fact that the Plaintiff has established an alternate

4

residence and the fact that his return to the marital residence causes me to suffer fear

and anxiety which could aggravate my aneurysm, it is respectfully requested that I be

awarded exclusive use, occupancy and possession of the marital residence, located at

33 Pennington Drive, Huntington, New York and its contents.

### *PENDENTE LITE* SUPPORT

14.    The Plaintiff is employed as a History teacher for the Oyster Bay-East Norwich School District. His annual gross salary is $123,641.00. A copy of his pay stub is attached as **Exhibit "D"**.

15.    The Plaintiff also worked as a summer camp counselor for eighteen (18) years until he suddenly decided to stop working summers beginning in the year 2011, which significantly reduced our household income and placed greater financial stress upon me while I recovered from major surgery. In the summer of 2013, I returned to work, with 42 staples still in my stomach so I could help provide financially for our family. The Plaintiff refused to work that entire summer.

16.    This past summer, the Plaintiff returned to working at summer camp but he had to do so at a reduced salary. The Plaintiff earned $3,500.00 from summer camp this year compared to $8,000.00 in previous years. A copy of his pay stub is attached as **Exhibit "D"**.

17.    I recently discovered that the Plaintiff is paid $13.37 per hour by New York State for being a personal aide and assistant to his brother, Danny, who has Down's syndrome. The Plaintiff has never disclosed to me exactly how much money he earns from being a personal aide or that he was even being compensated as such, but I estimate it is approximately $130.00 per week or $6,760.00 annually. A copy of one of

5

the Plaintiff's pay stub from South Shore Home Health Services is attached as Exhibit "E" and the Plaintiff's Statement of Net Worth is attached as Exhibit "P".

18.  The Plaintiff's combined annual income is $133,901.00 which includes $123,641.00 from his teaching position, $3,500.00 from summer camp and $6,760.00 for being an aide to his brother.

19.  Despite my poor health, I remain employed as a marketing executive for Frost & Sullivan, Inc.  My annual income is $93,600.  Copies of my individual income tax returns for the years 2011 and 2013 are attached as Exhibit "F".

20.  I also earn a nominal income working sporadically as a Rabbi.  My annual gross income from this source was approximately $3,654.00 in 2013.  I did not file a corporate tax return.

21. My combined annual gross income in 2013 was $97,254.  My income for the current year will be less given the fact that I have had less work as a Rabbi due to my poor health and inability to work in that capacity.

### FINANCIAL BACKGROUND

22.  The Plaintiff and I opened our first joint checking account at Bethpage Federal Credit Union on August 13, 2010 when we began living together and the Plaintiff took on the responsibility of paying our bills.  I now know that this financial arrangement was a tremendous mistake.

23.  On several occasions, our checking account was overdrawn due to the Plaintiff's poor management of our income.  When I questioned the Plaintiff as to where his income was going, he told me "to the best of my knowledge I'm paying bills".  However, that was not entirely the case.

6

stub is attached as **Exhibit "G"**. Commencing prior to our marriage and continuing until very recently, $1,000.00 from my salary was directly deposited into our joint checking account with Chase bank and the remaining $1,400.00 was deposited into my individual account with Citibank.

25.    I used my individual checking account with Citibank to pay the following bills:

| | |
|---|---|
| Cable, internet and telephone | $175 |
| Cell phone | $160 |
| Volkswagen lease | $440 |
| Alarm | $ 54 |
| Groceries | $400 |
| Citibank credit card | $250 |
| Work expenses | $250 |
| Gas | $400 |
| Dining out | $250 |
| Internet & Cable – Brooklyn | $105 |

26. If any money was left in my individual account at the end of the month I transferred it into our joint account. A copy of my Statement of Net Worth is attached as **Exhibit "H"**.

27. It appears to me that the Plaintiff had his salary deposited into a checking account at Bank of America. I do not know how much of his salary the Plaintiff deposited into our joint account, but he has certainly not been depositing all his income into our joint account or on occasion even half.

28. For the period of time we rented the cottage at the marital residence a portion of the rental income was used to pay the cleaning lady, but I do not know what the Plaintiff did with the rest of the money.

7

29. The Plaintiff used the joint checking account to pay the following bills:

| | |
|---|---|
| Mortgage | $2,788 |
| Home Equity Line of Credit | $ 265 |
| Electric | $ 726 |
| Oil | $ 500 |
| Water | $ 175 |
| Rent for Apartment in Brooklyn | $ 817 |

30.  I recently rented out the cottage at the marital residence to a new tenant for a twelve (12) month lease after a four (4) month period of vacancy. I plan on using the rental income of $1,700.00 per month to pay down the home equity line of credit on the marital residence, which has been exhausted by the Plaintiff without my knowledge.

31.  On October 15, 2014, I closed the joint checking account.  I have since taken on the responsibility for making a payment on the Home Equity Line of Credit, paying one-half of the electric bill, and paying the rent for the apartment in Brooklyn.

