UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

x- - - - - - - - - - - - - - x
IN THE MATTER OF:                    . Case No. 15-41069(CEC)
                                     .
   BRIAN H. DENKER YOUNG,            . 271-C Cadman Plaza East
                                     . Brooklyn, New York 11201
         Debtor.                     .
                                     . October 22, 2015
- - - - - - - - - - - - - - - -.

TRANSCRIPT OF MOTION
BEFORE THE HONORABLE CARLA E. CRAIG,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                    BRIAN DENKER YOUNGS, Pro se

For Lawrence Morrison, ESQ.:   PICK & ZABICKI
                               BY:  DOUGLAS PICK, ESQ.
                               369 Lexington Avenue
                               New York, NY  10017


                               MORRISON-TENENBAUM
                               BY:  LAWRENCE MORRISON, ESQ.
                               87 Walker Street
                               New York,  NY  10013


For Edward Denker Youngs:      LaMONICA HERBST MANISCALCO
                               BY:  JACQULYN S. LOFTIN, ESQ.
                               3305 Jerusalem Avenue
                               Suite 201
                               Wantagh, NY  11793


    rustee:                    CERTILMAN BALIN ADLER & HYMAN
                               BY:  RICHARD McCORD, ESQ.
                               90 Merrick Avenue
                               East Meadow,  NY  11554

ECRO:                                    Juliet Lecky
Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**800 603-6212**
**(732) 263-0044    Fax No. 732-865-7179**
www.tgribbentranscription.com

Oral Argument                    41

1   be heard which violates my Fourteenth Amendment right to due

2   process.

3            MS. LOFTIN:  Actually, Your Honor --

4            MR. DENKER YOUNGS:  That appeal is being held in

5   abeyance and I have a letter which was scanned actually this

6   afternoon.  Which Mr. Morrison received and sat on, did nothing

7   with -- I sent it to him in an email in when I got it September

8   15th the evening.  That asked that they needed permission from

9   this Court to proceed.  There is a secondary appeal there that

10  is showing also that there's bias in Suffolk Court again that

11  Judge asked for this Court to please issue, to lift the stay

12  that they can proceed.  This has been delayed intentionally by

13  my husband.    There were adjournment after adjournment, after I

14  was displaced from my home intentionally.

15           MS. LOFTIN:  Your Honor, at this point there's an

16  order of the  --

17           MR. DENKER YOUNGS:  All lies.

18           THE COURT:  At this point --

19           MS. LOFTIN:  -- matrimonial court that gave my client

20  the exclusive right.  My client is ready to go forward.  That's

21  what the relief that we're requesting, we're certainly not

22  looking to delay it at this point. And in fact we're looking

23  for it to go forward.

24           MR. DENKER YOUNGS:  It's on appeal.

25           MS. LOFTIN:  As a --

1          MR. DENKER YOUNGS:  It's on appeal.

2          MS. LOFTIN:  We would just like it go forward.  He's

3     had ample time to obtain -- and which I believe that he did

4     have competent counsel.  And I understand that there may be a

5     dispute with the debtor with respect to that.  But he's had

6     counsel throughout this process.  He had the ability to obtain

7     new counsel.  He's saying my client is delaying it. My client

8     is now requesting relief to go forward.

9          MR. DENKER YOUNGS:  Your Honor.

10         MS. LOFTIN:  And this has just been a costly burden

11    to my client at this point.

12         MR. DENKER YOUNGS:  Your Honor, please, may I have a

13    week to consult an attorney.  And in that week, to at least

14    have the Appellate Court, they've looked at it.

15         THE COURT:  Okay, it doesn't matter what the

16    Appellate Court says.  Even if the Appellate Court says you're

17    allowed to move back in, there doesn't seem to, this is an

18    asset that's now an asset of the estate.  And it would have to

19    be liquidated and administered for your creditors.

20         MR. DENKER YOUNGS:  But those are -- may I please

21    have time to consult an attorney.

22         THE COURT:  If you --

23         MR. DENKER YOUNGS:  Please.  I am telling you,  I

24    didn't, I have in terms of debts that I've spent, I didn't have

25    debts. I had maybe $5,000 on two credit cards that were mine,

1    Your Honor.

2              THE COURT:  Okay, all right.

3              MR. DENKER YOUNGS:  I --

4              THE COURT:  Here's what, let me talk to you for a

5    minute.

6              MR. DENKER YOUNGS:  My retirement went to the down

7    payment --

8              THE COURT:  Can you, okay --

9              MR. DENKER YOUNGS:  -- of this house.

10             THE COURT:  Okay, Mr. Denker.

11             MR. DENKER YOUNGS:  Not my husband's.

12             THE COURT:  Mr. Denker, can you, pull yourself

13   together.  And listen to what I'm saying.  Okay?  I think you

14   should consider the possibility, the strong possibility that

15   what would be in your best interests here is to go through with

16   this Chapter 7, get a discharge of your debts.  Mr. McCord can

17   pursue any claims that there may be against your spouse that

18   would be available to pay your creditors.  He can pursue, to

19   the extent that you have evidence that you're not liable on any

20   of your claims, on the claims against you, that's something

21   that Mr. McCord could pursue in terms of addressing that with

22   the credit card companies.  If there are any that are of any

23   significant amount that you're not liable for.  You would have

24   a discharge. You can go on with your life.

25             I think that the notion that you're going to keep the

1    house is not a reasonable scenario here.  There does not appear

2    to me from your schedules that you any ability to pay for a

3    house, and that is, to pay the carrying costs on this.

4         The mortgage is in default, from what I understand,

5    isn't it?

6         MS. LOFTIN:  I don't actually, I'm not positive that

7    the mortgage has been in default.

8         THE COURT:  It's not in default?

9         MS. LOFTIN:  But --

10        THE COURT:  Okay.  But it's --

11        MS. LOFTIN:  But it is costly, Your Honor.

12        THE COURT:  It's over -- there's a lack of equity in

13   this property.  And ultimately the -- to the extent that this

14   is not an asset that Mr. McCord is going to administer, or that

15   would be used in your bankruptcy to satisfy your creditors,

16   it's really up to the matrimonial court to decide how that

17   would get divided between the two of you.  It may be in your

18   best interest to take the, get what you can out of this

19   bankruptcy.  And move on.

20        MR. DENKER YOUNGS:  It -- Sorry.

21        THE COURT:  I would urge you to consider that.

22        MR. DENKER YOUNGS:  May I, and I appreciate the

23   opportunity that Your Honor has given me to be heard today.

24   And may, I'm just asking to consult with an attorney that I

25   know is going to be -- I refiled schedules to the best of my

Oral Argument                                    45

1   ability from what was missing.  I'd like for the opportunity to

2   consult with an attorney now that I've determined that Mr.

3   Morrison was not doing his job.  And that's all I'm asking Your

4   Honor before a decision that's made that's irrevocable.

5           And that's all I'm asking is for an opportunity to --

6   my understanding is I needed the Court's permission to secure

7   professional, any professional services.  That I even have to

8   get my brake pads changed, emailed asking Mr. Morrison for

9   permission to do that.  That was my understanding when I filed

10  is that I needed to ask permission if I went through, outside

11  of normal expenditures.

12          THE COURT:  Okay.

13          MR. DENKER YOUNGS:  I don't think that that's

14  unreasonable request is to ask to consult an attorney.

15          THE COURT:  Okay.

16              (Court and Clerk confer)

17          THE COURT:  I'm sorry, but I'm looking at the dates,

18  I'm thinking about giving you another, giving you more time

19  here.

20          MR. DENKER YOUNGS:  Your Honor, I will --

21          THE COURT:  But I do not see any basis for continuing

22  the stay here.  It's, this is not a property, if the property

23  is going to be sold, and it will available, the proceeds will

24  be available to pay your creditors.

25          MS. LOFTIN:  to the extent that there are proceeds,

1   Your Honor, yes.  And until that determination is made, like I

2   said, we're happy to keep the proceeds with the Trustee.

3          THE COURT:  And is there going to be an auction sale,

4   I mean what's the Trustee's --

5          MR. McCORD:  Well, Your Honor, if, subject to higher

6   and better offers, it would be a normal auction sale.  We'd go

7   market the property immediately.

8          THE COURT:  So it would be, is this going to be sold

9   in the bankruptcy or is it going to be sold --

10         MR. McCORD:  Yeah.

11         MS. LOFTIN:  I thought it was -- I don't think

12  that's, has that determination been made?

13         MR. McCORD:  No, not yet.  But that's in due course

14  that's what usually happens.

15         THE COURT:  So then I don't need to lift the stay.

16  Because you're going to be selling the property.

17         MR. McCORD:  Well --

18         MS. LOFTIN:  Well, no, I thought, actually, Your

19  Honor, what we originally sought to do is to have the property

20  sold because at this point we don't know how much equity --

21         THE COURT:  Do you have a buyer?

22         MS. LOFTIN:  No, we don't.  Because at this point

23  he's been stayed from obtaining a valuation of the property.

24         MR. DENKER YOUNGS:  No, he's not.  We paid for it --

25         MS. LOFTIN:  Your Honor --

1        MR. DENKER YOUNGS:  We paid for the property to be

2    appraised.

3        THE COURT:  Okay.

4        MR. DENKER YOUNGS:  We paid for that.

5        THE COURT:  The automatic stay you're thinking

6    prevented you from getting an appraisal of the property?

7        MS. LOFTIN:  No, it didn't prevent us from getting an

8    appraisal, Your Honor.  But my client has stopped because he's

9    -- until he receives relief from the automatic stay that he can

10   proceed with the sale.  He just stopped marketing it at this

11   point.

12       MR. DENKER YOUNGS:  He's never marketed it.

13       MS. LOFTIN:  Until he's obtained relief.

14       MR. DENKER YOUNGS:  He's never marketed it.

15       THE COURT:  Okay, so why don't I -- I'm going to lift

16   the stay to permit your client to go ahead and market the

17   property. And subject to, before you sell it, you need to come

18   back here and get stay relief.

19       MS. LOFTIN:  Absolutely, Your Honor, certainly.

20       THE COURT:  Okay.  So this would permit you to begin

21   the marketing process.  Which I assume you'll work with Mr.

22   McCord on that.

23       MS. LOFTIN:  We absolutely will, Your Honor. Thank

24   you very much.

25       MR. DENKER YOUNGS:   Are there any possessions that

Decision                          48

1   I'm allowed to get because I was ejected from my home in 24 to

2   48 hours?

3          THE COURT:  This would be something, this is

4   something you deal with the matrimonial judge on.  That really

5   is nothing, it's not to do, this is --

6          MR. DENKER YOUNGS:  I will go see an attorney first

7   thing in the morning.

8          THE COURT:  Do you have possessions there that --

9          MR. DENKER YOUNGS:  Yeah.

10         THE COURT:  -- are of value?

11         MR. DENKER YOUNGS:  I have not been back to that

12  house since December 11th after being given 20, 48 hours to

13  take what I could carry.  I have stuff that is work related

14  that I left in files. I have not been allowed back in the

15  house.  I've clothes there, yes, Your Honor, I left with a

16  duffle bag.

17         THE COURT:  Okay, is there any reason why he can't be

18  permitted to go back and get, retrieve possessions?

19         MS. LOFTIN:  Your Honor, I'm not privy to that

20  information.  I mean, my understanding is that they, the

21  matrimonial judge entered an order after extensive evidence,

22  after hearing.

23         MR. DENKER YOUNGS:  It's was not, I have the

24  transcript, it was --

25         MS. LOFTIN:  Allowing my --

1          MR. DENKER YOUNGS:  It was a quick appearance, Your

2     Honor.

3          MS. LOFTIN:  Your Honor.

4          MR. DENKER YOUNGS:  I have the transcript.

5          MS. LOFTIN:  Just giving my client exclusive rights

6     and making it mandatory that he be obligated for the costs in

7     connection with it.  I can certainly speak to my client Your

8     Honor, with respect to obtaining access, retrieving assets.  I

9     can't speak to if the debtor has additional personal assets in

10    the home, at this point.

11         MR. DENKER YOUNGS:  Your Honor, I have the

12    transcript, it was an ad hac addition that December 11th I was

13    given 48 hours to leave.  I have not been allowed back.

14         THE COURT:  I think he's talking --

15         MR. DENKER YOUNGS:  And this --

16         THE COURT:  I think that what counsel is talking

17    about is the ultimate order that was entered in March after --

18         MS. LOFTIN:  Granted --

19         MR. DENKER YOUNGS:  I was never allowed back even the

20    order, it was held for 30 days until we were notified that it

21    was even issued.  And immediately upon it being issued an

22    appeal was filed.  Because that included directly my husband to

23    account what he's done with our income.  All of that is sitting

24    in abeyance that Mr. Morrison was supposed to file and he

25    received before the conversion.  All of this, this court, that

1   was a huge issue.   I was just asking if I can get --

2             THE COURT:   Is there any reason why the stay

3   shouldn't be lifted to allow an appeal to go forward?

4             MR. DENKER YOUNGS:   The letter, I don't know --

5             THE COURT:   Mr. Denker thinks he needs to get stay

6   relief to pursue his appeal.

7             MS. LOFTIN:   Well, Your Honor --

8             MR. DENKER YOUNGS:   I have the letter from the

9   Appellate Court.

10             MS. LOFTIN:   I don't even thing, is that before the

11   Court at this point?

12             THE COURT:   No, he hasn't made -- I don't know --

13             MR. DENKER YOUNGS:   Your Honor, I scanned --

14             THE COURT:   That might be --

15             MS. LOFTIN:   So it --

16             MR. DENKER YOUNGS:   -- it's scanned, the letter is

17   scanned in the system this afternoon, I scanned that letter.

18             MS. LOFTIN:   Your Honor, I mean, we would certainly

19   need some time to some research and investigate into this. I

20   certainly, I didn't even know that that was before the Court

21   today the letter was filed while I was actually here, I

22   believe.   So I mean, at this point, Your Honor, again, we're

23   just seeking to go forward with the matrimonial, to terminate

24   the marriage, and more importantly to sell the property.

25             MR. DENKER YOUNGS:   I have to speak -- Mr. Morrison

1    --

2         MS. LOFTIN:  I will work with Mr. McCord in any way

3    necessary.  And I don't really, and again, we'll work with him

4    to investigate any claims that the debtor is alleging are

5    against my client.

6         MR. DENKER YOUNGS: Your Honor, that was sent to Mr.

7    Morrison, weeks ago.  I have the email.  I swear --

8         MS. LOFTIN:  Your Honor, I can't speak to what was

9    sent between --

10        MR. DENKER YOUNGS:  Your Honor, this, there are

11   things that obviously don't make sense because I mean I will

12   get an attorney in the morning to consult.  If you please just

13   stay and let me --

14        THE COURT:  Well, all they're going -- all I lifted

15   the stay to let them do is to go ahead and market the property.

16        MR. DENKER YOUNGS:  And I'm saying Your Honor --

17        MS. LOFTIN:  That's correct, Your Honor.  And if he

18   obtains counsel, and counsel wants to get --

19        MR. DENKER YOUNGS:  And I do have possessions --

20        MS. LOFTIN:  -- I we're more than happy to sit down

21   and have a --

22        MR. DENKER YOUNGS:  -- in the home.

23        MS. LOFTIN:  -- that conversation with them.

24        MR. DENKER YOUNGS:  And I would like the permission,

25   can the Appellate Court proceed in evaluating the appeal that

1   they're holding in abeyance.  There's a letter that they're

2   holding, waiting your determination that they can proceed.

3   There's two orders to show cause, the second one was even

4   signed that says he didn't sign it because, Judge Muller

5   (phonetic) because of the stay.

6           THE COURT:  These are, this is -- these are appeals

7   from the order that was entered relating to possession of the

8   property?

9           MR. DENKER YOUNGS:  It was related to everything.  It

10  was all done in one order.  It was all one order, Your Honor,

11  that was done after months and the orders itself isn't written

12  correctly, which is why it's in the Appellate Court.  The order

13  was being challenged because it wasn't written correctly.

14  That's all I'm saying.

15          MS. LOFTIN:  Your Honor, once again, --

16          MR. DENKER YOUNGS:  If I had an attorney ---

17          MS. LOFTIN:  -- I believe these are matrimonial --

18          MR. DENKER YOUNGS:  Can we please stay it -- given me

19  24 hours to get to an attorney.

20          THE COURT:  The order that I looked at from the State

21  Court did not address accounting.  I think it just addressed

22  the whole question of --

23          MR. DENKER YOUNGS:  I have the order.

24          MS. LOFTIN:  Exclusive rights.

25          THE COURT:  -- exclusive rights.

Decision                                   53

1          MR. DENKER YOUNGS:  Your Honor, please, I have the

2    order with me.  I submitted it.

3          THE COURT:  Can you go get that from my office

4    please.

5          MR. DENKER YOUNGS:  Your Honor, I have the order.

6          THE COURT:  It's in the State Court, a Suffolk County

7    order.  It should be on my desk.

8          MR. DENKER YOUNGS:  I have the order --

9          THE COURT:  But it's hard for me to see why -- I

10   think that probably the question of possession of the property

11   is going to be mooted if the property is sold.  Is there an

12   order from the State Court authorizing that it be sold?

13         MS. LOFTIN:  No, there's no order from the State

14   Court authorities it to be sold, because --

15         THE COURT:  Wouldn't that --

16         MS. LOFTIN:  -- of the bankruptcy filing.

17         THE COURT:  Wouldn't that be permission you'd have to

18   get from that, the State Court?

19         MS. LOFTIN:  No, when we discussed it with the State

20   Court Your Honor, my understanding is that they need relief

21   from the automatic stay to allow a final determination, and do

22   an equitable distribution.

23         MR. DENKER YOUNGS:  And there's a concurrent action.

24         MS. LOFTIN:  And allow the parties to sell the

25   property.

1          MR. DENKER YOUNGS: But there's a concurrent action.

2          THE COURT:  Okay, I'm not lifting the stay to allow

3  equitable distribution determinations to go ahead.

4          MS. LOFTIN:  I don't think that's a problem, Your

5  Honor.  I think all we're seeking to do is to go to the

6  matrimonial court and receive authority to sell the property.

7          THE COURT:  Okay.  That's what I'm saying.  You need

8  to do that.

9          MS. LOFTIN:  Understood.

10         MR. DENKER YOUNGS:  But --

11         MS. LOFTIN:  And the determination with equity,

12  although I do believe it would be the determination of the

13  matrimonial court to make that determination of equitable

14  distribution. But at this point, Your Honor, we're just seeking

15  to sell the property.  Like I said, we can put the money in

16  escrow and we can determine if the estate has any interest in

17  it.

18         THE COURT:  Right.

19         MS. LOFTIN:  If it doesn't have any interest in it,

20  then it just goes back to the matrimonial court and the judge

21  can make a determination.

22         MR. DENKER YOUNGS:  Your Honor, please. I have the

23  order, issued from the court --

24         MS. LOFTIN:  I mean that seems like the most

25  efficient way to handle  --

Decision                                55

1         MR. DENKER YOUNGS:  -- the order from the court --

2         MS. LOFTIN:  -- things Your Honor.

3         THE COURT:  Yes.

4         MR. DENKER YOUNGS:  -- was an appeal.

5         THE COURT:  Is there any reason, if the debtor has an

6    appeal, and the stay prevents him from pursuing an appeal, why

7    would that -- why wouldn't I lift the stay to let him do that?

8         MS. LOFTIN:  Well, Your Honor, again --

9         THE COURT:  The stay isn't for your protection.  The

10   stay is not for your client's protection.

11        MS. LOFTIN:  The stay, however my client currently

12   has the exclusive right to this property.

13        THE COURT:  Right, so why, if Mr. Denker has -- I

14   mean that's going to be mooted I suppose if the appeal goes

15   forward --

16        MS. LOFTIN:  But until that time, Your Honor, that's

17   the only residence that my client has.

18        MR. DENKER YOUNGS:  That's not correct.

19        THE COURT:  But if Mr. Denker wants to appeal the

20   judge's order, why shouldn't he be permitted -- why would I

21   allow the automatic stay to stand in the way of that?

22        MR. DENKER YOUNGS:  It was an appeal already on file

23   --

24        MS. LOFTIN:  Your Honor, at this time I don't, I

25   wasn't even aware that --

1           MR. DENKER YOUNGS:   -- five weeks ago.

2           MS. LOFTIN:   -- he was filing a request for relief

3    from the appeal.  I'm happy to take a look at it, at this point

4    I mean, this is not something, I mean I appropriately served

5    and allowed everybody an opportunity to file an objection which

6    we received none, except for the debtor with respect to our

7    lift stay.  I haven't even read his request for a lift stay for

8    appeal. At this point I don't know that we would have an

9    objection, frankly, I just don't know if I can answer that

10   without consulting with my client matrimonial counsel.

11          MR. DENKER YOUNGS:  And that's why then there should

12   be no changes --

13          MS. LOFTIN:  I just think you consult with the

14   client's matrimonial counsel, Your Honor.

15          THE COURT:  Is that, the request for relief from the

16   stay, was made in the thing you filed today?

17          MR. DENKER YOUNGS:  No, it's in each one I filed both

18   of my objections had about the Appellate Court seeking

19   permission to proceed on the appeal.  But it's in every single

20   one of the papers. I know that your office consolidated some of

21   them because I did the best that in could in writing very

22   quickly when I realized Mr. Morrison had been disingenuous.

23          THE COURT:  Well, I do see that, I actually do see

24   that in the, in his first, the order to show cause that's on

25   for today, that he's requesting --

1            MR. DENKER YOUNGS:  And I have a signed order from

2    the Suffolk County Supreme Court even --

3            THE COURT:  Just one second.

4            MR. DENKER YOUNGS:  -- after reviewing materials that

5    was issued on October 19th vacating Judge Reilly's order, which

6    was giving my husband exclusive occupancy. I have the order

7    right here that was issued by the Administrative Judge Leis

8    that was signed to vacate my husband's exclusive occupancy.

9            MS. LOFTIN:  Your Honor, may I propose this --

10           MR. DENKER YOUNGS:  That was --

11           THE COURT:  Just a second.

12           MS. LOFTIN:  It -- oh sorry.

13           THE COURT:  I'm just looking at the order to show

14    cause that was, that is on for hearing today.  Okay, so that is

15    actually something that is on by order to show cause, that is

16    on for a hearing today.  That the order to show cause that was

17    signed on October 6th.

18           MR. DENKER YOUNGS:  And served.

19           THE COURT:  That says that directing your client to

20    show cause why an order should not be entered allowing the

21    Appellate Division Second Department to proceed with review of

22    the debtor's appeal and order to show cause.  So and I didn't

23    see an objection to that.

24           MS. LOFTIN:  You're correct, Your Honor, we did not

25    file an objection.

Decision                                        58

1          THE COURT:  Okay.  So I'm granting that --

2          MS. LOFTIN:  That's fine, Your Honor.

3          MR. DENKER YOUNGS:  And then Your Honor --

4          THE COURT:  -- aspect of the relief that's being

5     requested.

6          MR. DENKER YOUNGS:  I believe then looking --

7          MS. LOFTIN:  Your Honor --

8          MR. DENKER YOUNGS:  -- that order that was also to

9     direct him to appear for an examination today.

10         THE COURT:  I don't know that that's appropriate.  I

11    don't see why that that's appropriate here.  That's, I think

12    that Mr. McCord is now the person that would be handling any

13    discovery.

14         MS. LOFTIN:  And we've consented to appear and for

15    the document production.

16         MR. DENKER YOUNGS:  And for the appeal, that's also

17    encased in the appeal that's being held was an order directly

18    him to account, which is part of the court order that --

19         THE COURT:  Well, you can pursue that in, and Mr.

20    McCord will pursue discovery against your husband.  So I don't,

21    I think that, I don't see that the purpose of a 2004 exam by

22    you at this point, especially since you don't have counsel at

23    the moment.  So going down the list then.  Vacate, you want to

24    vacate the order entered October 2, 2015, I'm declining to do

25    that.  I find no basis to vacate that order.

Decision                                      59

1    Staying proceedings in the Suffolk County Supreme

2    Court against the debtor.   There is a, I am not issuing --

3    there is no basis for any stay beyond the stay that's imposed

4    under Section 362. So I'm denying that.

