Brian H. Denker-Youngs
25 Boerum Street Apt 18E
Brooklyn, NY 11206
Tel. 917.373.5019

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

2015 JAN -6  A 11: 09

RECEIVED

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
In re:

BRIAN H. DENKER-YOUNGS                                    Chapter 7
Debtor                                                    Case Number 15-41069
-----------------------------------------------------X

## DEBTOR'S AFFIDAVIT IN OPPOSITION TO NON-DEBTOR SPOUSE EDWARD JOHN DENKER-YOUNGS' MOTION TO SQUASH SUBPEONAS AND IN FURTHER SUPPORT OF AN ORDER COMPELLING ALL PARTIES COMPLIANCE

Brian H. Denker-Youngs, debtor herein submits this affidavit in opposition to the "non-debtor spouse" Edward John Denker-Youngs' motion to squash subpoenas' issued on December 21, 2015 by the Clerk of the Court for the United States Bankruptcy Court, Eastern District of New York and in further support of an Order Compelling all parties compliance thereto.

### SUPPORTING FACTS AND BACKGROUND

1. Debtor asserts that such Motion to Squash filed by the non-debtor spouse, Edward John Denker-Youngs, is yet another of the non-debtor spouses' continual attempts to not only circumvent and comply with any form of discovery but moreover, does so in order to further conceal the fact that without your deponent's knowledge or consent commencing just shortly after inducing your deponent into a marriage, he began to fraudulently transfer, steal and convert marital assets which in fact exists exist, but to what extent is the pending question.

2

2. Together with his mother Matje G. Youngs, as your deponent put forward in the "Debtor's Brief of Financial Affairs" and additional supporting evidence in "Debtor's Affirmation" filed with this court [ECF Doc 109 and 153], the non-debtor spouse and his mother were engaged in various and many acts of identity theft, conversion, forgery, check fraud, bank fraud and mortgage frauds as your deponent has alleged and further submitted evidence of the same by way of supporting exhibits [ECF DOC 109 and 153].

3. In support of your deponent's Cross-Order to Show Cause herein seeking the denial of the non-debtor's Motion to Squash, and an order directing parties' to comply with such subpoenas and further and such other reliefs as requested and the honorable court deems just and proper.

4. Your deponent restates each and every allegation contained in ECF DOC 109, "Debtor's Brief of Financial Affairs" and submits the same along with the exhibits filed thereto herein with the same force and effect and further presents additional support by way of Debtor's Affirmation [ECF Doc 153] restating each and every allegation therein as well with the same force and effect together and along with the supporting documentary evidence displaying examples of such fraudulent, financially abusive and borderline criminal acts of the non-debtor spouse and his mother.

5. What is most remarkable however is that within the Motion to Squash, the non-debtor spouse fails to specifically state or identify the undue burden, harm or damages that would befall him should parties actually comply with the subpoenas.

6. Your deponent asserts that the only plausible reason the non-debtor has for objecting to the compliance of such is in fact that it would only further support your deponent's allegations of such frauds and further bring to light that your deponent has been

3

intentionally setup in the within bankruptcy petition as a "puppet" and scape-goat for another economic and financial fraud by the non-debtor spouse, whereas this proceeding is being leveraged as a weapon to dodge any and all responsibilities that the non-debtor spouse has for debts and to your deponent and your deponent's now "bankruptcy estate". As such, essentially a bankruptcy fraud to which he is committing behind the scenes yet.

7. The requested production of documentation of the various subpoenas would exhibit to this court. that commencing in 2012/2013 the non-debtor spouse began deferring sizable sums of marital income upwards and exceeding nearly $37,000 a year (maybe more) into newly established 403(b) retirement trusts for the benefit of John Youngs, withdrew sizable amounts of money each month from joint bank accounts and making sizable payments using your deponent's income, and other marital funds to the non-debtor's separate credit cards, sometimes payments for amounts over and above the total balance of debt, and further used your deponents income and marital funds to support his mother's household living expenditures and upkeep, further exhibited via checks #1077-1150 of the parties' joint Chase checking account containing nearly a sum total of almost Ten Thousand Dollars ($10,000) of checks, some of them your deponent believes to be Matje's forging of the non-debtor spouses' signature on those checks.