32.  Now that the joint account is closed, I do not know if the Plaintiff will voluntarily contribute towards the carrying charges on the martial residence and I cannot afford to maintain the house and the apartment without a financial contribution from the Plaintiff.  He has not to date, to my knowledge.

33.  In the month of October 2014, I paid the following bills:

| | |
|---|---|
| Brooklyn Apartment | $ 900 |
| Tax debt installment | $ 300 |
| PSE&G | $ 363 |
| Cleaning lady | $ 90 |
| Cell phones | $ 160 |
| Volkswagen lease | $ 439 |

8

EXHIBIT A    Affirmation    EXHIBIT C    Counsel Fee Affirmation

SUPREME COURT STATE OF NEW YORK
APPELATTE DIVISION: SECOND DEPARTMENT
-------------------------------------------------------------------X

EDWARD JOHN DENKER-YOUNGS,                          Index No.: 16968/2014

                    Plaintiff-Respondent


                    -against-                        APPELLANTS
                                                     AFFIDAVIT

          BRIAN H. DENKER-YOUNGS,   *Pro Se*

                    Defendant-Appellant

-------------------------------------------------------------------X


      **I, BRIAN H. DENKER-YOUNGS,** being duly sworn, and deposed and says the following

under the penalty of perjury:

1. I am the Defendant in the above-entitled within action appearing herein *Pro Se,* and submits this

   Order to Show Cause for an appeal of a *Pen dente lite* judgement entered July 31, 2015 as a

   matter of law pursuant to CPLR 5701(a)(2), whereby generally speaking **all judgements are**

   **appealable** if it arises out of a motion made on notice and it grants or continues a provisional

   remedy and affects a substantial right of the affected party.

2. I am fully familiar with all of the facts and circumstances surrounding the instant notice to

   appeal a *Pen dente lite* Order of the lower Supreme court entered July 31, 2015 and attached

   hereto labeled *Exhibit A*, nearly nine (9) months after my initial Order to Show Cause of

   November 6, 2014 was first filed with the lower court, attached hereto labeled *Exhibit B*.

3. I am also a debtor-in-possession, having been compelled into filing a voluntary petition for

   Chapter 11 Bankruptcy on March 13, 2015 with the United States Bankruptcy Court, Eastern

   District in Kings County Case No. 15-41069 attached hereto and labeled *Exhibit C* as a direct

   result of gregarious and fraudulent conduct by the Plaintiff as is exhibited and attested to in my

November 6, 2014 Order to Show cause and within Defendants Affidavit in Opposition dated February 25, 2015 attached hereto labeled *exhibit D*.

4. Your deponent requests that the honorable court excuse my failure to provide the trial transcript on the basis of a financial hardship. Upon inquiring with the court reporter, your deponent had been quoted a cost of nearly Twenty-Six Hundred Dollars ($2600) for the transcripts. Your deponent regretfully does not have nor can afford to purchase the same.

THEREFORE, your Deponent respectfully requests that all representations and conveyances made and referenced herein be accepted as my affidavit of absolute truth and fact, and what would be conveyed within the trial transcript as fact.

## THE NEED FOR THIS APPEAL AND THE APPELLATE COURTS'S INTERVENTION PURUSANT TO § 670.17

5. Your appellant respectfully requests that the Justices of this Honorable court provide slight latitude to your appellant appearing *PRO Se* and having endured nearly a year of abuse and watching lies succeed and the truth and your appellant buried, sanctioned intentionally and irreversible impacted and harmed by the course of the events henceforth.

6. Your appellant began to really wonder why despite life's instilled teachings and my conduct of the same that one is to always tell the truth and especially in court; one is to not lie and to always respect the court and law; as to why your appellant has suffered so greatly under the jurisdiction of the lower court. Your appellant has discovered what he believes to have been an unjust bias against him by the assigned lower court.

7. Affixed hereto as exhibit A and your deponent respectfully requests approval to redact and remove the contents of this exhibit for purposes of confidentiality and privacy. There exists are

a series of documents which raise question to concern of the potential of an existence of a bias or impropriety by the lower courts which stem from the respondents' uncle Arthur Van Nostrand, who has been in attendance for each and every court proceeding.

8. Van Nostrand as showcased has both personal and professional ties to the local political community, landscape and politicians including various Justices within the District Court including that of Republican part member and Northport, NY local Justice Paul Sensar, personal friend of Van Nostrand and campaign supporter for candidate David T Reilly as is showcased by the web referenced search result listing the Uncle as a member of Judge David T. Reilly's LinkedIn election to the Supreme Court profile and group.t

9. Your deponent respectfully requests a review of the facts, findings, evidence and applicable case law in the entire proceeding here in for determination of any potential existence or avoidance of impropriety going forward and upon such motion for the court herein to transfer on request for dissolution to the appellate court 2nd department in attempts to avoid any possible infringements of Professional Rules of Conduct: Part 100.

10. And thereafter upon such review, affirming appropriate venues and oversight to positively move the action herein in a forward direction with clear and judicial resolve.