5         I am granting your application to allow the Appellate

6    Division to proceed with its review of your appeal.   I am not

7    going to direct Mr. Denker Young to appear for a deposition by

8    you.   That's of course without prejudice to, at this time,

9    without prejudice to your seeking to do that at some future

10   time if it might be appropriate.   And certainly without

11   prejudice to Mr. McCord's right to go forward.

12        And I think we've all agreed that Mr. Morrison's not

13   counsel any more.   And I'll adjourn, we'll consider his fees at

14   a further time.   So, I think that disposes of everything that

15   was on by way of order to show cause today.

16        And let me look at the application for an additional

17   order to show cause that you made.   You wanted me to -- which

18   is, I'm considering whether to sign an order to show cause.

19   And you asked that the, this bankruptcy case be stayed.   I see

20   no reason to do that.   You're asking that I stay all

21   proceedings against you in State Court.   Once again, the

22   automatic stay provides a limited stay to the extent that

23   there's equitable -- issues of equitable distribution being

24   determined.   And I don't thing, I don't see any new requests

25   for relief there.

1          MR. DENKER YOUNGS:  I, again, in this part of the

2     Appellate Court which is, with an order I can file, there are

3     Justice Reilly has been found erroneously marking the dockets.

4     On Monday October 19th, Judge Leis actually took note of it on

5     record.  The transcripts were being sent to, for me to drop to

6     the Appellate Court, where Judge Reilly wasn't even in the

7     building and I was being sanctioned for a non appearance.  And

8     there was no court appearance.

9          THE COURT:  I don't know what this -- what does this

10    have to do with the relief that's being sought here?

11         MR. DENKER YOUNGS:   Sorry.

12         THE COURT:  Okay.  And then on the other, let's see

13    the other thing that was on today was your stay relief motion

14    which I'm granting to the extent that we indicated.

15         MS. LOFTIN:  Your Honor, would, should I just submit

16    or settle this order?  I'm happy to work with Mr. McCord to

17    have him approve it prior to submission to the Court.

18         MR. DENKER YOUNGS:  I'm happy to --

19         THE COURT:  Does it make sense for me just to issue

20    an order?

21         MR. McCORD:  Yes.

22         MS. LOFTIN:  That's fine, Your Honor.  We have no

23    objection to that, thank you.

24         THE COURT:  So I'll issue an order lifting the stay

25    to permit the, to permit Mr. Denker Young to go to seek

1    permission to sell the property in, from the matrimonial court.

2    And to permit the property to be marketed.  And for all the

3    steps that are, that have to be taken to market the property to

4    be done.  But that any sale of the property would be subject to

5    the approval of this Court.

6               MS. LOFTIN:  Yes, Your Honor, thank you.  And with

7    respect, just for clarification, so I can advise my client,

8    with respect to the determination for the termination of the

9    marriage, in the matrimonial court, we do not have relief from

10   stay for that?

11              THE COURT:  Termination of the marriage you don't

12   need stay relief.

13              MS. LOFTIN:  You can go forward with it. I guess with

14   respect to equitable distribution --

15              THE COURT:  No.

16              MS. LOFTIN:  If the matrimonial court makes any

17   rulings, can we first make it subject to Bankruptcy Court

18   approval?

19              ATTORNEY:  They won't do that.

20              THE COURT:  Makes rulings about what?

21              MS. LOFTIN: They won't do that?

22              THE COURT:  About equitable distribution?

23              MS. LOFTIN:  For equitable distribution.

24              MR. McCORD:  Your Honor, they won't do that.

25              THE COURT:  No, not, not until Mr. McCord has looked

1    at this and determined whether there's any property that he

2    wants to administer here.

3             MS. LOFTIN:  That's fine, Your Honor.

4             THE COURT:  And then at that point we would, at that

5    point I guess then there would be -- if Mr. McCord is not going

6    to administer any of these assets, then there wouldn't be -- it

7    would not be property of the estate any more.

8             MR. McCORD:  I -- in my interest in the matrimonial

9    residence --

10            THE COURT:  Right.

11            MR. McCORD:  -- because there's no benefit to the

12   estate, then it goes back --

13            MS. LOFTIN:  Right.

14            MR. McCORD:  -- the debtor proceeds accordingly. But

15   I've seen other, in other cases where, try to get a State Court

16   to do something like Ms. Loftin is saying, they won't.  They'll

17   defer to this Court until the stay has been fully modified or

18   not.

19            MR. DENKER YOUNGS:  Your Honor, the --

20            MS. LOFTIN:  We're fine with the terms and conditions

21   of the relief from stay, Your Honor.  Thank you, very much.

22            THE COURT:  Okay.  So do we need -- do we have

23   another date then?

24            MR. McCORD:  Your Honor, if I might.  You ruled on

25   the disqualification of me as Trustee on this case.

1          THE COURT:  Yes.   I'm denying that motion.

2          MR. McCORD:  So there's a return date of November

3     19th, so that's off, marked off the calendar?

4          THE COURT:  Oh that motion is on for --

5          MR. McCORD:  November 19th at 10:30.

6          THE COURT:  November 19th.  Yes, that motion is

7     marked off because I see no, there's nothing that's alleged in

8     Mr. Denker's affidavit that would be grounds to disqualify you.

9          MR. McCORD:  Thank you.

10          THE COURT:  The fact that you are a part time Judge

11     in a neighboring County, is not a basis to disqualify you.

12          MR. McCORD:  Thank you, Your Honor.

13          THE COURT:  Okay, so the next, so we're on for, we

14     have a date for --

15          MR. MORRISON:  December 2nd, Your Honor.

16          THE COURT:  December 2nd, for Mr. Morrison's fees.

17          MR. MORRISON:  Yes.

18          MS. LOFTIN:  Is that at 2:30 as well, Your Honor?

19          THE COURT: Yes, would it make any sense to move that

20     up?  And then, I mean are you going to be --

21          MR. McCORD:  I'm going to review the fee application.

22     I haven't done so yet.  I'll review it and I'll talk to Mr.

23     Pick on behalf of Mr. Morrison.  And I may need to discuss

24     certain issues raised in the application with the debtor. Again

25     the 341 meeting is November 12th.  I'm hopeful that the debtor

Decision                                      64

1    will appear at the 341 and then if I have any questions I'll

2    make sure that I'll raise them at that time.  And if I need to

3    do a 2004 of the debtor, I'll make the appropriate application.

4    But I'll be in a position after the 341 meeting hopefully to

5    make a determination if I'm going to do anything on the fee

6    application of Mr. Morrison, on behalf of the estate.

7         THE COURT:  And you may also be in a position to make

8    a determination about whether you're going to go forward, what

9    you're going to do in terms of administering property of the

10   estate.

11        MR. McCORD:  Absolutely.  Well, especially the real

12   property.  Definitely by then.  I don't know about the Chapter

13   5 actions, the avoidance actions.  I may need to actually

14   conduct a 2004 of the debtor's estranged husband before, and

15   see some documents before I can see what I'm going to do with

16   that.  But with the real property, I'm pursuing the valuation

17   now and I'm going to talk with Ms. Loftin about it. I was

18   hoping as you touched upon, that maybe they had an offer, but

19   apparently they don't. So I don't know what's, what it is.

20        Right now the way it looks, there's no equity.  And

21   if the debtor is entitled to Homestead, I'm not saying he is,

22   but if he is, then there's absolutely no equity available to

23   the estate.  So I'll make, should be able to make a fairly

24   quick decision on that.

25        MR. DENKER YOUNGS:  Your Honor, my husband was

1    arrested on charges of identity theft on my accounts. And

2    that's, Mr. McCord and I have never communicated.  Mr. Morrison

3    certainly knew the arrest.  And every single credit card claim

4    with, I have letters and confirmations from Discover, from

5    Chase, from even Bethpage Federal.  I have the confirmation

6    from Bethpage Federal in terms of check fraud on my accounts.

7           So I don't understand what -- I just saw Mr.

8    Morrison's application for something today.  I don't know what

9    a Chapter 5 or what they're talking about, which is why I'm

10   requesting to, if it's okay, to retain counsel.  Again, I was

11   --

12          THE COURT:  Yes, you can retain counsel.  You don't

13   need my permission.

14          MR. DENKER YOUNGS:  That was my understanding

15   initially that was I needed the Court's permission for

16   anything.

17          THE COURT:  You don't.

18          MR. DENKER YOUNGS:  So, okay, I thank you.  And I

19   will consult tomorrow.  But I do have documentation from every

20   single, which is why no one came to the initial meeting.  I've

21   been in contact with every single creditor.  My friend can tell

22   you what my apartment looks like, the papers that I've gone

23   through.  You know, you don't put as much time into this unless

24   there's been an injustice done.

25          THE COURT:  Well, I can see that this is a very



# SUPREME COURT OF THE STATE OF NEW YORK
# I.A.S. PART 30 SUFFOLK COUNTY

PRESENT:
HON. DAVID T. REILLY, J.S.C.

INDEX NO.: 14-16968

————————————————————— x

EDWARD JOHN DENKER-YOUNGS,

Plaintiff,

-against-

BRIAN H. DENKER-YOUNGS,

Defendant.

————————————————————— x

**PLAINTIFF'S ATTORNEY:**
Simonetti & Associates
144 Woodbury Road
Woodbury, NY 11797
(516) 248-5600

**DEFENDANT'S ATTORNEY:**
Law Offices of Anthony A. Capetola
Two Hillside Avenue, Building C
Williston Park, NY 11596
(516) 746-2300

Defendant, Brian H. Denker-Youngs (hereinafter "BDY") moved by Order to Show Cause with papers in support for the following relief:

  a.  Awarding BDY exclusive use and occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington and its contents;

  b.  Directing the plaintiff, Edward John Denker-Youngs (hereinafter "EDY") his *pro-rata* share of the carrying charges of the marital residence including but not limited to the mortgage(s), property taxes and homeowner's insurance;

  c.  Awarding BDY exclusive use and enjoyment of the Mercedes automobile and the Volkswagen Eos;

  d.  Directing EDY to pay the lease, insurance and repairs on the Mercedes;

  e.  Directing EDY to provide an accounting of the Home Equity Line of Credit;

  f.  Directing EDY to provide an accounting of his income from the date of marriage until present;

  g.  Directing EDY to provide an accounting of his Chase Sapphire Credit Card charges from date of marriage until the present time;

h.    Directing EDY to provide an accounting of medical reimbursement checks he received on BDY's behalf from date of marriage until the present time;

i.    Directing EDY to pay interim counsel fees on behalf of BDY in the sum of $10,000.00.

Plaintiff, EDY, opposed defendant's motion and moved by Cross Order to Show Cause with supporting papers for the following relief:[1]

1.    Directing the sale of the marital residence located at 33 Pennington Drive, Huntington, NY;

2.    Granting EDY exclusive use and occupancy of the residence;

3.    Directing BDY to cease any and all lease agreement(s) with third parties and to remove all tenants from the cottage located at 33 Pennington Drive, Huntington, New York;

4.    Directing BDY to pay 50% of all expenses associated with the marital residence and to bring all expenses current;

5.    Directing BDY to remove all security cameras from the marital residence;

6.    Granting EDY exclusive use and enjoyment of the Volkswagen EOS;

7.    Directing BDY to be responsible for all expenses associated with the Mercedes;

8.    Directing BDY to be responsible for all his medical expenses;

9.    Modify the refrain from Order of Protection to a Stay Away Order of Protection;

10.    Granting EDY interim attorney fees in the amount of $20,000.00.

On the date EDY's Cross Order to Show Cause was presented, December 11, 2014, the Court directed during the pendency of this action:

I.    BDY shall have exclusive use and enjoyment of the Mercedes and be responsible for all of its expenses;

---

[1]The Court signed this Order to Show Cause and received papers in opposition to same and has considered the application although no motion sequence number has been assigned to same. Defendant received sufficient notice of the application, opposed same and the issues contained in the papers were made part of the hearing.

II.     EDY shall have exclusive use and enjoyment of the Volkswagen EOS and be responsible for all of its expenses;

III.    EDY shall maintain health insurance for BDY;

IV.     Awarded EDY temporary exclusive use and occupancy of the martial residence pending the hearing and determination of this matter and required to pay all costs associated with the marital residence;

V.      Directed all rental income from the cottage be paid to EDY;

VI.     Awarded BDY exclusive use and occupancy of the Brooklyn apartment pending the hearing and determination of this matter and he is required to pay all costs associated with the Brooklyn apartment;

VII.    Both parties are restrained from publishing to the public any personal information or financial information of the other party;

VIII.   Ordered and directed any health insurance checks that is reimbursement for medical expenses paid by a party be given to that paying party.

Defendant opposed plaintiff's Cross Order to Show Cause.

Thereafter the matter was referred to a hearing. The hearing primarily focused on the issue of exclusive use and occupancy of the marital residence. Exclusive occupancy of a marital residence by one party *pendente lite* is warranted only when needed to protect the persons or property; or when the non-movant spouse has voluntarily established an alternate residence and that spouse's return to the martial residence would cause domestic strife. *Kenner v. Kenner*, 13 AD3d 52 (1st Dept. 2004).

There is ample evidence in the record both parties feel threatened by the other. Although BDY is smaller in stature than EDY, BDY slammed the door on one occasion causing physical injury to EDY's person. BDY also stated:

> It is imperative that I continue to reside in the marital residence which is centrally located to my health care providers. It is very stressful for each time the Plaintiff returns to the martial residence. That stress and anxiety could have deadly consequences for me given the fact that I have an aneurysm.

(Affidavit of BDY in support of Order to Show Cause p. 4).

Each party has moved for exclusive use and occupancy and seemingly acknowledge they

cannot live together during the pendency of this action. The police have been called to the marital residence on numerous occasions. Each party has filed Family Offense Petitions with the Suffolk County Family Court and obtained orders of protection against each other. During the hearing, a warrant squad from the New York City Police Department appeared outside the courtroom to arrest EDY based on a complaint filed by BDY. *See generally,* ***Preston v. Preston,*** 147 AD2d 464 (2nd Dept. 1989).

The cottage which is a separate structure at the marital residence was rented to tenants by the parties during their rather short marriage. The Town of Huntington has posted a sign on the cottage stating that it is not habitable. It cannot be used to provide separate living arrangements for the parties at the marital residence.

During the time that BDY remained at the marital residence, when the Court asked EDY to stay away from said residence in hopes their attorneys could negotiate a resolution to this matter, BDY took it upon himself to place EDY's clothes and possessions into garbage bags and remove them to another location at the marital residence. He also changed the security system codes without providing notice or the codes to EDY.

BDY's claim that EDY voluntarily established an alternate residence was not supported by the evidence, including plaintiff's personal belongings which were placed in bags by defendant at the marital residence. After the commencement of this action EDY spent considerable time at his mother's home in Huntington. EDY wanted to give BDY some time and space, but testified it was not his intention to establish another residence. The facts in this case are distinguished from those in ***Block v. Block***, 245 AD2d 153 (1st Dept. 1997). In Block, the husband admitted he vacated the marital residence shortly after signing a one-year sublease for an apartment. Given BDY's alleged ill health and the emotional impact he was still experiencing at the hearing and at earlier appearances before this Court, the Court finds EDY made a fair, humane gesture to alleviate stress but never gave up his rights to occupy the marital residence. The fact his mother has a home in the same town and he stayed there for periods of time after the action was commenced, does not establish an alternate residence. Additionally, the period involved is a mere two months before the parties appeared in Court at which time EDY was asked to stay away from the marital home. This Court would like to encourage litigants to be respectful and humane to each other, and not be focused on actions for mere litigation advantage.

At the hearing, it was established EDY's family resides in Huntington and BDY's family resides in Brooklyn, where he has a small studio apartment across the street from his father's home. It was also established that some of his treating physicians had their offices in Huntington, while a majority of BDY's doctors have offices elsewhere. With great respect to the medical community on Long Island, there remains in New York City, some of the best medical facilities and doctors in the world.

BDY's employer also has offices in Rockville Centre and New York City which he may access; he also can work from his apartment when not required to meet with clients. BDY is a rabbi

but there is no evidence he has an established congregation centered anywhere, including the Town of Huntington. He also has a business renting chuppah equipment.[2] BDY made himself available to officiate at weddings as a rabbi and also, when needed, to provide the chuppah. While he developed opportunities in the Huntington area, his skills can be used anywhere and the equipment stored anywhere.

On December 11, 2014, BDY allowed his attorney to represent to this Court:

> ...And due to the stroke that he [BDY] suffered on September 26, 2014 he can't lift his leg and get into a tub, so the house in Huntington has been made handicapped telling me, accessible so that he can get into the tub by not having to lift his leg.

(December 11, 2014 transcript, pp. 9 - 10).

The evidence shows the bathroom in the Huntington home was not made handicapped accessible; EDY's grandmother's shower chair was placed in the existing shower stall. While this decision did not turn on this misrepresentation, the Court does find BDY lacked true and fair candor with regard to his health, medical providers and need for assistance.

The Court finds EDY should be granted exclusive use and occupancy of the martial residence pending this litigation. Any perceived inequity can be resolved by a speedy trial and at the next conference, the parties shall enter into a final discovery schedule and establish trial dates.

During the pendency of this action, it is:

***ORDERED***, defendant's application for exclusive use and occupancy of the marital residence is denied; and it is further

***ORDERED***, plaintiff's application for exclusive use and occupancy and possession of the marital residence, located at 33 Pennington Drive, Huntington, New York is granted; and it is further

***ORDERED***, plaintiff shall advance all carrying charges of the marital residence, including but not limited to, the mortgage(s), property taxes and homeowner's insurance subject to re-allocation after trial; and it is further

***ORDERED***, defendant shall have exclusive use and enjoyment of the Mercedes automobile; and it is further

***ORDERED***, defendant shall pay all expenses related to the Mercedes automobile; and it is

---

[2] A chuppah is a canopy used for a bride and groom to stand under during a Jewish wedding ceremony.

further

ORDERED, plaintiff shall provide authorizations to defendant to allow him full and complete information from the date of marriage until the present, as it relates to the following:

   a.    Home Equity Line of Credit;

   b.    The parties health insurer(s); and it is further

ORDERED, plaintiff shall provide authorizations to defendant to allow him full and complete information concerning plaintiff's Chase Sapphire Credit Card from the date of marriage until date of commencement of this action; and it is further

ORDERED, plaintiff's application directing the sale of the marital residence located at 33 Pennington Drive, Huntington, NY is denied; and it is further

ORDERED, plaintiff's application directing defendant to cease entering into any lease agreement(s) with third parties is seemingly moot, but for clarity is granted; and it is further

ORDERED, plaintiff's application to remove all tenants from the cottage located at 33 Pennington Drive, Huntington, New York is denied as the matter is moot; and it is further

ORDERED, plaintiff's application for defendant to pay 50% of all expenses associated with the marital residence and to bring all expenses current is denied, but with leave to make such application at trial; and it is further

ORDERED, plaintiff's application to have defendant remove all security cameras from the marital residence is deemed moot, but defendant is directed to cease and desist from using any security cameras at the marital residence; and it is further

ORDERED, plaintiff is granted exclusive used and enjoyment of the Volkswagen EOS; and it is further

ORDERED, plaintiff shall pay all expenses related to the Volkswagen EOS; and it is further

ORDERED, the parties shall each be responsible to pay their own unreimbursed or out-of-network medical expenses; and it is further

ORDERED, plaintiff shall continue to maintain the existing health insurance for the defendant; and it is further

ORDERED, defendant is awarded exclusive use and occupancy of the Brooklyn apartment; and it is further

***ORDERED***, both parties are directed to refrain from publishing to the public any personal information or financial information of the other party; and it is further

***ORDERED***, any health insurance checks that are reimbursement for medical expenses paid by one party shall be given to that paying party; and it is further

***ORDERED***, plaintiff's application to modify the existing order of protection is denied without prejudice. Plaintiff now enjoys exclusive use and occupancy of the marital residence which prevents defendant from entering onto the subject premises without further order of this Court. If this protection is insufficient or is ineffectual, plaintiff may renew his application; and it is further

***ORDERED***, any further relief requested by either party, not specifically granted, is denied.

This constitutes the Decision & Order of this Court.

Dated:  **Central Islip, New York**
        **June 23, 2015**

                              E N T E R:

                              _____
                              DAVID T. REILLY, J.S.C.

# s F. Simonetti, Jr.

Attorney at Law
144 Woodbury Road
Woodbury, NY 11797
lsimonetti@lousimonetti.com

Invoice submitted to:
Edward John Denker-Youngs
33 Pennington Dr
Huntington, NY 11743

September 22, 2015

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/1/2015 | LFS | Receive and review e-mail correspondence from client regarding social media post from Brian Denker. | 0.20 350.00/hr | 70.00 |
| 8/3/2015 | TF | Review letters and documentation from BDY and counsel for Ken Bell regarding adjournment of arbitration date. | 0.33 350.00/hr | 115.50 |
| 8/4/2015 | TF | Appear at Suffolk Third District Court. | 0.50 350.00/hr | 175.00 |
| | MS | E-mail from bankruptcy attorney regarding meeting; e-mail from client regarding same; call from client regarding same; e-mail from bankruptcy attorney regarding time of appointment; e-mail from client regarding same; e-mail to client confirming same. | 0.60 350.00/hr | 210.00 |
| 8/5/2015 | MS | Appear at bankruptcy attorney's office. | 2.50 350.00/hr | 875.00 |
| | LFS | Receive and review e-mail to-mail from client regarding social media post by Brian Denker; second e-mail from client regarding Legal Reform video (28 minutes); third e-mail from client regarding Brian's blog. | 0.60 350.00/hr | 210.00 |
| 8/6/2015 | TF | Telephone call with opposing counsel regarding adjournment of court date; prepare letter to court regarding adjournment; e-mail to opposing counsel regarding same. | 0.50 350.00/hr | 175.00 |
| | LFS | E-mail from Danielle George at Lamonica, Herbst & Meniscalo, LLP regarding representing client during Brian's bankruptcy; e-mail from client regarding Brian's blog; second e-mail from client regarding e-mail correspondence between client and Brian. | 0.30 350.00/hr | 105.00 |
| 8/9/2015 | MS | E-mails from client regarding husband rallying at court; call to client regarding same; e-mail from client regarding invite. | 0.50 350.00/hr | 175.00 |
| | LFS | E-mail from client regarding Brian's blog post; second e-mail from client regarding court date on 8/25. | 0.20 350.00/hr | 70.00 |
| 8/10/2015 | LFS | Receive and review e-mail from client regarding Brian's medical bills; second e-mail from client regarding Brian's blog post. | 0.30 350.00/hr | 105.00 |

# ᴖ F. Simonetti, Jr.

Attorney at Law
144 Woodbury Road
Woodbury, NY 11797
lsimonetti@lousimonetti.com

Invoice submitted to:
Edward John Denker-Youngs
33 Pennington Dr
Huntington, NY 11743

July 31, 2015

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/2/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 7/3/2015 | LFS | Receive and review letters from Chase to client. | 0.10 350.00/hr | 35.00 |
| 7/5/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 7/6/2015 | LFS | Receive and review multiple e-mails from client. | 0.20 350.00/hr | 70.00 |
| 7/7/2015 | LFS | Receive and review multiple e-mails from client; receive and review correspondence between Jay Schwitzman and client; review defendant's facebook blog. | 0.50 350.00/hr | 175.00 |
| 7/8/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 7/9/2015 | LFS | Receive and review attachments regarding certificate of occupancy; review correspondence between attorney Schwitzman and client. | 0.30 350.00/hr | 105.00 |
| 7/11/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 7/12/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 7/13/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 7/14/2015 | CB | Scan documents and e-mail letters to MA. | 0.10 105.00/hr | 10.50 |
| | MS | E-mail from client regarding bankruptcy; call to client regarding same. | 0.20 350.00/hr | 70.00 |