8. It is important to note that the period of time for documents being requested is that in which both parties were in fact financially obligated to one another, domiciled together with the non-debtor spouse not only having direct access to but essentially controlled your deponents' assets and that of your deponent's estate. Attached hereto as *"exhibit 1"* is a Bethpage Federal Credit Union checking statement from August 2010 and a Geico

car insurance statement to establish such threshold to time and place of the parties being entwined together financially.

9. Further, your deponent wishes to memorialize and point out for this honorable court that of even date, despite the allegations and assertions, the non-debtor spouse, as he has in the State Court before Justice David T. Reilly (the spouse of Martha Reilly, a Huntington School teacher and colleague of Edward's good friend and long-time former colleague Traci Roethel, and fellow Huntington Republican Committee member to Justice Paul Senzer, a close and personal friend of the Youngs and Van Nostrand's - Edward's Aunt & Uncle), Edward has before this court not been forthcoming and honest one bit and further has failed to invoke or establish as a defense by any means, including citing The Fifth Amendment of the United States Constitution[1]

10. Therefore, procedurally your deponent requests that the honorable court consider such to be the non-debtor spouse's voluntary waiver[1] of ever asserting such a defense to any and all related allegations in the premised case herein and be restrained from asserting the same as a plausible defense hereinafter.

11. Your deponent continues to assert that such funds to which should have been paid over to your deponent's creditors still exists upon information and belief and attached hereto as exhibits "2", "3", and "4" are supporting documents in re: the 403(b) retirement trusts, wealth management accounts and the "Living Trust of Matje G. Youngs" respectively, your deponent also puts forth ironically the opening and drafting off all the same being done subsequent to the August 2010 opening of joint accounts and becoming domiciled together.

---

[1] A waiver of the Fifth Amendment privilege against self-incrimination may be inferred from a witness' course of conduct or prior statements concerning the subject matter of the case. U.S. Const. amend. V.; *In re Donald Sheldon & Co.*, 193 B.R. 152, 162 (Bankr.S.D.N.Y.1996). The court need not look into whether the witness was aware of the privilege and chose to waive it consciously. *In re Donald Sheldon & Co.*, 193 B.R. at 162.

12. Prior to December 25, 2015, your deponent did in fact alert and warn both the State Supreme Courts, Lawrence Morrison and Trustee McCord as to first-hand knowledge that there is at least one overseas account to which your deponent is aware of having witnessed Matje G. Youngs bank via ATMs in and around the Netherlands where she in fact was born and where both her and the non-debtor spouse in fact have many family members, friends and vested interests. Ironically the non-debtor spouse as displayed in the attached exhibit "5", the non-debtor spouse just spent time in the Netherlands, absent of even date turning over or furnishing any statements for any accounts since filing a Summons with Notice on August 27, 2014. Henceforth, conceivably could have transferred such assets out of the country during this trip.

13. Another example of such intentional conduct and behavior to which the non-debtor spouse sought to defraud your deponent was the secretive deferments of upwards and possibly exceeding $37,000 of marital income as displayed in the attached "exhibit 6" which displays the 2010, 2011 and 2013 W-2s of the non-debtor spouse, whereas in 2011 when the parties were married such did not exist but shortly thereafter, as evidenced and without your deponent's knowledge or consent thereto, sizable deferments, into protected accounts, inaccessible to your deponent. These are the same accounts to which as previously filed the certified transcript with this court in the debtor's brief, that the non-debtor spouse emailed Glenn Gordon inquiring to a withdrawal as your deponent demanded of Edward via the recorded telephone call of August 25, 2014. Thus was in direct reference to and is what accounts for at present, a $123,737 lien against your deponent's home and referred to as the Bethpage Federal Credit Union Home Equity Line of Credit.

14. Notwithstanding that your deponent was lucky enough to discover and find the 2010 and 2011 W-2 in papers having to do with our application for a home mortgage, the non-debtor spouse has yet before this or any other court disclosed having deferred such income which was an intentional act to defraud and cheat your deponent and restrict access to such funds which should have been accessible and paid onto your deponent's creditors and debt obligations, pursuant to 11 U.S.C. § 541(a). These deferments in fact are monies deemed "marital income" and thus should been counted as a part of and included inyour deponent's bankruptcy estate.