## **BACKGROUND**

11. This is a matrimonial action that was commenced by the respondent upon filing a Summons with Notice for Divorce on August 27, 2014.

12. Both parties were married in Lake Ronkonkoma, New York on July 30, 2011, subsequent to the enactment of the New York State Legislation permitting same sex marriage in New York in a religious ceremony in accordance with rites and rituals of the Jewfish faith.

13. A preliminary conference was held on November 6, 2014 and By Order to Show Cause dated November 6, 2014, *your* deponent moved, *inter alia,* for exclusive use and occupancy of the marital residence. Among several grounds proffered included my poor health, which includes five (5) major operations over the last two (2) years inclusive of two spinal surgeries that left the Appellant temporarily paralyzed, a stroke and the fact that the Respondent had effectively moved into his mother's residence nearby where the Respondent is also trustee, caretaker of the property and has established as an address of record for himself dating back years.

14. In addition, your deponent had conducted his employment and business activities from his home office located in the marital residence. A copy of the Order to Show Cause and supporting Affidavit, without exhibits, is annexed hereto as *Exhibit "E"*.

15. The Respondent opposed the motion by filing his own motion seeking, *inter alia,* exclusive use and occupancy. However, the Respondent's request for exclusive use and occupancy was not filed *ex parte* December 11, 2014, five *weeks after appellant's motion for such relief was made.* Thus, it is obvious that the Respondent's request for exclusive use and occupancy was nothing but a manufactured "afterthought" made in retaliation and as a counter move to and is further evidenced by Respondent's prolonged and intentional delays in going to trial and torturous conduct throughout .

16. On December 11, 2014, the Lower Court called the case as an add-on to a status conference after several adjournments by the Respondent originally scheduled for November 13, 2014 said transcript is attached as Exhibit F. Following some colloquy, the Lower Court issued a temporary order that it chose to classify "not even *pen dente relief*' and was issued based upon a short return date for trial of the matter within 30-days. Your deponent on record called out to the court, the Respondents representations as being false and untrue as is illustrated in the "so ordered transcript' attached hereto as *Exhibit G.*

7

17. Based on Respondents representations to the Lower Court that day, to which were absent any evidence, testimony or physical acts of violence contained in respondents' complaint against the appellate, the court issued relief off the bench ordering that the Respondent would have exclusive use and occupancy of the marital residence and gave the Appellant forty-eight (48) hours to vacate the premises. This temporary relief was continued and was to stay in place until the determination of the Appellant's Order to Show Cause and Respondent's Order to Show Cause. *However, exclusive use and occupancy may properly be awarded without a hearing upon a sufficient showing of abuse that is supported by uncontroverted medical evidence. Preston v. Preston, 147 A.D.2d 464, 537 N.Y.S.2d 824 (2d Dep't 1989), see also Fakiris v. Fakiris, 177 A.D.2d 540, 575 N.Y.S.2d 924 (2d Dep't 1991); Harrilal v. Harrilal, 128 A.D.2d 502, 512 N.Y.S.2d 433 (2d Dep't 1987); King v. King, 109 A.D.2d 779, 486 N.Y.S.2d 291 (2d Dep't 1985)* no such medical evidence exhibiting abuse was presented by the respondent.

18. In compliance with the Order, the Appellant was compelled to vacate the marital residence despite the grievous prejudice that your deponent was suffered and expected to continue to suffer as a result and such order of the court absent a hearing for nearly five months is a direct violation of your appellant's right to due process. The general rule is that exclusive possession, pendente lite should not be granted without a hearing. *Formato v. Formato 173 A.D.2d 274, 569 N.Y.S.2d 665 (1st Dept. 1991).*

19. On December 15, 2014, at a subsequent conference, the Lower Court scheduled a hearing as to who should be awarded exclusive use and occupancy, "if anyone" and calendared for January 28, 2015; none the less, resulting from delays caused by the respondent including and not limited to non-appearance by neither respondent nor respondents' counsel on March 16, 2015 whereas your appellant and counsel did appear and ready to begin trial. New Trial dates again were intentionally put forward extraneous amounts of time by the respondent pushed out to

8

April 30, 2015.  A litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process. *See A.B. v. Y.Z., 184 N.J. 599, 604 (2005); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003).  Due process guarantees expressed in the Fourteenth Amendment to the United States Constitution requires assurance of fundamental fairness during legal proceedings. U.S. Const. amend. XIV, § 1. This includes the opportunity to be heard and requires "procedural safeguards including the right to cross-examine adverse witnesses and the right to call witnesses . . . ." Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005).*

20. As a result of a delays and a non-appearance by the respondent, trial did not begin until April 30, 2015 and conclude until May 30, 2015.  Such intentioned delays not only has caused your appellant significant financial loss and that of his business LongIslandChuppah.com but has also violated your appellants right to due process.