Edward John Denker-Youngs

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/13/2015 MS | E-mail from client regarding status of conference call. | 0.10<br>350.00/hr | 35.00 |
| MS | Review status notifications from Lexington. | 0.20<br>350.00/hr | 70.00 |
| 8/15/2015 LFS | Receive and review three e-mails from client regarding court date and Brian's blog post. | 0.20<br>350.00/hr | 70.00 |
| 8/16/2015 LFS | E-mail from client regarding Brian's blog post; second e-mail from client regarding court date and Brian going to California. | 0.20<br>350.00/hr | 70.00 |
| 8/18/2015 LFS | E-mail from client regarding court appearance. | 0.10<br>350.00/hr | 35.00 |
| 8/19/2015 MS | Telephone call to client regarding appearance; review e-mail from client regarding same. | 0.20<br>350.00/hr | 70.00 |
| 8/20/2015 MS | Appear at Court. | 2.50<br>350.00/hr | 875.00 |
| MS | Telephone call from Bankruptcy attorney's office regarding notice for claim; e-mail to client regarding same; e-mail from bankruptcy attorney enclosing notice of claim information; prepare letter to new counsel with verified complaint and answer. | 0.70<br>350.00/hr | 245.00 |
| LFS | E-mail from client regarding Brian's medical bills. | 0.10<br>350.00/hr | 35.00 |
| 8/24/2015 MS | E-mail from client regarding documents for separate property claim. | 0.10<br>350.00/hr | 35.00 |
| 8/26/2015 MS | E-mail from client regarding coming in; e-mail to client regarding same; e-mail from client. | 0.30<br>350.00/hr | 105.00 |
| 8/27/2015 AK | Scan documents, letter, statement of net worth and financials; e-mail to attorney Loftin. | 0.30<br>105.00/hr | 31.50 |
| MS | Met with client; finalize letter to bankruptcy attorney; duplicate documents for attachment; e-mails from client regarding appointment; e-mail from bankruptcy attorney regarding lifting stay. | 2.40<br>350.00/hr | 840.00 |
| 8/28/2015 AK | Scan documents (financials); e-mail to attorney Loftin; review and respond to attorney Lofton email regarding updated invoice. | 0.30<br>105.00/hr | 31.50 |
| MS | Multiple e-mails from client with attachments for bankruptcy attorney; e-mails from client with husband's postings regarding appeal; e-mail from bankruptcy attorney regarding legal bill. | 1.20<br>350.00/hr | 420.00 |

Edward John Denker-Youngs                                                           Page      3

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/28/2015 | LFS | E-mail from client regarding Brian's facebook postings. | 0.10 350.00/hr | 35.00 |
| 8/29/2015 | LFS | Receive and review e-mail from client. | 0.10 350.00/hr | 35.00 |
| 8/30/2015 | LFS | E-mail from client regarding Brian's postings. | 0.20 350.00/hr | 70.00 |
| 8/31/2015 | MS | Telephone call to client advising of appearance at Appellate Division; review letters from pro se husband regarding order to show cause at Appellate Division and conduct of prior attorney. | 0.50 350.00/hr | 175.00 |
|  | LFS | E-mail from client regarding correspondence between client and Jacquelyn Lofton, Esq. | 0.10 350.00/hr | 35.00 |
| 9/1/2015 | MS | Appear at Appellate Division. | 3.80 350.00/hr | 1,330.00 |
| 9/2/2015 | AK | Scan documents (complaint); e-mail to attorney Loftin with complaint; review and respond to e-mail from attorney Loftin. | 0.30 105.00/hr | 31.50 |
| 9/3/2015 | MS | E-mail from bankruptcy attorney regarding complaint; e-mail to bankruptcy attorney regarding same. | 0.20 350.00/hr | 70.00 |
| 9/4/2015 | LFS | E-mail from client regarding divorce/annulment paperwork. | 0.10 350.00/hr | 35.00 |
| 9/8/2015 | MB | Finalize affidavit in opposition with supporting papers (Exhibits "A" through "X"); prepare affidavit of service and serve overnight mail to opponent; (2) telephone calls to Intercounty regarding filing motion with Appellate Division by September 10, 2015 at 5:00 pm. | 2.50 105.00/hr | 262.50 |
|  | MS | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ | ▆▆▆▆ 350.00/hr | ▆▆▆▆ |
|  | MS | Prepare opposition papers and affirmation with case law. | 5.50 350.00/hr | 1,925.00 |
| 9/9/2015 | AMA | Assist on prepping appellate division motion. | 0.50 350.00/hr | 175.00 |
|  | MS | Finalize order to show cause with exhibits. | 5.00 350.00/hr | 1,750.00 |
| 9/10/2015 | LFS | Receive and review two e-mails from client regarding Brian's blog post. | 0.20 350.00/hr | 70.00 |
| 9/11/2015 | LFS | E-mail from client regarding Brian's blog post. | 0.10 350.00/hr | 35.00 |

Edward John Denker-Youngs                                              Page    4

|  |  | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/14/2015 | LFS | Receive and review three e-mails from client regarding cousin's wife dropping off papers, police report, action against client's mother and facebook postings. | 0.30 350.00/hr | 105.00 |
| 9/15/2015 | LFS | Receive and review three e-mails from client. | 0.10 350.00/hr | 35.00 |
|  | LFS | Receive and review e-mail from client regarding correspondence between client and Jacquelyn Loftin, Esq. | 0.20 350.00/hr | 70.00 |
| 9/16/2015 | LFS | E-mail from client regarding order of protection. | 0.10 350.00/hr | 35.00 |
|  | LFS | E-mail from client. | 0.10 350.00/hr | 35.00 |
| 9/17/2015 | LFS | E-mail from client. | 0.10 350.00/hr | 35.00 |
|  |  | For professional services rendered | 36.43 | $11,917.50 |

Additional Charges :

| 9/23/2014 | Suffolk County Clerk (RJI/PC) | 95.00 |
|---|---|---|
| 10/14/2014 | Court Filing | 40.00 |
| 12/10/2014 | Motion Fee | 45.00 |
|  | court services | 40.00 |
| 1/20/2015 | Court Filing | 45.00 |
|  | Total additional charges | $265.00 |
|  | Total amount of this bill | $12,182.50 |
|  | Previous Balance | $26,592.60 |
|  | **Balance Due** | **$38,775.10** |

SIELKEN DAVIS LLC

# Uniform Residential Appraisal Report

File No. 12-01159202

| | | | | | | | |
|---|---|---|---|---|---|---|---|
The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

Property Address 33 PENNINGTON DR.    City HUNTINGTON    State NY    Zip Code 11743

Borrower DENKER-YOUNGS/EDWARD    Owner of Public Record FRANK & EILEEN CERNESE    County SUFFOLK

Legal Description DIST: 400   SECT: 90.00   BLK: 5.00   LOT: 31.00

Assessor's Parcel # SAME AS ABOVE    Tax Year 2012    R.E. Taxes $ 15,042

Neighborhood Name HUNTINGTON    Map Reference HAG: 79 B8    Census Tract 1101.02

Occupant ☐ Owner ☐ Tenant ☒ Vacant    Special Assessments $ 0    ☐ PUD   HOA $ 0   ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe)

Lender/Client JP MORGAN CHASE BANK N.A.    Address 1111 POLARIS PARKWAY 4TH FL. COLUMBUS OH., 43240

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). DOM 150;Is currently offered for sale on 03/30/3012 for $499,000. The reference number is 2482033 as provided by LI MLS, days on market is 150. LI MLS, COMPS. INC.

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. Arms length sale;THIS APPRAISER HAS REVIEWED THE ENTIRE 12 PAGES OF THE CONTRACT OF SALE WHICH IS SIGNED ON PAGER 6 AND 12.

**CONTRACT**

Contract Price $ 455,000    Date of Contract 09/04/2012    Is the property seller the owner of public record? ☒ Yes ☐ No    Data Source(s) LI MLS

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No

If Yes, report the total dollar amount and describe the items to be paid. $0;;No financial assistance provided.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE $(000) | AGE (yrs) | One-Unit 90 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 300 Low | 0 | 2-4 Unit 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 900 High | 120 | Multi-Family % |
| | | | | 450 Pred. | 60 | Commercial 5 % |
| | | | | | | Other % |

Neighborhood Boundaries TO THE NORTH: MAIN STREET SOUTH: PULASKI RD.   EAST: PARK AVE.   WEST: COLDSPRING HARBOR

Neighborhood Description THE SUBJECT IS LOCATED IN A SUBURBAN NEIGHBORHOOD WHERE THERE ARE PRESENTLY NO MAJOR FACTORS AFFECTING THE MARKETABILITY OF PROPERTIES.   THE SUBJECT IS WITHIN CLOSE PROXIMITY OF EMPLOYMENT CENTERS. APPEAL TO THE MARKET IS AVERAGE. 5% COMMERCIAL ACTIVITY IS COMMON TO THE AREA AND HAS NO ADVERSE EFFECT ON VALUE.

Market Conditions (including support for the above conclusions) THERE ARE NO KNOWN DISCOUNTS, BUY DOWNS OR ANY MAJOR SALES CONCESSIONS OFFERED IN THE MARKET. CONVENTIONAL LOANS ARE AVAILABLE FOR THE PURCHASE OF REAL ESTATE.   ALTHOUGH EXPOSURE TIME IS 3 TO 6 MONTHS   VALUES HAVE STABLIZED OVER THE PAST 6 MONTHS AND THESE FACTORS HAVE NO AFFECT ON VALUES OR MARKETABILITY IN THE PRESENT MARKET.

**SITE**

Dimensions SURVEY NOT AVAILABLE    Area 1.1 ac    Shape RECTANGULAR    View N;Res;

Specific Zoning Classification 210    Zoning Description RESIDENTIAL SINGLE FAMILY

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | | ☒ SEPTIC | Alley NONE | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 36103C 0610H   FEMA Map Date 09/25/2009

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe.

**IMPROVEMENTS**

| | | | | | | |
|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | Concrete Slab ☐ Crawl Space ☐ | Foundation Walls CONCRETE/AVG. | Floors WD/CER/AVG. |
| # of Stories 1 | ☒ Full Basement ☐ Partial Basement | Exterior Walls VINYL/AVG. | Walls SHEETROCK/AVG. |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 1550 sq. ft. | Roof Surface ASPH.ALT/AVG. | Trim/Finish WOOD/AVG. |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 100 % | Gutters & Downspouts ALUMINIUM/AVG. | Bath Floor CER./AVG. |
| Design (Style) RANCH | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type D.H.WOOD./AVG. | Bath Wainscot CER./AVG. |
| Year Built 1955 | Evidence of ☐ Infestation | Storm Sash/Insulated THERMO/YES/AVG | Car Storage ☐ None |
| Effective Age (Yrs) 10 | ☐ Dampness ☐ Settlement | Screens YES/AVG. | ☒ Driveway # of Cars 2 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ WoodStove(s) # 0 | Driveway Surface ASPHALT |
| ☐ Drop Stair ☐ Stairs | ☐ Other   Fuel OIL | ☒ Fireplace(s) # 1 ☐ Fence None | ☒ Garage # of Cars 2 |
| ☐ Floor ☒ Scuttle | Cooling ☐ Central Air Conditioning | ☒ Patio/Deck PAT ☐ Porch None | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☒ Individual ☐ Other | ☒ Pool ING ☐ Other None | ☐ Att. ☐ Det. ☒ Built-in |
| Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe) | | | |

Finished area above grade contains:   6 Rooms   3 Bedrooms   2.0 Bath(s)   1,550 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   NONE NOTED

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C3;Kitchen-updated-timeframe unknown;Bathrooms-updated-timeframe unknown; THE SUBJECT IS IN AVERAGE MARKETABLE CONDITION AT TIME OF INSPECTION.  THE SUBJECT IS VACANT AND ALL UTILITIES WERE ON AND IN WORKING ORDER.  THE SUBJECT HAS A SEPTIC SYSTEM WHICH IS COMMON IN THE AREA AND HAS NO EFFECT ON VALUE OR MARKETABILITY.  THE SUBJECT ALSO HAS A DETACHED COTTAGE IN THE REAR OF THE SUBJECT LOT.  THIS STRUCTURE IS NOT LEGAL AND HAS NO PERMITS OR C/O.  THIS APPRAISER DID NOT FIND ANY PERMITS OR < continued in

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No   If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No   If No, describe.

SIELKEN DAVIS LLC

## Uniform Residential Appraisal Report

File No. 12-01159202

| | | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|

There are   6   comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 449,000   to $ 575,000

There are   6   comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 432,000   to $ 540,000

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 33 PENNINGTON DR. HUNTINGTON, NY 11743 | 14 PENNINGTON DR. HUNTINGTON, NY 11743 | | 4 SKYLINE DR. HUNTINGTON, NY 11743 | | 1 PENNINGTON DR. HUNTINGTON, NY 11743 | |
| Proximity to Subject | | 0.14 MILES N | | 0.31 MILES ENE | | 0.31 MILES NNW | |
| Sale Price | $ 455,000 | $ 540,000 | | $ 450,000 | | $ 432,000 | |
| Sale Price/Gross Liv. Area | $ 293.55 sq. ft. | $ 296.70 sq. ft. | | $ 290.32 sq. ft. | | $ 288.00 sq. ft. | |
| Data Source(s) | | LI MLS #2489043;DOM 60 | | LI MLS #2491437;DOM 51 | | LI MLS #2436195;DOM 44 | |
| Verification Source(s) | | COMPS. INC. | | COMPS. INC. | | COMPS. INC. | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s08/12;c06/12 | | s08/12;c06/12 | | s01/12;c11/11 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 1.1 ac | 16177 sf | 32,000 | 21780 sf | 26,000 | 27007 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | RANCH | SPLIT-RANCH | 0 | RANCH | | RANCH | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 57 | 54 | 0 | 49 | 0 | 56 | 0 |
| Condition | C3 | C2 | -50,000 | C3 | | C3 | |
| Above Grade | Total 6  Bdrms 3  Baths 2.0 | Total 7  Bdrms 3  Baths 1.1 | -10,000 | Total 6  Bdrms 3  Baths 2.0 | | Total 7  Bdrms 3  Baths 2.0 | 0 |
| Room Count | | | | | | | |
| Gross Living Area | 1,550 sq. ft. | 1,820 sq. ft. | -16,000 | 1,550 sq. ft. | | 1,500 sq. ft. | 3,000 |
| Basement & Finished | 1550sf1550sfin | 1550sf1550sfin | | 1550sf1550sfin | | 1400sf1400sfin | 0 |
| Rooms Below Grade | 2rr0br1.0ba0o | 2rr0br0.0ba0o | 0 | 2rr1br1.0ba0o | 0 | 2rr0br1.0ba0o | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | CENT. / NONE | CENT. / CENT. | -10,000 | CENT. / CENT. | -10,000 | CENT. / NONE | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 2/CAR-BUILT-IN | 2/CAR-ATTACH | 0 | 2/CAR-ATTACH | 0 | 1/CAR-ATTACH | 5,000 |
| Porch/Patio/Deck | PATIO | DECK, PATIO | -5,000 | PATIO | | DECK | 0 |
| FPL., POOL | FPL,  POOL | FPL | 10,000 | FPL,  POOL | | FPL | 10,000 |
| Net Adjustment (Total) | | [X] + [ ] - $ | 49,000 | [X] + [ ] - $ | 16,000 | [X] + [ ] - $ | 18,000 |
| Adjusted Sale Price | | Net Adj. -9.1% | | Net Adj. 3.6% | | Net Adj. 4.2% | |
| of Comparables | | Gross Adj. 24.6% $ | 491,000 | Gross Adj. 8.0% $ | 466,000 | Gross Adj. 4.2% $ | 450,000 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s)  LI MLS., COMPS. INC., PUBLIC RECORDS

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s)  LI MLS., COMPS. INC.,   PUBLIC RECORDS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | LI MLS,, COMPS. INC. | LI MLS, COMPS. INC. | LI MLS, COMPS. INC. | LI MLS, COMPS. INC. |
| Effective Date of Data Source(s) | 09/11/2012 | 09/11/2012 | 09/11/2012 | 09/11/2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT HAS NOT BEEN SOLD NOR LISTED FOR SALE IN THE PAST THREE YEARS.

THE THREE COMPARABLE SALES HAVE NOT BEEN LISTED FOR SALE NOR SOLD IN THE PAST YEAR, EXCEPT AS NOTED.

----"I have performed no (or the specified) other services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding acceptance of this assignment.

Summary of Sales Comparison Approach.   DUE TO LIMITED COMPARABLE SALES IT WAS NECESSARY TO UTILIZE A SALE THAT EXCEEDS THE 6 MONTH GUIDELINE.  ALL SALES FALL WITHIN THE ONE MILE GUIDELINE. A SITE ADJUSTMENT OF $1.00 PER SF. IS CONSIDERED FOR SALES ONE AND TWO DUE TO THE DIFFERENCE IN LOT SIZE. NO SITE ADJUSTMENT IS CONSIDERED FOR SALE THREE DUE TO THE FACT THAT THE SUBJECT SITE IS NOT LEVEL AND 50% IS ON A SLOPE AND/OR NOT USABLE. A $50,000 CONDITION ADJ IS CONSIDERED FOR SALE ONE DUE TO IT'S UPDATED AND RENOVATED CONDITION AS PER MLS LISTING AND AN EXTERIOR INSPECTION. THE VALUE CONSIDERED FOR A FULL BATH IS $20,000, FOR CAC OR AN INGROUND POOL $10,000, FOR A PATIO OR ONE CAR GARAGE IS $5,000.

THE GREATEST EMPHASIS IS PLACED ON SALE TWO DUE TO IT'S SAME STYLE, CONDITION, GLA, ROOM COUNT, BASEMENT AND APPEAL.

ALL ADJUSTMENTS IN THIS APPRAISAL ARE BASED ON MATCHED PAIRED ANALYSIS.

Indicated Value by Sales Comparison Approach $ 455,000

Indicated Value by: Sales Comparison Approach $ 455,000   Cost Approach (if developed) $ 470,500   Income Approach (if developed) $ 0

THIS APPRAISAL HAS BEEN COMPLETED FOR MORTGAGE PURPOSES ONLY

THE GREATEST EMPHASIS PLACED ON THE DIRECT SALES APPROACH TO VALUE.  THIS IS A SUMMARY REPORT.

This appraisal is made [X] "as is,"  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser?s certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 455,000
as of   09/11/2012   , which is the date of inspection and the effective date of this appraisal.

Soleiman Appraisal Inc.

SIELKEN DAVIS LLC

## Uniform Residential Appraisal Report

File No. 12-01159202

THE INTENDED USE OF THIS APPRAISAL REPORT IS THE LENDER / CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY WHICH IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL. REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THIS APPRAISER. COMPARABLE SALES INFORMATION IS REPORTED BY MLS AND COMPS, INC.
COMPS. INC. DOES NOT INDICATE THE DAYS ON MARKET.

THIS REPORT CONTAINS DIGITAL PHOTOS. THESE PHOTOS ARE THE ACTUAL IMAGES AND HAVE NOT BEEN ALTERED OR ENHANCED IN ANY MANNER.
THIS APPRAISAL COMPANY IN ACCORDANCE WITH U.S.P.A.P. GUIDELINES [2005]  PRODUCES APPRAISAL REPORTS UTILIZING COMPUTER GENERATED SIGNATURE[S].  THE SIGNATURE[S] ARE LEGAL SIGNATURE[S] ACKNOWLEDGED BY THE APPRAISER[S] AND ARE SECURE IN OUR SOFTWARE VIA PASSWORDS.  THEREFORE PREVENTING AND CHANGE TO A REPORT.   THESE SIGNATURES AND UTILIZED IN CONDUCTION WITH E.D.I.AS A LEGAL DOCUMENT.

THE INCOME APPROACH TO VALUE WAS NOT UTILIZED IN THIS APPRAISAL REPORT DUE TO THE LACK OF SUFFICIENT RENTAL DATA FOR THIS MARKET AREA.
THE SUBJECT DOES NOT APPEAR TO HAVE BEEN NEGATIVELY AFFECTED IN TERMS OF MARKETABILITY OR PHYSICALLY DAMAGED BY THE REGIONAL NATURAL DISASTER OF 2011.

THE LOCAL MARKET SITE VALUES NORMALLY EXCEED 30% OF THE TOTAL VALUE.

THE ENGAGED APPRAISER ACKNOWLEDGES A FULL UNDERSTANDING OF THE COMPETENCY PROVISION AND ETHICS PROVISION SET FORTH IN USPAP.

THIS APPRAISER IS LOCATED WITHIN 15 MILES OF THE SUBJECT AND HAS BEEN WORKING IN THE SUBJECT  AREA FOR OVER 10 YEARS.  THIS APPRAISER HAS ALL NECESSARY DATA  TO PREFORM THE WORK ASSIGNED, MLS SERVICE, COMPS. INC. AND PUBLIC RECORDS.   THIS APPRAISER HAS PREFORMED OVER 20 APPRAISALS IN THE SUBJECT AREA OVER THE PAST YEAR.

THE SEARCH CRITERIA UTILIZES IN THE  REPORT TO OBTAIN THE BEST POSSIBLE COMPARABLES IS A 6 MONTH OR IF NEEDED A ONE YEAR HISTORY, A ONE MILE GUIDELINE, SIMILAR STYLE, AGE BETWEEN 40 AND 60 YRS., , SIZE GLA BETWEEN 1500 & 1800 SF. ,  ROOM COUNT BETWEEN 6 & 8 , NUMBER OF BATHS BETWEEN 1 & 3 , SITE SIZE AND AMENITIES ETC, CAC, FPL., DECK, PATIO  AND POOL. ,

*****************COMPARABLE SEARCH DATA.************************
THE FOLLOWING SALES WERE ALSO CONSIDERED FOR THIS REPORT:
7 CYRIL HUNTINGTON  SUPERIOR CONDITION AND LARGER GLA AND ROOM COUNT
102 WILLOW AVE.,  HUNTINGTON  OLDER SALE
45 MAPLE PLACE  HUNTINGTON  SMALLER LOT SIZE

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    SITE VALUE IS BASED ON THE RECENT VALUE OF VACANT LAND SITES IN THE SUBJECT NEIGHBORHOOD AND THE KNOWLEDGE OF REAL ESTATE SALES/VALUES  OF THIS APPRAISER IN THE LOCAL MARKET.

| | | | |
|---|---|---|---|
| ESTIMATED  [X] REPRODUCTION OR  [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE ................................................. = $ | | 200,000 |
| Source of cost data MARSHALL & SWIFT CONSTRUCTION HANDBK | Dwelling         1,550 Sq. Ft. @ $ 110.00 ........... = $ | | 170,500 |
| Quality rating from cost service  AVG   Effective date of cost data 09/11/2012 | Bsmt. 1550              Sq. Ft. @ $ 70.00 ........ = $ | | 108,500 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | FPL, POOL, PATIO | | 25,000 |
| THE CONSTRUCTION COST ARE BASED ON THE MARSHALL | Garage/Carport 360        Sq. Ft. @ $  60.00 ....... = $ | | 21,600 |
| AND SWIFT CONSTRUCTION HANDBOOK AND THE | Total Estimate of Cost-New ...................................... = $ | | 325,600 |
| APPRAISERS  KNOWLEDGE OF THE LOCAL MARKET. | Less    50   Physical       Functional       External | | |
| THE LOCAL MARKET SITE VALUES NORMALLY EXCEED 30% | Depreciation   $65,120 | = $( | 65,120 |
| OF THE TOTAL VALUE. | Depreciated Cost of Improvements ........................... = $ | | 260,480 |
| | "As-is" Value of Site Improvements .......................... = $ | | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only)        50  Years | INDICATED VALUE BY COST APPROACH ................... = $ | | 470,500 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?    [ ] Yes  [ ] No    Unit type(s)    [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?    [ ] Yes   [ ] No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?    [ ] Yes   [ ] No   Data source(s)

Are the units, common elements, and recreation facilities complete?   [ ] Yes   [ ] No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    [ ] Yes   [ ] No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

SIELKEN DAVIS LLC

## Uniform Residential Appraisal Report

File No. 12-01159202

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser?s continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser?s certification in this report is subject to the following assumptions and limiting conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.   The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser?s determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.   The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

SIELKEN DAVIS LLC

## Uniform Residential Appraisal Report

File No. 12-01159202

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.  I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.  I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.  I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.  I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.  I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.  I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.  I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.  I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.  I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser?s or supervisory appraiser?s (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

SIELKEN DAVIS LLC

## Uniform Residential Appraisal Report

File No. 12-01159202

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an ?electronic record? containing my ?electronic signature,? as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser?s analysis, opinions, statements, conclusions, and the appraiser?s certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser?s analysis, opinions, statements, conclusions, and the appraiser?s certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an ?electronic record? containing my ?electronic signature,? as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature _____ |
| Name VIN_____ | Name _____ |
| Company Name _____ | Company Name _____ |
| Company Address 9-20 35TH. AVE. | Company Address _____ |
| ASTORIA, NY 11106 | |
| Telephone Number 718-606-6021 | Telephone Number _____ |
| Email Address sielken.davis@gmail.com | Email Address _____ |
| Date of Signature and Report 09/13/2012 | Date of Signature _____ |
| Effective Date of Appraisal 09/11/2012 | State Certification # _____ |
| State Certification # 45000048220 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State # ____ | Expiration Date of Certification or License _____ |
| State NY | |
| Expiration Date of Certification or License 10/14/2013 | |
| | |
| ADDRESS OF PROPERTY APPRAISED | SUBJECT PROPERTY |
| 33 PENNINGTON DR. | ☐ Did not inspect subject property |
| HUNTINGTON, NY 11743 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 455,000 | ☐ Did inspect interior and exterior of subject property |
| | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name EQUIFAX SETTLEMENT SERVICES LLC | COMPARABLE SALES |
| Company Name JP MORGAN CHASE BANK N.A. | ☐ Did not inspect exterior of comparable sales from street |
| Company Address 1111 POLARIS PARKWAY 4TH FL. | ☐ Did inspect exterior of comparable sales from street |
| COLUMBUS OH., 43240 | Date of Inspection _____ |
| Email Address _____ | |

Freddie Mac 1 orm 70 March 2005        UAD Version 9/2011        this form was produced on the ACI Development RapidForms system (800)234-8727        Fannie Mae Form 1004 March 2005
Page 5 of 6                                                                                                                              1004_UGAID (6952401)

Soleiman Appraisal Inc.