15. Therefore, in order to effectively determine and gain a clear understanding as accurately as possible to the extent assets available for the administration of such debt obligations in your deponents estate, the production of documentation as requested within subpoenas to the Oyster-Bay East Norwich Central School District, Oppenheimer, Merrill Lynch Investments, Glenn Gordon – financial advisor to the non-debtor spouse and Monroe Diffendorf of Three Dimensional Wealth Advisors – personal friend and advisor to the non-debtor spouse and Matje G. Youngs.

16. A side bar supporting fact and certainly an interesting acquaintance given the alleged fraudulent acts committed against your deponent; Monroe "Roey" Diffendorf is also the author of recently published book "A Better Way: Using Purposeful Trusts To Preserve Values and Valuables In Perpetuity", excerpts from the book displaying the subject matter and type of content contained therein are attached for the courts perusal hereto as "exhibit 7"

17. Your deponent also asks that this honorable court see through the smoke screened efforts of the non-debtor spouse, who by and through his own filings and representations before

this court, never once has he disclosed the withholding and deferments or the availability of such funds to this honorable court. Instead, Edward further puts forth many misstatements by and through his counsel, which in all essence is a willful act and attempt on his part to intentionally hide assets from this honorable court and hindering a possible and successful administration of the bankruptcy estate satisfying such debt obligations; in essence a 'fraudulent act' against the proceeding herein using your deponent as a scape goat and further defraud this honorable court and diminish the significance of the reliefs afford to "honest debtors" under the United States Constitution and Bankruptcy Rules & Procedures.

18. In accordance with 11 U.S.C. § 548, such transactions were conducted without your deponents' knowledge, authorization or consent and therefore should be viewed as fraudulent transfers of assets, which pursuant to 11 U.S.C. § 511 and U.S.C. § 547, the return of those funds should be pursued in making the same available to creditors and thus further supports the need for subpoenas in being able to determine exactly how much and where those funds are being kept presently.

## SUCH DEBTS ARE MARITAL AND/OR AN OUTRIGHT RESULT OF FRAUD AGAINST THE DEBTOR

19. As displayed in emails to/from Mr. Morrison attached hereto as "exhibit 7", dated May 21, 2015 thru June 26, 2015, which reaffirm such allegations with respect to the non-debtor spouse and Mr. Morrison's filing for a 2004 Application and Examination of the

non-debtor spouse and further the assertion that he was in fact waiting upon a court date to present such subpoenas to the court, however apparently never did.

20. Mr. Morrison put forward that he had the ability to do so and that such was in fact one of the ways to assist your deponent and a reason to file under a Chapter 11, so he could help together with this honorable court to find, litigate and take back such funds and pay your deponent's creditors, alleviating your deponent of such financial burdens that I neither created, knew about or consented to.

21. Your deponent asserts that absent acquiring such support by way of requested documentation which is essentially evidence that would enable your deponent to succeed in bringing about a successful outcome to any adversarial proceeding against the debtor-spouse and his mother and proposing an effective plan all for which are in fact core issues of the bankruptcy estate, and essentially fall under 28 U.S.C. § 157(b) (2) (A).

22. On August 6, 2015, Mr. Morrison further reinforced for this court the 2004 Examination being necessary as the issues at hand are independent of the matrimonial proceeding and indeed they are as such acts against your deponent by Edward commenced prior to the marriage.

23. Worth mentioning in respect to the marriage and/or dissolution thereof by way of and reference to the Supreme Court proceeding in Suffolk County. Interestingly enough, not only have acts of docket tampering, fraud upon the court, and misstatements of facts in court orders been discovered by your deponent, but the entire proceeding in itself as verified by court transcript before Justice Bivona on April 3, 2015, some seven months after an initial Summons with Notice filed (and never served) there in fact still had not

existed a "Verified Complaint" and as of even date, your deponent and the non-debtor spouse are neither legally separated or engaged in a fair, just and lawful proceeding.