21. Over the course of the several months between December 2014 and May 2015 acts bordering illegal and certainly unethical misconduct exhibited by the Respondent had taken placed and easily surmised by the attached two motions labeled *Exhibited H and I* respectively and are clear and contemptuous conduct on the part of the respondent and consistent with Respondent's total disregard for the honorable court or Appellant's wellbeing, rather sought to continue to victimize and be torturous.

22. Despite appellant's April 23, 2015 Order to Show Cause, being signed by Judge Bivona and served upon the Respondent, your Deponent represents that of the calendared motions on the docket, the court on April 30, 2015 chose to only address that one Order to Show Cause to which your deponent under duress and through coercion urged by counsel Jennifer Schenker, of the courts insistence that Motion #4 be withdrawn or there would be the risk of requiring your deponent to proceed solely as Pro Se thereafter for the remainder of the within action. It is

important to note that Ms. Schenker in fact by phone assisted your deponent in completing the Order to Show Cause before having appeared before Judge Bivona to which directed the case be turned over to the Suffolk County District Attorney's Office for investigation.

23. As trial proceeding forward on May 28, 2015 and noted on record, the responded by way of cross by Ms. Schenker, admitted in open court to lying to the Honorable court and misrepresenting material fact for the specific purpose of "ousting" your deponent from the marital home.

24. Respondent on record testified in fact that despite filing an *ex parte motion*, and was evidenced clearly in entry logs form online home security system, respondent despite being granted exclusive use on December 11, 2014 had not returned to the marital residence until sometime two weeks later and therein confirming there had been no dire urgency that would warrant such an ex parte motion.

25. Respondent confirmed to the court on record after being presented and entered into evidence his cell phone call logs subsequent to the family court's granting as a "refrain from" Order for Protection; respondent testified that indeed there had been no physical violence by the appellant nor did he fear for his life. There was no refute that subsequent to that order, respondent sought and made requests through text messages to see the appellant, engaged in intimate sexual relations thereafter and acknowledged sending more than eight hundred text messages and expending nearly nine-hours of talk time with your deponent between September 2, 2014 and November 6, 2014.

26. Testifying to some occurrence by which the Respondent claims a door was slammed on him injuring his foot, your deponent testified as having no knowledge of what the respondent had been referring to and when asked by counsel to your deponent, respondent was unable to furnish any police reports of such an incident.

27. Rather your deponent testified to an incident of November 24, 2014, pointing out to the court the Respondents cross-motion filed with the court December 11, 2014 was signed and notarized with the same date of November 24, 2014 and the contents contained thereof describing events which took place that night and within days thereafter. In fact, alarm system reports for the marital home showed the same "police" referred to being called in the respondents November 24, 2014 affidavit had not occurred until after 9pm and alerted by the house alarm being tripped. When asked of the respondent when he signed such affidavit if it was light (indicating day time) or dark (indicating night time), he was unable to verify for the court, suggesting the contents of such affidavits had been pre-meditated and planned with the intent of being torturous to the appellant.

28. The appellant was out of town and returned home to the marital residence on November 26, 2014 and evidenced by Suffolk County Police reports filed and attached herein as exhibit J, to find cut phone wires, alarm wires to the home, locked doors to which the Respondent is listed as the suspected offender by Suffolk PD.

29. Respondent also offered testimony which immediately called out to his misrepresentation regarding an alternate residence of 316 West Neck Road, Huntington NY where his mother resides with respondent's brother as being "too small" for all three (3) of them; respondent corrected counsel on record as to the property not being .5 acres in size but rather even larger in size of .68 acres described as a four-bedroom, three-bath farm ranch.

30. Testimony was offered by respondent's mother as to size and respondent's ability to reside in the residence which was minutes away and had been where respondent claims he voluntarily stayed after filing the action for divorce, that she enjoys the company of out of town and overseas friends and family on occasion utilizing an extra two spare bedrooms that were

unoccupied on a second floor and where in fact the respondent had and would be welcome if needed to reside there.

31. Respondents position to the court is that he has "no where else to go"; however from the end of August upon commencing the action within and thru December 11's appearance, such was mute and never conveyed as a problem or issue; Respondent wasn't residing at the marital home thus he obviously does in fact have "some where" to go.

32. During trial proceedings, Respondent through Respondent's counsel attempted to enter into evidence on two separate occasions documents pertaining to a lease of a cottage on the parties' property as well as a password membership driven blog that is maintained by your deponent. Your deponent's attempt to convey these documents as being fakes, received assistance from the court whereby for the record and respondent's counsel stated that your deponent was meaning to say the documents being referenced were not "true and accurate", in fact the court granted your deponent permission to step down to secure what he would confirm as being true and accurate copies, and thereafter when offered to respondents' counsel by the court for entry into evidence, respondent's counsel declined.