SIELKEN DAVIS LLC

## Uniform Residential Appraisal Report

File No. 12-01159202

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 33 PENNINGTON DR. HUNTINGTON, NY 11743 | | | | | | |
| Proximity to Subject | | | | | | | |
| Sale Price | $ 455,000 | $ | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 293.55 sq. ft. | $ 0 sq. ft. | | $ 0 sq. ft. | | $ sq. ft. | |
| Data Source(s) | | | | | | | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | | | | | | |
| Concessions | | | | | | | |
| Date of Sale/Time | | | | | | | |
| Location | N;Res; | | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | | | | | | |
| Site | 1.1 ac | | | | | | |
| View | N;Res; | | | | | | |
| Design (Style) | RANCH | | | | | | |
| Quality of Construction | Q4 | | | | | | |
| Actual Age | 57 | | | | | | |
| Condition | C3 | | | | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6  3  2.0 | | | | | | |
| Gross Living Area | 1,550 sq. ft. | sq. ft. | | sq. ft. | | sq. ft. | |
| Basement & Finished | 1550sf1550sfin | | | | | | |
| Rooms Below Grade | 2rr0br1.0ba0o | | | | | | |
| Functional Utility | AVERAGE | | | | | | |
| Heating/Cooling | CENT. / NONE | | | | | | |
| Energy Efficient Items | NONE NOTED | | | | | | |
| Garage/Carport | 2/CAR-BUILT-IN | | | | | | |
| Porch/Patio/Deck | PATIO | | | | | | |
| FPL, POOL | FPL, POOL | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] -  $ | 0 | [X] + [ ] -  $ | 0 | [X] + [ ] -  $ | 0 |
| Adjusted Sale Price | | Net Adj.  0% | | Net Adj.  0% | | Net Adj.  0% | |
| of Comparables | | Gross Adj.  0% $ | 0 | Gross Adj.  0% $ | 0 | Gross Adj.  0% $ | 0 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | LI MLS., COMPS. INC. | | | |
| Effective Date of Data Source(s) | 09/11/2012 | | | |

Summary of Sales Comparison Approach

SIELKEN DAVIS LLC

# Uniform Residential Appraisal Report

File No. 12-01159202

| FEATURE | SUBJECT | COMPARABLE SALE NO. 7 | | COMPARABLE SALE NO. 8 | | COMPARABLE SALE NO. 9 | |
|---|---|---|---|---|---|---|---|
| Address | 33 PENNINGTON DR. HUNTINGTON, NY 11743 | | | | | | |
| Proximity to Subject | | | | | | | |
| Sale Price | $ 455,000 | | $ | | $ | | $ |
| Sale Price/Gross Liv. Area | $ 293.55 sq. ft. | $ sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | | | | | | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | | | | | | |
| Concessions | | | | | | | |
| Date of Sale/Time | | | | | | | |
| Location | N;Res; | | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | | | | | | |
| Site | 1.1 ac | | | | | | |
| View | N;Res; | | | | | | |
| Design (Style) | RANCH | | | | | | |
| Quality of Construction | Q4 | | | | | | |
| Actual Age | 57 | | | | | | |
| Condition | C3 | | | | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count 60 | 6 3 2.0 | | | | | | |
| Gross Living Area | 1,550 sq. ft. | sq. ft. | | sq. ft. | | sq. ft. | |
| Basement & Finished | 1550sf1550sfin | | | | | | |
| Rooms Below Grade | 2rr0br1.0ba0o | | | | | | |
| Functional Utility | AVERAGE | | | | | | |
| Heating/Cooling | CENT. / NONE | | | | | | |
| Energy Efficient Items | NONE NOTED | | | | | | |
| Garage/Carport | 2/CAR-BUILT-IN | | | | | | |
| Porch/Patio/Deck | PATIO | | | | | | |
| FPL., POOL | FPL., POOL | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 0 | [X] + [ ] - $ | 0 | [X] + [ ] - $ | 0 |
| Adjusted Sale Price | | Net Adj. 0% | | Net Adj. 0% | | Net Adj. 0% | |
| of Comparables | | Gross Adj. 0% $ | 0 | Gross Adj. 0% $ | 0 | Gross Adj. 0% $ | 0 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 7 | COMPARABLE SALE NO. 8 | COMPARABLE SALE NO. 9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | LI MLS,, COMPS, INC. | | | |
| Effective Date of Data Source(s) | 09/11/2012 | | | |

Summary of Sales Comparison Approach

SIELKEN DAVIS LLC

## Uniform Appraisal Dataset Definitions

File No. 12-01159202

### Condition Ratings and Definitions

C1    The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2    The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

C3    The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

C4    The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

C5    The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

C6    The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

### Quality Ratings and Definitions

Q1    Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2    Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3    Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4    Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5    Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6    Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

Not Updated
Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

Updated
The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled
Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following:  replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period.  Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

SIELKEN DAVIS LLC

## Uniform Appraisal Dataset Definitions    File No. 12-01159202

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| ac | Acres | Area, Site | Mtn | Mountain View | View |
| AdjPrk | Adjacent to Park | Location | N | Neutral | Location & View |
| AdjPwr | Adjacent to Power Lines | Location | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| A | Adverse | Location & View | BsyRd | Busy Road | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | o | Other | Basement & Finished Rooms Below Grade |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | Prk | Park View | View |
| br | Bedroom | Basement & Finished Rooms Below Grade | Pstrl | Pastoral View | View |
| B | Beneficial | Location & View | PwrLn | Power Lines | View |
| Cash | Cash | Sale or Financing Concessions | PubTrn | Public Transportation | Location |
| CtySky | City View Skyline View | View | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| CtyStr | City Street View | View | Relo | Relocation Sale | Sale or Financing Concessions |
| Comm | Commercial Influence | Location | REO | REO Sale | Sale or Financing Concessions |
| c | Contracted Date | Date of Sale/Time | Res | Residential | Location & View |
| Conv | Conventional | Sale or Financing Concessions | RH | USDA ?Rural Housing | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | s | Settlement Date | Date of Sale/Time |
| DOM | Days On Market | Data Sources | Short | Short Sale | Sale or Financing Concessions |
| e | Expiration Date | Date of Sale/Time | sf | Square Feet | Area, Site, Basement |
| Estate | Estate Sale | Sale or Financing Concessions | sqm | Square Meters | Area, Site, Basement |
| FHA | Federal Housing Authority | Sale or Financing Concessions | Unk | Unknown | Date of Sale/Time |
| GlfCse | Golf Course | Location | VA | Veterans Administration | Sale or Financing Concessions |
| Glfvw | Golf Course View | View | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location | WtrFr | Water Frontage | Location |
| LtdSght | Limited Sight | View | Wtr | Water View | View |
| Listing | Listing | Sale or Financing Concessions | Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| | | | | | |

ADDENDUM

| Borrower: DENKER-YOUNGS/EDWARD | | File No.: 12-01159202 |
|---|---|---|
| Property Address: 33 PENNINGTON DR. | | Case No.: |
| City: HUNTINGTON | State: NY | Zip: 11743 |
| Lender: JP MORGAN CHASE BANK N.A. | | |

**Condition of the Property**
Continued from Condition of the Property: VARIANCES IN PLACE AT TIME OF INSPECTION. THE BROKERS FOR THE SUBJECT AND THE MLS LISTING STATES THAT THERE IS NO C/O FOR THIS OUTBUILDINGS. NO VALUE IS GIVEN TO THIS COTTAGE DUE TO IT'S NONE C/O.

SIELKEN DAVIS LLC

## Market Conditions Addendum to the Appraisal Report    File No. 12-01159202

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | | | |
|---|---|---|---|---|---|
| Property Address 33 PENNINGTON DR. | City HUNTINGTON | | State NY | Zip Code 11743 | |
| Borrower DENKER-YOUNGS/EDWARD | | | | | |

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 2 | 2 | 2 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.33 | 0.67 | 0.67 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 3 | 2 | 6 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab. Rate) | 9.09 | 2.99 | 8.96 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 475,000 | 440,000 | 455,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 90 | 74 | 88 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 490,000 | 455,000 | 465,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 93 | 77 | 92 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 96.90% | 96.70% | 97.80% | ☒ Increasing | ☐ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).
THERE ARE NO KNOWN LOAN DISCOUNTS, BUY DOWNS OR ANY OTHER MAJOR SALES CONCESSIONS BEING OFFERED IN
THE PRESENT MARKET. CONVENTIONAL LOANS ARE READILY AVAILABLE FOR THE PURCHASE OF REAL ESTATE."The
exposure time for the subject property was developed from sales information deemed to be similar to subject and captured as median
days on market in the 1004MC form.  The exposure time for the subject is estimated be 60-180 days"

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.  Li MLS, COMPS. INC.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
THE ABOVE LIMITED SALES SHOW ONLY LIMITED COMPARABLES SALES AND ARE NOT REPRESENTATIVE OF THE
NEIGHBORHOOD AS A WHOLE.
PROPERTY VALUES HAVE STABLIZED IN THE SUBJECT NEIGHBORHOOD OVER THE PAST YEAR, AS PER MLS SERVICE."The

If the subject is a unit in a condominium or cooperative project, complete the following:    Project Name:

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | | | |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | | | |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name VIN... | Name |
| Company Name ...EN DAVIS LLC. | Company Name |
| Company Address 9-20 35TH. AVE. | Company Address |
| ASTORIA, NY 11106 | |
| State License/Certification # 45000048220    State NY | State License/Certification #    State |
| Email Address sielken.davis@gmail.com | Email Address |

FLOORPLAN



| Borrower: DENKER-YOUNGS/EDWARD | File No.: 12-01159202 |
| Property Address: 33 PENNINGTON DR. | Case No.: |
| City: HUNTINGTON | State: NY    Zip: 11743 |

LOCATION MAP

| Borrower: DENKER-YOUNGS/EDWARD | | File No.: 12-01159202 | |
| Property Address: 33 PENNINGTON DR. | | Case No.: | |
| City: HUNTINGTON | State: NY | Zip: 11743 | |
| Lender: JP MORGAN CHASE BANK N.A. | | | |



## LEXINGTON INSURANCE COMPANY
### WILMINGTON, DELAWARE
Administrative Offices – 100 Summer Street, Boston, Massachusetts 02110

| | |
|---|---|
| **Certificate Number:** | K10193556 |
| **This Certificate forms a part of Master Policy Number:** | 015191983 |
| **Renewal of Master Policy Number :** | 015034574 |

> YOUR RISK PURCHASING GROUP MASTER POLICY IS A CLAIMS MADE POLICY.
> READ THE ATTACHED MASTER POLICY CAREFULLY

### THE AMERICAN ACADEMY OF STATE CERTIFIED APPRAISERS

### CERTIFICATE DECLARATIONS

1. Name and Address of Certificate Holder:     Vincent A. Scao

            75 Chateau Drive
            Melville          NY     11747

2. Certificate Period:     Effective Date:   03/29/12      to Expiration Date:    03/21/13
                                   12:01 a.m. Local Time at the Address of the Insured

2a. Retroactive Date:     03/29/11
                          12:01 a.m. Local Time at the Address of the Insured

3. Limit of Liability:     $    1,000,000   each claim
                  $    1,000,000   aggregate limit

4. Deductible:     $    1,000   each claim

5. Professional Covered Services insured by this policy are: REAL ESTATE APPRAISAL SERVICES

6. Advance Certificate Holder Premium:      $    731

7. Minimum Earned Premium:   25% or      $    183

**Forms and Endorsements:**
PRG 3150 (10/05) Real Estate Appraisers Professional Liability Declarations, PRG 3149 (7/09) Real Estate Appraisers Professional Liability Coverage Form, 81227 (11/02) Terrorism Exclusion, PRG 3344 (7/09) Property Damage To Locations Coverage Extension, PRG 3151 (7/09) Disciplinary Proceedings Extension.

**Agency Name and Address**     INTERCORP, INC.
                                 1438-F West Main Street
                                 Ephrata, PA 17522-1345

> IT IS HEREBY UNDERSTOOD AND AGREED THAT THE CERTIFICATE HOLDER AGREES TO ALL TERMS AND CONDITIONS AS SET FORTH IN THE ATTACHED MASTER POLICY.
>
> THIS POLICY IS ISSUED BY YOUR RISK PURCHASING GROUP. YOUR RISK PURCHASING GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE. STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK PURCHASING GROUP.

_____

Authorized Representative OR
Countersignature (in states where applicable)         Date: March 14, 2012

PRG 3152 (10/05)

| Borrower: DENKER-YOUNGS/EDWARD | | File No.: 12-01159202 | |
|---|---|---|---|
| Property Address: 33 PENNINGTON DR. | | Case No.: | |
| City: HUNTINGTON | State: NY | | Zip: 11743 |
| Lender: JP MORGAN CHASE BANK N.A. | | | |



Print | *Close window*

| | | |
|---|---|---|
| From | : | annepetersschoen@gmail.com |
| To | : | "Rabbi Denker-Youngs"<rabbibriand@moderndivinities.net> |
| Reply to | : | Anne Peters <annepetersschoen@gmail.com> |
| Subject | : | Re: GREAT HEARING FROM YOU |
| Date | : | Fri, 11 Dec 2015 07:50:20 -0800 |

Why does anyone think it's divisible land?  I never
Knew there were 2 deeds. I thought U had to have
a separate deed.  Plus there is no road access or
Ingress to any back property. I don't know where any conversation abt separating it into 2 lots cd
possibly be contrived.  I think it's listed
on an exclusive not on MLS.  If it was all kosher
why not put it out on MLS????  That's fishy!
How can he sell it without ur signature on the
Agreement (even the exclusive).  I am not a
lawyer, but it seems illegal for a court to usurp
ur rights as a 1/2 owner.  Maybe they can, that's
news to me.  Did ur lawyer say what U can do to
counteract this?  He wd know better than I.
This is a horrible mess!  So sad.  The demise of
a friendship, never mind a once loving relation-
ship.  Anne

Sent from my iPhone

**Prepared by Anne Peters**
**Cold Spring Harbor Realty**
3/30/2012 9:12:52 PM

| Photo Not Available | **33 Pennington Dr** **Huntington, NY 11743** $5~~0~~0,000 *4 99X | |
|---|---|---|
| | Ranch | Rooms: 6 |
| | Sec/Area: Pennington Woods | Bedrooms: 3 |
| | Cross St: Woodchuck Hollow | Baths Full: 2 |
| | 1 Family Det | Baths Half: 1 |
| | | Baths Total: 2.5 |
| | | Last Status Change: PC |

| ML#: 2482033 | Owner: Cernese | Cold Spring Harbor Realty  631-673-6315 |
|---|---|---|
| Approx Year Built: 1955 New Const: N | W/W Carpet: N | School District: 3 |
| Garage: 2 ~~Cut~~ 477 | Wood Floors: Y | Huntington 15,040. |
| Driveway: Pvt | Stove: Y | Taxes: ~~$30,90~~ |
| Basement: Full Finished: Y | Refrigerator: Y | Village Taxes: |
| # Kitchens: 1 | Washer: Y | Total Taxes: ~~ ~~ |
| Eat In Kitchen: Y | Dryer: Y | Lot Size: 1.11 Ac. |
| Dining Room: L-Shaped | Dishwasher: Y | Lot Square Footage: 48351 |
| Den/Family Room: N | A/C: Cac | Building Size: |
| Office: N | # CAC Zones: | Cul-de-sac: |
| Attic: Y | # Fireplaces: 1 | Waterfront: N |
| Construction: Brick/Viny | Skylight: 1 | Waterview: N |
| Appearance: Excellent | Water: | Water Frontage: |
| Porch: Side | Sewer: N | Docking Rights: N |
| Patio: Blueston | Fuel: Oil | Beach Rights: |
| Deck: | Heat: Hw | Bulkhead: |
| Pool: Ig - Free Form Gunite | # Heating Zones: 2 | Section: 9000 |
| Tennis Court: | Sep HW Heater: Yes | Lot: 31000 |
| Inground Sprinklers: | Approx Int SqFt: | Block: 500 |
| Also for Rent: N Price: | Adult Community: N | District: 400 |
| Rent Income: | Minimum Age: | Zoning: |
| | Gated Property: | Horse Property: N |
| | | Front Exposure: |

Bsmt/Subfl:Garage Under - Playroomw/Bar, Bedrm W/Window, 1/2 Ba.

1st Floor:Hallway, Large Living Rm W/Frplc,Dining Rm.,Eik, 3 Bdrms

2nd Floor:Cont.: 2 Baths, Side Porch                                                                    MBR 1st Floor:Y

3rd Floor:

Green Features:N

Handicap Access:N                                                Energy Efficiency:
                                                                Supersedes ML#:2422417

Remarks: Cottage Incl: Liv. Rm, Kit.,Bedrm (Loft) Full Bath W/Tub, Lndry & Sep Hot Water Htr. + Thermostat
Directions: Woodbury Rd To Snowball Rt.On Woodchuck Hollow Rd Left On Pennington
Property Description:  1 Bedrm Cottage Inc.: Bath, Liv. Rm., Laundry.....Heated Gunite Pool W/Waterfall..Long Driveway Holds 16 - 20
                      Cars ?
Personal Property Exclusion:

| Broker Open House Date: | 3/31/2012 - 3/31/2012 | Time: 1Pm-3Pm |
|---|---|---|
| Note: | | |
| Consumer Open House Date: | 3/31/2012 - 3/31/2012 | Time: 1Pm-3Pm |

Note:   This Is The First Open House.....Next Time Will Be After The 14th. Taxes W/Be Grieved This May.

| Listing Date: 3/30/2012 | Listing Agent: Peters, Anne M 631-673-6315 | Buyer Exclusions: N |
|---|---|---|
| Exp Date: 11/30/2012 | Co-List Agent: | Owner Financing: N |
| Occupancy: On Title | Status/Show#: 631-673-6315 | Seller Agency Comp: 2% |
| Original $: $5,500,000 | Code/Branch: PTRS 01 | Negotiate Direct: N | Buyer Agency Comp: 0 |
| Prior Listing $: $5,500,000 | LockBox: N | Short Sale: N | Broker Agency Comp: 2% |
| | | REO: N | Renting Broker Comp: |
| Show Instr: Call Broker _burglar Alarm | | Listing Broker Comp (For Rental): |

Information supplied by third parties and not by Multiple Listing Service of Long Island,Inc.
Information Copyright 2012, Multiple Listing Service of Long Island, Inc.

☆.,.•*´¨¯`*•.,.☆Ranch w/ Gunite Pool & Guest Cottage ⬆

http://longisland.craigslist.org/reb/3113656004.html

long island craigslist > housing > real estate - by broker

email this posting to a friend

Seems a discriminatory preference in a housing post is illegal - please flag discriminatory posts as prohibited

Avoid scams and fraud by dealing locally! Beware any arrangement involving Western Union, Moneygram, wire transfer, or a landlord/owner who is out of the country or cannot meet you in person. More info

please flag with care: [?]

miscategorized

prohibited

spam/overpost

best of craigslist

# $499000 / 3br - ☆.,.•*´¨¯`*•.,.☆Ranch w/ Gunite Pool & Guest Cottage ⬆ (Huntington)

Date: 2012-07-02, 7:25AM EDT
Reply to: zvv9rc2112656004@hous.craigslist.org [Errors when replying to ads?]

Near Cold Spring Harbor, Super Layout, Very Private Landscaped Property, On Over 1.1 Acres, Fireplace, Two Car Garage, Plus One Bedroom Guest Cottage or Home Office, Large Heated Pool with Waterfall, Alarm System, CAC, Large Bedrooms, Oak Floors, New Andersen Windows, Lots of off Street Parking
& a Lot More! >>>Contact: Ken Coleman, Lloyd Harbor Realty 631-423-5000 Cell: 516-359-7505

Nearby Towns: Cold Spring Harbor, Woodbury, Huntington Village, West Hills, Centerport, Greenlawn, Northport, Syosset



- Location: Huntington
- it's NOT ok to contact this poster with services or other commercial interests

PostingID: 3113656004

Copyright © 2012 craigslist, inc.    terms of use    privacy policy    feedback forum

**Report:** Denker-Youngs-12-2 **Address:** 33 Pennington Dr.

# Confidential Inspection Report
## 33 Pennington Dr.
## Huntington, NY 11743



## Prepared for:  John Denker-Youngs

This report is the exclusive property of the inspection company and the client whose name appears herewith and its use by any unauthorized persons is prohibited.

# Report Table of Contents

| | |
|---|---|
| GENERAL INFORMATION | 3 |
| SITE | 5 |
| FOUNDATION | 7 |
| ROOF & ATTIC | 9 |
| STRUCTURAL | 10 |
| HEATING, VENTILATION & AIR CONDITIONING | 13 |
| ELECTRICAL SYSTEMS | 15 |
| PLUMBING SYSTEM | 18 |
| KITCHEN | 20 |
| LAUNDRY | 21 |
| BATHROOMS | 22 |
| BEDROOMS | 24 |
| OTHER LIVING SPACES | 26 |
| GARAGE | 27 |

© ACCU-SPEC HOME INSPECTION SERVICES    Confidential - for client use only.    Use by any unauthorized persons is prohibited.

# GENERAL INFORMATION

## Client & Site Information:

| | |
|---|---|
| *Inspection Date:* | July 23, 2012 09:30 AM. |
| *Client:* | John Denker-Youngs<br>5 Aquaview Ct.<br>Huntington, NY 11743 |
| *Inspection Site:* | 33 Pennington Dr.<br>Huntington, NY 11743 |
| *House Occupied?* | No. |
| *People Present:* | Selling agent, Purchasers friends. |
| *Comments:* | Thank you for using Accu-Spec Home Inspection Services. If you have any questions about the report contact me at the office. 631-266-5351. |

## Building Characteristics:

| | |
|---|---|
| *Main Entry Faces:* | West. |
| *Estimated Age:* | 57+yrs. |
| *Building Type:* | 1 family, Ranch. |
| *Stories:* | 1 |
| *Space Below Grade:* | Basement. |

## Climatic Conditions:

| | |
|---|---|
| *Weather:* | Clear. |
| *Soil Conditions:* | Dry. |
| *Outside Temperature (F):* | 70-80. |

## Utility Services:

| | |
|---|---|
| *Water Source:* | Public. |
| *Sewage Disposal:* | Private. |
| *Utilities Status:* | All utilities on. |

## Payment Information:

| | |
|---|---|
| *Total Fee:* | $400. |
| *Paid By:* | Check# 1031. |

### REPORT LIMITATIONS

This report was prepared pursuant to the terms and agreements of the pre-inspection agreement. The inspection and report was performed and prepared for the sole, confidential and exclusive use and possession of the **Customer/Client** only. The report is intended only as a general guide to help the client make his or her own evaluation of the overall condition of the home, and is not intended to reflect the value of the premises, nor make any representation as to the advisability of purchase. The report expresses the personal opinions of the inspector, based upon his visual impressions of the conditions that existed at the time of the inspection only. The inspection and report are not intended to be technically exhaustive, or to imply that every component was inspected, or that every possible defect was discovered. No disassembly of equipment, opening of walls, moving of furniture, appliances or stored items, or excavation was performed. All components and conditions which by the nature of their location are concealed, camouflaged or difficult to inspect are excluded from the report. The inspection was performed in accordance with the **HOME INSPECTION LAWS OF THE STATE OF NEW YORK, I.E the STANDARDS OF PRACTICE and CODE OF ETHICS** copies of which are available on the NYS Department of State website www.dos.state.ny.us. Home inspectors are licensed by the NYS Department of State.