24. In fact, attached hereto as *"exhibit 8"* is the eTrack court record summary dated March 17, 2015 which the court should take note of the submit dates of the motions, and the fact that no Orders existed on file. And further directing the court's attention to an adhoc December 9, 2015 eTrack court record update (*"exhibit 9"*) (for which the only next scheduled court date after November 23 is January 19, 2016, however with one motion returnable on November 27 and attached hereto as *"exhibit 10"* which your deponent appeared in court as calendared but neither the non-debtor spouse, his counsel or even Judge Reilly (out from work that day) were there, yet such returnable motion was in fact filed by the non-debtor spouse and asserting an action against your deponent and seeking to also demand and collect money from your deponent. Further proving the same, your deponent filed what would be "Motion 8" of your deponents' and is attached hereto as *"exhibit 11"* which in fact was granted, yet your deponent's Motion to Recuse was Ordered to the Clerk of the Court to be rejected.

## FURTHER SUPPORT OF THE FINANCIAL FRAUDS AND ACTS AGAINST YOUR DEPONENT

25. In further support and displaying Edward's direct involvement in the cause of your deponent's present financial state of affairs and any cause for action against the non-debtor spouse, your deponent puts forward the attached *"exhibit 12"* is the New York State Unified Court System Webcrims arrest record of Edward John Denker-Youngs dated May 6, 2015 which was the result of a New York Police Department investigation of identity theft of your deponent and an unauthorized ACH withdrawal of $400 from a

separate and pre-marital checking account your deponent held with his 82-year old aunt, Lorraine Moskowitz.

26. Your deponent provides the attached *"Exhibit 13"* which displays supporting documentation that prompted NYPD Detective Kenneth Gialanza's investigation andultimately led to the arrest of Edward John Denker-Youngs. There is at present a second investigation to which upon information and belief of Detective Ruth Paredes, the non-debtor spouse is yet again a suspect in another "Identity Theft" case she is assigned.

27. As previously mentioned your deponent not only informed Mr. Morrison at several junctures prior to the filing off any petition within this court, subsequent to a filed dispute and complaints against the missing, unaccounted for $123,737 of Home Equity Monies drawn up and dissipated by Edward, Equifax engaged in such research and examination with Bethpage Federal Credit Union and removed such debt from your deponent's credit file in March 2015 and May 2015 respectively confirming the same. At present there is a $123,737 lien against your deponent's home located at 33 Pennington Drive, Huntington NY to which also displayed by *"exhibit 14"* a sum total exceeding more than One Hundred and Fifty Thousand Dollars of assets of your deponent's went to a Chase Sapphire Credit Card ending in x9039 and as stated within *"exhibit 15"*, Equifax's findings of March and May 2015 as well as a letter from Ms. Harriet Thatched of Chase's Executive Offices and further claims filed by your deponent in January 2015, such funds clearly went to the exclusive benefit of the non-debtor spouse.

28. Of additional support, attached hereto as *"exhibit 16"* is the January 2015 and February 2015 front pages of the Bethpage Federal Credit Union statement for the Home Equity Line of Credit and contains an address change from the marital home to a private,

separate and personal Post Office Box of the non-debtor spouse; Hence just by his own mere action of changing the address to a private separate destination of his own, displays that he too must perceive such account and obligation as solely his and not that of your deponent since upon such action, your deponent no longer has access to the account or statements. If such would be "joint", then in fact such a change of address would be a a direct violation of the automatic orders in place as of August 27, 2014 the day the non-debtor spouse filed a Summons with Notice in re: New York State Supreme Court Index No. 16968-2014.

29. Your deponent, further reminds this honorable court of additional acts as referenced in the debtor's brief and affirmation in further support [ECF 109 AND 153], citing such examples of the non-debtor spouses' fraudulent conduct and transfers of your deponent's assets and/or diminishing and intentionally harming your deponent's financial stability, commencing in December 2012 and January 2013. There was the Four Thousand Dollars ($4,000) unauthorized balance transfer of debt from non-debtor spouses Chase Sapphire credit card to your deponent's pre-marital Discover account that had no balance transacted by the non-debtor spouse and for which your deponent has made several unsuccessful attempts to file a Police report and/or alert the District Attorney but have been advised that such needs to be by the direction of a court given our marriage to one another.