33. Despite erroneous conveyances by Respondent's counsel in the attached *Exhibit K* regarding Respondent having no knowledge of your deponents separate and personal checking account information for a Citibank account held with my eighty-two year old aunt, a Citibank investigation and NYPD Police investigation discovered otherwise and as outlined in the Order and subject of this appeal, on May 6, 2015 NYPD Detectives traveled to Suffolk County Supreme Court where the Responded was in fact taken into custody and arraigned in the Kings County Criminal court on criminal charges for acts in direct contempt of Judge Reilly's December 11, 2014 Order Directing the Respondent to be 100% responsible for all carrying

charges on the marital home. Attached hereto as *Exhibit L* are copies of the arrest record and charges against the Respondent.

34. Respondent further admitted on record to misrepresenting that he had no knowledge or participation in having rented a cottage on property of the grounds but in fact is engaged in a District Court Criminal proceeding (The People of the State of New York vs. John Denker Youngs) brought by the Town of Huntington, NY for town ordinance violations. Your appellant had received a summons during April 2015 but upon review with Mr. Turner, Asst Attorney for the Town and his review, the town issued an AOCD for your deponent but is currently still pursuing their case against the respondent.

35. Whereas your deponent could continue on for the honorable court with even more and more examples of injustices, perjuries and misconducts by the respondent for nearly a year now, your deponent continues to suffer damages, being thrown out of his own home as a retaliatory vindictive act and pursuit by the respondent. As a result of financial loss suffered by your deponent on a business venture begun last July 2014 for renting of religious portal canopies referred to as "Chuppahs" and sized anywhere from 6'x6'x6 to 10'x10'x10' and stored at the marital residence to which your deponent cannot store such in a one room studio in Brooklyn, your deponent's business has suffered a loss of business nearing Thirty-Thousand Dollars ($30,000) just in rentals via quotes received online at LongIslandChuppah.com and affixed hereto as *Exhibit M.*

36. The resulting loss of potential business and earnings coupled with the expenses of the legal fees and financial burdens, against respondent as the moneyed spouse with a true estimated income nearing $140,000 against the appellants reported gross income of approx., $84,000, appellate will become more vulnerable to needing to file an application soon for an award of maintenance and support to reach an already less than balanced status quo which has been reduced to living

13

and working in one-room vs. the 4-bedroom marital home or respondents secondary option of accommodations at 316 W Neck Rd, being also a 4-bedroom home.

37. LongIslandChuppah.com is a dba of Modern Divinities Corp, a New York State S-Corp with a legal address of 33 Pennington Drive, Huntington, NY 11743 who's distributors for floral décor and fabric décor are all within a 5-10minute drive from the marital home vs. sometimes in traffic on the Long Island Expressway is a two-hour drive each way. The business stands to suffer such great loss and is required to carry insurance in excess of $2million dollars and to which your deponent was almost instantly put out of business without access to easily service and ensure the business could deliver on rental agreements for on-time delivery at local Long Island venues to setup, breakdown and return company assets due to respondents unnecessary and vindictive ousting of the appellant from his own home.

## AS AND FOR MODIFYING THE LOWER COURTS' PEN DENTE LITE ORDER

38. Your deponent makes reference to Puroura v. Puroura, 123 A.D.2d 678, 507 N.Y.S.2d 49 (2d Dep't 1986) – where pen dente lite award was modified upward upon unique facts and circumstances of case, including fact that prolonged discovery and probable dispute over finances and respectfully asks that the Order of the lower court be modified:

## AS AND FOR DENYING PLAINTIFF'S APPLICATION FOR EXCLUSIVE USE AND OCCUPANCY OF THE MARITAL HOME AND GRANTING DEFENDANTS APPLICATION FOR EXCLUSIVE USE AND OCCUPANCY

*NY DRL §234 states that exclusive use and occupancy can only be granted on motion and not ex parte, yet respondents motion granted by the lower court had not*

been given over to your deponent or counsel until December 24, 2014 nearly two
weeks after it having been filed and granted.

In Taub v. Taub, 33 A.D.3d 612, 822 N.Y.S.2d 154 (2d Dep't 2006) -- where the
wife's only allegation of actual violence was alleged threats made by husband
which were uncorroborated and where husband failed to voluntarily vacate the
marital residence, wife failed to meet the burden necessary for an order of
exclusive use and occupancy.

Annexstein v. Annexstein, 202 A.D.2d 1062, 609 N.Y.S.2d 132 (4th Dep't 1994) --
Under the appropriate circumstances, a court may award exclusive possession of
the marital residence pendent lite where one spouse has caused domestic strife and
has voluntarily established an alternative residence.

39. Respondent gave testimony that he voluntarily left the marital resident and resided at 316 W

Neck Road, located in the same town only minutes away. Attached here labeled *Exhibit N* is

evidenced proof that this is not only an available but an active alternate residence the

Respondent has used and referenced as his home for years prior to the commencement of this

action. Further, an applicant for exclusive use and occupancy has the burden of establishing that

upon a court issuing an application for exclusive use and occupancy, there still exists a balance

of convenience. During trial, testimony was given by your appellant and further addressed in

the court's order with respect to the inconvenience of commuting and time to/from doctors and

the courts' perspective of having access to quite advance capable medical facilities in New

York City.  Such not only illustrates respondents failure to address such burden but given

appellant's medical history, reestablishing treatment plans and "starting over" with physicians

who have not been involved with the several complex health ailments could in an emergency

prove dire to the appellant's health and well-being.