Systems and conditions which are not within the scope of the inspection include, but are not limited to: formaldehyde, lead paint, asbestos, toxic or flammable materials, and other environmental hazards; pest infestation, playground equipment, efficiency measurement of insulation or heating and cooling equipment, internal or underground drainage or plumbing,

any systems which are shut down or otherwise secured; water wells (water quality and quantity) zoning ordinances; intercoms; security systems; heat sensors; cosmetics or building code conformity. Any general comments about these systems and conditions are informational only and do not represent an inspection.

The inspection report should not be construed as a **compliance inspection** of any governmental or non governmental codes or regulations. The report is not intended to be a **warranty or guarantee** of the present or future adequacy or performance of the structure, its systems, or their component parts. This report does not constitute any express or implied **warranty** of merchantability or fitness for use regarding the condition of the property and it should not be relied upon as such. Any opinions expressed regarding adequacy, capacity, or expected life of components are general estimates based on information about similar components and occasional wide variations are to be expected between such estimates and actual experience.

We certify that our inspectors have no interest, present or contemplated, in this property or its improvement and no involvement with trades people or benefits derived from any sales or improvements. To the best of our knowledge and belief, all statements and information in this report are true and correct.

**Accu-Spec Home Inspection Services advises the buyer to perform a walk through inspection of the premises prior to their closing. This will insure that all items inspected on the inspection date are still in proper working order when ownership is transferred. It is also advised to check all systems that were not part of the inspection for proper operation.**

Any lawsuit or other type of claim must be filed within ONE YEAR OF THE DATE OF THE INSPECTION. Venue of any lawsuit brought by either party must be brought in the Supreme Court or local District Courts of the County of Nassau or Suffolk, State of New York, without a jury, including counterclaims and third party claims. CUSTOMER agrees that if COMPANY is ever subpoenaed to appear in a court action or arbitration matter (hereinafter "Hearing") because of the COMPANY'S inspection of the building identified above and/or any of its components or other portions of the premises where it is located, that CUSTOMER will either reimburse COMPANY for attending said Hearing at the rate of $200.00 per hour, including travel time, or obtain a court order quashing said subpoena, all at CUSTOMERS sole cost and expense."

© **ACCU-SPEC HOME INSPECTION SERVICES**    **Confidential - for client use only.   Use by any unauthorized persons is prohibited.**

## SITE

**Site:**

| | |
|---|---|
| *House faces:* | The front of the house faces West. |



| | |
|---|---|
| *Rear View* | The rear of the house faces East. |



| | |
|---|---|
| *Right Side View* | The right side of the house faces South. |



| | |
|---|---|
| *Left Side View* | The left side of the house faces North. |



| | |
|---|---|
| *Approximate Lot Size:* | The lot appears to be of an average size for the area. |
| *Lot Grade* | Lot is steeply sloped towards/away from structure. |
| *Site Drainage:* | Satisfactory - The lot appears to have adequate drainage to prevent water from ponding. |
| *Bushes and Shrubs Condition:* | **Attention Needed** - The shrubs and/or bushes need to be trimmed or maintained. |
| *Trees Condition:* | **Action Necessary** - At least one tree on the site needs to be removed or have portions removed. |



© ACCU-SPEC HOME INSPECTION SERVICES    Confidential - for client use only.    Use by any unauthorized persons is prohibited.



**AVENTINE PROPERTIES LLC**
*Property Tax Grievance Consultants*

Sales: (631) 673-6736
Fax: (631) 673-6706
Service: (516) 302-4045
Westchester/Putnam
Orange/Rockland: (914) 372-1717

29 West Hills Road, Huntington Station, NY 11746 | TaxGrievance@optonline.net | www.AventineProperties.com

Edward J Denker-Youngs                                             November 14, 2014
33 Pennington Dr
Huntington, NY 11743

**FILING DEADLINE IS** May 19, 2015
Re: Excessive Property Tax Assessment - 33 Pennington Dr, Huntington

Dear Mr./Mrs. Edward J Denker-Youn:

Based on available information, we estimate that in the upcoming tax roll year your property will be valued by the Assessor at approximately $551,724. At this level we believe you may be significantly over-assessed. **You may be paying 25% more in property taxes than you should be EVERY year!**

Our firm specializes in representing property owners like you with potentially large assessment reduction cases. We strongly recommend you consider grieving your property tax assessment to reduce your property taxes and would like you to consider using our services in this regard.

The current economic crisis, combined with continued dislocations in the real estate and mortgage lending markets, have left many property owners carrying a disproportionately high proportion of the tax burden. Although property values declined swiftly and significantly, the tax assessor makes no adjustments on your behalf. A formal tax grievance petition must be filed requesting the relief sought and the merits of your case must be presented.

There is no downside to using our services to grieve your property tax assessment. You have nothing to lose and everything to gain:

1) **MULTI-YEAR TAX SAVINGS** – a successful tax grievance challenge this year results in an ongoing tax reduction benefit year after year.
2) **NO FEE** is charged by our firm unless we obtain a reduction in your assessment. Our one-time fee is only ½ of what we save you on your first year's taxes.
3) **NO RISK TO YOU** - your tax assessment can only be reduced as a result of this filing.
4) **NO COURT APPEARANCES** – we will make any and all court appearances on your behalf.

**The filing deadline is MAY 20th !!!** To have us prepare your case, simply complete the enclosed retainer agreement ASAP, have a person on the deed sign and date it, and send it to us by fax (631-673-6706), email or mail. We look forward to working for you.

Sincerely,

*James Burns*

James Burns, President

Ref #PD:    S0400-090-00-03-09-031-000

**Brian Denker-Youngs** <bhdenker@gmail.com>                    Thu, Oct 29, 2015 at 2:54 PM
To: "rabbibrian@hpeprint com" <rabbibrian@hpeprint.com>

---------- Forwarded message ----------
From: **"Stella Stamatiadi, Century 21 American Homes"** <automailer-9fbk-t6gf8g@customer.ziprealty.com>
Date: Thu, Oct 29, 2015 at 11:39 AM -0700
Subject: Recent Activity Near 33 PENNINGTON DR
To: "Brian Denker" <bhdenker@gmail.com>

   

## Your Local Market Updates

Here are some of the homes that have been recently listed for sale or recently sold
near **33 PENNINGTON DR.** To see what your home is worth in your local market,
check out the Seller Center on ZipRealty.com.

**33 PENNINGTON DR**      $468,400
**HUNTINGTON, NY 11743**  ⊕ smartzip

Let me know if you have any questions!



### Stella Stamatiadi
516.395.9756
✉ SEND EMAIL

## Recently Listed

31 Pennington Dr
Huntington, NY 11743

$685,000

20 Photos

# 33 Pennington Drive, Huntington, NY 11743

This is a limited preview of our complete property report.
View full report.



## Property Details

| | |
|---|---|
| Property address | 33 Pennington Dr, Huntington, NY 11743 |
| Parcel ID | 90-500-31 |
| School district | 472603 |
| Acreage | 1.11 |
| Property class | One Family Year-Round Residence(210) |

## Ownership Information

| | | | |
|---|---|---|---|
| Owner's name | Edward J Denker-Youngs | Last Sale Date | 10/12/2012 |
| Owner's address | 33 Pennington Dr, Huntington, NY 11743-7122 | Last sale price | $455,000 |

## Property Taxes

| | | | |
|---|---|---|---|
| Tax year | 2014 | Land value | $68,181 |
| Tax amount | $12,649.24 | Building value | $403,181 |
| | | Total value | $471,363 |

## Assessment History



**Parcel ID:** S0400-090-00-05-00-031-000

**Property Address**
33 Pennington Dr
Huntington11743-7122, NY

**County:** S

**Carrier Rte:** C039
**Census Tract:** 1101022009
**Loc:** Huntington Town
**Tax Unit:**

**District:** 400    **Block:** 500
**Section:** 9000    **Lot:** 31000
**Additional Lot:** N

**Owner Info:**
**Owner:** Edward Denker-Youngs
**Owner Addl:** Brian
**Company:**
**Own Ph#:**
**Ownership:**

**Do Not Call:    Mailing Opt Out:**
**Non Owner Occupied:** Y
**Mailing Address**
99 W Shore Rd C014
-Huntington, NY 11743 2076

---

**axes**
**ax Class:** 472689
**axes:** $12,565
**ax Year:** 13
**xemption:** Y

**Assessments**
**Land Value:** $600
**Imp Value:** $3,548
**Total Value:** $4,148
**Assessment Update Date:** 3/02/2015
**Data Update Date:** 6/30/2014

**Market Total Value:** $460,889

**Lot Description**
**Acres:** 1.11
**Lot Sqft:** 48352
**Lot Frontage Ft:** 0
**Lot Depth:** 0
**Irregular:** N

**chools  SD#:** 3 Huntington

**State School Code:** SC003

---

**roperty Characteristics**
**operty Characteristics**
**Property Class:** 210 Single Family Residence
**tories:** 0
**aths Total:**
**uel:**

**Year Built:**
**Ext Walls:**
**Pool:**

**Style:**
**Property Indic:** Single Family Residence / Townhouse
**Garage:**
**Ground Floor Sqft:**
**Sewer:**

**Land Use:** Single Fam

**Park:**
**Univ Bldg Sqft:** 0
**Water:**

---

**eed Info**
**roperty Characteristics**
**eed Date:** 10/12/2012
**eed Recording Date:** 11/02/2012
**eed Book/Page:** 12710/ 155

**Sales Deed Categ:** Grant Deed

**Sold Price:** $455,000
**Grantor:** Cernese David A

**Multi APN:**

**Mortgage Recording Date:** 10/12/2012
**Mortgage Amount:** $364,000
**Lender:** Jp Morgan Chase Bk
Conventional 30 Y
**2nd Mtg:**

---

**storical Deed 1:**
**istorical Deed 1**
**eed Date:**
**eed Recording Date:** 11/15/1967
**eed Book/Page:** 6262/ 349

**ales Deed Categ:** Grant Deed

**Sold Price:**
**Grantor:**
**Grantee:** Cernese David
**Multi APN:**
**Mortgage Amount:**

---

**isting History**

| L#     | Style | Rms | Br | Bth | Status | Price    | List Date  | Exp Date   | Title Date | DOM |
|--------|-------|-----|----|----|--------|----------|------------|------------|------------|-----|
| 482033 | Ranch | 6.0 | 3  | 2.5 | CL    | $455,000 | 03/30/2012 | 11/30/2012 | 10/12/2012 | 158 |
| 422417 | Ranch | 7.0 | 3  | 2.5 | W/R   | $550,000 | 08/11/2011 | 08/11/2012 |            |     |

---

Prepared by: Jesse Cardenas   Charles Rutenberg Realty Inc   (516)575-7500
jcardenas.homesales@gmail.com   05/13/2015 3:10 PM
Information supplied by third parties and not by Multiple Listing Service of Long Island,Inc.

12/22/2015        33 Pennington Dr, Huntington NY, 11743 | Homes.com

For Sale   For Rent   Foreclosures   Home Values   Mortgage   Local Pros   Q&A   Your Account

## 33 Pennington Dr, Huntington NY, 11743

Back to Results

Home Values > New York > Huntington > 33 Pennington Dr

### Request a Free Home Estimate

Carmen & Richie Team
631-402-5551

Full Name:

Email Address:

Phone Number:

I'd like a free home estimate for 33 Pennington Dr found on Homes.com.

Find Out More

MAP

## $526,900
Is This Your Home?
Off Market Est. Value

Save

0 Bedrooms • 0 Bathrooms

Est. Mortgage $2,012/mo

## Get These Great Deals

d:sh    **Get DISH For as Low as $19.99**



### Connect with Local Refinancing Experts

Connect with experts in your area to refinance your mortgage.

AHMC   ☑ **Absolute Home Mortgage Corp**
888-398-6982

☑ **Maple Tree Funding**
866-581-6378

Loan Type:   ○ Purchase   ◉ Refinance

Continue

Learn more about being a featured lender

12/22/2015                                    33 Pennington Dr, Huntington, NY 11743 - Movoto

**Neighborhood, City, ZIP or Address**

Homes ▾     Agents ▾     Local Info ▾     Learn ▾

Movoto Real Estate » New York » Huntington » 33 Pennington Dr

Back to Search     Prev | Next

## 33 Pennington Dr
## Huntington, NY 11743

| Sold |        $539,166        |     0     |     0     |     0     |
|------|------------------------|-----------|-----------|-----------|
|      |    Estimated Value     |   Beds    |   Baths   |  Sq. Ft.  |



| | |
|---|---|
| Price: | **$539,166** |
| Loan Payment: | $1,987/mo |
| Beds: | 0 |
| Baths: | 0 |
| Size: | 0Sq. Ft. |
| $/Sq. Ft.: | - |
| Type: | Single Family House |
| Neighborhood: | - |
| School District: | Huntington Union Free School District |
| Views: | 0 |

# Business Phone System

Your new phone system in the cloud. Unlimited calls, fax, conferencing.

○     ○

1 Bedrm Cottage Inc.: Bath, Liv. Rm.,Solid House (Well Built- 3Rm Cottage W/Bath Laundry.....Heated Gunite Pool W/Waterfall..Long Driveway Holds 16 - 20 Cars ?

## Request More Information on Active Listings in 11743

Name
Brian Denker

Phone                          Email
                               bhdenker@gmail.com

Comments
Please have a Movoto specialist contact me with more information about listings in 11743.

We've found it's easier contact information you agree to our Terms of Use and Security and Privacy Policy. You also expressly consent to having us, our agents in the Movoto network and potentially our partners contact you about your inquiry by text message or phone (including automatic telephone dialing systems and/or artificial or prerecorded voice, and potentially including telemarketing calls or messages) to the residential or cellular telephone number you have provided, even if that telephone number is on a corporate, state or National Do Not Call Registry, and you agree that your act of submitting contact information is intended to serve as your signature or electronic signature. Your phone or telecommunications company may charge you for such calls or messages. You do not have to agree to receive such calls or messages as a condition of getting any services from Movoto real estate of its affiliates.

Or Call Toll-Free 888-766-6686                          Go

### Awesome Similar Homes

Real Estate listings near 33 Pennington Dr

26 Golf Ln, Huntington, NY



**$749,000**
Beds: 4
Baths: 3
Sqft: 3,490
DOM: 1700
15

6 Rancher Pl, Huntington, NY



**$599,000**
Beds: 4
Baths: 2
Sqft: -
DOM: 1603
19

9 Donald Ln, Huntington, NY



**$285,000**
Beds: 3
Baths: 2
Sqft: -
DOM: 1724
11

### Request More Information

for 33 Pennington Dr, Huntington, NY

Name:
Brian Denker

Email:
bhdenker@gmail.com

Phone:

Comments:

## House Features for 33 Pennington Dr

| Feature | Description |
|---------|-------------|
| Parking | 2 |
| Property Type | Det |
| Floor Plan | Attic |
| Dining Room | L-Shaped |
| Basement | Full |
| Flooring | Wood Floor |
| Heating | Oil, Hw |

12/22/2015                           33 Pennington Dr, Huntington, NY 11743 - Movoto

| Driveway | Pvt |
|----------|-----|

**Listing courtesy of Peters, Anne M of Cold Spring Harbor Realty**

Please have a Movoto specialist contact me with more information about listings in 11743.

## Price History for 33 Pennington Dr

| Date | Status | Price | Price Change | Source |
|------|--------|-------|--------------|--------|
| 11/02/2012 | Sold | $455,000 | — | County Records |
| 09/05/2012 | Off Market | $499,000 | — | MLSLI (#2482033) |
| 05/16/2012 | Active | $499,000 | $51,000 (9.27 %) | MLSLI (#2482033) |
| 03/31/2012 | Active | $550,000 | — | MLSLI (#2482033) |
| 01/24/2012 | Off Market | $550,000 | — | |

Or Call Total-Free 888-766-8686                          Go

We've found it's easier contact information you agree to our Terms of Use and Security and Privacy Policy. You also expressly consent to having us, our agents in the Movoto network and potentially our partners contact you about your inquiry by text message or phone (including automatic telephone dialing systems and/or artificial or prerecorded voice, and potentially including telemarketing calls or messages) to the residential or cellular telephone number you have provided, even if that telephone number is on a corporate, state or National Do Not Call Registry, and you agree that your act of submitting contact information is intended to serve as your signature or electronic signature. Your phone or telecommunications company may charge you for such calls or messages. You do not have to agree to receive such calls or messages as a condition of getting any services from Movoto real estate or its affiliates.

## Public Records for 33 Pennington Dr

Source: County Records

### Basic Info

| | | | |
|---|---|---|---|
| **0 Beds** | Partial Baths: | **0** | Last Sale Price: | **$455,000** |
| **0 Baths** | Rooms: | **0** | Last Sale Date: | **11/02/2012** |
| **0 Sq. Ft.** | Land Use Code: | **1001** | | |
| | Lot Size: | **1 AC** | | |
| **Single Family Residential** | Year Built: | **0** | | |

### House Features

## Currently Available Mortgage Rate for 11743

Home Price: $499,000    Down Payment: 20%    Loan Type: 30 Year Fixed

| Lender | Rate | Monthly Payment | |
|--------|------|-----------------|--|
| **Quicken Loans** NMLS #3030 | 4.699% APR | $2,023/mo | Get Prequalified |
| VA RateLock | VA Loans For Veterans ✓ VA Loans = No Mortgage Insurance ✓ 100% Financing, No Down Payment ✓ Active or Retired VA Status Ok | | Get Free Offers |

Disclaimer                                                See more rates

## Map of 33 Pennington Dr, Huntington

| Map | Satellite | Street |

## Neighborhood Demographics

Full demographics profile available for 33 Pennington Dr

Population By Education Level in ZIP code 11743



- High School or less
- High School Graduate
- Bachelors or Associate Degrees
- Graduate Degrees

Household Income Distribution in ZIP code 11743



**Boss Classic Traditional Button...**

**$359.00**
ErgoBack.com





Case 1-15-41069-cec    Doc 153-1    Filed 12/23/15    Entered 12/23/15 13:54:06

12/22/2015    www.propertyshark.com/mason/Reports2/print.html?propkey=8512236&cats=../Property-Report/sections/notes,property_photos,../Property-Report/sec...



**Property Report by PropertyShark.com**

Property Report for:

# 33 Pennington Dr, Huntington, NY 11743

## A. Overview

## A1. Your Notes

No notes found.

## A2. Photos

Upload photos for this property

Google StreetView



Google StreetView Microsoft Bird's Eye View

## A3. Overview

## Location

| | |
|---|---|
| Property address | **33 Pennington Dr**<br>**Huntington, NY** |
| Section, Block, & Lot | **90-500-31** |
| Parcel ID | **213260** |

## Neighborhood

| | |
|---|---|
| Municipality | **Huntington** |
| School district | **Huntington** |

## Last Sale

| | |
|---|---|
| Sale date | **10/12/2012** |
| Sale price | **$455,000** |

## Owner

| | |
|---|---|
| Full name | **Edward J Denker-Youngs** |
| Address | **33 Pennington Dr** |
| City state zip | **Huntington, NY 11743-7122** |

## Market Value and Taxes

| | |
|---|---|
| Roll year | **2014** |
| Land market value | **$68,181** |
| Improvement market value | **$403,181** |
| Total market value | **$471,363** |
| Property tax | **$12,649.24** |

## Land

| | |
|---|---|
| Acreage | **1.11** |
| Property class | **One Family Year-Round**<br>**Residence (210)** |

# A4. Maps

12/22/2015    www.propertyshark.com/mason/Reports2/print.html?propkey=8512236&cats=../Property-Report/sections/notes,property_photos,../Property-Report/sec...





Link to Yahoo Maps
Link to MapQuest Maps
Link to Live Search Maps

# A5. Sale & Property History

**Property History**

| Event | Amount | Date |
|---|---|---|
| **Deed Transfer recorded** | $455,000 | 10/12/2012 |

# A7. Forcs Stats & Trends

# A8. Comps Stats & Trends

## A9. For Sale

Post Ad

Market Your Commercial Listing for FREE.

Have your listing displayed in front of thousands of potential buyers by posting it in our commercial for sale section. This enables you to:

**Market your listing for free** - no subscription required.
**Reach a targeted audience** - thousands of real estate investors visit our commercial for sale section each month.
**Promote your listing in great detail** - specify the type of property, upload photos, floor plans and much more.

# B. Owners & Residents

## B1. Ownership

Edward J Denker-Youngs
Address: 33 Pennington Dr, Huntington, NY 11743-7122
Source: Assessment Roll
Last recorded: 7/1/2014

Phone Lookup

Link this owner to other properties

See who is behind the LLC

Add to Address Book

## B2. Building Contacts

# C. Sales & Value

## C1. Title History

| Recorded date | Type | Amount | Party1 | Party2 |
|---|---|---|---|---|
| 11/2/2012 | Deed | $455,000 | Cernese David Alexander | Denker Youngs Brian H (Tenants Entirety) |
| | | | | Denker Youngs Edward J (Tenants Entirety) |

Denker Youngs Edward J (Tenants Entirety)

| 3/3/2011 | Deed | $0 | | Not Available |

# C2. Distressed Property History

Sorry, no records were found!

# C3. Sales History

| Recorded date | Type | Amount | Party1 | Party2 |
|---|---|---|---|---|
| 11/2/2012 | Deed | $455,000 | Cernese David Alexander | Denker Youngs Brian H (Tenants Entirety)<br>Denker Youngs Edward J (Tenants Entirety) |
| 3/3/2011 | Deed | $0 | | Not Available |

# C4. Valuation Model

Our database has 0 properties that meet the following criteria:

- Sold within the last 18 months
- In the 11743 zip code
- Property class One Family Year-Round Residence
- Sale price over $25,000

Expecting more results? Occasionally the actual use and recorded building use are different. Maybe you should be looking at a different building class.

Browse more recently sold properties
in the neighborhood!

# C5. Neighborhood Price History

We analyzed all sales of property class One Family Year-Round Residence in the 11743 zip code since 1980. For each year we found the median sale price (half of sales were higher, half were lower) and the median size of the properties sold (half were bigger, half were smaller). We also computed the median price per square foot for this property class and the value of a median (0 sqft) property if it were to sell for the median price per square foot.

| Year | # of Sales | Median Price | Median Sq. Ft. | Median $ per Sq. Ft. | Value at Median $ per Sq. Ft. |
|---|---|---|---|---|---|
| 2015 | 343 | $500,000 | 0 | $0 | $0 |
| 2014 | 355 | $515,000 | 0 | $0 | $0 |
| 2013 | 377 | $525,000 | 0 | $0 | $0 |
| 2012 | 297 | $475,000 | 0 | $0 | $0 |
| 2011 | 243 | $485,000 | 0 | $0 | $0 |
| 2010 | 237 | $525,000 | 0 | $0 | $0 |
| 2009 | 282 | $515,000 | 0 | $0 | $0 |
| 2008 | 277 | $540,000 | 0 | $0 | $0 |
| 2007 | 279 | $550,000 | 0 | $0 | $0 |
| 2006 | 325 | $590,000 | 0 | $0 | $0 |

| 2006 | 323 | $390,000 | 0 | $0 | $0 |
| 2005 | 324 | $560,000 | 0 | $0 | $0 |
| 2004 | 211 | $525,000 | 0 | $0 | $0 |
| 2003 | 174 | $467,500 | 0 | $0 | $0 |
| 2002 | 133 | $425,000 | 0 | $0 | $0 |
| 2001 | 134 | $353,300 | 0 | $0 | $0 |
| 2000 | 145 | $317,000 | 0 | $0 | $0 |
| 1999 | 155 | $271,000 | 0 | $0 | $0 |
| 1998 | 178 | $256,000 | 0 | $0 | $0 |
| 1997 | 197 | $238,500 | 0 | $0 | $0 |
| 1996 | 181 | $216,000 | 0 | $0 | $0 |
| 1995 | 106 | $235,000 | 0 | $0 | $0 |
| 1994 | 66 | $200,000 | 0 | $0 | $0 |
| 1993 | 129 | $217,000 | 0 | $0 | $0 |
| 1992 | 6 | $235,000 | 0 | $0 | $0 |

## C6. Sales & Values Maps

**Date of Last Sale**



✳ Sale Age: **3 years & 71 days**

This map shows all recent sales on the parcel, but please note that there might be more than one property/unit on the parcel.