30. Of specific and worthy note ,is that the non-debtor spouse had and still has his own Discover account and prior to transacting that balance transfer of Four Thousand Dollars and involuntary debt assignment unto your deponent, the non-debtor spouse made several sizable payments including nearly Twenty-Nine Thousand Dollars to his Citibank

Credit Card, allowed the marital home mortgage to present with non-sufficient funds to the parties' Chase joint checking account that then automatically charged the overdraft to your deponent's separate Chase Slate credit card. Thereafter, the non-debtor spouse made a deposit utilizing funds from the parties Bethpage Federal Credit Union's joint checking in an account of $3,000 and only contributed $1,000 of his earned marital income, then sent a payment out of over Six Thousand Dollars to his separate GM Credit card. [Ref. ECF DOC 109].

31. In February 2013, the very next month, the non-debtor spouse deposited a check for Ten Thousand Dollars from "MG Trust" into his Bank of America account from a secret wealth management account and in March 2013 took a cash advance against his Citibank credit card for Four Thousand Dollars ($4,000); in April he then wrote a credit from the parties' joint account for Nine Thousand Dollars ($9,000) to that same Citibank credit card. All the while again in March 2013, allowing an overdraft of charges go onto your deponents Chase Slate credit card once again.

32. Your deponent has attempted by filing of an Order to Show Cause before the State Supreme Court, County of Suffolk on November 6, 2014, requesting the court direct the non-debtor spouse to account for what he had done with marital income during the course of the parties' marriage, what he had done with $123,737 of a Bethpage Home Equity Line of Credit and nearly ($20,000) Twenty-Thousand Dollars of cashed medical insurance reimbursement checks and such Chase Sapphire credit card expenditures, that are directly related to current liabilities of your deponent, not only was such request never addressed by the State Court in writing or in court proceedings, but by mere omission absent from the June 23, 2015 "first and only order" your deponent is aware of the court

issuing and/or ever a notice of entry served upon your deponent for, "anything requested and not mentioned was denied".

33. According to U.S.C. 541(a) (2), property of the estate is defined as including "all interests of the debtor and **the debtor's spouse** in community property as of the commencement of the case that is (A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." [Emphasis added.]

34. 11 U.S.C. § 541(a)(5) suggests that, if a concurrent divorce proceeding is finalized fewer than 180 days after the filing of a bankruptcy petition, any equitable division or interest could possibly be entered as a claim within the bankruptcy estate and as such there is some obligation and duty of your deponent to disclose the same herein. Absent the non-debtor spouse's cooperation and adherence to any discovery demands put forward and served upon him in the State proceeding, your deponent is being handicapped in being able to put forth and comply with accurately and honestly being able to put forward if any such claims exists.

35. As provided for and established what and how is it determined whether a debt is in the nature of (1) alimony, maintenance, or support (523(a) (5), or (2) property division/debt allocation, are in fact considered "core" matters under 28 U.S.C. § 157(b) (2) (B) and (I) and may be <u>determined by either</u> the bankruptcy or family court due to concurrent jurisdiction.

36. Given the conflicts of interest and the dishonorable injustices taking place before the Supreme Court in Suffolk County, your deponent submits the attached *"exhibit 17"*, the

14

Affirmation of Anthony A. Capitola seeking a "stay" from the appellate court in December 2014. This recap contains an affirmation that will also provide this court a better sense of what truly occurred in re: exclusive occupancy rulings of the court and in further support of such arguments in re: debtor's right and this honorable court's consideration to homesteading; This is shared, as your deponent respectfully requests, given the allegations of fraud upon the Suffolk County Supreme Court tied to and in connection with the non-debtor spouse, that this court entertain in the best interest of justice, and the bankruptcy estate, that this court execute upon its' authority and jurisdiction and preside over any and all such matters pertaining to assets and liabilities of the parties to the extent allowable under the law and the extend of bounds afforded to this court as an extension of the District Court of the State of New York, and wherever allowable by law, refrain abstaining from matters, and leaving it to the State Court to determine.