40. On September 26, 2014, your appellant after several weeks of being monitored by his

cardiologist (St. Francis Hospital – Port Washington, NY) and primary care physician

(Huntington, NY) for severe high blood pressure, collapsed in the marital home and suffered a

stroke with blood pressure spikes up to 180/110. Appellant was removed by advanced life

support response team to Huntington Hospital E.R. and suffers no permanent damage due to the quick and local access to treating physicians who administered a drug referred to as "TPA" which can only be administered within a short window in order to prevent permanent and lasting damages from a stroke.

41. Of particular and confusing references contained within the lower court's decision of June 23, 2015 referencing your appellants' testimony regarding my health and said needs as having lacked "true & fair candor". Attached hetero labeled *Exhibit O.*

42. Respondent and respondents' counsel presented MapQuest approximations to the court of distances by mileage between appellant's Williamsburg, Brooklyn studio apartment and various Nassau and Suffolk doctors, hospitals and medical facilities appellant is under the care of in comparison to those distances from the marital home (relatively within 1-2miles of being equal in distance). Notwithstanding respondent fails to address the element of "travel time" and road conditions well known of the Brooklyn-Queens and Long Island Expressway, the parties unrefuted established the Brooklyn apartment as appellants separate property, despite representations respondent had made and illustrated on the attached STAR program submission and on a sudden day-of closing re-submitted mortgage application he made with Chase Home mortgage the day parties closed on their home. Both attached hereto as *Exhibit P.*

43. Worth mentioning that respondents' own counsel made a request to the court as to a delayed start time for the next morning's return as she was anticipating delays and the same upon needing to drop her child off in the Long Island City, Queens and then travel to the Supreme Court in Islip. Upon such request all acquiesced; ironically respondents' counsel negates to apply the same logic presented to the court onto her own travel time abilities Long Island City and Williamsburg are within 3-4 miles (10mins) to one another.

44. Trial testimony offered by your appellant also put forward the offer of also allowing respondent exclusive use of the Brooklyn apartment during the pendency of the action thereby giving even more of an equal balance of convenience between parties, with respondent also having access and the option as needed for Huntington area accommodations at 316 W Neck Road, Huntington, NY.

## AS AND FOR THE AWARD OF COUNSEL FEES AND DIRECTING THE RESPONDNET TO PROVIDE OFFICIAL FINANCIAL ACCOUNTINGS

45. Contained within the November 6, 2014 Order to show cause asked the court to direct the plaintiff to various accountings needed as a result of plaintiffs' gregarious and intentional financial misconduct. Pursuant to *NYCRR § 202.16(k)(7)*, §237(1)(a), and (1)(B) and §238, Decisions Relating to Counsel, Appraisal/Accounting Fees: A decision of the court addressing applications for pendent lite counsel, appraisal and/or accounting fees must specifically address, in writing or on the record, the facts it considered and the reasons for its decision. In your appellants reply papers, it was brought to court's attention that the respondent perjured himself on his submitted Statement of Net Worth and attached a listing by account numbers of what was omitted along with copies of various duplicate images from check deposits steaming from what appears to be dividends from private wealth management accounts obtained via our joint Chase checking along with copies of a few count at Bank of America statements of only two of the respondents with that institution. As is illustrated while respondent engaged in transferring debts to your appellant and/or allowing checks to present with non-sufficient funds, he enjoyed regular balances in excess of Thousands.

**46.** Respondent must have forgotten that as a public employee, his annual salary is public record. Attached hereto labeled exhibit Q is the respondents salaries for the past several years along with paycheck stubs from February 2014 (prior to the commencement of the within action) and October 2014 (after commencement of the within action) and a "schedule to salary" request initiated by the respondent the day he filed for divorce which advanced his salary I believe even greater from post graduate courses we paid for that he took during the time of our marriage but appears to have banked the salary hike for a special day such as August 27, 2014..

**47.** Some important aspects to point out are the various deductions and adjustments yet within the same take-home range on both pay stubs as well as a reduction in health insurance premiums whereas in February 2012, respondent was having $228.56 a paycheck deducted and thereafter in October 2014 (after your appellant) had suffered a stroke, respondent now only pays $171.42 some $50 less a pay period.  As this honorable court will note this was in fact from Ms. Schenker's note to Ms. Alibertis of June 22, 2015 referencing an "attorney's only" conference with the lower court which took place just days prior on June 18, 2015 and some five days prior to the lower courts order, such was informed to the lower courts as well, but reinforced in the secondary communication of the exhibit, despite the courts direction to the respondent on Nov 6, 2014 and Dec 11, 2014 ordering that he maintain medical and health insurance, the respondent apparently could care less to adhere to such orders of the court.