Click here to see the most recent sales.



- first half of 2015
- second half of 2014
- first half of 2014
- second half of 2013
- first half of 2013
- all 2012
- 2010 - 2011
- < 2010
- no data

| | |
|---|---|
| Sale Date | 10/12/2012 |
| Sale Price | $455,000 |
| Time Since Last Recorded Sale: | 3 years & 71 days |

# D. Development & Use

# D1. Land

12/22/2015    www.propertyshark.com/mason/Reports2/print.html?propkey=8512236&cats=../Property-Report/sections/notes,property_photos,../Property-Report/sec...

| Property class | **One Family Year-Round Residence (210)** |
|---|---|
| Acreage | **1.11** |

# D2. Urban Landscape Maps

### Land Use



✳ Land Use: **One Family Year-Round Residence(210)**

On this map, view the current land use for a property, classified by residential, commercial, and civic usages.

Residential:
- 1-4 Families
- Apartments
- Condo/Coop Units
- Other Residential

Commercial:
- Hotels
- Restaurants
- Retail
- Office & Professional Services
- Other commercial

Industrial:
- Transportation & Communications
- Factories /Storage Facilities
- Heavy Industrial
- Utilities & Other Industrial

Buildings (Spaces) /Civic Use:
- Hospitals
- Schools
- Religious & Cemetery
- Cultural and Theaters
- Recreational Facilities and Parks
- Government
- Other Buildings / Civic Use

Agricultural:
- Farm & Ranch
- Agricultural
- Forests

Other:
- Mixed use
- Vacant Land
- Misc
- Unknown

## Year Built



On this color-coded map, view the year each property was built.

- 2010 and later
- 2000 - 2009
- 1990 - 1999
- 1970 - 1989
- 1950 - 1969
- 1900 - 1949
- 1900 and earlier
- No Data

✳ Sorry, for this property we don't have any information about the construction year.

## Building Stories



On this map, view the number of stories per building.

- 10 & Up Stories
- 7 to 9 Stories
- 5 to 6 Stories
- 4 Stories
- 3 Stories
- 2 Stories
- 1 Story
- No Data

✳ Sorry, for this property we don't have any information about the number of stories.

# E. Property Tax

# E1. Property Tax

In New York State, the real property tax is a tax based on the value of real property. Counties, cities, towns, villages, school districts, and special districts each raise money through the real property tax. The money funds schools, pays for police and fire protection, maintains roads,

and funds other municipal services enjoyed by residents.

## Market Value

Market value is determined by the Department of Taxation and Finance and reflects the amount of money a buyer would be willing to pay a seller for property offered for sale on an open market, over a reasonable amount of time, where both the buyer and seller are well informed and neither is under undue pressure to act.

| | | |
|---|---|---|
| Land value | | $68,181 |
| Building value | + | $403,181 |
| **Market value** | = | **$471,363** |

## Assessed Value

In New York State each municipality is authorized to assess the property at market value or some fraction of market value. The assessed value is a uniform percentage of the market value of the property as of January 2 for any given year. Equalization rates are calculated each year to reflect that year's assessment roll and current market values for each assessing unit. For this property, the equalization ratio is: **0.88%**.

| | | |
|---|---|---|
| Land assessed value | | $600 |
| Building assessed value | + | $3,548 |
| **Assessed value** | = | **$4,148** |

## Exemptions

Suffolk County offers several exemptions that qualified homeowners can apply for, such as Veterans, Senior Citizen, Cold War Veterans, Volunteer Firefighters and Ambulance Workers, Limited Income Disability, or Home Improvement exemptions. Also, New York State School Tax Relief Program (STAR) provides homeowners who earn less than $500,000 and own and live in their home with two types of partial exemptions from school property taxes.

## Property Tax

Property tax is calculated by multiplying the assessed value with the corresponding tax rates.
*Current tax* represents the amount the present owner pays, including exemptions or reductions.
*Base tax* is an estimate of what an owner **not** benefiting from tax exemptions or reductions would pay.
Actual taxes might differ from the figures displayed here due to various abatement and financial assistance programs.

Notice that we used 2012 tax rates since 2013 tax rates are not available yet.

| Tax description | Assessed value | Exemption | Taxable value | Tax rate | Tax amount |
|---|---|---|---|---|---|
| Suffolk County | $4,148 | - $0 | = $4,148 | * 25.7800‰ | = $106.94 |
| Town of Huntington | $4,148 | - $0 | = $4,148 | * 221.3000‰ | = $917.95 |
| Village of Northport | $4,148 | - $4,148 | = $0 | * 547.4200‰ | = $0.00 |
| Huntington School District | $4,148 | - $0 | = $4,148 | * 2254.9800‰ | = $9,353.66 |
| Current tax | | | | | = $10,378.54 |
| | | | | | |
| Base tax | $4,148 | | | * 3049.4800‰ | = $12,649.24 |

For more information please visit The New York State Department of Taxation and Finance or Suffolk County website.

12/22/2015    www.propertyshark.com/mason/Reports2/print.html?propkey=8512236&cats=.../Property-Report/sections/notes,property_photos,../Property-Report/sec...

## Tax per Square Foot



On this map, you can see the tax value paid per square foot for this property.



| | |
|---|---|
| ■ Above $10.00 | ▨ $4.00 - $5.00 |
| ■ $9.00 - $10.00 | ▨ $3.00 - $4.00 |
| ■ $8.00 - $9.00 | ▨ $2.00 - $3.00 |
| ■ $7.00 - $8.00 | ■ $1.00 - $2.00 |
| ■ $6.00 - $7.00 | ■ Below $1.00 |
| ▨ $5.00 - $6.00 | ☐ No Data |

▨ Multiple properties on the same parcel. Color coordinates with the price ranges above.

✳ Sorry, for this property we don't have any information about the tax paid per square foot.

# E2. Assessment History

| Year | Property class | Market value | Assessment value | Total tax rate | Property tax |
|------|----------------|--------------|------------------|----------------|--------------|
| 2010 | One Family Year-Round Residence | $0 | $4,850 | 2371.6‰ | $11,502.26 |
| 2009 | One Family Year-Round Residence | $0 | $4,850 | n/a | n/a |

# F. Neighborhood

# F1. Neighbors

| Address | Property class | Sale date | Sale price | Market value |
|---------|----------------|-----------|------------|--------------|
| 31 Pennington Dr | One Family Year-Round Residence(210) | 8/30/2005 | $725,000 | $0 |
| 29 Pennington Dr | One Family Year-Round Residence(210) | 7/31/2006 | $0 | $0 |
| 27 Pennington Dr | One Family Year-Round Residence(210) | 3/26/2014 | $0 | $0 |
| 25 Pennington Dr | One Family Year-Round Residence(210) | 10/14/2014 | $0 | $0 |
| 23 Pennington Dr | One Family Year-Round Residence(210) | | $0 | $0 |
| 21 Pennington Dr | One Family Year-Round Residence(210) | 5/21/2013 | $409,000 | $0 |
| 17 Pennington Dr | One Family Year-Round Residence(210) | 8/26/2011 | $862,000 | $0 |
| 15 Pennington Dr | One Family Year-Round Residence(210) | 9/22/2005 | $0 | $0 |

| 11 Pennington Dr | One Family Year-Round Residence(210) | $0 | $0 |
| 9 Pennington Dr | One Family Year-Round Residence(210) | $0 | $0 |

# F2. Demographics By Zip Code

### Profile of Zip Code

| | |
|---|---|
| Pop 2000 | 41566 |
| Female pop | 21237 (51.1%) |
| Male pop | 20329 (48.9%) |
| Households | 15225 (97.0% occupied) |
| Home owners | 12635 (83.0%) |
| Renters | 2141 (14.1%) |
| Misc density pop | 999.99 |
| Misc density area | 26.62 |
| House average household | 2.8 |

### Age Distribution



| Under 5 | 5 to 17 | 18 to 24 | 25 to 44 | 45 to 64 | 65 and older |

### Household Type



| Families w/Children | Married Families | Married w/Children | Female Household | Female w/Children | Non-Family | Single Household |

**Note:** totals often exceed 100% for household type because respondents may choose multiple categories.

# G. Hazards & Environment

# G1. Fema Flood Zones Map

On this map, you can see if the property is located in a special flood hazard area.

*Legend*



Find out more about: FEMA Flood Hazard Map

Moderate to Low Risk Areas

☐ X      < 1% ACF
▨ X500  < 1% ACF

High Risk Areas

▨ A    1% ACF , no base flood elevations
▨ AE   1% ACF , periodic base flood elevations

High Risk-Coastal Areas

▨ VE   =/> 1% ACF + Storm Waves

UNDES *

▨ Floodway
▨ COBRA **

\*   Undetermined Flood Hazard (possible flooding)
\*\* Coastal Barrier Resources System Area
   ACF = Annual Chance of Flooding

## FEMA Flood Zoning

**FEMA flood zone**             X - Low Risk Area
**Costal barrier resources system** Out
**area (COBRA)**
**FEMA floodway**               Out
**FEMA special flood hazard area** Out

## FEMA Map Details

**Map panel ID**     36103C0606G
**Map quadrant ID**  40073-G4

# Disclaimer

Copyright 2003-2015 by Property Research Partners LLC

All data comes from government sources. No attempt has been made to validate it. No attempt has been made to validate the accuracy of the programming of this web site. Do not rely on this report to support investment decisions. The only authoritative source for the information in this report is the government agencies from which the data was acquired.




































**33 Pennington Drive**
**Huntington, NY 11743**





**Maureen Moran**
**Prime Properties Long Island**
453
Huntington NY 11724
Direct Phone: 631-988-7859
Mobile Phone: 631-988-7859
Email:
mmoran@ PrimePropertiesLI.com



Virtual Tour: www.seetheproperty.com/186143

## DESCRIPTION & DETAILS

- $649,000
- MLS *1241036
- Bedrooms: 3
- Sq Ft: 1850
- Floors Above Ground: 1
- Full Bathrooms: 2

- Lot Size: 1.11 acre
- Garage bays: 2
- Listing Type: For Sale
- Property Type: Single Family
- Listing Status: Active

## INTERIOR FEATURES

- Air Conditioning
- Basement (finished)
- Central A/C
- Dishwasher
- Granite countertops
- Jacuzzi tub
- Kitchen island
- Microwave
- Refrigerator
- Stainless steel appliances
- Tile floors
- Washer/Dryer

- Attic
- Ceiling fans
- Dining room
- Fireplace
- Hardwood floors
- Kitchen gas cooking
- Living room
- Range
- Single Family
- Sun Room/den
- Walk-in closet

## EXTERIOR AND AREA FEATURES

- Fenced yard
- Hot Tub
- Paver Patio
- Solarium/sun Room

- Grass
- Mature Landscaping
- Pool












**33 Pennington Drive**
**Huntington, NY 11743**

Dining Room
12x14

Eat-in-Kitchen
14x14

Bedroom
11x11

Bedroom
13x11

P.  CL  CL

CL

Ref

W-I-C
10x6

Dn To lower
Level/
Garage

Den
10x20

Living Room
20x15.5

Entry/
Foyer
9x15.5

Bath
9x5

Master
Bedroom
14x16

CL

Bath
11x9

REALTOR

Tour and Content Copyright © 2004-2015. This floor plan illustration is an approximation of existing structures and features and is provided for convenience only with the permission of the seller. All measurements are approximate and not guaranteed to be exact or to scale. Buyer should confirm measurements using their own sources.

Presented by
Maureen Moran
Prime Properties Long Island

PREME COURT OF THE STATE OF NEW YORK
UNTY OF SUFFOLK

ESENT: HON. H. PATRICK LEIS III
-------------------------------------------X
WARD J. DENKER-YOUNGS
                    Plaintiff

        -against-

AN H. DENKER-YOUNGS
                    Defendant. *Pro Se*
-------------------------------------------X

STATE OF NEW YORK    )
                     ) SS.
COUNTY OF SUFFOLK    )

At IAS Part of the Supreme Court of
the State of New York, held in and for
the County of Suffolk at the Courthouse
located at 400 Carleton Avenue, Islip
New York, the 19ᵗʰ day of October,
2015 .

ORDER TO SHOW CAUSE
TO VACATE A MATRIMONIAL
PENDENTE LITE ORDER

INDEX NO.: 16968-14

Upon reading and filling of the annexed affidavit of **BRIAN H. DENKER-YOUNGS**, the

lant in the within action, sworn to on **OCTOBER 19, 2015,** together with the papers attached

, Let the plaintiff, **EDWARD JOHN DENKER-YOUNGS**, or Plaintiff's counsel show cause

Part 30, of this Court to be held at the Suffolk County Supreme Court at **400 CARLETON**

UE, CENTRAL ISLIP, NY, on the ___ day of _November_, 2015 at

___ AM/PM or as soon thereafter as parties may be heard, why an Order should not be

Vacating a *Pen Dente Lite* Order, as void without effect having been issued by this honorable

court pursuant to CPLR § 5241 post bankruptcy petition of the Defendant herein moves to be

within compliance with and thereof Defendant's March 13, 2015 Chapter 11 Bankruptcy

etition and automatic stay having been effected pursuant to 11 U.S.C. § 362(a). (d)-(f)[1],

iddle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc., 250 F.3d 1077, 1082 (7th Cir.2001); Far Out Productions, Inc. v. Oskar, 247
(9th Cir.2001); In re Soares, 107 F.3d 969, 976 (1st Cir.1997); In re Smith, 876 F.2d 524, 526 (6th Cir.1989); 1 lawrence P. King et al.,
uptcy Manual § 362.11[1] (3d ed, rev.2001). - See more at: http://caselaw.findlaw.com/dc-court-of-
302.html#sthash.SazAJCv8.dpuf

Defendant application vacating without effect said order together with such other and further relief of this court

ORDERING the Plaintiff Edward John Denker-Youngs with immediate effect on before October 20, 2015 is to remove any and all barriers to entry and/or access and entry and preclusion to which prohibits the Defendant from access and entry to property of "the bankruptcy estate" of Brian H. Denker, Case No. 15-41069; and

STAYING all proceedings herein are stayed until such time as relief is granted and provided for by Order of the United States Bankruptcy Court, Eastern District of New York.

SANCTIONING the Plaintiff, Edward John Denker-Youngs for his willful misrepresentations of this court and willful non-compliance to discovery, therefore is now precluded from entering into evidence such discoveries, defenses or documents for trial to which he has failed to comply with and provide for as requested of the Defendant and Defendant's counsel in October 2014 which dispute Defendant's allegations set forth of Plaintiff's economic and financial misconduct during the marriage.

SERVICING, a copy of this Order and the papers upon which it is granted, be made by and regular mail certified mail upon the Plaintiff at 33 PENNINGTON DRIVE, HUNTINGTON, NY 11743. service to Plaintiff's Counsel MARIA G. ALIBERTIS / SIMONETTI & ASSOCIATES on or before _October 26, 2015_ deemed good and sufficient service. An affidavit or other proof of service shall be filed with the court a minimum of one week prior to the return of this Order.

SERVICING, that a copy of this Order and the papers upon which it is granted, be made by personal service upon the HONORABLE CHIEF JUSTICE CARLA E. CRAIG, United States Bankruptcy Court, Eastern District of New York at 271-C Cadman Plaza East, Brooklyn, NY 1215, presiding Justice in re: Brian H. Denker Case No. 15-41069 on or before

deemed good and sufficient service. An affidavit or other proof of service shall be filed with the court a minimum of one week prior to the return of this Order.

Date:  10/19/15

_____
HON. H. PATRICK LEIS, III
JUSTICE OF SUPREME COURT STATE

GRANTED

OCT 19 2015

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

1

2

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK : PART 30
------------------------------------------------X
EDWARD J. DENKER-YOUNGS,

                        Plaintiff,

                                        Index No.
            -against-                    16968-14


                        BRIAN H. DENKER-YOUNGS,

                        Defendant.
------------------------------------------------X
                        October 19, 2015
                        Central Islip, New York


B E F O R E:        HON. H. PATRICK LEIS, III
                    Supreme Court Justice

A P P E A R A N C E S:


            BRIAN H. DENKER-YOUNGS
            Defendant pro se

1

2

3

17

18

19

20

21

Reported By:
Barbara Greenberg, C.S.R.
Official Court Reporter

THE COURT CLERK: Edward J. Denker-Youngs

versus Brian H. Denker-Youngs, index 16968 of 2014.

Defendant pro se. You want to stand and give

your 4   name for the record.

5   MR. DENKER-YOUNGS: Brian Howard 6 Denker-

Youngs.

7   THE COURT: Thank you. You can sit if you

8   wish. It's more comfortable for you because I'm going

9   to address you with respect to your order to show 10

cause. You're Brian Denker?

22

23

24

25

1

2

3

11          MR. DENKER-YOUNGS: Yes, Your Honor.

12          THE COURT: From what I've been able to review

13          of the papers, it appears you have an attorney in this

14          matrimonial action, and you're pending

            before Judge 15 Reilly; is that correct?

16     MR. DENKER-YOUNGS: I've been without an 17

attorney since September 18th.

18          THE COURT: Okay.

19          MR. DENKER-YOUNGS: Via signed order by

            Judge 20    Reilly.

21          THE COURT: That's not accurate. From what I

       understand, your attorney has made a motion to be

       relieved. Until that judge grants that motion, he

       is technically your attorney. That's my

       understanding.

            MR. DENKER-YOUNGS: I received actually a

22

23

24

25

4

signed order.

        THE COURT: Removing them?

        MR. DENKER-YOUNGS: Yes.

THE COURT: Do you happen to have that with 5    you?

        MR. DENKER-YOUNGS: I have to -- it's either

        in the car -- I don't think I have it

        here, but I'll 8    check.

        THE COURT: Our computer record shows that

        there is a motion made which was signed by the judge,

        an order to show cause signed by the judge which

        basically put this on for today, today's return date

        with respect to the motion for the attorney to be

        relieved. That's what our computer shows. So you

might have something from the judge that says there is

a motion to this effect, but it hasn't been granted

yet. So technically, you still have a lawyer and once 18 the judge grants it, maybe you won't have a lawyer.

Do you understand?

MR. DENKER-YOUNGS: I understand. I do 21have - —

THE COURT: Are you looking to get rid of the lawyer or is he looking to get rid of you?

MR. DENKER-YOUNGS: I was discharging him with cause for an allegation, but I do have a signed order that was FedExed to me if not here, in my car outside.

THE COURT: Take your time, check through there.

1

2

3

4          MR. DENKER-YOUNGS: It's --

5          THE COURT: Do you have it?

6          Excuse me, she wants to explain this to me.

7          Give me one second and I will be right
           back.

8          Okay, you appear to be right. Normally when
           a

9          judge signs an order to show cause they
           strike the

10         ordered provision because what can happen
           is the judge

11         granted the order to show cause and gave
           you the

12         relief that you were requesting all in the

           same 13    writing.

14         MR. DENKER-YOUNGS: The attorney.

15         THE COURT: Your attorney. So technically -

           16 you're right, he has been relieved by the

           judge in the

22

23

24

25

1

2

3

17    original order even though it's still returnable

18    today. How that happened, I can't explain but

19    apparently you're correct. Now, what I need to do,
      I

20    want to talk to you for a moment about what's going

    21    on. You're the defendant in this action?

          MR. DENKER-YOUNGS: Yes, Your Honor.

          THE COURT: And your husband has sued you for

    divorce?

          MR. DENKER-YOUNGS: Yes, Your Honor.

          THE COURT: How long ago did he start the

    suit?

          MR. DENKER-YOUNGS: August 27, 2014.

4         THE COURT: So it's a little over a year. Is

5         this something that you agree should occur?

6         MR. DENKER-YOUNGS: I have an action, a

7         counter-action on the claim of annulling

          the marriage 8 on the grounds of fraud.

22

23

24

25

1

2

3

9    THE COURT: So you want a divorce or an 10

annulment?

11                MR. DENKER-YOUNGS: Correct.

12                THE COURT: So the two of you agree on one

13                thing, that you're going to go your

                  separate ways and 14    you agree on that,

                  yes?

15                MR. DENKER-YOUNGS: Yes.

16                THE COURT: I understand there are a lot of

17                papers here. There are bankruptcy things
                  going on.

18                Do you have a job?

19                MR. DENKER-YOUNGS: Yes. Not to the full

20                extent that I had been employed because

                  I've been 21    relocated.

                  THE COURT: What type of work do you do?

                  MR. DENKER-YOUNGS: I'm vice-president of a

      research firm and then I also have a secondary

22

23

24

25

1

2

3

position as a rabbi within or was within the
community of Huntington and owned a rental business
or did.

THE COURT: Now, to be a rabbi do you have
to be ordained?

4   MR. DENKER-YOUNGS: Yes.

5   THE COURT: You have to go to a school?

6   MR. DENKER-YOUNGS: Correct.

7   THE COURT: Is it a college or post college?

8   MR. DENKER-YOUNGS: A seminary course along

9   with studying with other mentorships with various 10
rabbis.

11   THE COURT: And you have -- I imagine that's 12  not a
simple thing to accomplish.

13   MR. DENKER-YOUNGS: It is ongoing continued 14
courses of study.

22

23

24

25

1

2

3

15          THE COURT: I'm just saying it requires a lot

16          of intellect because you have to be able

to I guess 17   speak Hebrew or you get

fluent in it?

18          MR. DENKER-YOUNGS: It's being able to also

19          interpret it and be logical, be able to

read and 20     understand and make

inferences.

21          THE COURT: So I have to say that just in the

few experiences I've had with bar mitzvahs, in

watching what has to be learned and accomplished

just in that there is a -- and it's another

language. It's quite, quite an accomplishment. So

with that, and I don't know much about rabbis

because that's not -- I wasn't brought up -- that's

not my faith, so I don't know much about them other

22

23

24

25

1

2

3

than it requires a high 4  intellect and a

tremendous amount of study and work.

5          But is it also a spiritual position?

6          MR. DENKER-YOUNGS: Yes.

7          THE COURT: It's not just intellectual where

8          you read. You also advise and counsel

           people 9 spiritually?

10         MR. DENKER-YOUNGS: Correct. I'm not placed

11         within my own congregation but

           members of the 12   community that I

           work with, yes.

13         THE COURT: As a rabbi part of your function

14         would be to counsel people who are in need, maybe

15         would have lost loved once who are terminally ill, who

22

23

24

25

1

2

3

16          are going through divorces? Do you ever

            counsel 17 somebody going through a

            matrimonial?

18          MR. DENKER-YOUNGS: To the best of my
            ability,

19          although I would say that this experience
            is

20          certainly, at the very least, teaching me
            many things.

21          THE COURT: I'll give you one quick story

because I think it will help because it's

interesting. I did a wedding many, many years ago

for a person whose father or stepfather was a

Protestant minister. He was kind of upset that I

had been asked to do it when he was the Protestant

minister. They were asking a judge to do it. And he

barely spoke to me through the whole proceeding. At

the conclusion he explained

22

23

24

25

1

2

3

4      to me that his wife had died about a year earlier, and

5      that he had been so damaged by the death of his wife

6      that he was almost incapable of functioning, and

then 7      that's what prompted his children or

whoever to select 8      someone else to do the

ceremony.

9              But what he said to me was, after I had done

10             the ceremony, he said, "You know, I have counseled

11             people on divorce and death and all kinds of things.

12             I can't tell you how many times I've been at funerals

13             and done this. You want to know something? I didn't

14             know anything about death."