### NON-DEBTOR'S OBJECTIONS TO DISCLOSING OF STATEMENTS OR INFORMATION AND DOCUMENTATION

37. While state law mandates the turning over and disclosure of all financial assets and information during matrimonial divorce proceedings to which the non-debtor spouse has yet to do someone four-teen months after serving such discovery demands onto him, aspects of certain subpoena's requests are requests for the production / release of documentation that is that of your deponent's or jointly of both parties, inclusive of which were subpoena's to Chase Home Mortgage, Natasha Meyers and the Suffolk County Clerk of the Court.

38. The non-debtor spouses' motion demanding all subpoenas be squashed including such information that the non-debtor spouse has proactively gone forward against automatic orders of the state courts and restricted your deponent's access to such information is only another display of the non-debtor's attempt to hide and conceal assets that exist for the benefit of creditors that he has fraudulently transferred without your deponents knowledge and to further abuse and victimize your deponent.

39. Granting the non-debtor's Motion to Squash the subpoenas would further handicap and prevent your deponent's access to and ability to put forward a fair and just defense before this honorable court in support of current pending and calendared motions, and further handicap your deponent's ability to establish merit for the commencement of adversarial proceedings where appropriate and further aide in the drafting of a potential plan for which your deponent might potentially be able to emerge from bankruptcy under a Chapter 11 or 13 plan and meeting the financial obligations to those creditors that have just claims against your deponent as a direct result of the fraudulent conduct of the non-debtor and his mother. Such conduct is apparently common as your deponent has learned there is a history of past and previous acts of mortgage fraud, insurance fraud, banking and check fraud committed by Edward J. Denker-Youngs and Matje G. Youngs.

## A HISTORY OF ECONOMIC AND FINANCIAL FRAUDS BY THE NON-DEBTOR SPOUSE

40. It is of interest and worth mentioning that the non-debtor spouses' inclusion and objection to such subpoenas requested for Chase Home Mortgage and Natasha Meyers, et al is only a further display of the non-debtor spouse's intentional acts to conceal his fraudulent behavior

and conduct as the subpoenas are requesting records to which your deponent is either a co-applicant or are records that in fact are documents submitted or true and accurate copies of files your deponent has handed over and at one point was in fact in your deponent's possession. Hence the non-debtor spouse has no grounds to object to your deponent making such request for copies of such files that lawfully include and are affairs of your deponent.

41. As it relates to Chase, it has come to light, the non-debtor spouse had engaged behind your deponent's back with Chase Mortgage with respect to our home purchase with what apparently appears to be two (2) simultaneous mortgage loan applications that resulted in the issuance of a mortgage in the amount of Three Hundred Sixty Four Thousand Dollars ($364,000) that the non-debtor spouse had going with Chase during 2012. Attached hereto as "exhibit 18" are true and accurate copies of documents pertaining to both loan numbers that your deponent was able to ascertain while not in possession of but seeks complete true and accurate copies of all documents related thereto to determine how the non-debtor spouse fraudulently had your deponent removed from such mortgage loan the day of closing without your deponents authorization or consent.

42. Also, this court should take notice (and as was pointed out in motions before Justice Reilly in the State Supreme Court and never addressed), take notice that the joint net worth of the parties according to the mortgage loan application of April 2012 was $690,292 yet in a re-submitted mortgage loan application dated October 12, 2012 (the day of closing) listing only the non-debtor spouse with an address that ironically is your deponent's Brooklyn Mitchel-Lama Co-op, such network is listed as $175,879. Henceforth, begs to question in a matter of six months what happened to $514,413. This mystery has yet in fact to be answered and your deponent suspects that within that answer, further would be other answers and

solutions as to how your deponent might construct a plan in which to have the ability to emerge successfully in addressing and satisfying such debt obligations to the various creditors.

43. While your deponent does not dispute that the non-debtor spouse handled the interaction with Chase mortgage representative Alexa Mercier, as displayed your deponent was a co-applicant on both loans at various junctures and as such your deponent certainly has a legal right to such documents. However, as displayed in the attached *"exhibit 19"* where your deponent was able to request information and documents in May 2015 and thereafter in June 2015 and onward received notices declining to engage with your deponent, Chase has by phone informed your deponent that on/about June 2, 2015 in writing the non-debtor spouse Edward instructed Chase that they were to cease and desist from engaging and discussing anything having to do with a mortgage for some real property located at 33 Pennington Drive, Huntington New York 11743 to which your deponent is co-owner of, evidenced by the attached *"exhibit 20"* true and accurate copies of such title insurance, home owners' property insurance and checks having to do with the purchase of said property.