**48.** Customarily as one would think premiums would rise not lower unless there was a proactive decrease in coverage. Such would be in direct violation of automatic orders issued on August 27, 2014 and certainly deplorable conduct to intentionally inflict financial burdens / harm onto your appellant knowing the state of health. Further, it appears public record shows the respondent's salary decreased from 2013 to 2014.  As a unionized and contract public employee, that almost appears impossible that one's salary should decrease vs. increase unless

being intentionally manipulated. Such conduct would be disgraceful especially with a spouse at home who had undergone five (5) major operations and to add for official record, your appellant with 42-staples in the stomach still went to work every day at least two jobs.

49. Your appellant reinforces the need to direct the respondent for such accountings as reinforced over and over by lies, intentional half-truths and continued economic acts of fraud, by presenting the following examples of such borderline criminal-like manipulation of funds and economic infidelities and abuse toward the appellant. Attached and labeled *Exhibit R* shows:

50. The attached deposit slip shows where respondent would have us believe from a separate bank statement he deposited Thirty-Four Hundred Dollars ($3400), however in fact he asked as is evidenced and what appears frequent and common practice of his, he deposited Nine-Hundred Dollars and took back Twenty-Five Hundred Dollars ($2500). *thereafter,*

51. On January 2, 2013 the Defendant contacted my Discover credit card as me and transferred Four Thousand Dollars ($4000) of debt from Defendant's Chase Sapphire credit card. Please take note of the letter from the executive office of Chase regarding Chase Sapphire Credit Card.

52. Just days earlier, transacting sizable payments to his credit cards in amounts of Eight Hundred Forty Dollars Thirty Five cents ($840.35) to a Citibank Credit Card in the name E J Youngs, Twenty Seven Thousand Nine Hundred Seventy Nine Dollars ($27,979) to a Citibank Credit Card in the name E John Youngs and Six Thousand Six Hundred Twenty Dollars and Sixty-Four cents ($6,620.64) to a GM Mastercard account in the name E John Denker Youngs.

53. That same month, respondent delayed making a deposit to our joint Chase checking account once the home mortgage hit resulting in a $1200 overdraft to your appellants separate Chase slate card.

**54.** Thereafter a month later in February, the respondent made a Ten Thousand Dollar ($10,000) deposit form a private wealth management account not disclosed *on his Statement of Net Worth or reported that year on his taxes to his separate Bank of America checking account.*

55. Further labeled exhibit S are all of the checks respondent wrote from a joint home equity line of credit as is reference in my original Order to Show cause to the same Chase Sapphire where your appellant is of the impression such was to subsidize without my knowledge or consent major renovations on 316 W Neck Road for respondents mother as well as their every day-to-day since respondent has it appears comingled his monies and income with that of his mother, withholding, preventing and restricting access to such marital earnings.

**56.** Respondent must be directed to account what he has done with his income as there is a perceived approximate $217,000 between 2012 and 2014 estimated that the respondent withheld commingling with and converting thereof with his mother.

## AS AND FOR ADDITIONAL VIOLATIONS AND CONTEMPTS OF THE COURT

57. While respondent erroneously claimed a $190k separate property claim from the sale of his prior house and negated to establish and checks or evidence to support the claim, he misrepresented my ability to ascertain a mortgage at the time. Attached here to labeled *exhibit T* are a series of mortgage loan application that the respondent apparently between April 2012 and October 2012 had continually rerun.

58. Mortgage loan applications contain net worth statements. Such depicts that the total **joint net worth** during April 2012 of both parties was $690,292. Upon the respondents secretive re-filing of a new mortgage loan app removing your deponent as co-application on October 12, 2012 which respondent also to the financial institution on a secure financial document indicating he

20

was living and renting 25 Boerum Street, Brooklyn NY 11206 (the Brooklyn apartment) had an individual net worth of $175,879. That would beg to question what happened to a total of $514,413 since your appellant is in bankruptcy and the respondent claims being in the red on his statement of net worth. Respondent must be forced to account for where that all went.

59. I am without any reason as to why within a few weeks the respondent had your appellant, a joint owner removed from the mortgage loan application attached hereto labeled *exhibit U* are documents supporting ownership, an initial insurance declaration issued in both names and subsequent insurance declarations and applications with your appellant omitted (without knowledge thereof at that time) and an email and supporting correspondence to the New York State Department of Financial Services which indicates such change on December 30, 2014 having had only first added the appellate (who had apparently not been a part of such policy expressively) to the policy.. Thereby, the respondent had violated the automatic orders once again.


60. As is evidenced with the various exhibits and statements herein, the respondents tale he represented to the family court of September 2, 2014 that your appellant is going a bit looney from pharmaceuticals for his surgeries is laughable given the amount of bizarre, questionable and mounting list of financial entanglements and questions the respondent must be held accountable for providing satisfactory answers to, and not just your appellant but to the United States Bankruptcy Courts, given the above, your appellant should in no way be bankrupt but is. Your respondent asks that the court find respondents' order of protection of September 2, 2014 frivolous and dismissing it altogether as to remove any such stigma tied to your appellant.