15             So what I'm saying to you, it's just

22

23

24

25

1

2

3

16          interesting what you're saying, the fact that you

17          counsel people and that you have all this knowledge,

18          that you are capable of doing it doesn't

            mean it's 19    going to make your situation

            any easier, right?

20          MR. DENKER-YOUNGS: Correct.

21          THE COURT: So we start with that. The

second thing I want to say as a bit of suggestion,

these papers I looked at, you're a highly

intelligent man obviously because I couldn't do

what you do. I can't speak any foreign language

much less learn Hebrew, so obviously you have a

high intellect. Your papers here and from our

reading are not really well done because although

you have a high intellect, your 4   legal knowledge

and your legal skills aren't there.

22

23

24

25

1

2

3

5    Either you would have a low aptitude on an aptitude

6    score to be a lawyer or it's just more

complicated 7 than you realize and takes a lot

of time, or when 8 you're under great stress

which you apparently are 9 under, you don't

think quite clearly.

10        All I'm doing is trying to give you some

11        assumptions, advise that you need to slow things down.

12        I understand you're done with your attorney. That's

13        between you and him. I'm suggesting that you 14 consider, although I don't know what your financial

15    conditions are, another attorney that can guide you.

16    And the only reason I'm suggesting it is because, as I

22

23

24

25

1

2

3

17    said, your papers in many respects don't put
together

18    the things that they should. Your stays that you

19    asked I cannot grant at this time. I'm striking
them.

20    I'm going to sign your order to show cause. It's

21    going to be returnable before Judge Reilly and the

things you're requesting you can address to him.

Your temporary restraining orders are not

going to be granted today because they're

inappropriate. One main reason, if you read the

statute, you're required to notify your adversary

before you make some of these applications. If you

don't do it, then the Court really can't grant ex 4

parte, which is what we're doing, what you're 5

requesting.

6    The reason I'm taking some time to explain

22

23

24

25

At I.A.S. Part _____ of the Supreme
Court of the State of New York, held
in and for the County of Suffolk, at
the Courthouse thereof, 400 Carleton
Ave, Central Islip, NY on the 27
day of November 2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

PRESENT: HON._____QUINN
------------------------------------------------------X
EDWARD J. DENKER-YOUNGS
           Plaintiff

      -against-
BRIAN H. DENKER-YOUNGS
           Defendant. *Pro Se*
------------------------------------------------------X

**ORDER TO SHOW CAUSE**

INDEX NO.: 16968-14

**STATE OF NEW YORK**   )
                   ) SS.
**COUNTY OF SUFFOLK**   )

MOTION/CROSS/OSC
FEE PAID
Judith A. Pascale
Suffolk County Clerk

    Upon the annexed affidavit of BRIAN H. DENKER-YOUNGS, the Defendant *Pro Se* in

this action, having appeared this 27th day of November 2015, together with the papers attached to

this Order to Show Cause,

    LET, EDWARD J. DENKER-YOUNGS, the Plaintiff herein or counsel to the plaintniff,

show cause before this Court at Part _____, Room _____ hereof to be held at the

Courthouse located 400 Carleton Avenue, New York, NY on _January 19, 2016_

at 9:30a.m. or as soon thereafter as the parties can be heard why and Order Should Not be

entered:

    a.  Dismissing the proceeding herein pursuant to CPLR 3126 with prejudice to this venue

        and county or if so deemed not dismissible, granting Defendants request for Change

of Venue to Kings County Supreme Court consolidating the case herein with Index

No. 54031-2015

b. Disqualifying counsel to the Plaintiff for Violations of New York State Rules of

Professional Conduct Part 1200

c. Granting Defendant' application for a witness subpoena to obtain depositions from

Jennifer Schenker, Esq and Terence Schruer, Esq. as and for the related references

herein

d. Holding Plaintiff, Louis Simonetti, Esq and Maria G. Alibertis, Esq, liable for all

legal expenses paid and owed in association with the proceedings herein for the

representation of the Defendant paid and owed to date in an estimated sum of

$126,000.

e. Holding Plaintiff directly accountable for estimated loss of business and income

suffered by the Defendant since December 2014 to the approximated sum total of

$40,000 as conveyed in prior motions before this court.

f. Issuing an award of compensatory damages to the Defendant in the sum total of

Plaintiff's entire deferred income between 2011-2014 in an sum total of $110,000.

g. Granting such other and further reliefs the court deems just and proper

And Sufficient case appearing therefore it is ORDERED, that pending the hearing and

determination of the within application:

4

a. Vacating the June 23, 2015 pen dente lite order and award of exclusive use & occupancy of this court, removing such barriers to the Defendant's right to homesteading of the marital residence

b. Granting Defendant' application for a witness subpoena to obtain depositions from Jennifer Schenker, Esq and Terence Schruer, Esq. as and for the related references herein

c. Attorney's Louis Simonetti, Esq. and Maria G. Alibertis are disqualified from representation of the Plaintiff to the within action

d. Defendant's request for a change of venue is hereby granted and the return of this ~~motion and review of the same be done in consolidation with Kings County~~ Index. No. 54031-2015.

ORDERED that service of a copy of this Order together with the papers upon which it was based upon the Plaintiff's counsel of Simonetti & Associates at 144 Woodbury Road, Woodbury NY 11797 by personal service on or before _December 10, 2015_ be deemed good and sufficient service.

Entered:

HON. JAMES F. QUINN

HONORABLE JUSTICE
SUPREME COURT STATE OF NEW YORK

GRANTED
NOV 27 2015
JUDITH A. PASCALE
Clerk of Suffolk County

# EQUIFAX

**CREDIT FILE : May 29, 2015**

**Confirmation # 5063044957**

Dear Brian Howard Denker– Youngs:

Below are the results of your reinvestigation request and, as applicable, any revisions to your credit file. If you have additional questions regarding the reinvestigated items, please contact the source of that information directly. You may also contact Equifax regarding the specific information contained within this letter or report within the next 60 days by visiting us at www.investigate.equifax.com or by calling a Customer Representative at (888) 425–7961 from 9:00am to 5:00pm Monday–Friday in your time zone.

For an added convenience, use one of the below options to start an investigation or check the status of your dispute.

Please note, when you provide documents, including a letter, to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.

Visit us at www.equifax.com/CreditReportAssistance or Call us at 866–349–5186.

Thank you for giving Equifax the opportunity to serve you.

## The Results Of Our Reinvestigation

### Credit Account Information
*(For your security, the last 4 digits of account number(s) have been replaced by *)*
*This section includes open and closed accounts reported by credit grantors*

| Account History | | Status Code | | |
|---|---|---|---|---|
| 1 : 30–59 Days Past Due | 5 : 150–179 Days Past Due | J : Voluntary Surrender |
| 2 : 60–89 Days Past Due | 6 : 180 or More Days Past Due | K : Repossession |
| 3 : 90–119 Days Past Due | G : Collection Account | L : Charge Off |
| 4 : 120–149 Days Past Due | H : Foreclosure | |

**Descriptions**

>>>  *We have researched the credit account. Account # – 998170*. The results are: This item has been deleted from the credit file. If you have additional questions about this item please contact: Bethpage Federal Cu, 899 S Oyster Bay Rd, Bethpage NY, 11714–1030 Phone: (516) 383–0891.

>>>  *We have researched the credit account. Account # – 417202080823*. The results are: This item has been deleted from the credit file. If you have additional questions about this item please contact: Chase Card, PO Box 15298, Wilmington DE, 19850–5298 Phone: (800) 432–3117

---

0019519812-1491
Brian Howard Denker– Youngs
33 Pennington Dr
Huntington, NY 11743–7122

Atlanta, GA 30348

5063044957AECL-0019519812-  1491-1257

( Continued On Next Page )

( End Of Report )

**Notice to Co**
You may requ
furnisher of inf

If the reinvesti
the statement i

If the reinvesti
request that we
California, Colo

50630449571CT-00189335S- 1899-17443 - S

P.O. Box 105069
Atlanta, GA 30348

March 9, 2015



**EQUIFAX**

To Start An Investigation, Please Visit Us At:
www.investigate.equifax.com

00189335S-1899
BRIAN HOWARD DENKER- YOUNGS
33 PENNINGTON DR
HUNTINGTON, NY 11743-7122

Dear BRIAN HOWARD DENKER- YOUNGS:

Enclosed is a copy of your Equifax credit file. Please review it for any unauthorized accounts or inquiries. If unauthorized information is reporting on your Equifax credit file, you may start an investigation immediately on-line at www.investigate.equifax.com. Using the Internet to initiate an on-line investigation request will expedite the resolution of your concerns. You may also start an investigation by completing and returning the enclosed Research Request Form or by calling the toll free telephone number on the credit file. Please advise us of any documents that may help us in the reinvestigation, such as an identity theft report or letters from credit grantors.

Please note, when you provide documents, including a letter, to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.

You should contact the credit grantors that are reporting information you believe is fraudulent. Ask them to explain their fraud investigation process, what steps should be taken and how long the process normally takes. Additionally request that they send you a letter or documentation stating the results of the investigation. Upon receipt, forward a copy of that letter to us.

If your ID information, such as driver's license or social security card, was lost or stolen, contact the appropriate issuing agency.

**Results Of Your Investigation**   (For your security, the last 4 digits of your credit account number(s) have been replaced by *.)

>>> **We have researched the credit account. Account # - 998170\*** *The results are:* This item has been deleted from the credit file. If you have additional questions about this item please contact: **Bethpage Federal Cu, 899 S Oyster Bay Rd, Bethpage, NY 11714-1030 Phone: (516) 383-0691**

>>> **We have researched the credit account. Account # - 414720209823\*** *The results are:* This item has been deleted from the credit file. If you have additional questions about this item please contact: **Chase Card, PO Box 15298, Wilmington, DE 19850-5298 Phone: (800) 432-3117**

**Get Informed. Be empowered.**

For an added convenience, use one of the below options to start an investigation or check the status of your dispute.

Visit us at **www.equifax.com/CreditReportAssistance** or Call us at 866-349-5186.

50630449571CT-001893355- 1899- 17443 - S

## State of New York – Notice to Consumers

**New York Consumers Have the Right to Obtain a Security Freeze**

You have a right to place a "security freeze" on your credit report, which will prohibit a consumer credit reporting agency from releasing information in your credit report without your express authorization. A security freeze must be requested in writing, delivery information requested, or via telephone, secure electronic means, or other methods developed by the consumer credit reporting agency. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application for credit including an extension of credit at point of sale. When you place a security freeze on your credit report, you will be provided a personal identification number or password for you to use if you choose to remove the freeze on your credit report or authorize the release of your credit report for a period of time after the freeze is in place. To provide that authorization you must contact the consumer credit reporting agency and provide all of the following:

(1) the personal identification number or password;

(2) proper identification to verify your identity;

(3) the proper information regarding the party or parties who are to receive the credit report or the period of time for which the report shall be available to users of the credit report; and

(4) payment of any applicable fee.

A consumer credit reporting agency must authorize the release of your credit report no later than three business days after receiving the above information. Effective September first, two thousand nine, a consumer credit reporting agency that receives a request via telephone or secure electronic method shall release a consumer's credit report within fifteen minutes when the request is received.

A security freeze does not apply to circumstances in which you have an existing account relationship and a copy of your report is requested by your existing creditor or its agents or affiliates for certain types of account review, collection, fraud control or similar activities.

If you are actively seeking credit, you should understand that the procedures involved in lifting a security freeze may slow your application for credit. You should plan ahead and lift a freeze, either completely if you are shopping around, or specifically for a certain creditor, before applying for new credit. When seeking credit for pursuing another transaction requiring access to your credit report, it is not necessary to relinquish your pin or password to the creditor for business; you can contact the consumer credit reporting agency directly. If you choose to give out your pin or password to the creditor or business, it is recommended that you obtain a new pin or password from the consumer credit reporting agency.

To place a security freeze on your Equifax credit report, send a request in writing to:

Equifax Security Freeze
P.O. Box 105788
Atlanta, GA 30348

Or, you may contact us on the web at equifax.com or call 800-349-9960.

There is no initial fee to place a security freeze. If you are a victim of identity theft and you submit a copy of a signed Federal Trade Commission ID theft victim's affidavit, or a copy of a report of ID theft from a law enforcement agency, no fees will be charged. Include your complete name, complete address, social security number and date of birth.

Written confirmation of the security freeze will be sent within 5 business days of receipt of the request via first class mail. It will include your unique personal identification number and instructions for removing the security freeze or authorizing the release of your credit report for a specific party or specific period of time.

### Notice to Consumers

You may request a description of the procedure used to determine the accuracy and completeness of the information, including the business name and address of the furnisher of information contacted, and if reasonably available the telephone number.

If the reinvestigation does not resolve your dispute, you have the right to add a statement to your credit file disputing the accuracy or completeness of the information; the statement should be brief and may be limited to not more than one hundred words (two hundred words for Maine residents) explaining the nature of your dispute.

If the reinvestigation results in the deletion of the disputed information, or you submit a statement in accordance with the preceding paragraph, you have the right to request that we send your revised credit file to any company specifically designated by you that received your credit report in the past six months (twelve months for California, Colorado, Maryland, New Jersey and New York residents) for any purpose or in the past two years for employment purposes.



**DIVINITIES**

**Brian Denker-Youngs <rabbibriand@moderndivinities.com>**

# Denker-Youngs- Bankruptcy Referral- Larry Morrison

3 messages

**jingoglia@raiserkenniff.com** <jingoglia@raiserkenniff.com>            Thu, Mar 5, 2015 at 12:41 PM
Reply-To: jingoglia@raiserkenniff.com
To: rabbibriand@moderndivinities.com
Cc: criminaldefense@raiserkenniff.com, Jessec@raiserkenniff.com

Brian,

Further to our discussions and emails, below is the contact infor for Larry Morrison, the bankruptcy attorney to whom we typically refer.  I finally spoke with Larry this morning after our long game of phone tag.

Larry now has a rough understanding of your situation and would be happy to speak with you or meet with you in his NYC office, where he shares office space with our firm at 87 Walker St.  You should reach out to him directly and arrange the best time to get together.

Let us know if you have any questions.

Best,
Jim

P.S. Please follow up with Jesse regarding the packet to0 be emailed/FedExed to the Brooklyn Detective handling the warrants.

http://www.m-t-law.com/

Morrison+Tenenbaum regularly represent companies, founders and investors from many industries including technology, retail, financial services, real-estate, hospitality and design. With more than 25 years' experience, the attorneys at Morrison+Tenenbaum are practical, business-minded and highly effective advocates who work closely with our clients to fully understand what success means for them.

We are specialists in corporate law and business transactions, civil litigation, bankruptcy and creditors' rights, intellectual property, and business immigration law. By leveraging these expertise gained over many years, cases and transactions, we take a multidisciplinary approach to achieve the greatest likelihood of success – be it a company or partner buyout, a high-stakes contract negotiation, funding a new venture, or protecting your business from creditors.

Contact us by e-mail or phone to discuss your situation.

### Lawrence Morrison, *Partner*

Lawrence Morrison is seasoned litigator specializing in state and federal litigation, corporate restructurings and workouts, bankruptcy and creditors rights, and commercial real estate matters. He also runs the firm's matrimonial and employment law practice. Prior to founding Morrison+Tenenbaum, Lawrence was in private practice for more than ten years and later a partner at Meister Seelig & Fein. Lawrence is a member of the Association of the Bar of the City of New York. He is admitted to practice in the State of New York and New Jersey and in the Federal Courts in the Eastern and Southern Districts of New York and New Jersey.

View Larger Map

212 620 0938

12/22/2015                    Modern Divinities Mail - Denker-Youngs- Bankruptcy Referral- Larry Morrison

info@m-t-law.com

lfmlawyer@gmail.com

87 Walker Street,
Second Floor
New York, NY 10013

*[Please Note Our New Address Below]*

JAMES M. INGOGLIA, ESQ.

_____

# RAISER & KENNIFF, P.C.

**300 Old Country Rd., Suite 351**
**Mineola, NY 11501**
516 742-7600 **(t)**
516 742-7618 **(f)**
**jingoglia@raiserkenniff.com**

**87 Walker Street, 2nd Floor**
**New York, NY 10013**
212 274-0090 **(t)**
516 742-7618 **(f)**

**150 Motor Parkway, Suite 401**
**Hauppauge, NY 11788**
631-338-5711 **(t)**
516 742-7618 **(f)**

**www.raiserkenniff.com**

_____

The information contained in this message is privileged and confidential and intended only for the use of the individual recipient identified above. If you are not the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete this message. Thank you.

IRS Circular 230 Legend:  If any advice concerning U.S. Federal tax issues is contained in this communication or attachments hereto, such advice is not intended to be used, and cannot be used for the purpose of avoiding penalties under the Internal Revenue Code, or promoting, marketing, or recommending to another party any transaction or matter addressed herein.

----- Original Message -----
**From:** Rabbi Dr. Brian H. Denker-Youngs, D.D. [mailto:rabbibriand@moderndivinities.com]
**To:** jschenker@capetolalaw.com,criminaldefense@raiserkenniff.com,jingoglia@raiserkenniff.com,Je ssec@raiserkenniff.com,criminaldefense@raiserkenniff.com,jschiff@capetolalaw.com
**Sent:** Wed, 04 Mar 2015 22:41:05 -0500
**Subject:**

Hey guys -

Spoke to a friend tonight and apparently it is an important detail and fact we should emphasize (i do have copy of John's school transcript i found) that he went to this college NOT CW Post for which he had always represented to me http://www.hackcollege.com/school-finder/schools/pennsylvania/philadelphia-biblical-university-langhome/

Based on the back door curriculum taught at this school, apparently they teach how to *"cook books for Christ....."* *(google "Philadelphia Bible College" and criminal enforcement and financial crimes bureau)*

oh and btw, their fellow churchman and "family financial advisor" who would be at the center of the individual that probably help guide John and mother how to and what to - just announced his impending departure as CEO of their "family owned investment business" as a roadmap for the future..... the many companies including StoneAge which I happen to have replicated deposit images of 2 checks from January 2013 that went into our account disguides as "John's salaried contribution from that pay period"
http://www.diefendorfcapital.com/Monroe-Roey-M---Diefendorf,-Jr-.e75442.htm


My sincere best,



**BRIAN H. DENKER-YOUNGS, D.D**
**Rabbi & CEO**
t: 347.644.9482
e: rabbibriand@moderndivinities.com


# Modern Divinities, Corp.

**Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited**
www.moderndivinities.com

proud recipient of



# Modern Divinities, Corp.

Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited

www.moderndivinities.com

proud recipient of



–

**Rabbi Dr. Brian H. Denker-Youngs, D.D.** <rabbibriand@moderndivinities.com>       Thu, Mar 5, 2015 at 1:19 PM
Reply-To: rabbibriand@moderndivinities.com
To: "Jesse J. Cardenas" <Jessec@raiserkenniff.com>

Hi Jess -

What time would work well for u?

-------- Forwarded Message --------
   **Subject:** Denker-Youngs- Bankruptcy Referral- Larry Morrison
      **Date:** Thu, 5 Mar 2015 12:41:50 -0500
     **From:** jingoglia@raiserkenniff.com
**Reply-To:** jingoglia@raiserkenniff.com
          **To:** rabbibriand@moderndivinities.com
         **CC:** criminaldefense@raiserkenniff.com, Jessec@raiserkenniff.com

[Quoted text hidden]

📄 **rabbibriand.vcf**
   1K

**Jesse J. Cardenas** <Jessec@raiserkenniff.com>                      Thu, Mar 5, 2015 at 1:30 PM
To: rabbibriand@moderndivinities.com

Hey Brian,

I am not in the office today due to the weather. Tomorrow we can talk after 12pm.

**Jesse J. Cardenas**

**Law Clerk**

**Raiser & Kenniff, PC**

300 Old Country Rd., Suite 351

Mineola, NY 11501

tel 516 742-7600

fax 516 742-7618


87 Walker Street, 2nd Floor

New York, NY 10013

212 274-0090


80 Orville Drive

Suite 100

Bohemia, NY 11716

631-338-5711


www.raiserkenniff.com

-------------------------------------------

This email is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via United States Postal Service. The information contained in this email is not be construed as legal advice unless a you have retained our firm and an attorney client relationship exists.


**From:** Rabbi Dr. Brian H. Denker-Youngs, D.D. [mailto:rabbibriand@moderndivinities.com]
**Sent:** Thursday, March 05, 2015 1:19 PM
**To:** Jesse J. Cardenas
**Subject:** Fwd: Denker-Youngs- Bankruptcy Referral- Larry Morrison


[Quoted text hidden]
[Quoted text hidden]

# Modern Divinities, Corp.

**Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited**

www.moderndivinities.com

proud recipient of



## Modern Divinities, Corp.

Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited

## www.moderndivinities.com

proud recipient of



—



**Modern Divinities, Corp.**

Modern Divinities Mail - Denker-Youngs- Bankruptcy Referral- Larry Morrison

Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited

# www.moderndivinities.com

proud recipient of





# DIVINITIES

**Brian Denker-Youngs <rabbibriand@moderndivinities.com>**

## FYI - HELOC Bethpage Federal Update
1 message

**Rabbi Dr. Brian H. Denker-Youngs, D.D. <rabbibriand@moderndivinities.com>**         Wed, Mar 11, 2015 at 12:34 PM
Reply-To: rabbibriand@moderndivinities.com
To: "Jesse J. Cardenas" <Jessec@raiserkenniff.com>, "Steven Raiser, Esq." <criminaldefense@raiserkenniff.com>,
Jim Ingoglia <jingoglia@raiserkenniff.com>


-------- Forwarded Message --------
      **Subject:** Re: Apologies for missing your call
         **Date:** Wed, 11 Mar 2015 12:09:29 -0400
       **From:** Rabbi Dr. Brian H. Denker-Youngs, D.D. <rabbibriand@moderndivinities.com>
  **Reply-To:** rabbibriand@moderndivinities.com
**Organization:** Modern Divinities, Crop.
           **To:** LMorrison <lfmlawyer@gmail.com>
           **CC:** Jennifer Schenker <jschenker@capetolalaw.com>


Hi Mr Morrison

I just got word from Equifax that they have removed the Home Equity Line of Credit from my credit report. I've
been for months arguing back and forth with Beth Page Federal Credit Union as to the point that I didn't have
knowledge or conduct the transactions and the monies were all paid to a credit card that is not my card. Finally
they have accepted the dispute on the category of an account take-over.

With this removed does this potentially change anything with filing as it should have removed approx $124k of debt.




My sincere best,



**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO
t: 347.644.9482
e: rabbibriand@moderndivinities.com



**Brian Denker-Youngs <rabbibriand@moderndivinities.com>**

# Chapter 11
1 message

**LMorrison** <lfmlawyer@gmail.com>                                    Fri, Mar 13, 2015 at 11:32 AM
To: Rabbi Brian <rabbibriand@moderndivinities.com>, Marcos Coto-Batres <marcoscb@m-t-law.com>, Lawrence
Morrison <lmorrison@m-t-law.com>

Rabbi Brian:
Please call my paralegal at 2126200938
He has some questions
Thanks
Larry Morrison

Sent from my mobile



**Brian Denker-Youngs <rabbibriand@moderndivinities.com>**

# Fwd: The who and how of why im bankrupt

**LMorrison** <lfmlawyer@gmail.com>                              Fri, Mar 13, 2015 at 3:51 PM
To: Rabbi Brian <rabbibriand@moderndivinities.com>, Marcos Coto-Batres <marcoscb@m-t-law.com>

Hi is urgent that we reach you
We are filing tonight

Sent from my mobile
[Quoted text hidden]

[Quoted text hidden]



**Modern Divinities, Corp.**

Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited

www.moderndivinities.com



Best

## Rabbi B

**BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
t: 347.644.9482    e:rabbibriand@moderndivinities.com
**Modern Divinities, Corp.**
*Modern Matrimonies | Modern Memorials | Modern Simchas | Modern
Events Unlimited*
www.moderndivinities.com

**Jamison, Rhonda M**

| | |
|---|---|
| **From:** | Brian Denker-Youngs <bhdenker@gmail.com> |
| **Sent:** | Thursday, April 16, 2015 5:28 PM |
| **To:** | Jamison, Rhonda M |
| **Subject:** | Fwd: Re: Chapt 11 bankruptcy and affidavit |

---------- Forwarded message ----------
From: "L Morrison" <lfmlawyer@gmail.com>
Date: Mar 16, 2015 12:00 AM
Subject: Re: Chapt 11 bankruptcy and affidavit
To: "Brian" <bhdenker@gmail.com>, "marcoscb@m-t-law.com" <marcoscb@m-t-law.com>, "Lawrence F.
Morrison" <lmorrison@m-t-law.com>
Cc:


case filed: please forward to your matrimonial lawyer

Thx


**U.S. Bankruptcy Court**
**Eastern District of New York (Brooklyn)**
**Bankruptcy Petition #: 1-15-41069-cec**

*Date filed:* 03/13/2015

*Assigned to:* Carla E. Craig
Chapter 11
Voluntary
Asset


| | |
|---|---|
| *Debtor* | represented by **Lawrence Morrison** |
| **Brian Denker** | 87 Walker Street Floor 2 |
| 25 Boerum Street, Apt 18E | New York, NY 10013 |
| Brooklyn, NY 11206 | 212-620-0938 |
| KINGS-NY | Email: morrlaw@aol.com |
| SSN / ITIN: xxx-xx-2227 | |

*U.S. Trustee*
**Office of the United States Trustee**
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
(212) 510-0500

1



**Brian Denker-Youngs <rabbibriand@moderndivinities.com>**

# Update - Today's hearing
3 messages

**Rabbi Brian** <rabbibriand@moderndivinities.com>                    Mon, Mar 16, 2015 at 11:28 AM
To: LMorrison <lfmlawyer@gmail.com>, "Jesse J. Cardenas" <Jessec@raiserkenniff.com>, Jim Ingoglia
<jingoglia@raiserkenniff.com>

    Nobody showed up for the hearing except for me and Jennifer. My husband and his attorney did not show up and
the judge granted an adjournment for the hearing on exclusive occupancy & possession for next Monday.