44. Consistent with acts of mortgage fraud, attached hereto as *"exhibit 21"* are documents displaying the Suffolk County Public Record for some real property with a known address of 99 W Shore Road, Huntington, NY 11743 that displays in 2003 a second mortgagor was added in the name of E J Youngs to which is a known active alias used by the non-debtor spouse and is one of approximately 6-8 aliases as your deponent had been informed by detectives that the non-debtor spouse uses.

45. Thereafter, in 2006 the non-debtor spouse submitted the universal loan application also affixed in *"exhibit 22"* misstating the value and original price of the property was $625,000 and secured a mortgage loan for $305,000, some $5,000 more than the property was purchased for the property and never reached such market values in the history of owning the property, simply put another such example of the non-debtor spouses' history and conduct of committing financial and economic frauds.

46. Unrelated to your deponents' petition but certainly an act against your deponent is displayed in the attached *"exhibit 23"* documents pertaining to a Suffolk County Police Internal Affairs complaint regarding police reports filed and evidence discovered between Bethpage Federal Credit Union business checking account of your deponent's businesses to which fraudulent payees had been discovered pulling and pushing monies to/from your deponents business checking account to an account benefiting the non-debtor spouse and the reporting officer (a friend of the non-debtor spouse) documenting an entirely fabricated alternative summation than the reality of why they were called to the bank… the discovery of fraudulent payees and forged checks amounting to an estimated loss of $5,000 committed against the business by the non-debtor spouse.

### STATUTORY DUTURES PURSUANT TO 28 U.S.C. § 586 AND 18 U.S.C. § 3057

47. It is well known and established that a person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to fine and/or imprisonment. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other departments.

48. As your deponent has previously provided this court with copies of such complaints and communications thereof, for filing under seal as the pending motion is calendared, your deponent has made such attempts to engage the Attorney General for the State of New York and the United States Government Attorney with and inclusive of the non-debtor's various act of economic and financial frauds.

49. Henceforth, your deponent reinforces the appropriateness and applicability of requesting the production of documents pursuant to the requested subpoenas supporting such allegations supported pursuant to 11 U.S.C. § 523(a)(5) and 523(a)(15), 11 U.S.C. § 541(a),11 U.S.C. § 548 , 11 U.S.C. § 101(5),101(7) and 101(14A) and further requests this honorable court assist your deponent in putting an end to such abuse and victimization of your deponent by commencing and engaging the United States Government Attorney's Office pursuant to the court's statutory duties under 28 USC § 586 and 18 USC § 3057 including and not limited to the economic and financial acts of fraud by the non-debtor spouse and such allegations of docket tampering, and fraud upon the court in the County of Suffolk by and in connection to the non-debtor spouse herein, "Edward J Denker Youngs" who has also established a unique record filing of his own as in bankruptcy court in the event he apparently upon information and belief decides to file an involuntary petition for bankruptcy by and through his counsel.

WHEREFORE, the debtor Brian H. Denker-Youngs, upon the affidavit herein and the allegations contained together with the exhibits attached thereto and ECF DOC 109 and 153 prays an order of this court:

1. Denying the non-debtor spouses' motion to Squash debtor's requested & issued subpoenas

2. Compelling parties to comply with such subpoenas

3. Issuing an Order on referral to the United States Government Attorney's Office as follow on to your deponent's submission to launch such inquiries and Investigations into the potential existence of such alleged financial crimes and frauds by Edward J Denker-Youngs and Matje G. Youngs and such other allegations of fraud upon the Supreme Court of the State of New York, County of Suffolk.

4. Any and further such reliefs this court deems just and proper.

No other such request for relief has been made before this or any other court.

Date:   January 4, 2016

_____
Brian H. Denker-Youngs

Sworn to this 4 day of January 2016

MI E. SCHAEFERING
Notary Public State of New York
No. 01SC6139034
Qualified in Nassau County
Term Expires December 27, 20_17