**61.** In response to respondents intolerable disrespect for the court, unethical conduct and known to

be erroneous and fraudulent representations by respondents counsel on court's direction and

instruction and having had direct impacting, lasting and irreversible financial, emotional, and

medical impact on your appellant, your appellant requests the court issue an immediate order

and judgment against the respondent for reimbursement of the total sum of legal expenses to

date which as a result of respondents financial misconduct, infidelity, willful contempt, perjury,

"victimize the victim" vendetta against your deponent, are beyond astronomical and ridiculous

totaling in excess of One Hundred Twenty-Six Thousands One Hundred Seven Dollars

($126,107.20). Legal bills and invoices attached hereto as exhibit V attached. *Ref. Giesler v.*

*Giesler, 731 S.W.2d 33, 35 (Mo. Ct. App. 1987); Hein v. Hein, 717 A.2d 1053, 1056 (Pa. Super.*

*Ct. 1998); Marriage of Lai, 152 Ill. App. 3d 11, 625 N.E.2d 330 (1993); White v. White, 509 So.*

*2d 205 (Miss. 1997); Marriage of Williams, 421 N.W.2d 160 (Iowa Ct. App. 1988); Marriage of*

*Quay, 18 Cal. App. 4th 961, 22 Cal. Rptr. 2d 537 (1993); Dougherty v. Leavell, 582 N.E.2d 442*

*(Ind. Ct. App. 1991); Zatzkis v. Zatzkis, 632 So. 2d 302 (La. Ct. App. 1993); Gravenstine v.*

*Gravenstine, 58 Md. App. 158, 472 A.2d 1001 (1984); Bowman v. Bowman, 493 N.W.2d 141*

*(Minn. Ct. App. 1992); Jensen v. Jensen, 409 N.W.2d 60 (Minn. Ct. App. 1987); Keingarsky v.*

*Keingarsky, 145 A.D.2d 537, 536 N.Y.S.2d 92 (1988); Long v. Long, 957 S.W.2d 825 (Tenn. Ct.*

*App. 1997).*

WHEREFORE, it is respectfully requested that the motion be granted in all respects, together with

such other and further relief as to the Court may seem just and proper.

YOURS.

_____, 2015

Dated:

DEFENDANT: Brian H. Denker-Youngs, *Pro Se*
25 BOERUM STREET APT 18E
BROOKLYN, NY 11206
tel: 917.373.5019
e: bhdenker@gmail.com

## APPLICABLE CASE LAW REFERENCES

1. *Preston v. Preston, 147 A.D.2d 464, 537 N.Y.S.2d 824 (2d Dep't 1989),*

2. *Fakiris v. Fakiris, 177 A.D.2d 540, 575 N.Y.S.2d 924 (2d Dep't 1991)*

3. *Harrilal v. Harrilal, 128 A.D.2d 502, 512 N.Y.S.2d 433 (2d Dep't 1987);*

4. *King v. King, 109 A.D.2d 779, 486 N.Y.S.2d 291 (2d Dep't 1985)*

5. *Formato v. Formato 173 A.D.2d 274, 569 N.Y.S.2d 665 (1st Dept. 1991).*

6. *H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003)*

7. *A.B. v. Y.Z., 184 N.J. 599, 604 (2005)*

8. *U.S. Const. amend. XIV, § 1.*

9. *Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005).*

10. *Puroura v. Puroura, 123 A.D.2d 678, 507 N.Y.S.2d 49 (2d Dep't 1986)*

11. *New York Domestic Relations Law §234*

12. *Taub v. Taub, 33 A.D.3d 612, 822 N.Y.S.2d 154 (2d Dep't 2006)*

13. *Annexstein v. Annexstein, 202 A.D.2d 1062, 609 N.Y.S.2d 132 (4th Dep't 1994*

14. *NYCRR § 202.16(k)(7), §237(1)(a), and (1)(B) and §238,*

15. *Ref. Giesler v. Giesler, 731 S.W.2d 33, 35 (Mo. Ct. App. 1987);*

16. *Hein v. Hein, 717 A.2d 1053, 1056 (Pa. Super. Ct. 1998);*

17. *Marriage of Lai, 152 Ill. App. 3d 11, 625 N.E.2d 330 (1993);*

18. *White v. White, 509 So. 2d 205 (Miss. 1997);*

19. *Marriage of Williams, 421 N.W.2d 160 (Iowa Ct. App. 1988);*

20. *Marriage of Quay, 18 Cal. App. 4th 961, 22 Cal. Rptr. 2d 537 (1993);*

21. *Dougherty v. Leavell, 582 N.E.2d 442 (Ind. Ct. App. 1991);*

22. *Zatzkis v. Zatzkis, 632 So. 2d 302 (La. Ct. App. 1993);*

23. *Gravenstine v. Gravenstine, 58 Md. App. 158, 472 A.2d 1001 (1984);*