        Best

    **Rabbi B**

    **BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
    t: 347.644.9482    e:rabbibriand@moderndivinities.com
    **Modern Divinities, Corp.**
    *Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*
    www.moderndivinities.com

**LMorrison** <lfmlawyer@gmail.com>                                   Mon, Mar 16, 2015 at 11:34 AM
To: Rabbi Brian <rabbibriand@moderndivinities.com>
Cc: "Jesse J. Cardenas" <Jessec@raiserkenniff.com>, Jim Ingoglia <jingoglia@raiserkenniff.com>

    Okay did your attorney advise of the bankruptcy ?

    Sent from my mobile
    [Quoted text hidden]

        [Quoted text hidden]



**Modern Divinities, Corp.**
Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited

www.moderndivinities.com



**Rabbi Brian** <rabbibriand@moderndivinities.com>                          Mon, Mar 16, 2015 at 1:23 PM
To: LMorrison <lfmlawyer@gmail.com>
Cc: "Jesse J. Cardenas" <Jessec@raiserkenniff.com>, Jim Ingoglia <jingoglia@raiserkenniff.com>

Hi Mr Morrison

No, i dont believe it was made known to the court. When I inquired as to confirm receipt of your mail i forwarded, she said she needed to speak with you.

This all is beyond mind boggling and overwhelming at this point for me. I am beyond exhausted emotionally and mentally not to mention heartbroken and discouraged. Months and many sleepless nights and thousands of pages of evidence so clearly outlining that my husband has committed disingenuous acts, gotten away with things that would otherwise be deemed criminal, has a long-standing history of what I've now learnt has a term 'equity skimming', a type of mortgage fraud all easily guided and advised by a close family friend / church go-er of his and his mother's (the guy who wrote that book - A Better Way) means nothing and doesn't matter because my husband filed something called a petition for divorce when I call him to the carpet... And it gave him a get outta jail free card.

Sorry if I'm beating the self-pity drum this afternoon but really kind of sucks being me right now.

Jennifer Schenker is from anthony Capetola's office. Her email is jschenker@capetolalaw.com

If there anything else on my end beyond taking care of the citibank please let me know.


        **Best**

        # Rabbi B

        **BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
        t: 347.644.9482    e:rabbibriand@moderndivinities.com
        **Modern Divinities, Corp.**
        *Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*
        www.moderndivinities.com


[Quoted text hidden]



Brian Denker-Youngs <rabbibriand@moderndivinities.com>

## receipt of wire transfer
1 message

**Rabbi Dr. Brian H. Denker-Youngs, D.D.** <rabbibriand@moderndivinities.com>    Mon, Mar 16, 2015 at 5:18 PM
Reply-To: rabbibriand@moderndivinities.com
To: "lfmlawyer@gmail.com" <lfmlawyer@gmail.com>

Dear Mr. Morrison

Please find attached the receipt for the wire transfer for the balance of the filing fee.  My apologies that there was some issue (im unsure as to what exactly) but appreciate that you trusted me to proceed.  I'm a bit unsure as to what's next or what you need from me or what we need to get Jennifer Schenker to do.  Please let me know and I will avail myself as needed.
--

My sincere best,

**BRIAN H. DENKER-YOUNGS, D.D**
Rabbi & CEO
t: 347.644.9482
e: rabbibriand@moderndivinities.com



# Modern Divinities, Corp.

**Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited**

www.moderndivinities.com

proud recipient of



---

**2 attachments**

Wire Transfer_LMorrison_FilingFee.pdf
72K

rabbibriand.vcf
1K



Brian Denker-Youngs <bhdenker@gmail.com>

# Fwd: IDI Confirmation Letter - Brian Denker - Case No. 115-41069-CEC
2 messages

**LMorrison** <morrlaw@aol.com>                                              Fri, Mar 20, 2015 at 8:09 AM
To: Brian <bhdenker@gmail.com>

Sent from my mobile

Begin forwarded message:

> **From:** "Drapan, George  (USTP)" <George.Drapan@usdoj.gov>
> **Date:** March 20, 2015 at 8:08:08 AM EDT
> **To:** "morrlaw@aol.com" <morrlaw@aol.com>
> **Cc:** "Curtin, William E.  (USTP)" <William.E.Curtin@usdoj.gov>, "Czarniecki, Leiden Y.  (USTP)"
> <Leiden.Y.Czarniecki@usdoj.gov>
> **Subject: IDI Confirmation Letter - Brian Denker - Case No. 115-41069-CEC**
>
>
> FYI
>
> Regards,
> George Drapan
> United States Department of Justice
> Eastern District of New York - Brooklyn Office
> U.S. Federal Office Building
> 201 Varick Street - Suite 1006
> New York, NY 10014
> (212) 510-0515
> (212) 668-2255 Fax

 **SKMBT_75415032007520.pdf**
1709K

**Brian** <bhdenker@gmail.com>                                              Fri, Mar 20, 2015 at 10:14 AM
To: Jennifer Schenker <jschenker@capetolalaw.com>

**BRIAN H. DENKER** | t: 516-462-0895 e: bhdenker@gmail.com

Begin forwarded message:

**From:** LMorrison <morrlaw@aol.com>
**Date:** March 20, 2015 at 8:09:21 AM EDT
**To:** Brian <bhdenker@gmail.com>
**Subject: Fwd: IDI Confirmation Letter - Brian Denker - Case No. 115-41069-CEC**

[Quoted text hidden]

**SKMBT_75415032007520.pdf**
1709K

**Subject:** Re: Exhibit A
**From:** Lmorrison <lfmlawyer@gmail.com>
**Date:** 8/13/2015 10:16 AM
**To:** Rabbi Brian <rabbibriand@moderndivinities.com>

Ok thanks

Sent from my iPhone

On Aug 13, 2015, at 10:14 AM, Rabbi Brian <rabbibriand@moderndivinities.com> wrote:

> Hope all is well Mr Morrison.  I will be out of town Saturday thru Wednesday next week on the West Coast but I will be available by phone & email if needed for anything.
>
> **Best**
>
> **Rabbi B**
>
> **BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
> t: 347.644.9482   e:rabbibriand@moderndivinities.com
> **Modern Divinities, Corp.**
> *Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*
> www.moderndivinities.com
>
> On Aug 13, 2015, at 10:11 AM, Lmorrison <lfmlawyer@gmail.com> wrote:
>
>> Ok thanks
>>
>> Sent from my iPhone
>>
>> On Aug 13, 2015, at 9:28 AM, Rabbi Brian <rabbibriand@moderndivinities.com> wrote:
>>
>>> **Best**

**Rabbi B**

**BRIAN H. DENKER-YOUNGS, D.D. | RABBI & CEO**
t: 347.644.9482   e:rabbibriand@moderndivinities.com
**Modern Divinities, Corp.**
*Modern Matrimonies | Modern Memorials | Modern Simchas | Modern Events Unlimited*
www.moderndivinities.com

Begin forwarded message:

**From:** "Rabbi Dr. Brian H. Denker-Youngs, D.D."
<rabbibriand@moderndivinities.com>
**Date:** August 13, 2015 at 8:47:52 AM EDT
**To:** "marcoscb@m-t-law.com" <marcoscb@m-t-law.com>, Lawrence
<lawrenceconti@gmail.com>, Terry Scheurer <tcs@scheurerlawfirm.com>
**Subject: Exhibit A**
**Reply-To:** rabbibriand@moderndivinities.com

Hi guys -

I noticed in John's bankruptcy attorney's letter to the Judge Craig she was pointing out that there perhaps was not specific document requests for John to furnish.  Just in case, i took the liberty of gathering what I know he has not and would not likely turn in but all are kinda telling (quite a bit actually as none of them i would even have access to).

Hope this helps.   The subpena accounts are integrated but the ones i gave you originally are the key ones however obviously a lot here what do you think ?

--

My sincere best,

**BRIAN H. DENKER-YOUNGS, D.D**

**Subject:** Fwd: Rabbi Brian final motion
**From:** Lawrence Morrison <lmorrison@m-t-law.com>
**Date:** 7/31/2015 1:02 PM
**To:** Brian Denker-Youngs <rabbibriand@moderndivinities.com>, Lawrence Morrison
<LMorrison@m-t-law.com>


Please sign page 3 of the annexed motion and please email to me

Thanks


─Attachments:──────────────────────────────────────────

Denker finalMotion to Convert.pdf                    92.2 KB

please sign this one

**Subject:** please sign this one
**From:** Lawrence Morrison <lmorrison@m-t-law.com>
**Date:** 7/31/2015 1:19 PM
**To:** Brian Denker-Youngs <rabbibriand@moderndivinities.com>, Lawrence Morrison
<LMorrison@m-t-law.com>

─ Attachments: ────────────────────────────────────────────

Denker noticefinalMotion to Convert.pdf                                    92.1 KB

Please sign the motion I sent today

**Subject:** Please sign the motion I sent today
**From:** Lmorrison <lmorrison@m-t-law.com>
**Date:** 7/31/2015 6:59 PM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>, Marcos
Coto-Batres <marcosCB@m-t-law.com>


Sent from my iPhone

**Subject:** Re: Please sign the motion I sent today
**From:** lmorrison@m-t-law.com
**Date:** 7/31/2015 7:46 PM
**To:** "rabbibriand@moderndivinities.com" <rabbibriand@moderndivinities.com>
**CC:** Marcos Coto-Batres <marcosCB@m-t-law.com>

No nothing at all thank you

Sent from my iPhone

On Jul 31, 2015, at 7:23 PM, Rabbi Dr. Brian H. Denker-Youngs, D.D.
<rabbibriand@moderndivinities.com> wrote:

> Hi Mr. Morrison - apologies was going through some testing today from the cardiologist
> and didn't have my phone available / on. Will take a look and return shortly.
>
> Is there anything you need from me or that I should ready or prepare in any way to help
> for August 11th? Do I attend that?
>
>
>
> My sincere best,
>
>
> **BRIAN H. DENKER-YOUNGS, D.D**
> Rabbi & CEO
> t: 347.644.9482
> e: rabbibriand@moderndivinities.com



**Subject:** Second request
**From:** lmorrison@m-t-law.com
**Date:** 7/31/2015 8:13 PM
**To:** Lawrence Morrison <lmorrison@m-t-law.com>, Marcos Coto-Batres <marcoscb@m-t-law.com>
**CC:** Brian Denker-Youngs <rabbibriand@moderndivinities.com>

Please sign and forward to us thank you

Sent from my iPhone

On Jul 31, 2015, at 1:19 PM, Lawrence Morrison <lmorrison@m-t-law.com> wrote:

<Denker noticefinalMotion to Convert.pdf>

**All Account / Deposits / Withdrawals / Statements / Checks  AUGUST 1, 2010- AUGUST 30, 2014**

| | | |
|---|---|---|
| CCGA | | Ocean Park (403b - Indv) |
| | | Oppenheimer Funds Class A (403b - Indv) |
| | | Retirement Solutions (403b - Indv) |
| OPPENHEIMER | | Oyster Bay E Norwich CSD 403b |
| | 00195 1951236708 | International Diversified Fund A |
| | 00410 4102673484 | Gold & Special Minerals Fund A |
| | 00251 2513238851 | Small - & Mid Cap Value Fund A |
| | 00500 5004695042 | Discovery Fund A |
| | 0030 3008039966 | Capital Income Fund A |
| | 00735 7352329712 | Commodity Strategy Total Return Fund A |
| | 0030 3304S52396 | Global Fund A |
| | 00835 2401354122 | Equity Income Fund, Inc. A |
| | 500 5002316743 | 401k |
| | | Country Bank Trust 403B |
| GWM Securities | | |
| Steme Agge | XXXXX-4980-1 | |
| Steme Agge | XXXXx-2573-1 | |
| MG Trust Co., LLC | XXXX | |
| BANK OF AMERICA | XXX 3181 | BofA Core Checking |
| | XXX 4215 | Regular Savings |
| | XXX6856 | BofA Platinum Checking |
| | XXX2937 | |
| | | |
| CITIBANK | XXX3584 | CitiGroup Interest Checking |
| | XXX3592 | Savings Plus Account |
| | XXX2761 | Money Market Savings |
| Nassau Educators Federal Credit Union | XXX5521 | |
| | XXX0412 | |
| Beth Page Federal Credit Union | 9978596352 | Checking |
| Beth Page Federal Credit Union | 9978167410 | Savings |
| Beth Page Federal Credit Union | 9974974223 | |

Complete loan application and all supporting documentation and communications (including email) re:

Chase Home Mortgage Loan #: 1118165989

Chase Home Mortgage Loan #: 1118322307

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### EASTERN District of NEW YORK

In re  BRIAN H. DENKER-YOUNGS
_____
                        Debtor

*(Complete if issued in an adversary proceeding)*

         BRIAN H. DENKER-YOUNGS
                    Plaintiff
                        v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
                    Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED 2015 DEC 21 P 12: 00
CLERK U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: CHASE MORTGAGE BANKING EXECUTIVE OFFICES
_____
                    *(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: all documentation, mortgage loan application(s), submissions, supporting documentation, communication logs, notes having to do with loan number(s): #1118322307 and #: 1118165989 by/for Denker-Youngs

| PLACE | DATE AND TIME |
|-------|---------------|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016  @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|-------|---------------|
|       |               |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

*Nawla Smell*
                    *Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena, are:
 25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

EASTERN District of NEW YORK

In re BRIAN H. DENKER-YOUNGS
_____
Debtor

Case No. 15-41069

*(Complete if issued in an adversary proceeding)*

Chapter **7**

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: BETHPAGE FEDERAL CREDIT UNION
_____
*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka John Youngs social ending in #0458

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016 @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _12/21/2015_

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## EASTERN District of NEW YORK

In re BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED 2015 DEC 21 P 12: 00
CLERK U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Glenn M. Gordon of and for Gwn Securities, Inc .and CGAA INC and Oppenheimer, and etc.,
_____
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka Edward J Youngs SS ending #0458

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016  @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## EASTERN District of NEW YORK

In re  BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED
2015 DEC 21 P 12: 00
CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Monroe "Roey" Diefendorf of and for Sterling Monroe Securities,Diefendorf Capital, Argonne Trust Company, Inc.,3 Dimensional
Wealth Advisory, Diefendorf Planning Services, Ltd., Structured Capital Designs, Inc., Consolidated Portfolio Review Corp., Retirement
Planning & Administration, Inc.,The Tax Advisory Group, Inc.,3 Dimensional Wealth Foundation,  Diefendorf Planning Services, LTD

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the
material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the
period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka Edward J Youngs SS ending #0458

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016  @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are
attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a
subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not
doing so.

Date: _12/21/2015_

CLERK OF COURT

_signature_
Signature of Clerk or Deputy Clerk

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS,  who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the
inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on
the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### EASTERN District of NEW YORK

In re BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069
_____

Chapter 7
_____

Adv. Proc. No. _____

RECEIVED

2015 DEC 21 P 12: 00
CLERK U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Glenn M. Gordon of and for Gwn Securities, Inc .and CGAA INC and Oppenheimer, and etc.,
_____
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka Edward J Youngs SS ending #0458

| PLACE | DATE AND TIME |
|-------|---------------|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016 @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|-------|---------------|
|       |               |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena are:
25 BOERUM STREET, #18E BROOKLYN, NY 11206 T. 917.373.5019 EMAIL: BHDENKER@GMAIL.COM

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT
## EASTERN District of NEW YORK

In re BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED 2015 DEC 21 P 12:00
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK
CLERK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: CHASE MORTGAGE BANKING EXECUTIVE OFFICES
_____
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: all documentation, mortgage loan application(s), submissions, supporting documentation, communication logs, notes having to do with loan number(s): #1118322307 and #: 1118165989 by/for Denker-Youngs

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016 @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### EASTERN District of NEW YORK

In re BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED 2015 DEC 21 P 12:

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: BANK OF AMERICA CORP, and/or BANK OF AMERICA,N.A.,and/or investment partners Merrill Lynch

*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka John Youngs social ending in #0458

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016 @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

EASTERN District of NEW YORK

In re  BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED 2015 DEC 21 P [illegible]

CLERK U.S. BANKRUPTCY COURT EASTERN DISTRICT NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  OppenheimerFunds Distributor, Inc.
_____
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka Edward J Youngs SS ending #0458

| PLACE | DATE AND TIME |
|-------|---------------|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016 @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|-------|---------------|
|       |               |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/21/2015

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS,  who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

## EASTERN District of NEW YORK

In re  BRIAN H. DENKER-YOUNGS
_____
Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No. _____

RECEIVED 2015 DEC 21 P 12: CLERK U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: BANK OF AMERICA CORP, and/or BANK OF AMERICA,N.A.,and/or investment partners Merrill Lynch
_____
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, despoits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka John Youngs social ending in #0458

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016  @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS,  who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### EASTERN District of NEW YORK

In re BRIAN H. DENKER-YOUNGS

Debtor

*(Complete if issued in an adversary proceeding)*

BRIAN H. DENKER-YOUNGS
Plaintiff
v.
EDWARD J. DENKER-YOUNGS, aka E John Youngs, etc
Defendant

Case No. 15-41069

Chapter 7

Adv. Proc. No.

RECEIVED 2015 DEC 21 P [illegible]
CLERK'S COURT U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: OppenheimerFunds Distributor, Inc.

*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: true and accurate copies of all account(s) statements, images, tickets, desposits, withdrawals, investments thereto for the period 8/1/2010 - 9/1/2015 by & for Edward John Denker-Youngs, aka E John Youngs, aka Edward J Youngs SS ending #0458

| PLACE | DATE AND TIME |
|---|---|
| 25 Boerum Street #18E, Brooklyn NY 11206 | January 10, 2016  @ 4:00pm |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/21/2015

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, email address, and telephone number of the debtor Pro Se
BRIAN H. DENKER-YOUNGS, who issues or requests this subpoena, are:
25 BOERUM STREET, #18E  BROOKLYN, NY 11206  T. 917.373.5019  EMAIL: BHDENKER@GMAIL.COM

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Power of Attorney, General**

I, Brian Howard Denker- Youngs ("Declarant"), residing at 99 West-Shore Road, Huntington, NY 11743, hereby appoint Lorraine Moskowitz of 252-29 60th Avenue, Little Neck, NY 11362, Patricia Moskowitz of 252-10 58th Avenue, Little Neck, New York, and John Denker-Youngs of 99 West Shore Road, Huntington, New York, to act jointly as my Agents. Should any of my Agents die, refuse or otherwise be unable to act or continue to act as my Agent(s), the remaining Agent(s) shall continue to act for me in the same capacity(ies).

I hereby revoke any and all general powers of attorney and special powers of attorney that previously have been signed by me. However, the preceding sentence shall not have the effect of revoking any powers of attorney that are directly related to my health care that previously have been signed by me.

This instrument will be governed by the laws of the State of New York. Further, my Agent is directed to act in accordance with the laws of the State of New York at any time he or she may be acting on my behalf.

My Agent may not delegate any authority granted under this document.

My Agent shall have full power and authority to act on my behalf.  This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future.  My Agent's powers shall include, but not be limited to, the power to:

1) Open, maintain or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with financial institutions.

    a) Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

    b) Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

    c) Have access to any safe deposit box that I might own, including its contents.

2) Sell, exchange, buy, invest, or reinvest any assets or property owned by me.  Such assets or property may include income producing or non-income producing assets and property.

3) Purchase and/or maintain insurance and annuity contracts, including life insurance upon my life or the life of any other appropriate person.

4) Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.

5) Enter into binding contracts on my behalf.

6) Exercise all stock rights on my behalf as my proxy, including all rights with respect to stocks, bonds, debentures, commodities, options or other investments.

7) Maintain and/or operate any business that I may own.

8) Employ professional and business assistance, as may be appropriate, including attorneys, accountants, and real estate agents, for my personal or business affairs.

9) Sell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of my property (now owned or later acquired) including, but not limited to, real estate and real estate rights (including the right to remove tenants and to recover possession).  This includes the right to sell or encumber any homestead that I now own or may own in the future.

10) Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

11) Prepare, sign and file income and other tax returns with federal, state, local, and other governmental bodies.

12) Obtain information or documents from any government or its agencies, and represent me in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

13) Prepare applications, provide information, and perform any other act reasonably requested by any government or its agencies in connection with governmental benefits (including medical, military and social security benefits), and to appoint anyone, including my Agent, to act as my "Representative Payee" for the purpose of receiving Social Security benefits.

14) Make gifts from my assets to members of my family and to such other persons or charitable organizations with whom I have an established pattern of giving, to file state and federal gift tax returns, and to file a tax election to split gifts with my spouse, if any.

15) However, my Agent shall be prohibited, except as specifically authorized in this instrument, from (a) gifting, appointing, assigning or designating any of my assets, interests or rights, directly or indirectly, to my Agent, my Agent's estate or creditors, or the creditors of my Agent's estate, (b) exercising any powers of appointment I may hold in favor of my Agent, my Agent's estate or creditors, or the creditors of my Agent's estate, or (c) using my assets to discharge any of my Agent's legal obligations, including any obligations of support which my Agent may owe to others, excluding those whom I am legally obligated to support.  I appoint   Marsha Mayers, of 252-39 60th Avenue, Little Neck, NY 11362 as my substitute Agent for the sole purpose of making gifts of my property to my Agent or disclaiming assets that then pass directly or indirectly to my Agent or my Agent's estate, as either may be appropriate (unless this substitute Agent is also the Agent):

> (a) Transfer any of my assets to the trustee of any revocable trust created by me, if such trust is in existence at the time of such transfer.

16) Subject to other provisions of this document, disclaim any interest, which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate.  However, my Agent may not disclaim assets, to which I would be entitled, if the result is that the disclaimed assets pass directly or indirectly to my Agent or my Agent's estate.

This Power of Attorney shall be construed broadly as a general Power of Attorney.  The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing: (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, or (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith.  However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney.  A successor Agent shall not be liable for acts of a prior Agent.

No person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to my estate, my personal representative or me.  I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.  If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

My Agent shall be not be entitled to compensation for any services provided as my Agent with the exception of the reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent, but only if I so request or if such a request is made by any authorized personal representative or fiduciary acting on my behalf.

This Power of Attorney shall be effected and binding on the date and time coinciding with a future occurrence of mental or physical incapacity by which my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute prohibiting me from conducting such affairs for thy self.   This is a Durable Power of Attorney.   This Power of Attorney shall continue effective until my death.   This Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

_____
Declarant

Witness Signature:
Address:
316 West Neck Rd
Huntington NY 11943

Date:   1/29/13

_____
Witness Signature
Address
252-39 60th Ave
Little Neck, NY 11362